**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>　　　　　Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

<u>**HOMELAND INSURANCE COMPANY OF NEW YORK'S ANSWER  AND AFFIRMATIVE DEFENSES TO DEFENDANT AND COUNTERCLAIMANT CLINICAL PATHOLOGY LABORATORIES, INC.'S COUNTERCLAIMS**</u>

Plaintiff and Counterclaim Defendant Homeland Insurance Company of New York ("Homeland"), by and through counsel, for its answer and defenses to the Counterclaims [Doc. 18] of Defendant and Counterclaimant, Clinical Pathology Laboratories, Inc. ("CPL"), states as follows:

<u>**ANSWER TO COUNTERCLAIM**</u>

<u>**PRELIMINARY STATEMENT**</u>

Through its Counterclaims, CPL brings causes of action against Homeland for breach of contract and violation of Texas Insurance Code Chapter 542.

**<u>ANSWER</u>:**  Admitted that CPL brings the alleged causes of action against Homeland.  Denied that CPL is entitled to any of the relief it seeks.

This dispute arises out of two insurance policies that CPL purchased from Homeland to protect the Company from, among other things, third-party liability claims brought anywhere in the world.

**ANSWER:**  Admitted that part of this dispute arises out of insurance CPL sought from Homeland with respect to third-party liability claims brought outside the United States of America, its territories or possessions, Puerto Rico and Canada.  Except as expressly admitted, Homeland denies the allegations set forth in this preliminary paragraph.

In 2019, CPL was added as a defendant to the Ms. S Claim,[1] which was a pending medical negligence claim in Ireland.

**ANSWER**:  Upon information and belief, admitted.

CPL promptly tendered the Ms. S Claim to Homeland for coverage, which Homeland denied in breach of the subject insurance policies.  CPL has since been forced to cover the defense and settlement costs associated with the Ms. S Claim without the insurance coverage for which it bargained.   For those and other reasons, CPL brings these Counterclaims.

**ANSWER**:  Admitted that CPL tendered the Ms S Claim to Homeland for coverage.  Admitted that CPL has brought Counterclaims, but denied that CPL is entitled to the relief it seeks.  Except as expressly admitted, Homeland denies the allegations set forth in this preliminary paragraph.

---

[1] The name of the claimant has been abbreviated and details omitted to preserve the privacy of the claimant.

## THE PARTIES

1.      Counter-Plaintiff CPL is a corporation organized and existing under the laws of Texas, with its principal place of business in Texas.

**ANSWER:**  Upon information and belief, admitted.


2.      Upon information and belief, Counter-Defendant Homeland is a corporation organized and existing under the laws of New York, with its principal place of business in Minnesota.

**ANSWER:**  Admitted.


## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between CPL and Homeland.  The amount in controversy exceeds $75,000, exclusive of interest and other costs.

**ANSWER:**  Admitted.


4.      The Court has personal jurisdiction over Homeland as described herein, and venue is proper in this District under 28 U.S.C. § 1391.

**ANSWER:**  Admitted that the Court has personal jurisdiction over Homeland and venue is proper in this District.  Except as expressly admitted, Homeland denies the allegations of paragraph 4.

## FACTUAL BACKGROUND

**A.      The Insurance Policies**

5.      Homeland's predecessor, OneBeacon Healthcare Group, issued a primary Medical Facilities and Providers Professional Liability Insurance Policy (No. MFL-004062-0617) (the "Primary Policy") and an Excess Medical Facilities Liability Insurance Policy (No. MFX-002013-0617) (the "Excess Policy," together whether the Primary Policy, the "Policies") to Sonic Healthcare Investments, G.P. and several additional named insureds, including CPL, for the policy period of June 30, 2017 to June 30, 2018.  The Primary Policy is attached hereto as Exhibit 1.  The Excess Policy is attached hereto as Exhibit 2.

**ANSWER:**  Denied that OneBeacon Healthcare Group issued the Primary Policy or Excess Policy alleged in paragraph 5.  Homeland issued the Primary Policy and the Excess Policy alleged in paragraph 5.  The Policies are written contracts that speak for themselves and are the best evidence of their contents.  Homeland denies the allegations in paragraph 5 to the extent that they are incomplete and inconsistent with the terms, conditions and full language of the Policies.  Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 5, as alleged in CPL's Counterclaims.  Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

6.      The Policies provide broad coverage for "Loss" and "Defense Expenses" arising out of "Claims" for, among other things, "Professional Services Wrongful Acts" occurring on or after October 1, 2000, provided the Claim is first made during the policy period or during an extended reporting period of thirty-six months. *See* Ex. 1, Primary Policy, at Declarations, § I(A).

