IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | § § § | |
| Plaintiff / Counter Defendant, | § § | |
| v. | § § | 1:20-CV-783-RP |
| CLINICAL PATHOLOGY LABORATORIES, INC, SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND), LIMITED, and SONIC HEALTHCARE, LIMITED, | § § § § § § § | |
| Defendants / Counter Plaintiffs. | § | |

## ORDER

Before the Court is Defendants Clinical Pathology Laboratories, Inc. ("CPL"), Sonic Healthcare USA, Inc. ("Sonic USA"), MedLab Pathology ("MedLab"), Sonic Healthcare (Ireland) Ltd. ("Sonic Ireland"), and Sonic Healthcare Ltd.'s ("Sonic") (together, "Defendants") Motion to Dismiss Plaintiff Homeland Insurance Company's ("Homeland") Amended Complaint, (Dkt. 21). (Dkt. 24). Homeland filed a response, (Dkt. 25), and Defendants filed a reply, (Dkt. 26). Having considered the parties' submissions, the record, and the applicable law, the Court will grant in part and deny in part the motion.

## I. BACKGROUND

This case is about an insurance coverage dispute. Homeland provides insurance coverage to Defendants, who work together to provide cervical cytology laboratory screening services to detect cervical cancer. (Am. Compl., Dkt. 21, at 2). CPL and Sonic USA are located in the United States, while MedLab, Sonic Ireland, and Sonic are located outside the United States. (*Id.* at 2).

1

Around March 2010, as part of a national program in Ireland called CervicalCheck, the National Screening Service ("NSS")[1] of Ireland entered into contracts with Sonic Ireland and MedLab to provide screening services for cervical cancer. (*Id.* at 6). The contracts identified CPL, in Austin, Texas as the laboratory that that would read the cancer screening slides. (*Id.*; Resp., Dkt. 25, at 5; Mot. Dismiss, Dkt. 24, at 7). Also in 2010, CervicalCheck began an audit process called Cancer Audit Reviews ("CARs") that reviewed women's screening history after they developed cervical cancer, to determine whether any slides in previous screenings had been misread. (Am. Compl., Dkt. 21, at 6–7). Around 2016, the NSS changed its protocol to require CARs results where slides had been misread to be reported to the patients' physicians. (*Id.* at 7–8).

Before 2016, Homeland insured CPL, Sonic USA, and Sonic only for claims made inside the United States. (*Id.* at 10). Around 2015 and 2016, Homeland informed CPL and Defendants' broker that there was no insurance coverage for a claim about misread slides because the claim was made outside the United States. (*Id.* at 10–12). Later in 2016, Defendants sought to expand coverage to (1) include claims made outside the U.S. against CPL and Sonic USA, and (2) include MedLab and Sonic Ireland as additional named insureds limited to coverage for cervical cytology screening services provided from August 2010 to June 2013 for claims made in the U.S. (*Id.* at 12).

Homeland agreed to the requested expanded coverage for the 2016–17 insurance policy ("2016 Policy"), allegedly conditioned upon a July 27, 2016 letter ("2016 Letter") provided by Stephen Shumpert, CPL's President and Director and Sonic USA's Chief Executive Director and Director, stating that, on behalf of the insureds, they were not aware of any potential claims against the insureds. (*Id.* at 13; 2016 Letter, Dkt. 21-1). Homeland alleges that the assurances in this letter

---

[1] The NSS was initially the National Cancer Screening Service ("NCSS"), until it became the NSS in 2014. (Am. Compl., Dkt. 21, at 5). For simplicity, the Court will refer to it as the NSS.

were false, because at least some of the Defendants were aware of potential claims based on misread slides. (Am. Compl., Dkt. 21, at 15). Defendants' insurance coverage was later extended to 2017–2018 ("2017 Policy"). (Am. Compl., Dkt. 21, at 14).

In 2018, a lawsuit was filed on behalf of "Ms. S" based on a misread slide (the "Ms. S claim"). (*Id.* at 24). CPL settled this matter in October 2019. (*Id.*). In May 2020, CPL sought reimbursement from Homeland for this claim, alleging that the claim is covered under the 2017 Policy. (*Id.* at 25). In July 2020, Homeland denied the claim. (*Id.*).

