IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. AND SONIC HEALTHCARE USA, INC.,<br><br>　　　　Defendants. | CIVIL ACTION NO.: 1-20-cv-783 |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION TO RECONSIDER</u>**

　　　　The Court has broad discretion over motions to reconsider and there is no better use of that discretion than dismissing a claim that is incompatible with this Court's recent order, Texas Supreme Court precedent, and a controlling statute.  To be sure, Homeland has concocted a novel claim:  a negligent misrepresentation claim based upon a statement made during contract negotiations, where Homeland seeks damages it has <u>not yet incurred</u>, in the amount of what it <u>might</u> have to pay, <u>under a contract</u>.  Homeland has not pointed to a single case where such a claim was asserted, let alone validated, and that is because such a claim is incompatible with Texas' economic loss rule and Texas Insurance Code § 705.005.  Dismissing Homeland's invalid claim is an efficient use of the Court's resources, as it will further streamline this case and fast-track it toward its ultimate resolution.[1]

---

[1] Homeland suggests CPL's motion is procedurally improper (Dkt. 45 at 2–4), but courts in this district regularly reconsider orders that are incompatible with settled law and orders where reconsideration is justified by the "evolution of the case."  *See, e.g.*, *Aubrey v. Barlin*, No. 10-cv-076, 2016 WL 2642242, at *2 (W.D. Tex. May 5, 2016) (reconsidering order that was incompatible with Rule 11); *Radiology v. AETNA*, No. 03-cv-1152, 2005 WL 8156343, at *3 (W.D. Tex. Mar. 29, 2005) (reconsidering order that was incompatible with ERISA); Pls. Opp. to Defs.' Mot. to Reconsider at 7 (Dkt. 45) (citing *Halprin v. Fed. Deposit*, No. 13-cv-1042-RP, 2017 WL 9808438, at *2 (W.D. Tex. Oct. 17, 2017) for the proposition that the "evolution [of] the case" may justify reconsideration).  Here, the Court limited Homeland's damages to the amount it may owe under the contract, but in doing so revealed that Homeland's claim fails under the economic loss rule.  *See* Defs.' Cross-Motion to Reconsider at 1–3 (Dkt. 36).

I.   **The Economic Loss Rule Bars Homeland's Negligent Misrepresentation Claim, Which Arises Out of—and Would Not Exist Without—a Contract.**

In a case of dramatic oversimplification, Homeland says the economic loss rule applies only when the claimant seeks breach of contract damages. That is not the rule. More recent case law provides that the economic loss rule "precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." *Wealthmark v. Phoenix Life*, 804 F. App'x 229, 232 (5th Cir. 2020). Indeed, "[t]he issue is whether the damage is to the subject matter of the contract, not whether it is the type of damage available pursuant to a breach of contract action." *Miller v. Ret. Sys.*, No. 09-cv-834, 2011 WL 13340637, at *8 (S.D. Tex. Jan. 31, 2011); *Spring St. v. Philadelphia Indem.*, No. 16-cv-00315-RP, 2017 WL 5244285, at *3 (W.D. Tex. Apr. 5, 2017) (rejecting insurer's argument that "because the contract does not set forth an economic remedy for a policyholder's material misrepresentation, the economic loss doctrine does not apply"). Here, Homeland describes its so-called tort damages as what it might have "<u>a contractual duty to pay</u>," and thus the economic loss rule precludes its claim. (Dkt. 45 at 12) (emphasis added).

To be clear, Homeland would not be left without a potential remedy if the Court were to dismiss its negligent misrepresentation claim; in fact, the parties bargained for what would happen in the case of an alleged misrepresentation made during the application process. The policy provides that "[i]n the event of any . . . misrepresentation . . . this Policy shall be void." (Dkt. 18-1 at 36). This fact further supports the proposition that the economic loss rule bars Homeland's claim because one of the "principal rationales" for the economic loss rule is the recognition that "the risks of economic harms are better suited to allocation by contract because . . . the parties usually have a full opportunity to consider their positions and manage risks ahead of time." *Golden v. Emerson*, 954 F.3d 804, 808 (5th Cir. 2020). That is exactly what happened here: the parties bargained for what would occur in the case of a misrepresentation—Homeland could void the

2

policy and avoid paying anything. They did *not* bargain for Homeland to bring a tort claim seeking what it may owe under the policy.

