IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>      Plaintiff,<br><br>  v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>      Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

**HOMELAND INSURANCE COMPANY OF NEW YORK'S REPLY IN SUPPORT OF ITS PARTIALLY OPPOSED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

-i-

## I. INTRODUCTION

Defendants face a high burden in opposing leave to amend. To prove futility, they would need factually on-point authority demonstrating that an insured can falsely warrant that it is unaware of pending claims, put the false warranty into a letter signed by its President, agree in writing that the warranty will be "deemed to be part of the policy" – but then treat that warranty like it never happened. Unsurprisingly, Defendants don't cite any such authority.

Homeland's motion for leave should be granted so that the trier of fact can assess where responsibility should lie. Perhaps Defendants' legal gymnastics will persuade a jury to absolve them of responsibility and afford them coverage despite the false assurances they gave Homeland. But "perhaps" isn't good enough at this stage. A trier of fact could readily find Defendants' warranties were intended to and in fact did apply to *any* CervicalCheck claim brought in Ireland – regardless of whether Defendants reported that claim under the 2016 Policy or delayed reporting it until the 2017 Policy. Further, even assuming some scrivener's error in expressing this intent, Homeland has stated a viable claim to reform the contract so that the warranties are enforced as the parties intended.

## II. THE COURT SHOULD GRANT HOMELAND LEAVE TO AMEND

### A. The Court Must Resolve All Disputes In Homeland's Favor

On this motion, all presumptions are in favor of allowing amendment. The Court must view the proposed amendment "in the light most favorable to [Homeland] and with every doubt resolved in [Homeland's] behalf." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). Consistent with that, courts "should not deprive [a party] of the opportunity to test the viability of its theory of [relief] . . . when it is not clear to the Court that [the party] would be unable to prevail on its theory." *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 360 F. Supp. 3d 541, 554 (E.D. Tex. 2018).

### B. Defendants Cite No Authority Fatal to Homeland's Claims

Defendants begin their response by asserting the same flawed arguments from their response to Homeland's concurrently filed motion for reconsideration. In the interests of judicial economy, Homeland incorporates by reference its reply in support of that motion.

More broadly, Defendants cite no case law remotely addressing facts like those alleged here. Indeed, an essential part of their argument – their contentions about the effect of the rate stabilization endorsement in preserving policy terms when a policy is renewed – isn't supported by any citation to authority at all. And where Defendants do cite authority, they rely on snippets of language taken out of context. They do not cite any case involving allegations remotely like those Homeland has made, much less a case holding that such allegations do not even suffice to state a claim.

In short, Homeland's claims raise a novel set of facts. No authority exists establishing that Homeland cannot succeed on these facts. Even assuming the Court believes Homeland's path to success is a narrow or difficult one, it is premature to say that no path exists. That determination should be left for a later time, on a full factual record.

### C. Homeland Has Stated Viable Claims for Breach of Warranty

More specifically, there are multiple plausible paths to success that cannot be ruled out at the pleading stage. *First*, regardless of whether the warranty is technically "incorporated" into the 2016 or 2017 policy, a reasonable jury could nevertheless enforce the warranty because Defendants in fact gave it. Defendants have not cited any authority holding that a warranty must be incorporated into the policy to be enforceable.

*Second*, assuming incorporation is essential, a reasonable jury could find that the parties intended to and did incorporate the Warranty Letter into both the 2016 and 2017 Policies. Indeed, as to the 2016 Policy at least, the evidence will be incontrovertible. On April 11, 2016,

Sheridan Foster signed the application for insurance on behalf of all individuals and entities proposed for coverage. (Brooks Decl., ¶ 2 and Ex. A thereto.) The application contained the following provisions establishing that both the application and "information submitted with this Application" are deemed to be "physically attached to, part of, and incorporated into the policy":

> [T]he statements in this Application and any attachments *or information submitted with this Application* (together referred to as the "Application") are true and complete. . . . We will maintain the information contained in and submitted with this Application on file and along with the Application *will be considered physically attached to, part of, and incorporated into the policy*, if issued.

*Id.* (emphasis added). Defendants concede that the Warranty Letter "was requested and executed in conjunction with the application process"—i.e., information submitted with the Application. (Mot. to Dismiss, Dkt. 24, at 3). Homeland has plausibly alleged the Warranty Letter was incorporated into the 2016 Policy, and the language of the application itself will confirm this. If the Court deems it necessary, Homeland can attach the foregoing application to the Second Amended Complaint ("SAC").

*Third*, Homeland has adequately alleged that the warranty was intended to be and was incorporated not just into the 2016 policy year, but to all subsequent policy years that renewed the same expanded coverage. The letter states that it is deemed to be part of "the policy." Nothing in that statement expresses an intent to limit the warranty to claims made under the Policy's 2016-2017 time period, as opposed to remaining in "the policy" for as long as the expanded coverage lasted.

The SAC alleges facts sufficient to support the latter interpretation, including that Homeland would not have issued the expanded coverage in the first place if not for the

-3-

warranties, that the parties' intent was manifested in the "negotiation process,"[1] and that Homeland continued to rely on those warranties in renewing the policy with the expanded coverage. (*See, e.g.*, Proposed SAC, ¶¶ 3, 54, 153–160 & 205-212.) This is sufficient to state a plausible claim that the parties intended the warranty to be part of the policy for as long as the expanded coverage that was offered in reliance on the warranty. Any other interpretation would be strange indeed, since the whole point of the warranty was that Homeland wouldn't take on the expanded coverage risk at all – for any policy period – absent Defendants' assurance that after diligent inquiry it had no reason to expect claims. In any event, the question of the parties' intent – to limit the warranty to the 2016 policy year, or to enforce it as long as "the policy" continued to be renewed with the expanded coverage – is a jury question that cannot be resolved on the pleadings.

