

onebeaconpro.com

| | |
|---|---|
| RE: Medical Facilities Liability - Primary<br>Sonic Healthcare | **Policy** |
| Account No: 34379          Policy No: MFL-1778-13 | |

199 Scott Swamp Road
Farmington, CT 06032

860.321.2888 t
860.321.2889 f

CONFIDENTIAL

## TEXAS COMPLAINT NOTICE

### IMPORTANT NOTICE

To obtain information or make a complaint:

1.  You may call **877.701.0171** toll-free telephone number for information or to make a complaint at:

    **OneBeacon Professional Insurance**
    **199 Scott Swamp Road**
    **Farmington, CT 06032**
    **Facsimile:   888.777.3719**

2.  You may call the Texas Department of Insurance at:

    **1.800.252.3439**

3.  You may write the Texas Department of Insurance at:

    **Texas Department of Insurance**
    **P.O. Box 149104**
    **Austin, TX 78714-9104**
    **800-252-3439 (512-463-6515)**
    **FAX # (512) 475-1771**
    **Web: http://www.tdi.state.tx.us**
    **E-mail: ConsumerProtection@tdi.state.tx.us**

### PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first.   If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

CONFIDENTIAL                                                          DEF-CPL_0000062387

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

1. Usted puede llamar **877.701.0171** al numero de telefono gratis someter una queja a:

   **OneBeacon Professional Insurance**
   **199 Scott Swamp Road**
   **Farmington, CT 06032**
   **Facsimile:   888.777.3719**

2. Usted puede comunicarse con el Departamento de Seguros de Texas para obtener informacion sobre companies, cubierto de seguros, derechos, o quejas al el numero:

   **1.800.252.3439**

3. Puede escribir al Departamento de Seguros de Texas a:

   **Texas Department of Insurance**
   **P.O. Box 149104**
   **Austin, TX 78714-9104**
   **800-252-3439 (512-463-6515)**
   **Facsimile: 512.475.1771**
   **Web: http://www.tdi.state.tx.us**
   **E-mail: ConsumerProtection@tdi.state.tx.us**

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero.  Si no se resuelve la disputa, puede enetonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZIA:**

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

CONFIDENTIAL                                                                        DEF-CPL_0000062388

## **OneBeacon Professional Insurance Medical Professional and General Liability Claim Reporting Guidelines**

Following are examples of the types of events that should be reported in accordance with the general conditions regarding Reporting of Claims, Occurrences and Circumstances under your One Beacon policy:

- Medication errors resulting in injury and/or requiring further treatment (including patient not receiving medication; receiving incorrect dosage of medication; or receiving wrong medication)
- Falls resulting in injury
- Family/Patient complaints of inadequate care resulting in injury
- Events reported to the state Dept of Health, other regulatory body or police
- Visitor injuries
- Unexpected death
- Serious injury (including, but not limited to, paraplegia; quadriplegia; or severe neurological impairment)
- Elopement
- Allegations of physical or sexual abuse
- Sentinel events
- Oral or written demands for damages
- Lawsuits
- Communication from an attorney regarding any of the events noted above
- Request from an attorney for medical records
- Any other event the Insured reasonably believes could result in a Claim under the policy

***The above list of events is not meant to be exhaustive or exclusive. Nothing contained in or omitted from this document should be deemed a waiver of any terms or conditions of any applicable policy. These guidelines are provided for general informational purposes only and should not be considered or relied upon as coverage, legal or risk-management advice. Readers should consult the specific terms of their policy and their own legal counsel for advice.***

***Please report all claims and reportable events to:***

Chief Claims Officer
OneBeacon Professional Insurance
199 Scott Swamp Road
Farmington, CT 06032
877.256.5067 (fax)
obpiclaims@onebeaconpro.com

**Homeland Insurance Company of New York**
One Beacon Lane
Canton, MA 02021
*(hereinafter referred to as the "Underwriter")*



**Policy Number:** MFL-1778-13

## DECLARATIONS

### MEDICAL FACILITIES AND PROVIDERS
### PROFESSIONAL LIABILITY, GENERAL LIABILITY AND EMPLOYEE
### BENEFIT LIABILITY POLICY

**THE COVERAGE AFFORDED BY THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED BY OTHER POLICIES. *PLEASE READ THIS POLICY CAREFULLY.***

| | |
|---|---|
| ITEM 1.   **FIRST NAMED INSURED**<br>Name and Principal Address:<br><br>Sonic Healthcare<br>9737 Great Hills Trail Suite 100<br>Austin, TX 78759-6449 | ITEM 2.   **POLICY PERIOD:**<br><br>(a) Inception Date: June 30, 2013<br>(b) Expiration Date: June 30, 2014<br><br>Both dates at 12:01 a.m. at the<br>Principal Address in ITEM 1. |

**ITEM 3.**   **COVERAGE/TYPE/RETROACTIVE DATE(S)**

| Coverage | Type | Retroactive Date |
|---|---|---|
| A.  Healthcare Professional Liability | Claims-Made | February 5, 2007 |
| B.  General Liability | Occurrence | N/A |
| C.  Employee Benefit Liability | Claims Made | N/A |
| D.  Evacuation Expense | Claims Made | May 30, 2013 |
| E.  Legal/Media Expense | Claims Made | May 30, 2013 |

**ITEM 4.**   **LIMIT(S) OF LIABILITY; DEDUCTIBLE/SELF-INSURED RETENTION**

A.   Healthcare Professional Liability
      Each Claim……………………………………………………$1,000,000
      Aggregate for all Claims…………………………………………$3,000,000
      Deductible X   Self-Insured Retention
            Per Claim………………………………………………$150,000
            Aggregate………………………………………………N/A

B.   General Liability
      Each Claim…………………………………………………… N/A
      Fire Damage……………………………………………………N/A
      Aggregate for all Claims…………………………………………… N/A
      Deductible __   Self-Insured Retention
            Per Claim………………………………………………N/A
            Aggregate………………………………………………N/A

HPD-30001-10-08

C.  Employee Benefit Liability
    Each Claim………………………………………………… N/A
    Aggregate for all Claims…………………………………………N/A
    Deductible __   Self-Insured Retention
        Per Claim……………………………………………………N/A
        Aggregate………………………………………………………N/A

D.  Evacuation Expense
    Each Evacuation…………………………………………………$25,000
    Aggregate for all Evacuations…..……………………………….$25,000

E.  Legal/Media Expense
    Each Legal Event………………………………..……………..$100,000
    Aggregate for all Legal Events..………………….……………...$100,000

| ITEM 5. | **COVERED OPERATIONS/SERVICES:** |
| --- | --- |
| | Healthcare Labs |

| ITEM 6. | **PREMIUM:** ▮▮▮▮▮▮ |
| --- | --- |

__ ***Gross Premium:*** **The Underwriter will pay a percentage of the Premium shown above as brokerage commission.  The Underwriter does not pay contingent or deferred commissions. Consult your broker for information concerning commission.**

**X** ***Net Premium:*** **The Premium shown above is net, and the Underwriter will pay no brokerage commission of any kind thereon.**

__ This Policy provides coverage for acts of terrorism as defined in the Terrorism Risk Insurance Act of 2002 (the "Act").  The premium attributable to this coverage is $0.00.

 X  This Policy specifically excludes coverage for acts of terrorism as defined in the Act.

| ITEM 7. | **EXTENDED REPORTING PERIOD OPTION(S):** |
| --- | --- |
| | 36 months at 150% of Full Annual Premium |

**"Full Annual Premium"** means the amount set forth in ITEM 6 above including any premium adjustments made during the Policy Period.

| ITEM 8. | **ALL NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER GENERAL CONDITION (C) OF THE POLICY MUST BE ADDRESSED TO:** |
| --- | --- |
| | Chief Claims Officer<br>OneBeacon Professional Insurance<br>199 Scott Swamp Road<br>Farmington, CT  06032 |

HPD-30001-10-08

CONFIDENTIAL

**ALL OTHER NOTICES REQUIRED TO BE GIVEN TO THE UNDERWRITER UNDER THIS POLICY MUST BE ADDRESSED TO:**

OneBeacon Professional Insurance
199 Scott Swamp Road
Farmington, CT  06032

| ITEM 9. | **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:** |
|---|---|
| | HPF 30001 10 08 |

| |
|---|
| HPE-00018-07-08 Terrorism Exclusion Endorsement |
| HPE-00061-02-11 Sexual Misconduct Coverage Endorsement |
| HPE-00013-07-08 Service of Suit Endorsement |
| HPE-00023-04-09 Amend Exclusion (D)(1) Endorsement |
| HPE-30026-10-08 Minimum Earned Premium Endorsement |
| HPE-00071-10-12 Recording and Distribution of Material or Information in Violation of Law Exclusion |
| HPE-30017A-02-10 Schedule of Insured Physicians and Locum Tenens Endorsement |
| HPE-30017-10-08 Schedule of Insured Physicians - Shared Limits - (DOL) |
| HPE-00062-04-11 Additional Named Insured - Related to Original Named Insured Endorsement |
| HPE-30103-01-13 Delete General Liability and Employee Benefit Liability Coverages with Product Exclusion Endorsement |
| HPE-30028-01-09 Deductible-Self-Insured Retention - Indemnity Only Endorsement |
| HPE-00064-07-11 Notice of Cancellation to Scheduled Party Endorsement |
| HPE-30060-02-10 Peer Review Coverage Endorsement |
| HPE-00038-08-09 Fronted Deductible Endorsement |

These Declarations, the completed signed Application, and the Policy (together with any and all endorsements thereto) shall constitute the entire agreement between the Underwriter and the Insured(s).

**Homeland Insurance Company of New York**
By:

*T. M. huill*

_____     September 13, 2013
Its Authorized Representative                              Date:

HPD-30001-10-08

ENDORSEMENT NO.  1
TERRORISM EXCLUSION

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

Policy No.   MFL-1778-13
Issued to    Sonic Healthcare
Issued by    Homeland Insurance Company of New York

In consideration of the premium charged:

(1)     No coverage will be available under INSURING AGREEMENT (B) of this Policy for **Claims** for **Bodily Injury** or **Property Damage** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving **Terrorism**.

