IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 1:20-cv-783 |
| CLINICAL PATHOLOGY LABORATORIES, INC., SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED, | § § § § § § § | |
| Defendants. | § | |

**DEFENDANT CLINICAL PATHOLOGY LABORATORIES, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Clinical Pathology Laboratories, Inc. ("CPL") serves the following objections and responses to Plaintiff Homeland Insurance Company of New York's ("Homeland" or "Plaintiff") First Set of Requests for Production of Documents ("Requests").

## GENERAL OBJECTIONS

1.      CPL's objections are based on the information and documents available and known to CPL at this time.  Further investigation and analysis may disclose additional information responsive to the Requests.  In addition, future events may affect the relevance or responsiveness of answers.  CPL reserves the right to amend, supplement, or withdraw any objections to the

Requests as necessary or appropriate in light of information or knowledge obtained during the course of discovery in this matter.

2. CPL objects to the Requests to the extent they seek information or documents that are protected by attorney-client privilege, the attorney work-product doctrine, the joint-defense doctrine, the common-interest doctrine, or any other applicable privilege, protection, restriction, or immunity from discovery. Nothing contained in these objections is intended to be, nor should be construed as, a waiver of any privilege or protection.

3. CPL objects to the Requests to the extent they seek information or documents that are already in Homeland's possession, custody, or control, or to the extent that they seek information not within the possession, custody, or control of CPL.

4. CPL objects to the Requests to the extent they seek information or documents that are obtainable from some other source that is more convenient and/or less burdensome, including other parties to this action or third parties,

5. CPL objects to the Requests to the extent they seek information or documents that are publicly available, including newspaper articles, court papers or filings, or documents available on the internet.

6. CPL objects to the Requests to the extent they seek to impose any requirement or discovery obligation different from those under the Federal Rules of Civil Procedure, the Local Rules, and other applicable rules and/or orders of the Court.

7. CPL objects to the Requests to the extent they are vague, ambiguous, overbroad, unduly burdensome, unreasonably cumulative or duplicative, or oppressive, and to the extent that they seek information that is irrelevant, immaterial, and/or not proportional to the needs of this case.

8.     CPL objects to the Requests to the extent they require the disclosure of, or seek documents containing, confidential, trade secret, proprietary, and/or otherwise protected information.

9.     CPL objects to the Requests to the extent they seek information that is protected from disclosure by any protective order or confidentiality, licensing, or non-disclosure agreement binding on CPL.

10.     CPL objects to the Requests to the extent they may be construed to require CPL to concede the relevance or materiality of information or documents sought by the Requests.

11.     CPL's responses to the Requests are not intended to be, and shall not be construed as, an agreement or concurrence by CPL with Homeland's characterization of any fact and/or circumstance.

12.     CPL's responses are subject to and do not wave:

a.     all questions or objections as to (i) the competency, relevancy, materiality, or admissibility of evidence, or (ii) the use of any of the responses given or documents produced or the subject matter thereof in any subsequent proceeding or trial in this or any other action or for any other purpose;

b.     the right to object to other discovery proceedings involving or related to the subject matter of the Request to which these responses are directed; and

c.     the right at any time to revise, correct, supplement, or clarify any or all of the objections and responses, all of which are given subject to correction of any such omissions or errors.

13.     CPL's objections and responses do not constitute an adoption of Homeland's purported "Definitions" of words or phrases contained in the Requests.  Plaintiff objects to the

"Definitions" to the extent they are (1) unclear, ambiguous, overbroad, or unduly burdensome; (2) are inconsistent with the ordinary and customary meaning of words or phrases that they purport to define; and (3) purport to impose any requirement or discovery obligation beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, other applicable rules and orders of this Court, or pertinent case law.

14.     Where CPL has stated that it will produce non-privileged, responsive documents and/or information, such statements do not confirm that such documents and/or information are known to exist or do, in fact, exist.

15.     CPL objects to the Requests to the extent they purport to require CPL to produce "any" or "all" documents that support various of CPL's claims or theories.  CPL is not required to know, at this stage, "any" or "all" such documents, nor is CPL required to disclose the mental impressions of counsel as to the significance of various documents.  Production of any non-privileged, responsive documents and/or information does not, and shall not be construed as, a waiver of the ability to supplement these responses or as a confirmation that what is produced constitutes "any" or "all" documents supporting any of CPL's claims or theories.

16.     CPL objects to the Requests to the extent they require CPL to make legal conclusions or state legal theories or reasoning.