**ANSWER:**  The Policies are written contracts that speak for themselves and are the best evidence of their contents.  The Policies also contain conditions and terms, such as retroactive dates, that vary based on the insured.  Homeland denies the allegations in paragraph 6 to the extent that they are incomplete and inconsistent with the terms, conditions and full language of the Policies.  Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 6, as alleged in CPL's Counterclaims.   Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

7.      The Policies define "Loss" as, among other things, "settlements . . . an Insured is legally obligated to pay as a result of a Claim."  *See* Ex. 1, Primary Policy, at § II(X).

**ANSWER:**  Homeland admits that the Primary Policy contains the language quoted in paragraph 7. The Policies are written contracts that speak for themselves and are the best evidence of their contents.  Homeland denies the allegations in paragraph 7 to the extent that they are incomplete and inconsistent with the terms, conditions and full language of the Policies.  Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in

paragraph 7, as alleged in CPL's Counterclaims.  Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

8.      The Policies define "Defense Expenses" as, among other things, "the reasonable fees of attorneys, experts and consultants and costs and expenses incurred in the investigation, adjustment, defense or appeal of a Claim."  *See* Ex. 1, Primary Policy, at § II(H).

**ANSWER:**  Homeland admits that the Primary Policy contains the language quoted in paragraph 8. The Policies are written contracts that speak for themselves and are the best evidence of their contents.  Homeland denies the allegations in paragraph 8 to the extent that they are incomplete and inconsistent with the terms, conditions and full language of the Policies.  Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 8, as alleged in CPL's Counterclaims.  Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

9.      The Policies define "Claim" as "any written notice received by an Insured that any person or entity intends to hold an Insured responsible for a Wrongful Act or an Occurrence." *See* Ex. 1, Primary Policy, at § II(F).

**ANSWER:** Homeland admits that the Primary Policy contains the language quoted in paragraph 9. The Policies are written contracts that speak for themselves and are the best evidence of their contents. Homeland denies the allegations in paragraph 9 to the extent that they are incomplete and inconsistent with the terms, conditions and full language of the Policies. Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 9, as alleged in CPL's Counterclaims. Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

10.      The Policies define "Professional Services Wrongful Act" as, among other things, "any actual or alleged act, error or omission . . . in rendering, or failing to render, Medical Services." *See* Ex. 1, Primary Policy, at § II(LL).

**ANSWER:** Homeland admits that the Primary Policy contains the language quoted in paragraph 10. The Policies are written contracts that speak for themselves and are the best evidence of their contents. Homeland denies the allegations in paragraph 10 to the extent that they are incomplete and inconsistent with the terms, conditions and full language of the Policies. Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 10, as alleged in CPL's Counterclaims. Additionally, as asserted in Homeland's First

Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

11.     The Primary Policy provides the aforementioned coverage subject to a $1,000,000 per claim limit and a $3,000,000 aggregate limit.  *See* Ex. 1, Primary Policy, at Declarations.

**ANSWER:**   Admitted that the Primary Policy contains a $1,000,000 per claim limit and a $3,000,000 aggregate limit, subject to the Primary Policy's terms and conditions.  The Primary Policy is a written contracts that speaks for itself and is the best evidence of its contents.  Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 11, as alleged in CPL's Counterclaims.   Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

12.     The Excess Policy provides the aforementioned coverage subject to a $5,000,000 per claim limit and a $5,000,000 aggregate limit.  *See* Ex. 2, Excess Policy, at Declarations.

**ANSWER:**  Admitted that the Excess Policy contains a $5,000,000 per claim limit and a $5,000,000 aggregate limit, subject to the Excess Policy's terms and conditions.  The Excess Policy is a written

contracts that speaks for itself and is the best evidence of its contents.  Homeland denies any additional factual allegations and legal conclusions regarding the terms, conditions and language in paragraph 12, as alleged in CPL's Counterclaims.  Additionally, as asserted in Homeland's First Amended Complaint [Doc. 21], Homeland is entitled to reformation of the Policies, and/or to void the Worldwide Endorsement (No. 13) in its entirety, and the Additional Named Insured Endorsement (Nos. 3 and 22) as to the Defendants (i.e., CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Ireland) with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

**B.      CPL is Engaged to Provide Cancer Screening Services for NCSS**

13.      CPL is a medical laboratory services provider that provides a broad range of services from cancer screening to facilitating COVID-19 testing.