Based on these allegations, Homeland asserts several causes of action. Homeland brings (1) a claim for declaratory judgment that there is no coverage for the Ms. S claim under the 2017 Policy; (2) a negligent misrepresentation claim based on the 2016 Letter seeking attorney's fees and damages for the amount of coverage due on the Ms. S claim; (3) a breach of warranty claim based on the 2016 Letter; and (4) a claim for reformation of the 2017 Policy to reflect that the 2016 Letter was meant to exclude certain claims from coverage. (*Id.* at 40–43).

Defendants filed a motion to dismiss the defendants outside the United States for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and to dismiss each of the claims against Defendants under Rule 12(b)(6) for failure to state a claim. (Mot. Dismiss, Dkt. 24). The Court will consider each issue in turn.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When, as here, a court considers a motion to dismiss for lack of personal jurisdiction without

holding an evidentiary hearing, the plaintiff need only present a prima facie case that personal jurisdiction is proper. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Courts may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise specific jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Even if the court receives discovery materials, unless there is a full and fair hearing, a district court should not act as a factfinder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts and uncontroverted allegations. *Id.*; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### A. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

4

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over MedLab, Sonic Ireland, and Sonic (together, the "Foreign Defendants") because they are based outside the United States. (Mot. Dismiss, Dkt. 24, at 4). Under Federal Rule of Civil Procedure 12(b)(2), the party invoking the power of the court bears the burden of making a prima facie showing that personal jurisdiction is proper. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). To make this showing, "the plaintiff must show that the nonresident defendant purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Id.* (citation omitted) (cleaned up). "Sufficient minimum contacts will give rise to either specific or general jurisdiction." *Id.* (citation omitted). Homeland does not dispute that this Court does not have general

jurisdiction over the Foreign Defendants. Accordingly, Homeland must show that the exercise of specific jurisdiction over each Foreign Defendant is proper.

The Fifth Circuit has adopted a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277 (2014)).

Homeland argues that the Foreign Defendants have contacts with Texas because MedLab and Sonic Ireland contracted with CPL in Texas to process the screening slides and the Foreign Defendants reached out to Homeland for "Texas [insurance] coverage because of the litigation risk they faced in Texas," thus anticipating suit in Texas. (Resp., Dkt. 25, at 9, 13).

However, the 2017 Policy does not provide the Foreign Defendants with minimum contacts in Texas. Homeland is incorporated in New York with its principal place of business in Minnesota, and any claims under the 2017 Policy were required to be submitted to a Connecticut office, with premiums sent to Minnesota. (Mot. Dismiss, Dkt. 24, at 12; Reply, Dkt. 26, at 8). Although the 2017 Policy is governed by Texas law, this is not determinative on its own of personal jurisdiction. *See Stuart v. Spademan*, 772 F.2d 1185, 1196 (5th Cir. 1985) (stating that a Texas choice of law provision is "certainly insufficient of itself to justify jurisdiction over [defendant]"); *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 574 (5th Cir. 2020).

However, "[t]he place where the contract is performed is a 'weighty consideration' in ascertaining whether or not specific jurisdiction is properly exercised." *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993). "[T]he general Texas rule is that the place of performance of the contract is the state in which the insurer's home office is located." *Mayo v. Hartford Life Ins. Co.*, 220 F. Supp. 2d 714, 755 (S.D. Tex. 2002), *aff'd and remanded*, 354 F.3d 400 (5th Cir. 2004). Although Homeland argues that a party that "obtains a Texas contract, to secure a defense in Texas . . . can hardly claim it to be unfair that its rights are adjudicated in Texas," (Resp., Dkt. 24, at 12), this contradicts its explanation that the insurance coverage "provides for only a duty to reimburse—as opposed to a duty to defend." (Am. Compl., Dkt. 21, at 25). Thus, the 2017 Policy would not have been performed in Texas, which weighs against a finding of specific jurisdiction.