Homeland tries to argue around its bargain and the economic loss rule by casting its damages as "reliance damages," but Homeland overlooks that its damages *rely on the contract*. (Dkt. 45 at 12). Without the contract, Homeland would pay nothing, would have no damages, and its claim would evaporate; thus, the economic loss rule applies.[2]

Homeland also stresses that CPL had a common law duty not to misrepresent anything during contract negotiations. That misses the point. For years the Fifth Circuit has dismissed tort claims that hinge on an alleged misrepresentation made during contract negotiations because any remedy in such a case sounds in contract alone. *See, e.g.*, *New Century v. Olympic Credit*, 487 F. App'x 912, 914–16 (5th Cir. 2012) (dismissing tort claim for negligent misrepresentations that allegedly induced plaintiff to enter into an agreement).[3] Those holdings are consistent with the Texas Supreme Court's pronouncement that "there is no liability in tort for economic loss caused by negligence in the . . . negotiation of a contract between the parties." *LAN/STV v. Martin K. Eby*, 435 S.W.3d 234, 243 (Tex. 2014) (emphasis added).

Dead on the law, Homeland tosses around the term "flip-flop," suggesting there is something inconsistent about CPL arguing that the 2016 Letter is not a part of the 2017 Policy (it is not) while also arguing that Homeland's negligent misrepresentation claim is precluded by the economic loss rule (it is). There is nothing inconsistent about those arguments because whether or not the 2016 Letter is a part of the 2017 Policy, Homeland's negligent misrepresentation claim hinges on a contract—indeed, Homeland quite literally seeks as its damages what it might have "a

---

[2] It is worth noting that Homeland has no "damages," and therefore no "reliance damages," as it has not paid CPL anything and in fact argues that it should never have to pay CPL anything for a variety of reasons. *See* Defs.' Cross-Motion to Reconsider at 10, n.3 (Dkt. 36).

[3] *See also Ibe v. Jones*, 836 F.3d 516, 521–26 (5th Cir. 2016) (dismissing negligent misrepresentation claims brought by purchasers of tickets who alleged misrepresentations made by the NFL and others caused them to buy the tickets).

contractual duty to pay." (Dkt. 45 at 12). Thus, notwithstanding the incorporation issue, Homeland's negligent misrepresentation claim is precluded by the economic loss rule.

Looking beyond Homeland's superficial flip-flop argument, its real gripe seems to be that, without its negligent misrepresentation claim, it will have no way of pursuing its misrepresentation theory. Not so. As Defendants have long said, and as the 2017 Policy and § 705.005 expressly provide, Homeland may use the alleged misrepresentation as a defense. That is what Homeland has, as Texas' economic loss rule is incompatible with a negligent misrepresentation claim for what a party may have "a contractual duty to pay." (Dkt. 45 at 12).

## II.     There is No Basis for an Affirmative Claim Loophole in Texas Ins. Code § 705.005.

To avoid the application § 705.005—a moot issue if the Court dismisses Homeland's misrepresentation claim pursuant to the economic loss rule—Homeland asserts the statute applies only when an insurer raises a misrepresentation "to avoid coverage" or as a "defense." (Dkt. 45 at 12). Herein lies the loophole: according to Homeland, if an insurer denies a claim or seeks to void the policy then the statute applies, but if an insurer pays a claim and then seeks damages for what it paid, the statute does not apply. In other words, by merely adding a step—paying money and then seeking it back—Homeland, and every other insurer who issues policies in Texas, can evade § 705.005 even though both scenarios end up at the same place: with the insurer avoiding its coverage obligations. That cannot be and is not the law because with both scenarios the insurer is using the misrepresentation *as a defense*, *i.e.*, as a mechanism to pay nothing.[4]