*Fourth*, the SAC also alleges an independent ground to find that the warranty was carried forward into the 2017 Policies: the rate stabilization endorsement. That endorsement states that the policy will be renewed "upon the same terms [and] conditions" at the same rate. The SAC provides the missing factual allegation – namely, that the 2017 Policy was a renewal of the 2016 Policy – that the Court previously found to be essential to this argument. (*See* SAC ¶ 60.) To be sure, Defendants disagree that the rate stabilization endorsement operates to carry over terms and conditions from the 2016 Policy, but that's what the endorsement says and they cite no law to the contrary. Any dispute about how this should be applied to the facts of this case must be construed in Homeland's favor at the pleading stage.

---

[1] Homeland's evidence will include correspondence between the parties and policy "binder" documents establishing that Defendants understood that Homeland required a warranty as a condition to the effectiveness of the expanded coverage.

*Finally*, even assuming scrivener's error or other technical defect in memorializing the parties' intent, Homeland has adequately pleaded a claim to reform the policy to effectuate the parties' intent. (*See*, *infra*, Section D.)

### D. The SAC Also Sufficiently States a Reformation Claim

Defendants fail to show that Homeland's reformation claim is futile.

*First*, Defendants argue that the 2017 Policies cannot be reformed based on a mistake in the prior 2016 Policies. But the premise of the SAC is that all parties intended the warranties to survive for as long as Homeland renewed the expanded coverage issued in reliance on the warranties. If there was some mistake in properly expressing that intent, both policy years can be reformed to express that intent.

*Second*, Defendants contend that Homeland's failure to properly incorporate the Warranty Letter was a "unilateral" mistake on Homeland's part, and they invoke case law dealing with "adhesive" contracts. How Defendants can make this argument with a straight face is unclear. This was not a case where Homeland offered Defendants a "take it or leave it" insurance policy. Quite the opposite. Defendants were directly involved in negotiating with Homeland on the terms of the amended policy with expanded coverage. Indeed, the Warranty Letter is on <u>CPL's letterhead</u> and explicitly states that the expanded coverage was based on Defendants' warranties that they made as part of those negotiations.

For that reason, Defendants' cited cases are inapposite. None of them involved an insured unequivocally agreeing that the conditions and statements in a letter would "be deemed to be a part of the policy." Instead, they involved patently different circumstances where insurers tried to restrict coverage or otherwise alter the terms of the policy without a prior agreement between the parties at issue (e.g., retroactive premium adjustments (*Webb*), oral statements after an agreement was already reduced to writing (*Comiskey*), incorporation of an

independent management agreement between two insureds (*North American Capacity*), etc.) or did not even involve a claim for reformation (e.g., *Brookshire*).

What Defendants are essentially asking the Court to do is, at the pleading stage, excuse them from their explicit agreement that the Warranty Letter would be deemed part of the subject policies just because (according to them) Homeland forgot to attach the Letter to the policies. But under Texas law, "[a]ll endorsements agreed to by the contracting parties should be attached to insurance policies, *but failure to attach them does not invalidate them*." *Fid. Union Life Ins. Co. v. Methven*, 162 Tex. 323, 328 (1961) (emphasis added). And in any event, whether there was a mistake in reducing the Parties' agreement to writing and the impact of the same are factual issues that must be resolved in Homeland's favor when assessing the sufficiency of its proposed SAC.

*Finally*, Defendants argue semantics by claiming that just because the Warranty Letter refers to "the" policy, it could only possibly reform the 2016 Policies and not the subsequent 2017 Policies. Not only is this argument contradicted by the allegations in the SAC, it is yet another factual-based, merits argument about what the parties intended with the language in the Warranty Letter, which must be resolved in Homeland's favor when deciding its motion for leave to amend.

## III. CONCLUSION

In sum, for the reasons above and in Homeland's moving papers, Homeland respectfully requests that the Court grant Homeland leave to file its proposed second amended complaint.

Respectfully submitted this 30th day of June, 2021.

By:     */s/ John T. Brooks*

    John T. Brooks (CA Bar #167793)
    Jenna A. Fasone (CA Bar #308886)
    Jared K. LeBeau (CA Bar #292742)
    SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
    501 West Broadway, 19th Floor
    San Diego, CA 92101
    Telephone: (619) 338-6500
    Fax: (619) 234-3815
    jbrooks@sheppardmullin.com
    jfasone@sheppardmullin.com
    jlebeau@sheppardmullin.com
    *Admitted Pro Hac Vice*

    Joseph R. Little (#784483)
    The Little Law Firm
    440 Louisiana Street, Suite 900
    Houston, Texas 77002
    Telephone: (713) 222-1368
    Fax: (281) 200-0115
    jrl@littlelawtexas.com

    *Attorneys for Plaintiff Homeland Insurance Company of New York*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon counsel of record for all parties who have made an appearance in this case at the addresses indicated by CM/ECF electronic notification on this 30th day of June 2021. I declare under penalty of perjury that the foregoing is true and correct.

*/s/ John T. Brooks*