(2)     For the purposes of this endorsement, "**Terrorism**" means any act(s) of force or violence:

(a)     for political, religious or other ends;

(b)     directed or intended to cause the overthrow or influence the government de jure or de facto; or

(c)     directed or intended to put the public or any part thereof in fear,

committed by any person(s) acting alone, or in connection with or on behalf of any group or organization.

It is understood and agreed that, with respect to any **Claim** and any action, suit, or other proceeding brought by the **Insured** to enforce such **Claim**, the **Insured** shall bear the burden of proving that such **Claim** is NOT excluded by this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO.  2
SEXUAL MISCONDUCT COVERAGE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on June 30, 2013, forms part of

      Policy No.   MFL-1778-13
      Issued to    Sonic Healthcare
      Issued by    Homeland Insurance Company of New York

In consideration of the premium charged:

(1)    The Underwriter's maximum aggregate Limit of Liability for all **Sexual Misconduct Claims** (as defined below) shall be part of, and not in addition to, the Underwriter's maximum aggregate Limit of Liability for INSURING AGREEMENT (A) of this Policy, as set forth inn ITEM 4.A. of the Declarations.

(2)    For the purposes of this endorsement, Section II DEFINITIONS of this Policy shall be amended to include the following terms:

    (a)    "**Sexual Misconduct**" means any welcome or unwelcome conduct, physical acts, gestures or spoken or written words of a sexual nature, including without limitation sexual intimacy (even if consensual), sexual molestation, sexual assault, sexual battery, sexual abuse, sexual harassment, sexual exploitation or any sexual act.

    (b)    "**Sexual Misconduct Claim**" means any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Sexual Misconduct**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CONFIDENTIAL        DEF-CPL_0000062394

ENDORSEMENT NO.  3
SERVICE OF SUIT ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

Policy No.   MFL-1778-13
Issued to    Sonic Healthcare
Issued by    Homeland Insurance Company of New York

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Underwriter hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in such statute, or his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured**, or any beneficiary hereunder, arising out of this contract of insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CONFIDENTIAL                                                              DEF-CPL_0000062395

ENDORSEMENT NO. 4
AMEND EXCLUSION (D)(1) ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on June 30, 2013, forms part of

      Policy No.   MFL-1778-13
      Issued to     Sonic Healthcare
      Issued by    Homeland Insurance Company of New York

In consideration of the premium charged, Section III EXCLUSIONS (D)(1) of this Policy is amended to read in its entirety as follows:

    (1)    act, error, omission or **Wrongful Act** if, on or before the Inception Date set forth in ITEM 2 of the Declarations, the Risk Management Dept or Legal Dept or any Executive that is responsible for receiving or acting upon such information of the **Named Insured** knew or reasonably could have foreseen that such act, error, omission, or **Wrongful Act** might result in a **Claim**.

           If, however, this Policy is a renewal of one or more policies previously issued by the Underwriter to the **First Named Insured**, and the coverage provided by the Underwriter to the **First Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this EXCLUSION (D)(1) to the Inception Date will be deemed to refer instead to the inception date of the first policy under which the Underwriter began to provide the **First Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal;

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-00023-04-09               1

ENDORSEMENT NO. 5
RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION
OF LAW EXCLUSION

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

|  |  |
|---|---|
| Policy No. | MFL-1778-13 |
| Issued to | Sonic Healthcare |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, no coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Telephone Consumer Protection Act, the CAN-SPAM Act of 2003, the Fair Credit Reporting Act, the Fair and Accurate Credit Transaction Act, all as may be amended, or any other federal, state or local statutory or common law that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information, or any rules or regulations promulgated thereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CONFIDENTIAL                                                          DEF-CPL_0000062397

ENDORSEMENT NO.  6
MINIMUM EARNED PREMIUM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

Policy No.    MFL-1778-13
Issued to     Sonic Healthcare
Issued by     Homeland Insurance Company of New York

In consideration of the premium charged, it is understood and agreed that, for all purposes under this Policy, premium in an amount equal to ▮▮▮ of the full annual premium for this Policy, as set forth in ITEM 6 of the Declarations, will be deemed fully earned as of the Inception Date set forth in ITEM 2(a) of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-30026-10-08                              1

ENDORSEMENT NO.  7
SCHEDULE OF INSURED PHYSICIANS AND LOCUM TENENS ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

Policy No.   MFL-1778-13
Issued to    Sonic Healthcare
Issued by    Homeland Insurance Company of New York

In consideration of the premium charged:

(1)    Notwithstanding anything to the contrary contained in this Policy or any endorsement thereto, the term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the physician(s) scheduled below, but only while rendering **Professional Services** on behalf of, and within the scope and capacity of his or her duties for, the **Named Insured**.

SCHEDULE

| Name | Retro Date |
|---|---|
| **Sunrise Physicians**<br>Milind Mondkar, MD<br>01/01/2001 | 01/01/2001 |
| Aaron Feliz, MD | 10/24/2011 |
| Louys Thomas, MD | 6/30/2012 |
| Audrey Pierce, MD | 6/30/2012 |
| Anne Platt, MD | 6/30/2012 |
| Ivan Herzog, MD | 4/1/1987 |
| **Hawaii Physicians**<br>Coa, Ying, PhD, MD | 8/1/2008 |
| Chan, Owen T.M., MD | 6/1/2010 |
| De Alwis, Kanthi, MD (fka VonGuenthner, Kanthi) | 3/1/2003 |
| Furuya, Glenn H., MD | 8/1/1991 |
| Gingell, Dana C., MD | 7/1/2010 |
| Hill, Robert B., MD | 1/1/2003 |
| Killeen, Jeffrey L., MD | 7/1/1995 |
| Kim, Lisa MD | 9/1/2011 |
| Komura, Steven T., MD | 2/1/1996 |

HPE-30017A-02-10                              1

| | |
|---|---|
| Lin, Tai-Yuan D., PhD, MD | 7/1/2005 |
| Malik, Jeffrey, MD | 7/1/2010 |
| Omori, Alvin, MD | 3/1/2003 |
| Parveen, Zahida, MD | 8/1/2007 |
| Pitts, Charles M., MD | 7/1/1995 |
| Shek, Yo Ho, MD 01/01/2003 | 1/1/2003 |
| Shitamoto, Barry S., MD | 7/14/1983 |
| Smith, Stephen M., MD | 8/15/2004 |
| Thompson, Karen S., MD | 9/1/2000 |
| Wong, Deen L., MD | 6/27/1983 |
| Yafuso, Tomomi L., MD | 8/1/2010 |
| Kirit Petel, MD | 3/1/2013 |

(2)    The term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include any **Locum Tenens**, but only when such **Locum Tenens** is acting within the capacity and scope of his or her duties as such.  Coverage for any **Locum Tenens** shall only extend for up to sixty (60) days during the **Policy Period** per **Insured** physician for whom such **Locum Tenens** is serving as a substitute.

(3)    Section II DEFINITIONS of this Policy is amended to include the following term:

"**Locum Tenens**" means any physician who is temporarily serving as a substitute physician for an **Insured** physician scheduled in paragraph (1) above while such **Insured** physician is temporarily absent from professional practice.

(4)    No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Professional Services Wrongful Act** committed or allegedly committed by any **Insured** physician scheduled in paragraph (1) above:

(a)    prior to the Retroactive Date set forth opposite such **Insured** physician's name; or

(b)    on or after (i) the date such **Insured** physician ceased to be an employee of the **Named Insured** or (ii) the termination date of the contract or agreement under which such **Insured** physician was rendering **Professional Services** on behalf of the **Named Insured**.

CONFIDENTIAL                                                    DEF-CPL_0000062400

(5)  It is understood and agreed that the **Insured** physicians scheduled in paragraph (1) above and any **Locum Tenens** share in the applicable Limits of Liability set forth in ITEM 4 of the Declarations.


All other terms, conditions and limitations of this Policy shall remain unchanged.

CONFIDENTIAL                                                    DEF-CPL_0000062401

ENDORSEMENT NO.  8
SCHEDULE OF INSURED PHYSICIANS ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

Policy No.   MFL-1778-13
Issued to     Sonic Healthcare
Issued by    Homeland Insurance Company of New York

In consideration of the premium charged:

(1)    Notwithstanding anything to the contrary contained in this Policy or any endorsement
thereto, the term "**Insured**," as defined in Section II DEFINITIONS of this Policy, is
amended to include the physician(s) scheduled below, but only while rendering
**Professional Services** on behalf of, and within the scope and capacity of his or her duties
for, the **Named Insured**.

(2)    No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any
**Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of,
or in any way involving any actual or alleged **Professional Services Wrongful Act**
committed or allegedly committed by any **Insured** physician scheduled below:

(a)    prior to the Retroactive Date set forth opposite such **Insured** physician's name; or

(b)    on or after (i) the date such **Insured** physician ceased to be an employee of the
**Named Insured** or (ii) the termination date of the contract or agreement under
which such **Insured** physician was rendering **Professional Services** on behalf of
the **Named Insured**.

(3)    It is understood and agreed that the **Insured** physicians scheduled below share in the
applicable Limits of Liability set forth in ITEM 4 of the Declarations.