17.     CPL objects to the Requests to the extent they require CPL to interpret provisions of any insurance policies or other contracts.

18.     Documents produced by CPL in response to these Requests are subject to any protective order that is entered by the Court in this action.

19.     CPL will collect and produce electronically stored information ("ESI") consistent with, and subject to, any ESI-related order that is entered by the Court in this action.

20.     CPL objects to Definition 3 insofar as it provides that "You" and "Your" mean and refer to, among other things, "insurance agents/brokers" for CPL.  The relevant broker, AON, is an independent entity who acted as an intermediary between CPL and Homeland and/or OneBeacon.  Thus, CPL *does not* respond to these Requests on behalf of any "insurance agents/brokers."

21.     CPL objects to Definition 3 insofar as it provides that "You" and "Your" mean and refer to, among other things, "related (parent or subsidiary) entities" of CPL.  CPL *does not* respond to these Requests on behalf of any of its "related entities."  Such is in accord with the 2017 Policy (as defined in the Requests), which provides in pertinent part that "[n]o knowledge or information possessed by any Insured shall be imputed to any other Insured."

22.     CPL objects to Definition 4 insofar as it provides that "CPL" mean and refer to, among other things, "related (parent or subsidiary) entities" of CPL.  CPL *does not* respond to these Requests on behalf of any of its "related entities."  Such is in accord with the 2017 Policy (as defined in the Requests), which provides in pertinent part that "[n]o knowledge or information possessed by any Insured shall be imputed to any other Insured."

23.     All Responses set forth below are subject to and without waiver of any of the foregoing general objections and the other more specific objections set forth below in response to each Request.  CPL may not, in every instance, repeat or specifically incorporate these objections, however, they are intended to apply to all of its responses.

## OBJECTIONS AND RESPONSES TO REQUESTS

1.   All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the term "Board Meeting Minutes" is undefined and therefore vague and ambiguous.  CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all documents and communications . . . which reference or discuss the CervicalCheck program" rather than only those documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all documents and communications . . . which reference or discuss the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure

26(b)(1), CPL is only obligated to produce nonprivileged documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents and communications created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive documents and communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

2. All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No. 1. For that reason, CPL incorporates by reference its response to Request No. 1.

3. All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No. 1. For that reason, CPL incorporates by reference its response to Request No. 1.

4.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No. 1.  For that reason, CPL incorporates by reference its response to Request No. 1.

5.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No. 1.  For that reason, CPL incorporates by reference its response to Request No. 1.

6.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the term "Executive Meeting Minutes" is undefined and therefore vague and ambiguous.  CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all documents and communications . . . which reference or discuss the CervicalCheck program" rather than only those documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the

program from August 2010 to July 2013. During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all documents and communications . . . which reference or discuss the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents and communications created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive documents and

communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents

and communications regarding the Ms. S claim).

7.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No.

6.  For that reason, CPL incorporates by reference its response to Request No. 6.

8.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No.

6.  For that reason, CPL incorporates by reference its response to Request No. 6.

9.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No.

6.  For that reason, CPL incorporates by reference its response to Request No. 6.

10.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No. 6.  For that reason, CPL incorporates by reference its response to Request No. 6.

11.    All COMMUNICATIONS between YOU and AON which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications . . . which reference or discuss the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things

CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . which reference or discuss the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

12.    All COMMUNICATIONS between YOU and AON concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11. For that reason, CPL incorporates by reference its response to Request No. 11.

13.    All COMMUNICATIONS between YOU and AON which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11. For that reason, CPL incorporates by reference its response to Request No. 11.

14.  All COMMUNICATIONS between YOU and AON which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11.  For that reason, CPL incorporates by reference its response to Request No. 11.

15.  All COMMUNICATIONS between YOU and AON which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11.  For that reason, CPL incorporates by reference its response to Request No. 11.

16.  All COMMUNICATIONS from or to the office of the Risk Manager at SONIC referenced in CPL's May 15, 2018 bulk claim report to HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because CPL does not possess, has no custody over, and is not in control of, "all communications from or to the office of the Risk Manager at Sonic," a separate legal entity.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications in its possession, custody, or control that are responsive to this Request.

17.     All DOCUMENTS that evidence, refer, reflect, or relate to COMMUNICATIONS from or to the office of the Risk Manager at SONIC referenced in CPL's May 15, 2018 bulk claim report to HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because CPL does not possess, has no custody over, and is not in control of, "all documents" relating to "communications from or to the office of the Risk Manager at Sonic," a separate legal entity.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents in its possession, custody, or control that are responsive to this Request.