**ANSWER:**  Homeland is without sufficient information to form a belief as to the veracity of the allegations contained in paragraph 13.

14.      Between August 2010 and July 2013, CPL was engaged to provide cervical cancer screening services under Ireland's National Cancer Screening Service ("NCSS").

**ANSWER:**  Denied as phrased.  Upon information and belief, the NCSS entered into a contract with defendant Sonic Healthcare (Ireland) Limited for the supply of cervical cytology laboratory (liquid based cytology) screening services (the "NCSS Contract").  CPL was identified in the NCSS Contract under the "Laboratory(ies)" schedule.

C.      The *Ms. S* Litigation

15.      In February 2012, *Ms. S* underwent a cervical smear test as part of the NCSS program.  The cervical sample was sent to CPL for review, and CPL issued a cytology report finding no evidence of abnormalities.

**ANSWER:**  Homeland is without sufficient information to form a belief as to the veracity of the allegations contained in paragraph 15.

16.      On April 23, 2013, *Ms. S* was diagnosed with invasive cervical cancer.  A subsequent Cancer Audit Review was conducted by MedLab Pathology ("MedLab") on September 1, 2014 and resulted in a conflicting interpretation of the slides reviewed by CPL.

**ANSWER:**  Homeland is without sufficient information to form a belief as to the veracity of the allegations contained in paragraph 16.

17.      On or about August 7, 2018, *Ms. S* and her partner filed suit against other defendants (i.e., not CPL) in Cause No. 2018/7164P in the High Court of Ireland, seeking personal injury damages for alleged medical negligence.  CPL was not initially named as a defendant in the lawsuit but was added by an amended pleading in May 2019.

**ANSWER:**  Upon information and belief, admitted, but denied to the extent the allegations in paragraph 17 are incomplete.  Defendant MedLab Pathology was originally named as a defendant in the *Ms. S* lawsuit along with Ireland's Health Service Executive.  Defendant Sonic Healthcare (Ireland) Limited was also added by an amended pleading in May 2019.

18.      CPL vigorously defended the lawsuit and incurred no less than $812,103.62 in defense fees and costs.  CPL eventually settled the *Ms. S* litigation for $1,310,980.00, plus

preliminary plaintiffs' costs of $278,100.00 (plaintiffs' additional costs are presently being negotiated). CPL has paid the foregoing amounts.

**ANSWER:** Denied that CPL vigorously defended the lawsuit. Homeland is without sufficient information to form a belief as to the veracity of the remainder of the allegations contained in paragraph 18.

### D.      CPL Tenders the Ms. S Litigation to Homeland

19.      CPL learned in or around April 2018 that *Ms. S* was one of several patients whose slides were reviewed as part of an Irish Cancer Audit Review ("CAR") program, resulting in interpretations that arguably conflicted with some of CPL's prior cytology reports.

**ANSWER:** Denied.

20.      On May 15, 2018, CPL promptly notified Homeland of that development; *Ms. S* was identified in that notification.

**ANSWER:** Admitted that on or about May 15, 2018, CPL reported a list of 101 slides to Homeland which CPL believed may result in future claims against it, including a slide related to Ms. S. Except as expressly admitted, Homeland denies the allegations of paragraph 20.

21.      The *Ms. S* Litigation was subsequently filed on August 7, 2018.

**ANSWER:** Upon information and belief, the *Ms. S* Litigation was filed on or about August 7, 2018. Except as expressly admitted, Homeland denies the allegations of paragraph 21.

22.     CPL and/or its broker provided updates to Homeland regarding the status of the *Ms. S* litigation, including updates on August 21, 2018, December 24, 2018, February 20, 2019, March 12, 2019, March 15, 2019, and April 17, 2019.

**ANSWER:**  Admitted that CPL and/or its broker wrote to Homeland with respect to the *Ms. S* litigation on or about the dates alleged, but denied that the information provided was sufficient to comply with any cooperation or other reporting requirements mandated by the Policies.  Except as expressly admitted, Homeland denies the allegations of paragraph 22.