The Foreign Defendants' contract with CPL is also insufficient to establish minimum contacts in Texas. Although the work under the contract between CPL and the Foreign Defendants occurred at CPL's laboratories in Texas, this would weigh in favor of specific jurisdiction in a dispute between CPL and the Foreign Defendants. Instead, this is a dispute between the Foreign Defendants and Homeland about the 2017 Policy. The only underlying claims at issue were brought in Ireland against CPL based on events occurring in Ireland, while the 2017 Policy only covers the Foreign Defendants for claims made in the United States. Although the 2017 Policy covered the Foreign Defendants for claims filed against them in Texas, it is unlikely that the Foreign Defendants anticipated being haled into a Texas court to defend a lawsuit brought by Homeland against them. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) ("[E]ven if WWAI may have expected to arbitrate disputes between itself and OTSI in Texas, it does not concomitantly follow that WWAI reasonably anticipated being haled into a Texas Court to defend a lawsuit brought by [plaintiff] or any other nonparty to the [contract between WWAI and OTSI]."). Additionally, the alleged harms from the Foreign Defendants' negligence and misrepresentation in

7

entering the 2017 Policy were not directed at Texas, but were instead allegedly directed at Homeland, which is not based in Texas. *See Brit. Aviation Ins. Grp. v. Am. Eurocopter Corp.*, No. CIV.A. 3:96-CV-0392G, 1997 WL 118425, at *6 (N.D. Tex. Mar. 12, 1997) ("[The insurance certificates] do not indicate that [third-party defendant] expressly aimed its activity, tortious or otherwise, at Texas."). As a result, there are insufficient contacts between Texas, the Foreign Defendants, and the controversy at hand for specific jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

Alternatively, Homeland asserts that the Court has personal jurisdiction over the Foreign Defendants based on an agency theory. "The actions of an agent may establish minimum contacts over a principal." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). Homeland asserts that in sending the 2016 Letter to Homeland, CPL acted "on behalf of" the Foreign Defendants, therefore creating an agency relationship and allowing CPL's contacts to be imputed to the Foreign Defendants as principals. (Resp., Dkt. 25, at 11). Homeland pleads that the 2016 Letter was provided by "CPL's then-President and Director, and Sonic USA's then-Chief Executive Officer and Director, Stephen R. Shumpert." (Am. Compl., Dkt. 21, at 13). The letter states that it is from "[Shumpert], on behalf of Sonic and any person proposed for coverage (the insureds)," which includes the Foreign Defendants. (*Id.*) (citing 2016 Letter, Dkt. 21-1).

However, even if CPL acted as an agent of the Foreign Defendants in signing the 2016 Letter, any imputed contacts would be limited to the 2016 Letter and thus still insufficient to confer the required minimum contacts onto the Foreign Defendants. Although agency relationships can impute contacts sufficient for specific jurisdiction, "[i]t does not inevitably follow . . . that similar reasoning applies to general jurisdiction." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 531 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, 134 S.Ct. at 759 n.13). Thus, instead of conferring general jurisdiction, an agency relationship between CPL and the Foreign Defendants

8

would allow CPL's contacts regarding the 2016 Letter to be imputed to the Foreign Defendants. However, as already discussed, the 2016 Letter was aimed at Homeland, which is not based in Texas, in order to secure an insurance policy that would not have been performed in Texas. *See id.* at 531–32 ("*Daimler* therefore embraces the significance of a principal-agent relationship to the specific-jurisdiction analysis, though it suggests that an agency relationship alone may not be dispositive."). Thus, even if CPL acted as an agent for the Foreign Defendants in signing the 2016 Letter, the Foreign Defendants still lack minimum contacts with Texas. Accordingly, the Court finds that Homeland has not established a prima facie case of specific personal jurisdiction over the Foreign Defendants. The Court will now turn to the remaining claims against CPL and Sonic USA.