The delusion of Homeland's argument is only underscored by its moving of the goal posts on this issue. Homeland first argued the statute applied only to pure defenses and not to affirmative claims. (Dkt. 25 at 23). Met with a wave of case law to the contrary, Homeland now argues that

---

[4] Homeland suggests it is not required to plead compliance with the statute. Not so. *See Myers v. Mega Life*, No. 07-06-0233-cv, 2008 WL 1758640, at *3 (Tex. App.—Amarillo Apr. 17, 2008, pet. denied) (providing "[s]tatutory notice is an essential element of a defense based on misrepresentation [that the insurer has] the burden of pleading").

4

the statute only applies to *certain types* of affirmative claims. (Dkt. 45). The case law makes no such distinction. *See* Defs.' Mot. to Recon. at 6–7 (Dkt. 36) (listing Texas appellate cases).

So, Homeland turns back to *Fulgham v. Allied Property*. But *Fulgham* involved a jury award of damages in the amount the insurer paid upon fraudulent invoices submitted during the claims process. No. 14-cv-189, 2015 WL 3413525, at *1–4. Unlike *Fulgham*, Homeland has paid nothing, and asserts that it should never have to pay, because of an alleged misrepresentation made during the application process. In other words, the situation here is the exact situation for which the Texas legislature designed Texas Insurance Code § 705.005.[5]

Homeland then suggests that its non-compliance with § 705.005 was nevertheless in accord with the purpose of the statute. That cannot be, as the statute requires an insurer to notify its insured—within 90 days of discovering a misrepresentation—of its intent to disclaim coverage. And here, Homeland waited until July 2020 to disclaim coverage based upon an alleged misrepresentation made in July 2016 and information that it held in March 2018. By doing so Homeland contravened the purpose of the statute by (a) collecting premiums for coverage it knew it was not going to provide under the 2017 Policy, (b) preventing CPL from being able to purchase adequate replacement coverage, and (c) causing CPL to defend and settle the ICC Claims without fully understanding whether and to what extent those claims were insured.

Texas Insurance Code § 705.005 was designed for this situation—where an insurer seeks to avoid coverage based on an alleged misrepresentation. There should be no loophole for artful pleading, and for that reason Defendants respectfully submit the Court should grant this motion.

---

[5] Homeland notes that *Fulgham* also involved allegations of fraud in the application process, but the jury in *Fulgham* reached its verdict and awarded damages because of fraud in the claims process. 2015 WL 3413525, at *2. *Fulgham* did not involve a situation like this one where an insurer sought to pay nothing because of an alleged misrepresentation in the application process. It is for this situation that § 705.005 was designed.

Dated:  June 30, 2021

          Respectfully submitted,

By: /s/ Ernest Martin, Jr.
    Ernest Martin, Jr. [Bar No. 13063300]
    Greg Van Houten*
    HAYNES AND BOONE, LLP
    2323 Victory Avenue, Suite 700
    Dallas, TX 75219
    214-651-5651 Direct
    ernest.martin@haynesboone.com
    greg.vanhouten@haynesboone.com
    **Admitted Pro Hac Vice*

-and-

Mark T. Beaman [Bar No. 01955700]
Ryan Bueche [Bar. No. 24064970]
GERMER BEAMAN & BROWN PLLC
One Barton Skyway
1501 S Mopac Expy Suite A400
Austin, TX 78746
512-482-3504 Direct
mbeaman@germer-austin.com
rbueche@germer-austin.com

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

    I certify that, consistent with Local Court Rule CV-5, a true and correct copy of the foregoing was sent to all parties of record pursuant to the Electronic Filing Procedures and the Federal Rules of Civil Procedure on this 30th day of June 2021.

                                                  /s/  Ernest Martin, Jr.
                                                      Ernest Martin, Jr.