SCHEDULE

| Name | Retroactive Date |
| --- | --- |
| Ehrhardt, Dennis R. | 4-28-1992 |
| Yang, Hong Yi | 2-1-1996 |
| Tamura, Paul | 8-27-1996 |
| Ro, Min Sang | 2-1-1996 |
| Taga, Scott | 7-1-1997 |
| Okamura, James | 8-15-1996 |
| Blaisdell, Jodi | 8-10-1998 |
| Yolles, Milton | 12-27-1990 |

HPE-30017-10-08                          1

| | |
|---|---|
| Paik, Young | 11-29-1999 |
| Vernon, Stephen | 10-1-1999 |
| Kim, Robert | 12-1-2002 |
| Tanaka, Kathryn E. | 7-30-2001 |
| Beck, Mark J. | 6-21-2008 |
| Govindarajan, Sugantha | 3-22-2003 |
| Perkocha, Luke A. | 3-16-1999 |
| Noall, Rhoda A. | 9-28-1990 |
| Flair, Robert | 1-16-2002 |
| Hardman, John | 7-1-1995 |
| Dorsey, Bruce | 6-6-2001 |
| Reinhold, Charles | 9-18-1989 |
| Coon, David | 9-1-2005 |
| Tiller-Borcich, Janice | 1-1-2006 |
| Navin, James | 1-1-1995 |
| Cruz III, Francisco | 8-1-2008 |
| Ulirsch, Rudolf | 8-28-2009 |
| Beck, Mack | 3-1-2010 |
| Cecka, J. Michael | 6-30-2010 |
| Lockett, Lawrence J. | 1-1-2003 |
| Manoukian, Anthony A. | 7-13-1993 |
| Schinstine, Malcolm | 7-1-2007 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 9
ADDITIONAL NAMED INSURED – RELATED TO ORIGINAL NAMED INSURED
ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on June 30, 2013, forms part of

> Policy No.   MFL-1778-13
> Issued to    Sonic Healthcare
> Issued by    Homeland Insurance Company of New York

In consideration of the premium charged:

(1)   The term "**Named Insured**," as defined in Section II DEFINITIONS of this Policy, is amended to include the entity(ies) scheduled below (each an "Additional Named Insured"), but solely:

   (a)   with respect to liability imposed or sought to be imposed on such Additional Named Insured that is based on or arises out of acts, errors or omissions committed or allegedly committed by such Additional Named Insured when and to the extent that, such Additional Named Insured is acting on behalf of, and within the capacity and scope of its duties for Sonic Healthcare Investments GP;   and

   (b)   for **Wrongful Acts** or **Occurrences** happening on or after the Retroactive Date identified for each Additional Named Insured in the schedule below:

   <u>SCHEDULE</u>

   **Additional Named Insured and Retroactive Date:**

- Sonic Healthcare USA, Inc. -- 02/05/2007
- Sunrise Medical Laboratories, Inc. -- 03/05/1995
- Clinical Pathology Laboratories, Inc. -- 10/01/2000
- Mullins Pathology & Cytology Laboratory, Inc. --04/30/2007
- Woodbury Clinical Pathology, Inc. 01/05/1992
- Memphis Pathology Laboratory 01/07/2007
- Clinical Laboratory Services, Inc.  01/07/2007
- Fairfax Medical Laboratories, Inc. 06/19/2006
- Pathology Laboratories, Inc. dba Lima Pathology Laboratories -- 03/01/1987
- Cognoscenti Health Institute, LLC -- 09/01/2006
- DRL Labs, Ltd. Completely merged into Clinical Pathology as of
- 03/28/2003

HPE-00062-04-11                              1

- American Esoteric Laboratories, Inc. Closed Lab in March 2007 – Continues as a holding company
- Piedmont Joint Venture Laboratory, Inc. -- 08/05/2003
- American Clinical Services -- 02/01/2004
- Clinical Pathology Laboratories Southwest, Inc. -- 03/29/2010
- Clinical Laboratories of Hawaii, LLP -- 08/01/1985
- Pan Pacific Pathologists, LLC -- 08/01/1985
- East Side Clinical Laboratory, Inc.-- 06/30/1990
- Physician's Automated Laboratory -- 06/01/1989
- CBLPath Holdings Corp -- 05/01/2004
- CBLPath Inc. -- 07/01/2004
- CBLPath Transport -- 01/01/2007
- Sonic Healthcare Limited – 02/05/2007
- Douglass Hanly Moir Pathology Pty Limited – 02/05/2007
- Sonic Healthcare International Pty Ltd. – 02/05/2007
- Sonic Healthcare Pathology Pty Ltd – 02/05/2007

(2)     It is understood and agreed that the Additional Named Insured(s) share in the applicable Limits of Liability set forth in ITEM 4 of the Declarations.

(3)     ITEM 3 of the Declarations shall be deemed amended to the extent necessary to effect the purpose and intent of this endorsement.

All other terms, conditions and limitations of the Policy shall remain unchanged.

HPE-00062-04-11                     2

CONFIDENTIAL                                          DEF-CPL_0000062405

ENDORSEMENT NO. 10
DELETE GENERAL LIABILITY AND EMPLOYEE BENEFIT LIABILITY COVERAGES WITH PRODUCT
EXCLUSION ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

| | |
|---|---|
| Policy No. | MFL-1778-13 |
| Issued to | Sonic Healthcare |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, it is understood and agreed that:

(1)  No coverage will be available under this Policy for any General Liability coverage or Employee Benefit Liability coverage.  Accordingly:

  (a)  INSURING AGREEMENTS (B) and (C) of this Policy are deleted in their entirety.  Any and all references in this Policy to INSURING AGREEMENT (B) or (C) are deleted.

  (b)  Section III EXCLUSIONS (B) and (C) of this Policy are deleted in their entirety.

  (c)  Each of ITEMS 3 and 4 of the Declarations is amended by deleting clauses "B" and "C" therefrom.

(2)  No coverage will be available under this Policy for **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency or inadequacy in the design or manufacture of such product.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 11
DEDUCTIBLE/SELF-INSURED RETENTION – INDEMNITY ONLY ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

Policy No.    MFL-1778-13
Issued to     Sonic Healthcare
Issued by     Homeland Insurance Company of New York

In consideration of the premium charged, subparagraph (a) of Section IV GENERAL CONDITIONS (A)(7) of this Policy is amended to read in its entirety as follows:

(a)    The **Insured** shall be responsible for payment in full of the applicable deductible or self-insured retention stated in ITEM 4 of the Declarations, and the Underwriter's obligation to pay **Loss** under this Policy shall be excess of such deductible or self-insured retention; provided, that no deductible or self-insured retention shall apply to **Claims** for **Property Damage** resulting from any fire caused by the **Insured's** negligence and occurring on premises rented to the **Insured** or temporarily occupied by the **Insured** with the permission of the owner of such premises and subject to the "Fire Damage" Limit of Liability set forth in ITEM 4.B. of the Declarations.  The applicable deductible or self-insured retention shall apply to each **Claim** or **Related Claims** (subject to the applicable aggregate deductible or self-insured retention amount, if any), and shall be eroded (or exhausted) by the **Insured's** payment of **Loss**.  The Underwriter shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible or self-insured retention on behalf of the **Insured**. The Underwriter shall, however, at its sole discretion, have the right and option to do so, in which event the **Insured** will repay the Underwriter any amounts so paid.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CONFIDENTIAL                                                                 DEF-CPL_0000062407

ENDORSEMENT NO.  12
NOTICE OF CANCELLATION TO SCHEDULED PARTY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on June 30, 2013, forms part of

      Policy No.   MFL-1778-13
      Issued to     Sonic Healthcare
      Issued by       Homeland Insurance Company of New York

In consideration of the premium charged:

(1)     If the Underwriter cancels this Policy for any reason other than non-payment of premium, the Underwriter will endeavor to provide notice of such cancellation to the individual(s) or entity(ies) identified in the schedule below (each a "Scheduled Party"), at the address set forth next to the Scheduled Party's name, when notice of cancellation is sent to the **First Named Insured**.  In no event will the timing of notice to a Scheduled Party exceed the timing of notice to the **First Named Insured**.  It is understood and agreed that notice of cancellation to a Scheduled Party is provided solely as a courtesy for the convenience of the **First Named Insured** and does not constitute a prerequisite to effective policy cancellation.

(2)     Failure to provide notice of cancellation to a Scheduled Party shall impose no liability of any kind or nature whatsoever on the Underwriter and shall not amend or extend the effective date of policy cancellation or invalidate the cancellation.

| Scheduled Party: | Scheduled Party Address: |
| --- | --- |
| State of Hawaii, Department of Public Safety, ASO-Purchasing and Contrats Staff | 919 Ala Moana Boulevard Honolulu, Hawaii 96814 |
| | |
| County of Kern Public Health Services Department | 1800 Mount Vernon Avenue 3rd Floor Bakersfield, CA 93306-3302 |

All other terms, conditions and limitations of the Policy shall remain unchanged.

CONFIDENTIAL          DEF-CPL_0000062408

ENDORSEMENT NO.  13
PEER REVIEW COVERAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

      Policy No.   MFL-1778-13
      Issued to    Sonic Healthcare
      Issued by   Homeland Insurance Company of New York

In consideration of the premium charged:

(1)     Subparagraph (3) of the term "**Professional Services**," as defined in Section II DEFINITIONS of this Policy, is amended to read in its entirety as follows:

        (3)    the activities of an **Insured** as a member of a board or committee of the **Named Insured**, or as a member of any committee of the medical or professional staff of the **Named Insured**, when engaged in **Peer Review** or **Utilization Review**;

(2)     Section II DEFINITIONS of this Policy is amended to include the following term:

        "**Peer Review**" means the process of evaluating, by members of a formal, duly constituted professional review board or committee of the **Named Insured**, any individual or entity for purposes of selecting, employing, contracting with or credentialing current or prospective providers of **Medical Services.**

(3)     Section III EXCLUSIONS (D)(7) of this Policy will not apply to any **Claim** for **Peer Review** activities otherwise covered under INSURING AGREEMENT (A) of this Policy.

(4)     Section III EXCLUSIONS (D)(15) of this Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CONFIDENTIAL                                                                        DEF-CPL_0000062409

ENDORSEMENT NO. 14
FRONTED DEDUCTIBLE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on June 30, 2013, forms part of:

| | |
|---|---|
| Policy No. | MFL-1778-13 |
| Issued to | Sonic Healthcare |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, in accordance with Section IV GENERAL CONDITIONS (A)(7)(a) of this Policy, the Underwriter has agreed to pay the applicable deductible on behalf of the **Insured**; provided, that the **Insured** understands and agrees that he/she/it shall repay the Underwriter any amounts so paid as soon as practicable upon demand of the Underwriter.


All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-00038-08-09                    1

# MEDICAL FACILITIES AND PROVIDERS PROFESSIONAL LIABILITY, GENERAL LIABILITY AND EMPLOYEE BENEFIT LIABILITY POLICY



*PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE UNDERWRITER DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.*

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Underwriter, and subject to all of the terms and conditions of this Policy (including all endorsements hereto), the Underwriter and the **Insured** agree as follows:

## I.    INSURING AGREEMENTS

**(A)**    **Claims Made Professional Liability Insurance:**

The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.A. of the Declarations on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable Extended Reporting Period and reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy.