18.     All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications . . . relating to the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish

CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . relating to the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, communications regarding the Ms. S claim).

19. All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request No. 18. For that reason, CPL incorporates by reference its response to Request No. 18.

20.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND relating to the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request

No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

21.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request

No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

22.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request

No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

23.    All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss the CervicalCheck program.

 **RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad

and unduly burdensome insofar as it seeks "all communications . . . which reference or discuss the

CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case. The Irish CervicalCheck Program has been in place for over twelve years. CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013. During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . which reference or discuss the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews,

and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

24.     All COMMUNICATIONS between YOU and YOUR external auditor concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23. For that reason, CPL incorporates by reference its response to Request No. 23.

25.     All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23. For that reason, CPL incorporates by reference its response to Request No. 23.

26.     All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23. For that reason, CPL incorporates by reference its response to Request No. 23.

27.    All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23.  For that reason, CPL incorporates by reference its response to Request No. 23.

28.    All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications . . . which reference or discuss the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things

CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . which reference or discuss the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

29. All COMMUNICATIONS between YOU and YOUR internal auditor concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request No. 28. For that reason, CPL incorporates by reference its response to Request No. 28.

30. All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request No. 28. For that reason, CPL incorporates by reference its response to Request No. 28.

31.    All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request No. 28.  For that reason, CPL incorporates by reference its response to Request No. 28.

32.    All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request No. 28.  For that reason, CPL incorporates by reference its response to Request No. 28.

33.    All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all internal documents" which reference or relate to the "CervicalCheck program" rather than only those documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number

of claims brought by or on behalf of women who developed invasive cervical cancer. Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all internal documents" which reference or relate to the "CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive documents regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

34. All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request No. 33. For that reason, CPL incorporates by reference its response to Request No. 33.

35. All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request No. 33. For that reason, CPL incorporates by reference its response to Request No. 33.

36. All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request No. 33. For that reason, CPL incorporates by reference its response to Request No. 33.

37.     All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request

No. 33.  For that reason, CPL incorporates by reference its response to Request No. 33.

38.     All COMMUNICATIONS between YOU and William Fry regarding the Ms. ████ claim.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it

seeks communications that are protected by attorney-client privilege.

39.     All DOCUMENTS that evidence, refer, reflect, or relate to William Fry's analysis or evaluation of the Ms. ████ claim.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it

seeks attorney work-product and/or documents protected by attorney-client privilege.

40.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND relating to or triggered by Irish Cancer Audit Reviews in 2012-2013.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL

will produce on a rolling basis any non-privileged communications that are responsive to this

Request and that are in CPL's possession, custody, or control.

41.     All COMMUNICATIONS between or among AON and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND relating to or triggered by Irish Cancer Audit Reviews 2012-2013.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because CPL does not possess, has no custody over, and is not in control of, "all communications" to or from AON, a separate and independent entity.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

42.     All DOCUMENTS that evidence, refer, reflect, or relate to any monthly slide review meetings (as referenced in the NCSS site visit to CPL report from in or around May of 2011) that YOU attended concerning the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the term "monthly slide review meetings" is undefined and therefore vague and ambiguous.  CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all documents . . . concerning the CervicalCheck program" rather than only those documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of

invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all documents . . . concerning the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive documents regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

43. All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND relating to monthly slide review meetings (as referenced in the NCSS site visit to CPL report from in or around May of 2011) concerning the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because the term "monthly slide review meetings" is undefined and therefore vague and ambiguous. CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all

communications . . . concerning the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case. The Irish CervicalCheck Program has been in place for over twelve years. CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013. During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce seeks "all communications . . . concerning the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising

out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

44.    If it is YOUR contention that YOU did not have any knowledge of the 2012-2013 Irish Cancer Audit Reviews results as of July 27, 2016, please provide any DOCUMENTS and COMMUNICATIONS that support YOUR contention.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request to the extent that it suggests that CPL has any burden to prove whether and when it had knowledge of the 2012-2013 Irish Cancer Audit Reviews. CPL also specifically objects to the form of this Request.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents and communications that are responsive to this Request.

45.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to insurance coverage YOU have under any policy with Vero for any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL states that, during the relevant period, CPL had no insurance coverage under any policy issued by Vero. CPL will nevertheless produce on a rolling basis any non-privileged documents and communications that are in CPL's possession, custody, or control, and that are responsive to this Request, to the extent any exist.