23.     On April 29, 2019, a motion was filed by one of the parties to join CPL as a defendant in the *Ms. S* litigation, and CPL promptly tendered notice to Homeland on May 1, 2019.

**ANSWER:**  Upon information and belief, on or about April 29, 2019, a motion was filed to join CPL and Sonic Healthcare (Ireland) Limited as defendants in the *Ms. S* litigation.  Admitted that on or about May 1, 2019, CPL wrote to Homeland and provided information related to this motion. Except as expressly admitted, Homeland denies the allegations of paragraph 23.

**E.     Homeland Denies CPL's Request for Coverage**

24.     On May 1, 2019, CPL requested a defense from Homeland, but Homeland declined to exercise its right to provide a defense.  CPL therefore undertook its own defense but continued to provide Homeland with frequent litigation updates, including updates on August 5, 2019, September 18, 2019, and October 2, 2019.

**ANSWER:**  Admitted that on or about May 1, 2019, CPL wrote to Homeland seeking a coverage determination.  Without conceding that CPL or any other Defendant is entitled to coverage under the Worldwide Endorsement (No. 13), or that this endorsement was properly endorsed to the Primary Policy, admitted that Homeland declined to exercise any right it might have had to defend the *Ms. S*

claim as more fully discussed in Homeland's May 31, 2019 letter in response.  Admitted that CPL undertook its own defense.  Admitted that CPL provided some information to Homeland concerning the *Ms. S* litigation, but denied that the information provided was sufficient to comply with any cooperation or other reporting requirements mandated by the Policies.  Except as expressly admitted, Homeland denies the allegations of paragraph 24.

25.     On October 13, 2019, CPL invited Homeland to participate in a mediation in hopes of resolving the *Ms. S* litigation.  Homeland refused to participate.

**ANSWER:**  Admitted that on or about October 13, 2019, CPL invited Homeland to participate in a mediation with respect to the *Ms. S* litigation.   Admitted that Homeland declined CPL's invitation to participate in the *Ms. S* mediation.  Except as expressly admitted, Homeland denies the allegations of paragraph 25.

26.     Prior to the mediation, on October 17, 2019, CPL requested Homeland's consent to settle the *Ms. S* litigation for an amount within a specified range.  Homeland agreed that if CPL settled the *Ms. S* litigation within that range, Homeland would not raise lack of consent as a defense to any subsequent demand for coverage.

**ANSWER:**  Admitted that on or about October 17, 2019, CPL requested Homeland's consent to settle the *Ms. S* litigation for an amount within a specified range.  Homeland responded that same day explaining that Homeland was not immediately able either to challenge or agree to the value that CPL had placed on the case, and noted that CPL was silent on a key issue as to value – namely, how any proposed settlement would be allocated between CPL and defendant MedLab Pathology, or any other liable party.  Homeland stated that it would do nothing to interfere with CPL's ability to reach a settlement that it deems reasonable, and will not raise the absence of Homeland's consent as a

defense to coverage.  Homeland specifically reserved all other rights under the Policy terms, applicable law or in equity, or of any considerations raised with respect to coverage by Homeland or its representatives in prior communications.  Except as expressly admitted, Homeland denies the allegations of paragraph 26.

27.    On October 30, 2019, CPL settled the *Ms. S.* litigation within the agreed-upon range (for $1,310,980.00).

**ANSWER:**  Admitted that CPL settled the *Ms. S* litigation, but denied that there was any "agreed-upon range" for settlement of the *Ms. S* litigation.  Except as expressly admitted, Homeland denies the allegations of paragraph 27.

28.    CPL promptly provided notice of the settlement to Homeland on November 1, 2019 and requested coverage.  Homeland refused to cover the settlement, asserting that the Policies are for reimbursement only.

**ANSWER:**  Admitted that CPL provided notice of the settlement to Homeland on or about November 1, 2019 and requested coverage.  Without conceding that CPL or any other Defendant is entitled to coverage under the Worldwide Endorsement (No. 13), or that this endorsement was properly endorsed to the Primary Policy, the Worldwide Endorsement (No. 13) provides for reimbursement.  Except as expressly admitted, Homeland denies the allegations of paragraph 28.

29.    After the *Ms. S* settlement was funded, CPL presented its itemized claim for reimbursement to Homeland by letter dated May 13, 2020.  CPL demanded reimbursement for its fees, expenses, and indemnity.