### A.  2016 Letter

Each of Homeland's claims at least partially rely on the allegation that the 2016 Letter was misleading. However, Homeland has not plausibly pleaded that the 2016 Letter was incorporated into the 2016 or 2017 Policy. *See Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020) ("The paramount rule is that courts enforce unambiguous policies as written."). Homeland broadly pleads that the expanded coverage under the 2016 Policy was issued "in reliance on the truth of the warranties in the [2016 Letter]" and that the 2017 Policy was issued in "continued reliance on the truth of these representations." (Am. Compl., Dkt. 21, at 14); (*id.* at 13) (pleading that "Homeland agreed to the requested expansion of coverage, beginning with the June 30, 2016 to June 30, 2017 policy period, conditioned upon the veracity of" the 2016 Letter). In its complaint, Homeland does not point to language in either insurance policy that incorporated the 2016 Letter. Instead, Defendants contend that both policies refer only to an "Application," but no application is attached to either insurance policy. (Mot. Dismiss, Dkt. 24, at 14); (Reply, Dkt. 26, at 11 (citing 2016 Primary Policy, Dkt. 25-1)).

Homeland does not contest that no application materials were attached to either policy. Instead, Homeland argues that the 2016 Letter was included in the 2017 Policy because the 2016 Policy included a "rate stabilization" endorsement under which the parties agreed the policy would renew the following year at the same rate and "upon the same terms, conditions, and limits." (Resp., Dkt. 25, at 15) (citing 2016 Policy, Dkt 25-1, at 69–70). Although a "renewed policy is presumed to be on the same terms as the original policy," *Vela Wood PC v. Associated Indus. Ins. Co., Inc.*, 485 F. Supp. 3d 704, 711 (N.D. Tex. 2020), Homeland does not plead or assert in its briefing that the 2017 Policy was in fact a renewal of the 2016 Policy. (Reply, Dkt. 26, at 11 n.6; *see generally* 2017 Primary Policy, Dkt. 25-1). Homeland has not sufficiently pleaded that the 2016 Policy incorporated the 2016 Letter, and even if it had, Homeland has not plausibly pleaded that 2017 Policy was a renewal such that it also incorporated the 2016 Letter.

Homeland argues that even if the 2016 Letter is not incorporated into the 2017 Policy, its claims can still succeed. (Resp., Dkt. 25, at 16). This is true for some of its claims. With regard to its first claim for a declaration that there is no coverage under the 2017 Policy for the Ms. S claim, Homeland argues that there are other grounds for lack of coverage, including the "Prior Notice Exclusion" and "Prior Knowledge Exclusion" in the 2017 Policy. (*Id.*). Defendants argue that this claim fails because the complaint does not plead these policy exclusions as a basis for lack of coverage. (Reply, Dkt. 26, at 11). Although brief, Homeland's first claim states that it "incorporates by reference and re-alleges" the earlier paragraphs in the complaint, which include excerpts of the Prior Notice Exclusion and Prior Knowledge Exclusion. (Am. Compl., Dkt. 21, at 30–32 ); (*see also id.* at 25) (pleading that one basis for denying coverage for the Ms. S claim was "the Primary Policy's exclusion resulting from MedLab's prior notice of the Ms. S claim"). Homeland has sufficiently pleaded a basis for its first claim that is not reliant on the 2016 Letter being incorporated into the 2017 Policy.

10

Homeland similarly argues that its second claim for negligent misrepresentation can still succeed without the 2016 Letter's incorporation into the 2017 Policy because negligent misrepresentation is a tort claim requiring only that Homeland detrimentally relied on the representation, resulting in damages. (Resp., Dkt. 21, at 18). The Court agrees with Homeland that its negligent misrepresentation claim still stands without the incorporation of the 2016 Letter because, under this claim, Homeland seeks relief in the form of damages separate from voiding the terms of the 2017 Policy. (*See* Am. Compl., Dkt. 21, at 41) ("Homeland is entitled to damages proximately caused by Defendants' negligent misrepresentations.").