**(B)**    **Occurrence-Based General Liability Insurance:**

The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.B. of the Declarations on behalf of the **Insured** any **Loss** which the **Insured** is legally obligated to pay as a result of a covered **Claim** alleging **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** that is caused by an **Occurrence** that takes place during the **Policy Period**; provided, that the **Claim** is reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy.

**(C)**    **Claims Made Employee Benefit Liability Insurance:**

The Underwriter will pay up to the Limit of Liability shown in ITEM 4.C. of the Declarations on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for an **Employee Benefit Wrongful Act** happening on or after the **Retroactive Date**; provided, that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable Extended Reporting Period and reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy.

CONFIDENTIAL                                                                          DEF-CPL_0000062411

**(D)     Evacuation Expense Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Underwriter will reimburse the **Named Insured** up to the amount set forth in ITEM 4.D. of the Declarations for **Evacuation Expense** actually paid by the **Named Insured** during the **Policy Period** in connection with an **Evacuation** occurring after the **Retroactive Date**.

**(E)     Legal/Media Expense Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Underwriter will reimburse the **Named Insured** up to the amount set forth in ITEM 4.E. of the Declarations for **Legal/Media Expense** actually paid by the **Named Insured** during the **Policy Period** in connection with a **Legal Event** occurring after the **Retroactive Date,** provided, that the Underwriter will have no liability whatsoever for fines, penalties, assessments of costs or other financial awards associated with any such **Legal Event**.

**(F)     Defense and Supplementary Payments:**

The Underwriter has the right and duty to defend any **Claim** that is covered by INSURING AGREEMENTS (A), (B), and (C) of this Policy, even if any of the allegations of such **Claim** are groundless, false or fraudulent.  In addition to the Limits of Liability for INSURING AGREEMENTS (A), (B), and (C), the Underwriter will pay **Defense Expenses** and will:

(1)     pay the premium on any bond to release attachments for an amount not in excess of the Limits of Liability for INSURING AGREEMENTS (A), (B), and (C) of this Policy and the premium on any appeal bond required in any defended suit, provided, that the Underwriter will not be obligated to apply for or furnish any such bond;

(2)     pay all costs imposed against the **Insured** in any such suit;

(3)     provide a legal defense and pay **Defense Expenses** for any arbitration, mediation or other alternative dispute proceeding if:

(a)     the dispute at issue is a **Claim** covered by this Policy, and

(b)     the **Insured** provides notice of the proceeding as required by GENERAL CONDITION (C) of this Policy; and

(4)     pay reasonable expenses, plus loss of earnings due to time off from work, incurred by an **Insured** as a result of being a defendant or co-defendant in a **Claim** or at the Underwriter's request, but not to exceed:

(a)     $500 per day per **Insured**; and

(b)     $12,500 per **Claim**.

CONFIDENTIAL

## II.    DEFINITIONS

(A)    "**Administration**" means:

    (1)    giving advice or counsel to **Employees** or their beneficiaries concerning their rights or interest with respect to **Employee Benefit Programs**;

    (2)    determining the eligibility of **Employees** to participate in **Employee Benefit Programs**;

    (3)    interpreting the provisions of **Employee Benefit Programs**;

    (4)    handling and keeping records and processing of claims in connection with **Employee Benefit Programs**; and

    (5)    effecting enrollment, termination or cancellation of **Employees** under **Employee Benefit Programs**.

(B)    "**Advertisement**" means a notice that is broadcast or published to the general public or specific market segments about the **Insured's** goods, products or services, for the purpose of attracting customers or supporters. For purposes of this Definition:

    (1)    notice that is broadcast or published includes material placed on the Internet or similar means of electronic communication; and

    (2)    with regard to websites, only that part of a website that is about the **Insured's** goods, products or services, for the purpose of attracting customers or supporters, will be considered an **Advertisement**.

(C)    "**Advertising Injury**" means injury arising out of one or more of the following offenses:

    (1)    the **Insured's** use of another's advertising idea in an **Advertisement**;

    (2)    the **Insured's** use of another's copyright, trade dress or slogan in an **Advertisement**; or

    (3)    the **Insured's** infringement upon another's copyright, trade dress or slogan in an **Advertisement**.

(D)    "**Bodily Injury**" means bodily injury, sickness or disease sustained by a person, other than a **Patient**, including death resulting from any of these at any time; mental anguish; and mental injury.

(E)    "**Claim**" means any written notice received by an **Insured** that any person or entity intends to hold an **Insured** responsible for a **Wrongful Act** or an **Occurrence**.

(F)    "**Covered Contract**" means any lease of premises; sidetrack agreement; elevator maintenance agreement; easement or license agreement; or contract or agreement specifically

added as a **Covered Contract** by written endorsement to this Policy, under which the **Named Insured** assumes the tort liability of another to pay damages for **Bodily Injury** or **Property Damage** covered by this Policy that is sustained by others.

(G)   "**Defense Expenses**" means the reasonable fees of attorneys, experts and consultants and costs and expenses incurred in the investigation, adjustment, defense or appeal of a **Claim** with the approval or at the direction of the Underwriter; provided that **Defense Expenses** shall not include:

    (1)   remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of an **Insured**;

    (2)   any amounts incurred in defense of a **Claim** for which any other insurer has a duty to defend, regardless whether such other insurer undertakes such duty; or

    (3)   any benefits under an **Employee Benefit Program**.

(H)   "**Employee**" means any person who has an assigned work schedule for and is on the regular payroll of the **Named Insured**, with federal and state taxes withheld.  Independent contractors are not **Employees**.  An **Employee's** status as an **Insured** shall be determined as of the date of the **Occurrence** or **Wrongful Act** upon which a **Claim** involving the **Employee** is based.

(I)   "**Employee Benefit Programs**" means any group life insurance, group accident and health insurance, profit sharing plans, pension plans, **Employee** stock subscription plans, workers' compensation, unemployment insurance, social security and disability benefits insurance or any other similar plan under the **Administration** of the **Named Insured** for the benefit of its **Employees**.

(J)   "**Employee Benefit Wrongful Act**" means any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in the **Administration** of an **Employee Benefit Program**.

(K)   "**Employment Practices**" means any of the following: breach of any employment contract; failure or refusal to hire or employ; dismissal, discharge, reduction in force, downsizing or termination of employment, whether actual or constructive; demotion, reassignment, failure or refusal to promote, or deprivation of career opportunity; discipline of **Employees**; evaluation of **Employees**; discrimination or harassment of any kind or on any basis including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy or religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment; humiliation or defamation of any present or former **Employee** or applicant for employment; retaliatory treatment against an **Employee** arising out of the **Employee's** attempted or actual exercise of the **Employee's** rights under the law; employment-related misrepresentations; or failure to implement appropriate workplace or employment policies or procedures.

CONFIDENTIAL                                                    DEF-CPL_0000062414

(L)     "**Evacuation**" means the removal from one or more of the **Named Insured's** facilities to any other location of fifteen (15) or more patients or residents in such facility(ies) as a result of any natural or man-made occurrence that, in the reasonable judgment of the **Named Insured's** management, causes or could potentially cause such facility(ies) to be unsafe for such patients or residents.

(M)     "**Evacuation Expense**" means reasonable costs incurred in connection with an **Evacuation**, including costs associated with transporting,  lodging and providing meals to patients or residents who have been evacuated.  **Evacuation Expense** does not include any remuneration, salaries, overhead or benefit expenses of the **Named Insured**.

(N)     "**First Named Insured**" means the entity designated as such in ITEM 1 of the Declarations.

(O)     "**Good Samaritan Acts**" means emergency medical treatment provided by an **Insured**, without remuneration, at the scene of an accident, medical crisis or disaster.

(P)     "**Hostile Fire**" means a fire which becomes uncontrollable or breaks out from where it was intended to be contained; provided, that **Hostile Fire** does not include any fire that originates at any site operating as a waste disposal facility or waste storage facility.

(Q)     "**Impaired Property**" means tangible property, other than **Insured Product** or **Insured Work**, that cannot be used or is not useful because:

   (1)     it incorporates **Insured Product** or **Insured Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   (2)     the **Named Insured** has failed to fulfill the terms of any contract or agreement.

(R)     "**Insured**" means any of the following:

   (1)     the **Named Insured**;

   (2)     any **Employee** or **Volunteer**; but only when such **Employee** or **Volunteer** is acting within the capacity and scope of his or her duties as such;

   (3)     the **Named Insured's** medical directors, department heads, or chiefs of staff, but only while acting within the scope and capacity of their duties as such for the **Named Insured**;

   (4)     any member of a duly authorized board or any committee of the **Named Insured**;

   (5)     solely with respect to and limited to coverage afforded under INSURING AGREEMENT (A), the lawful spouses of individual **Insureds** and, in the event of the death, incapacity, or bankruptcy of an individual **Insured**, the estates, heirs, legal representatives or assigns of such individual **Insured**;

   (6)     any person enrolled as a student in a formal training program offered by the **Named**

CONFIDENTIAL

**Insured**, but only when such person is acting within the capacity and scope of his or her duties as such;

(7)    any member or partner of a joint venture or partnership specifically listed as a **Named Insured** in Schedule A to this Policy, but only with respect to such member or partner's liability arising out of such joint venture or partnership; and

(8)    any driver or operator of **Mobile Equipment**, but only when operating **Mobile Equipment** at the direction and with the permission of the **Named Insured**;

provided, that **Insured** shall not include any person who is an intern, resident, physician, surgeon, dentist, psychiatrist, nurse anesthetist, nurse midwife, podiatrist or chiropractor while rendering **Medical Services**, whether such person is an **Employee**, **Volunteer** or student.

(S)    "**Insured Product**" means:

    (1)    any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a)    the **Named Insured**;

        (b)    others trading under the name of the **Named Insured**; or

        (c)    a person or an organization whose business or assets the **Named Insured** has acquired; and

    (2)    containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. **Insured Product** includes:

        (a)    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the **Insured Product**; and

        (b)    the providing of or failure to provide warnings or instructions.

**Insured Product** includes leased equipment used in or useful to the **Named Insured** in providing its services, but only if the lease for such leased equipment had an original term of six (6) months or more.  **Insured Product** does not include vending machines or other property rented to, or located for the use of, others but not sold.