46.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to denial(s) of insurance coverage for YOU under any policy with Vero for any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL states that, during the relevant period, CPL had no insurance coverage under any policy issued by Vero.  CPL will nevertheless produce on a rolling basis any non-privileged documents and communications that are in CPL's possession, custody, or control, and that are responsive to this Request, to the extent any exist.

47.     All COMMUNICATIONS between YOU and Vero concerning any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL states that, during the relevant period, CPL had no insurance coverage under any policy issued by Vero.  CPL will nevertheless produce on a rolling basis any non-privileged communications that are in CPL's possession, custody, or control, and that are responsive to this Request, to the extent any exist.

48.     All DOCUMENTS that evidence, refer, reflect, or relate to YOUR tender of any actual or potential claim arising out of or relating to the CervicalCheck program to Vero.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

49.    All DOCUMENTS that evidence, refer, reflect, or relate to YOUR tender of any actual or potential claim arising out of or relating to the CervicalCheck program to any insurer other than Vero and HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks information that is irrelevant to any party's claims or defenses in this case, in violation of Federal Rule of Civil Procedure 26(b)(1).  Documents regarding CPL's tender of claims to insurers who issued policies subsequent to those issued by Homeland are irrelevant to any party's claims or defenses in this case and therefore are not subject to production under Federal Rule of Civil Procedure 26(b)(1).

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents that are responsive to this Request, that are in its possession, custody, or control, and that regard CPL's tender of actual or potential claims relating to the Irish CervicalCheck Program to insurers that issued policies to CPL that cover periods during or before the periods of coverage afforded by the Policies.

50.    All COMMUNICATIONS between YOU and Vero concerning the Ms. ███████ matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

51.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. ███ ███ matter.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

52.     All COMMUNICATIONS between YOU and AON concerning the Ms. ███ ███ matter.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12. For that reason, CPL incorporates by reference its response to Request No. 12.

53.     All COMMUNICATIONS between YOU and Vero concerning the Ms. ███ matter.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47. For that reason, CPL incorporates by reference its response to Request No. 47.

54.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. ███ matter.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

55.  All COMMUNICATIONS between YOU and AON concerning the Ms. ▮▮▮ matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12.  For that reason, CPL incorporates by reference its response to Request No. 12.

56.  All COMMUNICATIONS between YOU and Vero concerning the Ms. ▮▮▮ matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

57.  All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. ▮▮▮ matter.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

58.  All COMMUNICATIONS between YOU and AON concerning the Ms. ▮▮▮ matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12.  For that reason, CPL incorporates by reference its response to Request No. 12.

59. All COMMUNICATIONS between YOU and Vero concerning the Ms. █████ matter.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47. For that reason, CPL incorporates by reference its response to Request No. 47.

60. All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. █████ matter.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

61. All COMMUNICATIONS between YOU and AON concerning the Ms. █████ matter.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12. For that reason, CPL incorporates by reference its response to Request No. 12.

62. All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND regarding the Irish government's decision to notify affected patients about the results of the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

63.     All COMMUNICATIONS between YOU and AON regarding the Irish government's decision to notify affected patients about the results of the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 13 insofar as it seeks a subset of documents sought through Request No. 13.  For that reason, CPL incorporates by reference its response to Request No. 13.

64.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

65.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to procurement of the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

66.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to procurement of the Worldwide Territory Endorsement.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 65 insofar as it seeks a subset of documents sought through Request No. 65.  For that reason, CPL incorporates by reference its response to Request No. 65.

67.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to the addition of MEDLAB and SONIC IRELAND to the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 65 insofar as it seeks a subset of documents sought through Request No. 65.  For that reason, CPL incorporates by reference its response to Request No. 65.

68.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to procurement of the 2017 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

69.     All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to procurement of the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

70.     All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to procurement of the Worldwide Territory Endorsement.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 69 insofar as it seeks a subset of documents sought through Request No. 69.  For that reason, CPL incorporates by reference its response to Request No. 69.

71. All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to the addition of MEDLAB and SONIC IRELAND to the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 69 insofar as it seeks a subset of documents sought through Request No. 69. For that reason, CPL incorporates by reference its response to Request No. 69.

72. All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to procurement of the 2017 POLICY.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

73. All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to procurement of the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections. Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

74. All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to the addition of MEDLAB and SONIC IRELAND to the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 73 insofar as it seeks a subset of documents sought through Request No. 73. For that reason, CPL incorporates by reference its response to Request No. 73.