**ANSWER:**  Admitted that on or about May 13, 2020, CPL presented its itemized claim for reimbursement to Homeland related to the *Ms. S* settlement and admitted that CPL demanded reimbursement for its fees, expenses and indemnity.  Denied that CPL is entitled to any of the reimbursement it sought.  Admitted that CPL contended it funded the settlement, but Homeland is without sufficient information to determine the veracity of when or if this occurred.  Except as expressly admitted, Homeland denies the allegations of paragraph 28.

30.     On or about July 10, 2010, Homeland denied CPL's claim for reimbursement.

**ANSWER:**  Denied.

31.     Homeland based its denial on the grounds set forth in Homeland's Complaint for Declaratory Relief at paragraph 155.  *See* Pl.'s Compl. ¶ 155 [Doc. No. 1].

**ANSWER:**  Denied.  Homeland's July 10, 2020 letter is the best evidence of its response to and denial of CPL's request for reimbursement regarding the *Ms. S.* lawsuit.  Denied that Homeland's Complaint for Declaratory Relief is an exhaustive recitation of the grounds for Homeland's denial.

32.     CPL asserts that Homeland's bases for its denial are meritless.

**ANSWER:**  Homeland is without sufficient information to form a belief as to the veracity of the allegations contained in paragraph 32.

33.     By failing and refusing to indemnify CPL, Homeland has materially breached its contractual obligations under the Policies.  As a direct and proximate result, CPL has paid and incurred no less than $2,401,183.62 for the *Ms. S* litigation, which is rightfully Homeland's responsibility under the Policies.

**ANSWER**:  Denied.

34.     CPL has fully performed its obligations under the Policies, including payment of premiums, provision of notice and cooperation, save and except only those obligations (if any) excused by material breaches of the Policies by Homeland.

**ANSWER**:  Denied.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

35.     The foregoing allegations are incorporated herein by reference.

**ANSWER**:  Homeland incorporates by reference the foregoing paragraphs of this Answer as though fully set forth herein.

36.     The Policies are valid and enforceable contracts.

**ANSWER**:  Denied that the Policies are valid and enforceable contracts with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

37.     CPL is an insured under the Policies.

**ANSWER**:   Admitted that CPL is an insured under the Policies subject to their terms and conditions, but denied that Endorsement 13 to the Primary Policy is a valid and enforceable Endorsement to the Policy, and denied that any of the Defendants in this action (CPL, MedLab Pathology, Sonic Healthcare, USA, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited) are insureds under the Policies with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.  Except as expressly admitted, Homeland

denies the allegations of paragraph 37.

38.     CPL has standing to assert claims under the Policies.

**ANSWER:**  Denied that CPL has standing to assert claims under the Policies with respect to any claims arising out of work related to the Irish contract for cervical cytology screening services.

39.     CPL has satisfied all conditions precedent under the Policies.

**ANSWER:**  Denied.

40.     The terms of the Policies unambiguously provide coverage for the costs associated with the *Ms. S* litigation.

**ANSWER:**  Denied.

41.     Alternatively, the terms of the Policies are ambiguous with respect to coverage and should therefore be construed in favor of CPL, in accord with Texas law.

**ANSWER:**  Denied.

42.    Homeland has breached the Policies by refusing to reimburse CPL for the defense and settlement costs associated with the *Ms. S* litigation.

**ANSWER:**  Denied.

43.     Homeland's breach has caused CPL substantial damages no less than $2,401,183.62.

**ANSWER:**  Denied.

## COUNT II – CHAPTER 542 OF THE TEXAS INSURANCE CODE

44.     The foregoing allegations are incorporated herein by reference.

**ANSWER:**  Homeland incorporates by reference the foregoing paragraphs of this Answer as though fully set forth herein.

45.     CPL has made a claim under the Policies for costs associated with the *Ms. S* litigation, including defense costs.

**ANSWER:**   Admitted that CPL has made a claim under the Policies for costs it asserts are associated with the *Ms. S* litigation, including defense costs.

46.     CPL has satisfied all conditions precedent under the Policies.

**ANSWER:**  Denied.

47.     Homeland has engaged in conduct that constitutes a violation of Chapter 542 of the Texas Insurance Code by delaying its handling of the claim and/or failing to timely pay CPL's outstanding costs that are connected with the *Ms. S* Litigation.