Homeland also argues that its third claim regarding breach of warranty still stands because Defendants still allegedly provided a warranty in the 2016 Letter, even if it was not included in the 2017 Policy. (Resp., Dkt. 21, at 18). However, Homeland's claim for breach of warranty specifically seeks relief only in the form of a declaratory judgment that the 2017 Policy is void. (*Id.* at 42). Because Homeland states no basis on which the 2017 Policy could be voided by a letter which it did not incorporate into its terms, the Court dismisses Homeland's third claim for breach of warranty.[2]

### B. Reformation Claim

In its fourth claim, Homeland seeks to reform the 2017 Policy to exclude the risks discussed in the 2016 Letter based on "warranties provided in the [2016 Letter] for which the Defendants were either mistaken in so warranting, or inequitably induced Homeland to unilaterally mistake." (Am. Compl., Dkt. 21, at 43). Homeland argues that the letter demonstrates that Homeland intended to expand coverage only if the letter was true. (Resp., Dkt, 25, at 18). Defendants argue

---

[2] Because the Court dismisses Homeland's claim for breach of warranty, it does not reach the question of whether the 2016 Letter is correctly characterized as a "warranty." (*See* Mot. Dismiss, Dkt. 24, at 17).

that the 2017 Policy cannot be reformed based on a mistake in the 2016 Letter. (Reply, Dkt. 26, at 11–12).

"The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties. Reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing." *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 527 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Homeland's claim for reformation states that Defendants were either "mistaken in . . . warranting" the assurances in the 2016 Letter or Defendants induced Homeland to "unilaterally mistake in so believing" the contents of the 2016 Letter, "such that the policy was issued contrary to the actual understanding of the parties." (Am. Compl., Dkt. 21, at 43).

Applying the elements of a reformation claim, the 2016 Letter is the alleged original agreement, while the 2017 Policy is the subsequent written agreement. For a reformation claim, the alleged mistake must be in the document that the party seeks to reform. *St. Paul Lloyd's Ins. Co.*, 808 S.W.2d at 527. But Homeland alleges that there was a mistake in the 2016 Letter, the *original agreement*, not that there was a mistake in the creation of the 2017 Policy, the subsequent written agreement. (*See* Am. Compl., Dkt. 21, at 43) (describing the mistake as making or believing the warranties in the 2016 Letter). Such an allegation does not fit the elements of reformation, and the Court therefore dismisses Homeland's claim for reformation.

### D. Negligent Misrepresentation Claim

Homeland's second claims alleges negligent misrepresentation in the 2016 Letter and seeks damages for attorney's fees in bringing this action and damages for the amount of the Ms. S claim if Homeland is eventually required to pay for the claim. (Am. Compl., Dkt. 21, at 41). Defendants

argue that Homeland's negligent misrepresentation claim fails because these monetary damages are not recoverable under Texas law. (Mot. Dismiss, Dkt. 24, at 24).

Defendants first argue that Homeland cannot recover attorney's fees because the only monetary damages available for negligent misrepresentation are pecuniary losses in the amount of the "damages suffered in reliance upon [the] misrepresentation." *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 443 (Tex. 1991). Attorney's fees, which "may not be recovered from an opposing party unless they are authorized by statute or by contract," are not considered pecuniary losses. *Nwankpa v. Obilom*, No. 03-16-00239-CV, 2017 WL 3902605, at *4 (Tex. App.—Austin Aug. 24, 2017, no pet.); *C.P. Interests v. California Pools*, 238 F.3d 690, 695–96 (5th Cir. 2001) ("[W]e do not believe that attorney's fees are properly assigned to the category of pecuniary losses.").

Homeland argues that some of the attorney's fees it seeks are instead "out-of-pocket expenses it incurred for investigating the Ms. S claim" before bringing this lawsuit. (Resp., Dkt. 25, at 21). Homeland argues that these "non-litigation attorneys' fees" are out-of-pocket expenses that constitute recoverable pecuniary loss. (Resp., Dkt. 25, at 22) (citing *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012). However, in its complaint, Homeland only pleads that it seeks damages for its "injury in the form of attorneys' fees," which are not permitted under a negligent misrepresentation claim. (Am. Compl., Dkt. 21, at ¶ 160); *C.P. Interests*, 238 F.3d at 695–96. To the extent that Homeland seeks a different type of damages, this is not reflected in its complaint.