(T)    "**Insured Work**" means:

    (1)    work or operations performed by the **Named Insured** or on the **Named Insured's** behalf; and

    (2)    materials, parts or equipment furnished in connection with such work or operations. **Insured Work** includes:

CONFIDENTIAL

(a)     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the **Insured Work;** and

(b)     the providing of or failure to provide warnings or instructions.

(U)     "**Legal/Media Expense**" means reasonable fees and costs of attorneys, experts and consultants, including third-party media consultants, incurred in the investigation and defense of an actual or alleged **Legal Event**. **Legal/Media Expense** includes costs incurred in the management of public relations with respect to such **Legal Event**, but does not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of the **Named Insured**.

(V)     "**Legal Event**" means any criminal investigation, criminal complaint, indictment, or administrative, regulatory, disciplinary or licensure proceeding arising out of a **Professional Services Wrongful Act** that happened on or after the **Retroactive Date**.

(W)     "**Loss**" means **Legal/Media Expenses; Evacuation Expenses;** and any damages, settlements, judgments or other amounts (including punitive or exemplary damages if insurable under the applicable law most favorable to the insurability thereof) in excess of the applicable deductible or self-insured retention, if any, stated in ITEM 4 of the Declarations which an **Insured** is legally obligated to pay as a result of a **Claim**.  **Loss** shall not include:

(1)     **Defense Expenses**;

(2)     the multiple portion of any multiplied damage award;

(3)     fines, penalties, sanctions, fees, government payments or taxes;

(4)     amounts owed to any provider of **Medical Services** under any contract;

(5)     restitution, return or disgorgement of fees, profits, charges for products or services rendered, capitation payments, premium or any other funds allegedly wrongfully held or obtained;

(6)     benefits under an **Employee Benefit Program**;

(7)     relief or redress in any form other than monetary compensation or monetary damages, including without limitation the cost of complying with any injunctive, declaratory or administrative relief;

(8)     the payment, satisfaction or writing off of any medical bills or charges by an **Insured**; or

(9)     matters which are uninsurable under applicable law.

(X)     "**Managed Care Services**" means services or activities performed in the administration or management of health care plans; advertising, marketing or selling health care plans or health care products; handling, investigating or adjusting claims for benefits or coverages under

health care plans; or establishing health care provider networks.

(Y)     "**Medical Services**" means health care, medical care, or treatment provided to any individual, including without limitation any of the following: medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

(Z)     "**Mobile Equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

(1)     bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

(2)     vehicles maintained for use solely on or next to premises owned or rented by an **Insured**;

(3)     vehicles that travel on crawler treads;

(4)     vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(a)     power cranes, shovels, loaders, diggers or drills, or

(b)     road construction or resurfacing equipment such as graders, scrapers or rollers;

(5)     vehicles not described in clauses (1)-(4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(a)     air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(b)     cherry pickers and similar devices used to raise or lower workers; and

(6)     vehicles not described in clauses (1)-(4) above maintained primarily for purposes other than the transportation of persons or cargos.

**Mobile Equipment** does not include self-propelled vehicles with the following types of permanently attached equipment:

(i)     equipment designed primarily for:

(aa)     snow removal;

HPF-30001-10-08                                8

(bb)    road maintenance but not construction or resurfacing; or

(cc)    street cleaning;

(ii)    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(iii)    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

(AA)    "**Mold**" means mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever.

(BB)    "**Named Insured**" means the **First Named Insured** and each other entity listed as a **Named Insured** in Schedule A to this Policy.

(CC)    "**Occurrence**" means:

(1)    with respect to **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results in injury or damage neither expected nor intended by the **Insured**; and

(2)    with respect to **Advertising Injury** or **Personal Injury**, a covered offense as set forth in DEFINITIONS (C) or DEFINITIONS (EE) of this Policy.

(DD)    "**Patient**" means any person or human body admitted or registered to receive **Medical Services** from an **Insured**, whether on an inpatient, outpatient or emergency basis.

(EE)    "**Personal Injury**" means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

(1)    false arrest, detention or imprisonment;

(2)    malicious prosecution;

(3)    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

(4)    oral or written publication of material that slanders or libels a person or an organization or disparages a person's or an organization's goods, products or services; or

(5)    oral or written publication of material that violates a person's right of privacy.

(FF)    "**Policy Period**" means the period from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the

CONFIDENTIAL         DEF-CPL_0000062419

Declarations or to any earlier cancellation date of this Policy.

(GG)   "**Pollutant**" means smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, medical waste, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants. **Pollutant** does not include smoke, fumes, vapor or soot emanating from equipment used to heat or cool a building owned or operated by the **Named Insured**.

(HH)   "**Professional Services**" means:

(1)   **Medical Services** in connection with the Covered Operations/Services set forth in ITEM 5 of the Declarations;

(2)   **Good Samaritan Acts**;

(3)   the activities of an **Insured** as a member of a board or committee of the **Named Insured**, or as a member of any committee of the medical or professional staff of the **Named Insured**, when engaged in **Utilization Review**;

(4)   the activities of an **Insured** as a member of a formal accreditation, standards review or similar professional board or committee, including executing the directives of such board or committee; or

(5)   reviewing the quality of **Medical Services** or providing quality assurance on behalf of the **Named Insured**.

(II)   "**Professional Services Wrongful Act**" means:

(1)   any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in rendering, or failing to render, **Professional Services**; or

(2)   any actual or alleged act, error or omission, or series of acts, errors or omissions, by any person other than an **Insured** in rendering, or failing to render, **Medical Services**, but only for an **Insured's** vicarious liability with regard to such **Medical Services**.  In no event shall this Policy provide coverage for the direct liability of any person other than an **Insured** for the rendering of, or failure to render, **Medical Services**.

(JJ)   "**Property Damage**" means:

(1)   physical injury to tangible property, including all resulting loss of use of that property; provided, that such loss of use shall be deemed to have occurred at the time of the physical injury that caused it; or

(2)   loss of use of tangible property that is not physically injured; provided, that such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

(KK)     "**Related Claims**" means:

(1)     **Claims** for **Wrongful Acts**, or

(2)     **Claims** for **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** caused by an **Occurrence**,

based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, whether or not involving more than one policy, practice, procedure or product, including any course of treatment, and whether or not deemed a continuous tort.

(LL)     "**Retroactive Date**" means the applicable date(s) set forth in ITEM 3 of the Declarations.

(MM)     "**Utilization Review**" means the process of evaluating the appropriateness or necessity of **Medical Services** provided or to be provided by an **Insured**. **Utilization Review** shall include prospective review of proposed **Medical Services**, concurrent review of ongoing **Medical Services**, and retrospective review of already rendered **Medical Services**. **Utilization Review** does not include services or activities performed in the administration or management of health care plans.

(NN)     "**Volunteer**" means a person who provides his or her services or labor to the **Named Insured**, and whose activities are supervised and directed by the **Named Insured**, but who is not compensated for such services and labor. No **Employee** or  physician shall be considered a **Volunteer**.

(OO)     "**Wrongful Act**" means any **Professional Services Wrongful Act** or **Employee Benefit Wrongful Act**.

## III.     EXCLUSIONS

**(A)     Exclusions Applicable to INSURING AGREEMENT (A):**

In addition to the EXCLUSIONS listed under (D) below, no coverage will be available under INSURING AGREEMENT (A), and the Underwriter will not pay any **Loss** or **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)     **Professional Services Wrongful Act** that happened before the **Retroactive Date**;

(2)     **Bodily Injury** or **Property Damage;**

(3)     **Advertising Injury** or **Personal Injury**, except to the extent that such injury relates to the rendering of, or failure to render, **Professional Services;**

CONFIDENTIAL

(4)    **Employee Benefit Wrongful Act;**

(5)    rendering of, or failure to render, **Medical Services** by any **Insured** or any person for whom an **Insured** is vicariously liable**:**

    (a)    while the **Insured's** or such person's license to practice is or was not active;

    (b)    in violation of any restriction imposed or placed upon the **Insured's** or such person's license; or

    (c)    if such **Medical Services** fall outside the scope of the **Insured's** or such person's license;

(6)    rendering of, or failure to render, **Medical Services** by any person other than an **Insured**; except this EXCLUSION (A)(6) will not apply to an **Insured's** vicarious liability with regard to such **Medical Services**; or

(7)    treatment of any **Patient** with any drug, medical device, or biologic or radiation-emitting product not approved by the U.S. Food and Drug Administration.

**(B)    Exclusions Applicable to INSURING AGREEMENT (B):**

In addition to the EXCLUSIONS listed under (D) below, no coverage will be available under INSURING AGREEMENT (B), and the Underwriter will not pay any **Loss** or **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    **Occurrence** that happened before the Inception Date set forth in ITEM 2 of the Declarations;

(2)    **Professional Services Wrongful Act**;

(3)    injury to a **Patient**; except this EXCLUSION (B)(3) shall not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving: fire or lightning; windstorm or hail; explosion; riot, including riot attending a strike or civil commotion; aircraft or vehicles; smoke; vandalism or malicious mischief; sprinkler leakage; elevator malfunction; earthquake or flood; or structural collapse of a building;

(4)    **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** expected or intended from the standpoint of any **Insured**; except for **Bodily Injury** resulting from use of reasonable force to protect persons or property;

(5)    **Personal Injury** or **Advertising Injury** arising out of oral or written publication of material:

    (a)    if done by or at the direction of an **Insured** with knowledge of its falsity; or

(b)    whose first publication took place before the Inception Date set forth in ITEM 2 of the Declarations;

(6)    **Advertising Injury** arising out of any false, incorrect or misleading description of the price of goods, products or services;

(7)    **Employee Benefit Wrongful Act**;

(8)    **Bodily Injury** or **Property Damage** for which an **Insured** is or may be held liable by reason of:

    (a)    causing or contributing to the intoxication of any person;

    (b)    the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (c)    any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

except this EXCLUSION (B)(8) will not apply if the **Insured** is not in the business of manufacturing, selling or distributing alcoholic beverages;

(9)    **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, operation or entrustment to others of any aircraft, auto, watercraft, motor vehicle or semi-trailer or the loading or unloading thereof; except to the extent such injury arises from the loading or unloading of patients or relates to the maintenance or use of non-owned aircraft, watercraft or motor vehicles but only as excess cover over any other insurance, whether collectible or not;

(10)    **Bodily Injury** or **Property Damage** arising out of:

    (a)    the transportation of **Mobile Equipment** by, in or on an auto owned or operated by, or rented or loaned to, any **Insured**; or

    (b)    the use of **Mobile Equipment** in, or while in practice or preparation for, any prearranged racing, speed, demolition or stunt activity;

(11)    **Bodily Injury** or **Property Damage** arising from any consequence, direct or indirect, of war, invasion, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, strike, riot or civil insurrection;

(12)    **Property Damage** to:

    (a)    property the **Insured** owns, rents or occupies;

    (b)    premises sold, given away or abandoned by the **Named Insured**, if the **Property Damage** arises out of any part of those premises;

(c) property loaned to the **Insured**;

(d) personal property in the care, custody or control of the **Insured**;

(e) that particular part of real property on which the **Insured**, or any contractor or subcontractor working directly or indirectly on the **Insured's** behalf, is performing operations, if the **Property Damage** arises out of those operations;

(f) that particular part of any property that must be restored, repaired or replaced because the **Insured's Work** was incorrectly, poorly or improperly performed on it; or

(g) property which is being transported by the **Insured** by automobile, **Mobile Equipment** or team, including the loading and unloading thereof;

EXCLUSION (B)(12)(a) above does not apply to any **Claim** for **Property Damage** resulting from any fire caused by the **Insured's** negligence and occurring on premises rented by the **Insured** or temporarily occupied by the **Insured** with the permission of the owner of such premises, up to the "Fire Damage" Limit of Liability set forth in ITEM 4.B. of the Declarations;

EXCLUSION (B)(12)(b) above does not apply if the premises are **Insured Work** and were never occupied, rented or held for rental by the **Named Insured**;

EXCLUSIONS (B)(12)(c), (d), (e), and (f) above do not apply to liability assumed under a sidetrack agreement; and

EXCLUSION (B)(12)(f) above does not apply to **Property Damage** included in the products and completed operations hazard;

(13) **Property Damage** to the **Insured Product** arising out of it or any part of it;

(14) **Property Damage** to **Insured Work** arising out of it or any part of it and included in the products and completed operations hazard; except if the damaged work or the work out of which the damage arises was performed on behalf of the **Named Insured** by a subcontractor;

(15) **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

(a) defect, deficiency, inadequacy or dangerous condition in **Insured Product** or **Insured Work**; or

(b) a delay or failure by an **Insured** or anyone acting on the **Named Insured's** behalf to perform a contract or an agreement in accordance with its terms; except this EXCLUSION (B)(15)(b) does not apply to the loss of use of

other property arising out of sudden and accidental physical injury to **Insured Work** after it has been put to its intended use;

(16)    damages claimed for any loss, cost or expense incurred by the **Named Insured** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (a)    **Insured Product**;

    (b)    **Insured Work**; or

    (c)    **Impaired Property**, if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it;

(17)    injury or damage arising in whole or in part, either directly or indirectly, out of asbestos, regardless whether the asbestos is:

    (a)    airborne as a fiber or particle;

    (b)    contained in a product;

    (c)    carried or transmitted on clothing or by any other means; or

    (d)    contained in or a part of:

        (i)    any building;

        (ii)    any building material;

        (iii)    any insulation product; or

        (iv)    any component part of any building, building material or insulation product;

(18)    (a)    exposure to, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of, **Mold**;

    (b)    fee, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to or assess the effect(s) of **Mold**; or

    (c)    fee, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to **Mold**;

except this EXCLUSION (B)(18) will not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the **Insured's** use of **Mold** in connection with the rendering of **Medical Services**, including medical research activities;

(19)     (a)     exposure to, or generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth of, treatment, removal or disposal of, any **Pollutant**, except where such exposure, generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth, treatment, removal or disposal was caused by an unintentional fire or any heat, smoke or fumes issuing from such unintentional fire;

      (b)     fee, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize or rehabilitate any **Pollutant**; or

      (c)     fee, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to any **Pollutant**;

except this EXCLUSION (B)(19) will not apply to any **Claim** for **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a **Hostile Fire**; or

(20)     nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance.

**(C)**     **Exclusions Applicable to INSURING AGREEMENT (C):**

In addition to the Exclusions listed in EXCLUSION (D) below, no coverage will be available under INSURING AGREEMENT (C), and the Underwriter will not pay any **Loss** or **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)     **Employee Benefit Wrongful Act** that happened before the **Retroactive Date**;

(2)     **Advertising Injury**, **Bodily Injury**, **Personal Injury** or **Property Damage**;

(3)     failure of performance by any insurer;

(4)     failure of securities or other investments to perform as represented or advice given to an **Employee** to participate or not to participate in stock subscription or other benefit programs; provided, that for purposes of this EXCLUSION (C)(4), "security" means a security of any nature whatsoever including, without limitation, stocks, shares, bonds, debentures, options, derivatives, partnership interests, limited liability company interests, any other form of debt or equity instrument and any other forms of ownership interest;

(5)    insufficiency of funds to meet any obligations of **Employee Benefit Programs**; or

(6)    **Professional Services Wrongful Act**.

**(D)    Exclusions Applicable to All INSURING AGREEMENTS:**

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses,** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    act, error, omission or **Wrongful Act** if any **Insured**, on or before the Inception Date set forth in ITEM 2 of the Declarations, knew or reasonably could have foreseen that such act, error, omission or **Wrongful Act** might result in a **Claim**.

If, however, this Policy is a renewal of one or more policies previously issued by the Underwriter to the **First Named Insured**, and the coverage provided by the Underwriter to the **First Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this EXCLUSION (D)(1) to the Inception Date will be deemed to refer instead to the inception date of the first policy under which the Underwriter began to provide the **First Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal;

(2)    act, error, omission, **Wrongful Act**, event, suit or demand which was the subject of any notice given under any other policy of insurance or plan or program of self-insurance in effect prior to the Inception Date set forth in ITEM 2 of the Declarations;

(3)    violation of any federal, state or local antitrust, restraint of trade, unfair competition, or price-fixing law, or any rules or regulations promulgated thereunder, or any involvement in any agreement or conspiracy to restrain trade, except for any **Claim** otherwise covered under INSURING AGREEMENT (A) arising out of the rendering of, or failure to render, **Medical Services**;

(4)    dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**; any willful violation of law, statute, rule or regulation by an **Insured**; or the gaining of any profit, remuneration or advantage by an **Insured** to which such **Insured** was not legally entitled, including, but not limited to, health care fraud; provided, however, that no such act of one **Insured** will be imputed to any other **Insured** who was not aware of and did not participate in such act;

(5)    obligation of an **Insured** pursuant to any workers' compensation, unemployment compensation, disability benefits or similar law;

(6)    obligation which an **Insured** has assumed under a written or oral contract or agreement; except this EXCLUSION (D)(6) will not apply to:

      (a)     liability an **Insured** would have had in the absence of such contract or agreement; or

      (b)     liability assumed by the **Named Insured** under a **Covered Contract**;

(7)     **Claim** made by or for the benefit of, or in the name or right of, one current or former **Insured** against another current or former **Insured**; except this EXCLUSION (D)(7) will not apply to any **Claim** for:

      (a)     the rendering of, or failure to render, **Medical Services** otherwise covered under INSURING AGREEMENT (A) of this Policy; or

      (b)     any **Employee Benefit Wrongful Act** otherwise covered under INSURING AGREEMENT (C) of this Policy;

(8)     discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment, including any discrimination in the rendering of, or failure to render, **Professional Services**;

(9)     **Employment Practices**;

(10)    liability of any "Acquired Entity" described in GENERAL CONDITION (F) or its individual **Insureds** acting in their capacity as such for any **Claim**, **Occurrence**, fact, circumstance, situation, transaction, event or **Wrongful Act** or series of **Claims**, **Occurrences**, facts, circumstances, situations, transactions, events or **Wrongful Acts** happening before the date such entity became an "Acquired Entity;"

(11)    unauthorized or illegal use or release of confidential, private or proprietary information;

(12)    liability of any individual acting as an independent contractor for an **Insured**; except this EXCLUSION (D)(12) will not apply to the **Insured's** vicarious liability with regard to such independent contractor;

(13)    infringement of any right of patent, service mark, trademark, copyright, title or slogan; except this EXCLUSION (D)(13) will not apply to liability of an **Insured** for **Advertising Injury**;

(14)    liability of any **Insured** for **Managed Care Services**; except this EXCLUSION (D)(14) will not apply to liability of an **Insured** for **Professional Services**;

(15)    evaluation of any provider of **Medical Services** by an **Insured** for purposes of selecting, employing, contracting with or credentialing such provider of **Medical Services**, if such **Claim** is made by or on behalf of any such provider of **Medical**

**Services**; or

(16) violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder; except this EXCLUSION (D)(16) will not apply to any **Claim** arising out of the rendering of, or failure to render, **Medical Services**, which is otherwise covered under INSURING AGREEMENT (A) of this Policy and for which reimbursement for such services was received from health care plans covered by such statutes, rules or regulations.

## IV. GENERAL CONDITIONS

### (A) Limits of Liability

(1) Insuring Agreement (A) – Professional Liability

 (a) The "Each Claim" amount stated in ITEM 4.A. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT (A).

 (b) The "Aggregate for all Claims" amount stated in ITEM 4.A. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT (A).

(2) Insuring Agreement (B) – General Liability

 (a) The "Each Claim" amount stated in ITEM 4.B. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT (B).

 (b) The "Fire Damage" amount stated in ITEM 4.B. of the Declarations will be the Underwriter's maximum aggregate Limit of Liability for all **Claims** for **Property Damage** resulting from any and all fires caused by the **Insured's** negligence and occurring on premises rented to the **Insured** or temporarily occupied by the **Insured** with the permission of the owner of such premises. Such amount shall be part of, and not in addition to, the "Aggregate for all Claims" amount stated in ITEM 4.B. of the Declarations.

 (c) The "Aggregate for all Claims" amount stated in ITEM 4.B. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy

CONFIDENTIAL  DEF-CPL_0000062429

provides coverage under INSURING AGREEMENT (B).

(3)     Insuring Agreement (C) – Employee Benefit Liability

(a)     The "Each Claim" amount stated in ITEM 4.C. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT (C).

(b)     The "Aggregate for all Claims" amount stated in ITEM 4.C. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT (C).

(4)     Insuring Agreement (D) – Evacuation Expense

(a)     The "Each Evacuation" amount stated in ITEM 4.D. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Evacuation** for which this Policy provides coverage under INSURING AGREEMENT (D).

(b)     The "Aggregate for all Evacuations" amount stated in ITEM 4.D. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Evacuations** for which this Policy provides coverage under INSURING AGREEMENT (D).

(5)     Insuring Agreement (E) – Legal/Media Expense

(a)     The "Each Legal Event" amount stated in ITEM 4.E. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Legal Event** for which this Policy provides coverage under INSURING AGREEMENT (E).

(b)     The "Aggregate for all Legal Events" amount stated in ITEM 4.E. of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Legal Events** for which this Policy provides coverage under INSURING AGREEMENT (E).

(6)     Each Limit of Liability described in paragraphs (1) through (5) above shall apply regardless of the time of payment by the Underwriter, the number of persons or entities included within the definition of **Insured,** or the number of claimants, and regardless of whether such **Claim** or **Related Claims** is/are first made during the **Policy Period** or during any Extended Reporting Period.

(7)     (a)     The **Insured** shall be responsible for payment in full of the applicable deductible or self-insured retention stated in ITEM 4 of the Declarations, and the Underwriter's obligation to pay **Loss** or **Defense Expenses** under this Policy shall be excess of such deductible or self-insured retention;

provided, that no deductible or self-insured retention shall apply to **Claims** for **Property Damage** resulting from any fire caused by the **Insured's** negligence and occurring on premises rented to the **Insured** or temporarily occupied by the **Insured** with the permission of the owner of such premises and subject to the "Fire Damage" Limit of Liability set forth in ITEM 4.B. of the Declarations. The applicable deductible or self-insured retention shall apply to each **Claim** or **Related Claims** (subject to the applicable aggregate deductible or self-insured retention amount, if any), and shall be eroded (or exhausted) by the **Insured's** payment of **Loss** or **Defense Expenses**. The Underwriter shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible or self-insured retention on behalf of the **Insured**. The Underwriter shall, however, at its sole discretion, have the right and option to do so, in which event the **Insured** will repay the Underwriter any amounts so paid.

(b) If a "Deductible" is selected under any Insuring Agreement in ITEM 4 of the Declarations, any amounts paid within such deductible will reduce, and may exhaust, the applicable Limits of Liability for such Insuring Agreement.

If a "Self-Insured Retention" is selected under any Insuring Agreement in ITEM 4 of the Declarations, any amounts paid within such self-insured retention will not reduce the applicable Limits of Liability for such Insuring Agreement.

(8) All **Insureds** under this Policy share the Limits of Liability. In no event will the number of **Insureds** involved in a **Claim** or **Related Claims** increase the applicable Limit of Liability.

(9) In the event a **Claim** under this Policy involves more than one (1) Insuring Agreement hereunder, it is understood and agreed that only one (1) deductible or self-insured retention and one (1) Limit of Liability will apply to such **Claim**, which shall be the highest applicable "Each Claim" Limit of Liability stated in Item 4 of the Declarations and the deductible or self-insured retention corresponding to such Limit of Liability.

(10) If any **Claim** made against the **Insureds** gives rise to coverage both under this Policy and under any other policy or policies issued by the Underwriter or any affiliate of the Underwriter, the Underwriter's and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss** in respect of such **Claim** will not exceed the largest single available limit of liability under any such policy, including this Policy. In no event will more than one policy issued by the Underwriter respond to a **Claim**.

**(B)    Related Claims Deemed Single Claim:**

All **Related Claims**, whenever made, shall be deemed to be a single **Claim**, regardless of:

(1)      the number of **Related Claims**;

(2)      the number or identity of claimants;

(3)      the number or identity of **Insureds** involved or against whom **Related Claims** have been or could be made;

(4)      whether the **Related Claims** are asserted in a class action or otherwise; and

(5)      the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were made in more than one **Policy Period**.

All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with GENERAL CONDITION (C)(2) below, whichever is earlier.

**(C)      Reporting of Claims, Occurrences and Circumstances:**

(1)      If, during the **Policy Period** or any Extended Reporting Period**,** any **Claim** for a **Wrongful Act** under INSURING AGREEMENT (A) or (C) is first made against an **Insured**, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give the Underwriter written notice of such **Claim** as soon as practicable thereafter, but in no event later than:

(a)      thirty (30) days after the Expiration Date or earlier cancellation date of this Policy; or

(b)      the expiration of any Extended Reporting Period.

Timely and sufficient notice by one **Insured** of a **Claim** shall be deemed timely and sufficient notice for all **Insureds** involved in the **Claim**. Such notice shall give full particulars of the **Claim**, including, but not limited to: a description of the **Claim** and **Wrongful Act**; the identity of the patient, all potential claimants and the health care provider(s) and any **Insureds** involved; a description of the injury or damages that resulted from such **Wrongful Act**; information on the time, place and nature of the **Wrongful Act**; and the manner in which the **Insured** first became aware of such **Wrongful Act** .

(2)      If during the **Policy Period** an **Insured** first becomes aware of any **Wrongful Act** that may subsequently give rise to a **Claim** under INSURING AGREEMENT (A) or (C) and:

(a)      gives the Underwriter written notice of such **Wrongful Act** with full particulars as soon as practicable thereafter but in any event before the Expiration Date or earlier cancellation date of this Policy; and

(b)      requests coverage under INSURING AGREEMENT (A) or (C) of this Policy for any **Claim** subsequently arising from such **Wrongful Act**;

then any **Claim** not otherwise excluded by this Policy subsequently made against the **Insured** arising out of such **Wrongful Act** shall be treated as if it had been first made during the **Policy Period**. Full particulars shall include, but are not limited to: a description of the **Wrongful Act**; the identity of the patient, all potential claimants and the health care provider(s) and any **Insureds** involved; information on the time, place and nature of the **Wrongful Act**; the manner in which the **Insured** first became aware of such **Wrongful Act**; and the reasons the **Insured** believes the **Wrongful Act** is likely to result in a **Claim**.

(3)     If any **Claim** alleging **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** that is caused by an **Occurrence** under INSURING AGREEMENT (B) is first made against an **Insured**, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give the Underwriter written notice of such **Claim** as soon as practicable thereafter. Timely and sufficient notice by one **Insured** of a **Claim** shall be deemed timely and sufficient notice for all **Insureds** involved in the **Claim**. Such notice shall give full particulars of the **Claim**, including, but not limited to: a description of the **Claim** and **Occurrence**; the identity of all potential claimants and any **Insureds** involved; a description of the injury or damages that resulted from such **Occurrence**; information on the time, place and nature of the **Occurrence**; and the manner in which the **Insured** first became aware of such **Occurrence**.

If an **Insured** becomes aware of an **Occurrence** that may subsequently give rise to a **Claim** under INSURING AGREEMENT (B), the **Insured** shall give the Underwriter written notice of such **Occurrence** as soon as practicable thereafter. Such notice shall include a description of the **Occurrence**; the identity of all potential claimants and any **Insureds** involved; a description of the injury or damages that resulted from such **Occurrence**; information on the time, place and nature of the **Occurrence**; the manner in which the **Insured** first became aware of such **Occurrence**; and the reasons the **Insured** believes such **Occurrence** is likely to result in a **Claim.**

(4)     As a condition precedent to its right to any reimbursement under INSURING AGREEMENT (D) or (E) of this Policy, the **Named Insured** shall provide the Underwriter written proof of payment of **Evacuation Expense** or **Legal/Media Expense** during the **Policy Period**, but in no event later than thirty (30) days after the Expiration Date or earlier cancellation date of this Policy.

**(D)     Defense and Settlement:**

(1)     No **Insured** shall, except at its own cost, incur any expense, make any payment, admit liability for, assume any obligation, or settle any **Claim** without the Underwriter's written consent. With respect to any **Claim,** the Underwriter will have the right to investigate, direct the defense, and conduct settlement negotiations it deems appropriate. The Underwriter may make any settlement of any **Claim** which it deems appropriate.

(2)      The Underwriter will have no obligation to pay **Loss** or **Defense Expenses**, or continue to direct the defense of any **Insured**, after the applicable Limit of Liability has been exhausted by the payment of **Loss**.

(3)      If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred, either because a **Claim** made against the **Insureds** includes both covered and uncovered matters, or because a **Claim** is made against both **Insureds** and others not included within the definition of "**Insured**" set forth in DEFINITION (R) above, the **Insureds** and the Underwriter agree to use their best efforts to determine a fair and proper allocation of all such amounts.  The Underwriter's obligation to pay **Loss** under this Policy shall relate only to those sums allocated to the **Insureds**.  In making such determination, the parties shall take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by the **Insureds** and others.  In the event that the Underwriter and the **Insureds** do not reach an agreement with respect to an allocation, then the Underwriter shall be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

**(E)      Territory:**

This Policy applies to **Wrongful Acts** or **Occurrences** taking place anywhere in the world.  **Claim** or suit must be made against an **Insured**, however, in the United States of America, including its territories or possessions, Puerto Rico, or Canada.

**(F)      Mergers, Acquisitions or Newly Created Entities:**

If, during the **Policy Period,** the **Named Insured** acquires or creates another entity or subsidiary or becomes a member of a joint venture or partner in a partnership, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any such acquired, created, merged or consolidated entity an "Acquired Entity"), then for a period of sixty (60) days after the effective date of the transaction, such Acquired Entity shall be included within the term "**Named Insured**" with respect to **Wrongful Acts** or **Occurrences** happening after the effective date of the transaction.  Upon the expiration of the sixty (60) day period, there will be no coverage under this Policy for any **Claim** in any way involving the Acquired Entity or its **Insureds** unless within such sixty (60) day period:

(1)      the **Named Insured** gives the Underwriter such information regarding the transaction as the Underwriter requests; and

(2)      the Underwriter has specifically agreed by written endorsement to this Policy to provide coverage with respect to such Acquired Entity and its **Insureds**, and the **Named Insured** accepts any terms, conditions, exclusions or limitations, including payment of additional premium, as the Underwriter, in its sole discretion, imposes in connection with the transaction.

For purposes of this GENERAL CONDITION (F), "subsidiary" means any entity for which the **Named Insured** owns or possesses fifty percent (50%) of the issued and outstanding capital stock, or has or controls the right to elect or appoint more than fifty percent (50%) of the directors or trustees.

**(G)      Sales or Dissolution of Insured Entities; Cessation of Business:**

If, during the **Policy Period**:

(1)      the **Named Insured** is dissolved, sold, acquired by, merged into, or consolidated with another entity such that the **Named Insured** is not the surviving entity; or

(2)      any person, entity, or affiliated group of persons or entities obtains:

(a)      ownership or possession of fifty percent (50%) of the issued and outstanding capital stock of the **Named Insured,** or;

(b)      the right to elect or appoint more than fifty percent (50%) of the **Named Insured's** directors or trustees; or

(3)      the **Named Insured** ceases to do business for any reason;

(any of which events is referred to as a "Transaction" in this GENERAL CONDITION (G)) coverage under this Policy shall continue in full force and effect until the Expiration Date or any earlier cancellation date, but this Policy shall apply only to **Occurrences** or **Wrongful Acts** happening before the effective date of such Transaction. This Policy will not apply to, and the Underwriter will not pay any **Loss** or **Defense Expenses** for, any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act** or **Occurrence** happening on or after the effective date of such Transaction.

**(H)      Extended Reporting Period for INSURING AGREEMENTS (A) and (C):**

If this Policy is canceled for any reason other than fraud, misrepresentation or non-payment of premium or is not renewed by the Underwriter or the **First Named Insured**, an additional period of time during which **Claims** made under INSURING AGREEMENTS (A) and (C) of this Policy may be reported (an "Extended Reporting Period") shall be made available as described in this GENERAL CONDITION (H), but any such Extended Reporting Period shall apply only to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such cancellation or non-renewal (the "Termination Date") or the date of any conversion of coverage under GENERAL CONDITION (G), whichever is earlier.  No Extended Reporting Period shall in any way increase the Underwriter's Limits of Liability as stated in ITEM 4 of the Declarations, and the Underwriter's Limit of Liability for **Claims** made during any Extended Reporting Period shall be part of, and not in addition to, the Limits of Liability stated in ITEM 4 of the Declarations.  The Extended Reporting Period will apply as follows:

(1)     An Extended Reporting Period of sixty (60) days, beginning as of the Termination Date, will apply automatically and requires no additional premium; provided, that such Extended Reporting Period will remain in effect only as long as no other policy of insurance is in effect that would apply to any **Claim** made during such Extended Reporting Period.

(2)     The **First Named Insured** may purchase an additional Extended Reporting Period for one of the periods of time stated in ITEM 7 of the Declarations by notifying the Underwriter in writing of its intention to do so no later than thirty (30) days after the Termination Date.  The additional premium for this additional Extended Reporting Period shall be equal to the applicable amount stated in ITEM 7 of the Declarations and must be paid no later than thirty (30) days after the Termination Date.   Such additional premium shall be deemed fully earned upon inception of such Extended Reporting Period.

If no election to purchase an additional Extended Reporting Period is made as described in GENERAL CONDITION (H)(2) above, or if the additional premium for any such Extended Reporting Period is not paid within thirty (30) days after the Termination Date, there will be no right to purchase an additional Extended Reporting Period at any later time.

**(I)     Cancellation; Non-Renewal:**

(1)     The Underwriter may cancel this Policy by mailing written notice to the **First Named Insured** at the last known address shown on the Declarations stating when, not less than sixty (60) days thereafter (or such longer period of time as required by applicable law), such cancellation shall be effective; except that, in the event of cancellation for non-payment of premium, the Underwriter may make the cancellation effective upon notice of only ten (10) days (or such longer period of time as required by applicable law).

(2)     Except as set forth in GENERAL CONDITION (M), the **First Named Insured** may cancel this Policy by mailing the Underwriter written notice stating when, not later than the Expiration Date set forth in ITEM 2(b) of the Declarations, such cancellation will be effective. In such event, the earned premium will be computed in accordance with the customary short rate table and procedure.  Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(3)     The Underwriter will not be required to renew this Policy upon its expiration.

**(J)     Assistance and Cooperation:**

In the event of a **Claim**, the **Insured** shall provide the Underwriter with all information, assistance and cooperation that the Underwriter reasonably requests. At the Underwriter's request, the **Insured** shall assist in: investigating, defending and settling **Claims**; enforcing any right of contribution or indemnity against another who may be liable to any **Insured**; the conduct of actions, suits, appeals or other proceedings, including, but not limited to,

attending trials, hearings and depositions; securing and giving evidence; and obtaining the attendance of witnesses.

**(K)    Subrogation:**

In the event of any payment hereunder, the Underwriter shall be subrogated to the extent of any payment to all of the rights of recovery of the **Insured**. The **Insured** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the Underwriter effectively to bring suit in its name. The **Insured** shall do nothing that may prejudice the Underwriter's position or potential or actual rights of recovery. The obligations of the **Insured** under this GENERAL CONDITION (K) shall survive the expiration or termination of the Policy.

**(L)    Other Insurance and Risk Transfer Arrangements:**

Any **Loss** or **Defense Expenses** resulting from any **Claim** insured under any other insurance or self-insurance policy or program or risk transfer instrument, including, but not limited to, self-insured retentions, deductibles, fronting arrangements, professional liability policies covering any **Insured**, or other alternative arrangements which apply to the **Loss** or **Defense Expenses** shall be paid first by those instruments, policies or other arrangements. It is the intent of this Policy to apply only to **Loss** or **Defense Expenses** that are more than the total limit of all deductibles, limits of liability, self-insured amounts or other insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, fronting or otherwise and whether or not collectible. These provisions do not apply to other insurance policies or risk transfer arrangements written as specific umbrella or excess insurance over the applicable Limits of Liability of this Policy. This Policy shall not be subject to the terms of any other policy of insurance or plan or program of self-insurance; and in no event will the Underwriter pay more than the applicable Limits of Liability set forth in ITEM 4 of the Declarations.

**(M)    Exhaustion:**

If the Underwriter's applicable Aggregate Limit of Liability for any Insuring Agreement, as set forth in ITEM 4 of the Declarations, is exhausted by the payment of **Loss**, all obligations of the Underwriter under such Insuring Agreement will be completely fulfilled and exhausted, including any obligation to pay **Defense Expenses** or to continue to direct the defense of any **Insured**, and the Underwriter will have no further obligations of any kind or nature whatsoever under such Insuring Agreement.

If all of the Underwriter's applicable Limits of Liability are exhausted by the payment of **Loss**, the premium will be fully earned, all obligations of the Underwriter under this Policy will be completely fulfilled and exhausted, including any obligation to pay **Defense Expenses** or to continue to direct the defense of any **Insured**, and the Underwriter will have no further obligations of any kind or nature whatsoever under this Policy.

**(N)    Authorization and Notices:**

The **First Named Insured** will act on behalf of all **Insureds** with respect to: the giving or

receiving of any notices under this Policy; the payment of premiums to, and receiving of return premiums from, the Underwriter; the receiving and acceptance of any endorsements issued to form a part of this Policy; and the exercising or declining to exercise any Extended Reporting Period.

**(O)  Conformance:**

Any terms of this Policy that are in conflict with the laws or regulations of the state in which this Policy is issued are amended to conform with such laws or regulations.

**(P)  Representation; Incorporation of Application; Entire Agreement:**

The **Insureds** represent that the particulars and statements contained in the Application attached to this Policy are true, accurate and complete and agree that:

(1)     this Policy is issued and continued in force by the Underwriter in reliance upon the truth of such representation;

(2)     those particulars and statements are the basis of this Policy; and

(3)     the Application and those particulars and statements are incorporated in and form a part of this Policy.

No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the Application. In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the Application, this Policy shall be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission or to whom such knowledge is imputed.

**(Q)  No Action against Underwriter:**

(1)     No action shall be taken against the Underwriter by any **Insured** unless, as conditions precedent thereto, the **Insured** has fully complied with all of the terms of this Policy and the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after adjudicatory proceedings or by written agreement of the **Insured**, the claimant and the Underwriter.

(2)     No individual or entity shall have any right under this Policy to join the Underwriter as a party to any **Claim** to determine the liability of any **Insured**; nor shall the Underwriter be impleaded by an **Insured** or his, her, or its legal representative in any such **Claim**.

**(R)  Notice:**

(1)     Notice to any **Insured** shall be sent to the **First Named Insured** at the address designated in ITEM 1 of the Declarations.

(2)     Notice to the Underwriter shall be sent to the address designated in ITEM 8 of the Declarations.

**(S)     Changes:**

Notice to or knowledge possessed by any agent or other person acting on behalf of the Underwriter shall not effect a waiver or change in any part of this Policy or prevent or estop the Underwriter from asserting any right(s) under this Policy. This Policy can only be altered, waived, or changed by written endorsement issued to form a part of this Policy.

**(T)     Insolvency of Insured:**

The Underwriter will not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any **Insured** or his/her/its estate.

**(U)     Inspections and Surveys:**

The Underwriter or its duly authorized agent has the right but is not obliged to:

(1)     make inspections and surveys of the **Named Insured's** premises and operations at any time;

(2)     provide the **Insured** with reports on the conditions found;

(3)     recommend changes;

(4)     conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premium to be charged.

The Underwriter does not:

(a)     make safety inspections;

(b)     undertake to perform the duty of any entity to provide for the health or safety of workers or the public; nor

(c)     warrant that conditions:

(i)     are safe or healthy; or

(ii)     comply with laws, regulations or codes.

**(V)     Examination of Books and Records:**

The Underwriter may examine and audit the books and records of the **Insured** as they relate to this Policy.

HPF-30001-10-08                              29

**(W)**     **Assignment:**

No assignment of interest under this Policy shall bind the Underwriter without its written consent issued as a written endorsement to form a part of this Policy.

**(X)**     **Entire Agreement:**

The **Insureds** agree that this Policy, including the Application and any endorsements, constitutes the entire agreement between them and the Underwriter or any of its agents relating to this insurance.

**(Y)**     **Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof the Underwriter has caused this Policy to be executed by its authorized officers.**

CONFIDENTIAL                                                                        DEF-CPL_0000062440