75.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to procurement of the Worldwide Territory Endorsement.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 73 insofar as it seeks a subset of documents sought through Request No. 73.  For that reason, CPL incorporates by reference its response to Request No. 73.

76.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to procurement of the 2017 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

77.     All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service that evidence, refer, reflect, or relate to the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications" relating to the "Irish Cancer Audit Reviews" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications" relating to the "Irish Cancer

Audit Reviews." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard Cancer Audit Reviews.

78. All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service that evidence, refer, reflect, or relate to insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications" relating to the "insurance coverage for any actual or potential claim relating to the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications" relating to the "insurance coverage for any actual or potential claim relating to the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard insurance coverage for any actual or potential claim relating to the CervicalCheck program.

79.     All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications" relating to "any claims made or threatened to be made by any person relating to the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications" relating to "any claims made or threatened to be made by any person relating to the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that

are in CPL's possession, custody, or control, and that regard any claims made or threatened to be made by any person relating to the CervicalCheck program.

80. All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 79 insofar as it seeks a subset of documents sought through Request No. 79. For that reason, CPL incorporates by reference its response to Request No. 79.

81. All DOCUMENTS that evidence or reflect contracts and agreements between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, and/or National Screening Service relating to services performed for the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it seeks information that is irrelevant to any party's claims or defenses in this case, in violation of Federal Rule of Civil Procedure 26(b)(1). This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). Documents related to contracts or agreements between CPL and other entities have no bearing on Homeland's coverage defenses or whether CPL is entitled to insurance coverage under the Policies and therefore such documents are not subject to production pursuant to Federal Rule of Civil Procedure 26(b)(1).

82.     All DOCUMENTS that evidence, refer, reflect, or relate to contracts or agreements between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA relating to services performed for the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks information that is irrelevant to any party's claims or defenses in this case, in violation of Federal Rule of Civil Procedure 26(b)(1).  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  Documents related to contracts or agreements between CPL and other entities have no bearing on Homeland's coverage defenses or whether CPL is entitled to insurance coverage under the Policies and therefore such documents are not subject to production pursuant to Federal Rule of Civil Procedure 26(b)(1).

83.     The Irish Supreme Court judgment in the Ruth and Paul Morrissey v. HSE, et al. matter delivered on or about March 19, 2020, and any underlying Irish High Court decisions or judgments upon which the Supreme Court judgment was based.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is overly burdensome and seeks information that Homeland already possesses or that is equally available to Homeland.

84.     All DOCUMENTS that YOU contend support YOUR First Count (Breach of Contract) against HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents that are responsive to this Request.

85.     All DOCUMENTS that YOU contend support YOUR Second Count (Chapter 542 of the Texas Insurance Code) against HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents that are responsive to this Request.

86.     All DOCUMENTS that YOU contend support YOUR Third Count (Attorneys' Fees) against HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents that are responsive to this Request.

87.     Any response YOU provided to William Fry's April 2, 2020 summary of key points in the Irish Supreme Court decision in the Ruth and Paul Morrissey v. HSE, et al. matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks communications that are protected by attorney-client privilege.

*        *        *

Dated:  March 10, 2021

Respectfully submitted,

By: /s/ Greg Van Houten
    Ernest Martin, Jr. [Bar No. 13063300]
    Greg Van Houten*
    HAYNES AND BOONE, LLP
    2323 Victory Avenue, Suite 700
    Dallas, TX 75219
    Telephone: (214) 651-5651
    Facsimile: (214) 200-0519
    ernest.martin@haynesboone.com
    greg.vanhouten@haynesboone.com
    *Admitted Pro Hac Vice

    -and-

    Mark T. Beaman [Bar No. 01955700]
    Ryan Bueche [Bar No. 24064970]
    GERMER BEAMAN & BROWN PLLC
    One Barton Skyway
    1501 S. Mopac Expressway Suite A400
    Austin, TX 78746
    Telephone: (512) 482-3504
    Facsimile: (512) 472-0721
    mbeaman@germer-austin.com
    rbeuche@germer-austin.com

    **ATTORNEYS FOR DEFENDANT
    CLINICAL PATHOLOGY
    LABORATORIES, INC.**

## **CERTIFICATE OF SERVICE**

I, Greg Van Houten, hereby certify that on this 10th day of March 2021, I served counsel for Homeland with a copy of Defendant Clinical Pathology Laboratories Inc.'s objections and responses to Plaintiff Homeland Insurance Company of New York's First Set of Requests for Production of Documents.  I effectuated service via e-mail.


/s/ Greg Van Houten