**ANSWER:**  Denied.

48.     Consequently, CPL is entitled to the damages set forth in § 542.060 of the Texas Insurance Code—specifically, in addition to the amount of CPL's outstanding costs associated with the *Ms. S* litigation, interest at the rate of eighteen percent (18%) per annum as well as any and all other relief provided therein.

**ANSWER:**  Denied.

## COUNT III – ATTORNEYS' FEES

49.     The foregoing allegations are incorporated herein by reference.

**ANSWER:**  Homeland incorporates by reference the foregoing paragraphs of this Answer as though fully set forth herein.

50.     Due to the actions of Homeland, CPL has been required to retain the services of the law firms of Haynes and Boone, LLP and Germer Beaman & Brown PLLC.  CPL has agreed to pay those firms a reasonable fee for their services necessarily rendered and to be rendered in this action.  Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and/or Section 542.060 of the Texas Insurance Code, CPL is entitled to an award of its reasonable attorneys' fees against Homeland in an amount to be established at trial.

**ANSWER:**  Denied.

## COUNTERCLAIM PRAYER

WHEREFORE, Counter-Plaintiff CPL requests the following relief against Counter-Defendant Homeland:

(1)     Judgment awarding CPL all damages caused by Homeland's breach of the Policies;

(2)     Judgment awarding CPL all damages sustained as a result of Homeland's violations of Chapter 542 of the Texas Insurance Code;

(3)     Judgment awarding CPL all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code and Chapter 542 of the Texas Insurance Code;

(4)     Judgment awarding CPL pre-judgment and post-judgment interest in the amount

allowed by law;

     (5)     Judgment awarding CPL all costs of court; and

     (6)     Such other and further relief to which CPL may be justly entitled.

**ANSWER:**  Denied that CPL is entitled to any of the relief requested in its Prayer.

**HOMELAND'S AFFIRMATIVE DEFENSES**

Without conceding that it has the burden of proof as to any of these matters, Homeland submits the following defenses:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

Each of CPL's purported Counterclaims for relief fail to state any claim against Homeland upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Prior Notice Exclusion)**

The purported Counterclaims for relief are barred by the following (D)(2) Prior Notice Exclusion:

    (D) Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

        (2) act, error, omission, **Wrongful Act**, event, suit or demand which was the subject of any notice given under:

(a) any medical professional liability or similar policy of insurance or plan or program of self-insurance, with respect to any **Claim** otherwise covered under INSURING AGREEMENT (A);

(b) any general liability or similar policy of insurance or plan or program of self-insurance, with respect to any **Claim** otherwise covered under INSURING AGREEMENT (B); or

(c) any employee benefit liability or similar policy of insurance or plan or program of self-insurance, with respect to any **Claim** otherwise covered under INSURING AGREEMENT (C);

in effect prior to the Inception Date set forth in ITEM 2 [June 30, 2017] of the Declarations;

Primary Policy, § III, (D)(2) Prior Notice Exclusion.

## **THIRD AFFIRMATIVE DEFENSE**

### **(Material Misrepresentation)**

To the extent that CPL or any insured made a material misrepresentation during the claim or in connection with an insurance application, the purported Counterclaims for relief are barred.

## **FOURTH AFFIRMATIVE DEFENSE**

### **(Concealment)**

To the extent that CPL or any insured concealed a material fact from Homeland during the claim or in connection with an insurance application, the purported Counterclaims for relief are barred.

## FIFTH AFFIRMATIVE DEFENSE

### (Condition Precedent)

The purported Counterclaims for relief are barred to the extent that CPL or any insured failed to perform certain conditions precedent to any obligations or indebtedness which Homeland might otherwise have had toward them.

## SIXTH AFFIRMATIVE DEFENSE

### (Breach of Warranty)

The purported Counterclaims for relief are barred by breach of the specific warranties in the July 27, 2016 Warranty Letter upon which Homeland conditioned issuing coverage to CPL (and the other Defendants) with respect to claims arising out of work related to the Irish contract for cervical cytology screening services.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unilateral or Mutual Mistake)

The purported Counterclaims for relief are barred because the parties intended to exclude certain risks under the Policies, such as the *Ms. S* claim, pursuant to the warranties provided in the July 27, 2016 Warranty Letter for which the Defendants were either mistaken in so warranting, or inequitably induced Homeland to unilaterally mistake in so believing, such that the Policies were issued contrary to the actual understanding of the parties.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Without in any way admitting that CPL was in any way damaged, or that it was damaged by any conduct of Homeland, CPL's purported Counterclaims are barred to the extent that CPL failed to mitigate its damages, if any, alleged or otherwise, and is therefore estopped from making or pursuing any claim thereon.

## NINTH AFFIRMATIVE DEFENSE

### (Comparative or Contributory Fault)

Without in any way admitting that CPL was in any way damaged, or that it was damaged by any conduct of Homeland, the damages complained of were proximately caused in whole or in part by the comparative or contributory fault and negligence of CPL and/or its agents and representatives.

## TENTH AFFIRMATIVE DEFENSE

### (Conduct of Third Parties)

Without in any way admitting that CPL was in any way damaged, or that it was damaged by any conduct of Homeland, Homeland is informed and believes, and based thereon alleges, that if CPL was damaged, the damage was caused in whole or in part by the acts of third parties other than Homeland.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Offset/Credit)

In the event there is a finding of damages for CPL, such damages must be offset to the extent CPL received monetary benefits from collateral sources and/or by the amounts CPL owes to

Homeland and/or the credits/offsets to which Homeland is entitled to from CPL.

## TWELFTH AFFIRMATIVE DEFENSE

### (Breach or Failure to Comply with Contract Terms)

The purported Counterclaims for relief are barred to the extent that any insured has breached or not fully complied with all the terms and conditions of the Policies, including but not limited to the Related Claims, Notice, Territory, Claim, Notice, Assistance and Cooperation, Representation, No Action Against Underwriter, or Examination of Books and Records provisions.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Exclusions From Coverage)

The purported Counterclaims for relief may be barred and/or limited by one or more exclusions and limitations contained within the Policies.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Failure to Cooperate)

The purported Counterclaims for relief are barred to the extent that CPL failed to cooperate in Homeland's attempts to investigate coverage for the Ms. S claim.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

The purported Counterclaims for relief are barred to the extent that CPL waived any rights it may otherwise have had against Homeland.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Estoppel)

GEICO is informed and believes, and based thereon alleges, that Plaintiffs are estopped to assert the claims set forth in the Complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

CPL's Counterclaims against Homeland  may be barred by the doctrine of unclean hands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Laches)

CPL's Counterclaims against Homeland may be barred by the doctrine of laches.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Additional Unknown Defenses/Reservation of Rights)

Homeland is informed and believes and thereupon alleges that it may have other separate and additional defenses of which it is presently unaware; Homeland  reserves the right to allege other separate and additional defenses upon the discovery of additional facts during the course of discovery.

## RELIEF REQUESTED ON ANSWER

(i)      That CPL take nothing by way of its Counterclaims;

(ii)     That CPL's Counterclaims be dismissed with prejudice;

(iii)    That Homeland recover its costs of court; and

(iv)     That Homeland be granted such other and further relief, at law and in equity, to

which CPL may show itself entitled and that the Court may deem just and proper.


**DATED:** October 19, 2020          By:   */s/ Jenna A. Fasone*
                                                    John T. Brooks (CA Bar #167793)
                                                    Jenna A. Fasone (CA Bar #308886)
                                                    SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
                                                    501 West Broadway, 19th Floor
                                                    San Diego, CA 92101
                                                    Telephone:  (619) 338-6500
                                                    Fax:  (619) 234-3815
                                                    jbrooks@sheppardmullin.com
                                                    jfasone@sheppardmullin.com
                                                    *Admitted pro hac vice*

                                                    Joseph R. Little (#784483)
                                                    The Little Law Firm
                                                    440 Louisiana Street, Suite 900
                                                    Houston, Texas 77002
                                                    Telephone:  (713) 222-1368
                                                    Fax:  (281) 200-0115
                                                    jrl@littlelawtexas.com

                                                    *Attorneys for Plaintiff and Counterclaim*
                                                    *Defendant Homeland Insurance Company of*
                                                    *New York*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon counsel of record for all parties who have made an appearance in this case at the addresses indicated by CM/ECF electronic notification on this 19th day of October, 2020. I declare under penalty of perjury that the foregoing is true and correct.


*/s/ Jenna A. Fasone*