Homeland also argues that it can recover attorney's fees incurred against one defendant from the other defendants. (Resp., Dkt. 25, at 22) (citing *Great American Ins. Co. v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800, 807 (5th Cir. 2010); *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 839 (Tex. App.—Eastland 1984, no writ). However, Homeland relies on cases where a misrepresentation foreseeably caused a party to incur attorney's fees in a different lawsuit. *See Baja Energy*, 669 S.W.2d

13

at 839 (party was forced to defend itself in a third party lawsuit and thus entitled to the recovery of its attorney's fees as consequential damages); *Great American Ins. Co.*, 612 F.3d at 808 (denying recovery of attorney's fees where defendant's costs were the "direct result of [defendant's] voluntary choice to file [a third party] lawsuit instead of pursuing litigation directly against [plaintiff] for its breach of contract."). Homeland's argument is inapplicable where it has only filed one lawsuit, which is against all the parties that it seeks to potentially collect damages from. As a result, the Court dismisses Homeland's negligent representation claim insofar as it seeks attorney's fees.

However, Homeland's claim for negligent misrepresentation also seeks damages in the amount of the Ms. S claim in the event it is covered under the 2017 Policy, alleging any coverage will be "on account of the negligent misrepresentations made to [Homeland]." (Am. Compl., Dkt. 21, at 41). Defendants argue that the money an insurance policy may owe to an insured sometime in the future does not constitute damages because it is too speculative. (Mot. Dismiss, Dkt. 24, at 24 n.16) (citing *Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("There can be no recovery for damages that are speculative or conjectural")). Homeland argues that the insurance benefits it may ultimately be required to pay to CPL for the Ms. S claim are not speculative because CPL has pleaded a specific amount due in its counterclaim. (Resp., Dkt. 25, at 23) (citing *A.B.F. Freight Systems, Inc. v. Austrian Import Service, Inc.*, 798 S.W.2d 606, 615 (Tex. App—Dallas 1990, writ denied)) (explaining damages are not speculative if they "are ascertainable by reference to some fairly definite standard"); (*see* Counterclaim, Dkt. 18, at 33) ("Homeland's breach [of contract] has caused CPL substantial damages no less than $2,401,183.62."). The Court finds that, because the amount of the Ms. S claim is ascertainable, so too are the damages from the alleged negligent misrepresentation that induced Homeland into agreeing to provide such coverage. *See A.B.F. Freight Sys., Inc.*, 798 S.W.2d at 615.

14

Defendants also argue that Homeland has not met the notice requirement in Texas Insurance Code Section 705.055 for when an insurer intends to raise misrepresentation as a defense against a policyholder's claims. (Mot. Dismiss, Dkt. 24, at 25). However, the Texas Court of Appeals previously addressed this issue in *Fulgham v. Allied Prop. & Cas. Ins. Co.*, No. 05-14-00189-CV, 2015 WL 3413525 (Tex. App.—Dallas 2015, no pet.). There, the court held that the requirements in Section 705.055 did not apply where an insurance company did not seek to use the misrepresentation as a defense, but "sought and obtained relief on the grounds of its own affirmative claims of common-law fraud and unjust enrichment." (*Id.* at *4). Similarly here, Homeland brings its own affirmative claim for negligent representation and thus is not bound by the requirements in Section 705.055. As a result, the Court will not dismiss Homeland's negligent misrepresentation claim insofar as it seeks damages based on the cost of the Ms. S claim.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 24), is **GRANTED IN PART and DENIED IN PART**. Homeland's claims against MedLab, Sonic Ireland, and Sonic are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Homeland's second claim for negligent misrepresentation is **DISMISSED WITH PREJUDICE** only insofar as it seeks attorney's fees. Homeland's third claim for breach of warranty and fourth claim for reformation are **DISMISSED WITHOUT PREJUDICE**. Defendants' motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the parties consult the website for the United States District Court for the Western District of Texas (www.txwd.uscourts.gov), the "Judges' Info" tab, "Standing Orders," "Austin Division," and submit a joint proposed scheduling order using District Judge Robert Pitman's form on or before May 10, 2021.

**SIGNED** on April 26, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE