# EXHIBIT BB

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, <br><br>     Plaintiff, <br><br> v. <br><br> CLINICAL PATHOLOGY LABORATORIES, INC., AND SONIC HEALTHCARE USA, INC., <br><br>     Defendants. | CIVIL ACTION NO.: 1-20-cv-783 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**[REDACTED VERSION]**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

   I.   Homeland's Breach of Warranty and Reformation Claims Fail as a Matter of Law. ....... 3

      A.   This Court Has Already Rejected Homeland's Warranty Claim. ............................ 3

      B.   The 2016 Letter Contains Representations, Not Warranties. .................................... 5

      C.   Homeland's Two-Part Reformation Claim Fails at Every Level. ............................. 6

   II.   Insurance Code § 705.005 Dooms Several Claims and Defenses as a Matter of Law. ..... 7

   III.   Homeland's Promissory Estoppel Claim Fails Because There is a Valid Contract. ......... 9

   IV.   Three of Homeland's Contract Defenses Fail as a Matter of Law. ............................... 10

      A.   MedLab's Notice to Vero Does Not Trigger the Prior Notice Exclusion. ............... 10

      B.   The Prior Knowledge Exclusion Does Not Apply Because Homeland Does Not Allege Defendants Should Have Known About the ICC Claims by June 2013. ...... 12

      C.   Homeland's Misrepresentation Defense Fails as a Matter of Law .......................... 14

   V.   Defense Costs Incurred in the ICC Claims Do Not Erode the 2017 Policy's Limit. ...... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Axis v. HLTH*,
  993 A.2d 1057 (Del. 2010) ................................................................................11

*Bruce Foods v. Tex. Gas*,
  No. 13-cv-231, 2014 WL 652312 (W.D. Tex. Feb. 19, 2014) ...............................10

*Cain v. Progressive*,
  448 S.W.3d 550 (Tex. App.—Houston [14th Dist.] 2014).....................................12

*Citizens v. Leslie*,
  No. 18-cv-00237, 2020 WL 1065723 (W.D. Tex. Mar. 5, 2020)...........................15

*Comiskey v. FH Partners*,
  373 S.W.3d 620 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ..................6

*In re Deepwater Horizon*,
  470 S.W.3d 452 (Tex. 2015).................................................................................5

*Dunn v. Prince*,
  327 F. App'x 452 (5th Cir. 2009) ........................................................................13

*Enserch v. Shand Morahan*,
  952 F.2d 1485 (5th Cir. 1992) ..........................................................................5, 6

*Exxon v. Ins. Co.*,
  568 S.W.3d 650 (Tex. 2019).............................................................................4, 5

*Gonzalez v. Mid-Cont.*,
  969 F.3d 554 (5th Cir. 2020) ..........................................................................11, 12

*Harrington v. Aetna Casualty & Surety Co.*,
  489 S.W.2d 171, 177 (Tex. Civ. App.—Waco 1972, writ ref'd n.r.e.) ....................5

*Hawk v. Chao*,
  418 F.3d 453 (5th Cir. 2005) ..............................................................................13

*Hoover Panel v. HAT*,
  819 F. App'x 190 (5th Cir. 2020) ......................................................................9, 10

*LaValley v. Virginia*,
  85 F. Supp. 2d 740 (N.D. Ohio 2000)..................................................................11

*Mosley v. Hous.*,
  951 F. Supp. 1279 (S.D. Tex. 1996) ................................................................13

*Pelican v. Am. Home*,
  No. 07-cv-00434, 2009 WL 10695215 (S.D. Tex. July 10, 2009) ....................7, 8

*Perez v. Genesco*,
  No. 09-cv-22, 2010 WL 11602142 (W.D. Tex. Jan. 8, 2010) .............................13

*Qiuhong v. Fid. & Guar.*,
  No. 06-41224, 2006 WL 5722134 (5th Cir. Nov. 22, 2006) ...................................4

*Republic Western Ins. v. Rockmore*,
  No. 02-cv-1569, 2005 WL 57284 (N.D. Tex. Jan. 10, 2005) ..................................3

*RSUI v. The Lynd Co.*,
  466 S.W.3d 113 (Tex. 2015) .................................................................4, 5, 11, 12

*Sistrunk v. TitleMax*,
  No. 14-cv-628-RP, 2017 WL 2392436 (W.D. Tex. June 2, 2017) ..........................2

*Thompson v. v. Diamond State Ins. Co.*,
  No. 06-cv-154, 2008 WL 11344903 (E.D. Tex. May 2, 2008) .............................8, 9

*Trammell Crow v. Virginia Sur.*,
  643 F. Supp. 2d 844 (N.D. Tex. 2008) ..............................................................10

*Wellington v. Houston Expl.*,
  267 S.W.3d 277 (Tex. App.—Houston [14th Dist.] 2008) .....................................5

**Statutes**

Fed. R. Evid. 201 ....................................................................................................13

Fed. R. Evid. 407 ....................................................................................................13

Texas Insurance Code § 705.005 ..................................................................7, 8, 9, 14

**Other Authorities**

Couch on Ins. § 254:122 (2021) ..............................................................................10

Irish Health Servs. Exec., Interval Cancer Rept. (Oct. 2020) ..............................13

## PRELIMINARY STATEMENT

This motion asks the Court to make several matter-of-law rulings based on the language of the policies, Texas law, and the Court's prior orders. In its response brief, Homeland runs away from the law and instead paints its policyholders as negatively as possible through a distorted factual picture that is neither plausible nor relevant to the questions before the Court. The fact is, Homeland's affirmative claims and several of its affirmative defense are not legally viable, fail as a matter of law right now, and should be dismissed.

Homeland's misrepresentation defense is a perfect example of such a legally defective claim. Homeland says CPL should have known about (and misrepresented its knowledge regarding) the coming wave of ICC Claims because CPL ███████████████████████ ███████████████████████████████████████ Even if that were plausible (it's not), this "fact issue" is legally irrelevant because Homeland did not comply with a required notice provision in the Insurance Code, which scuttles its misrepresentation defense. That is Texas law.

Knowing its misrepresentation defense doesn't work, Homeland has drummed up three affirmative claims to achieve the same result (denial of coverage), but they all fail as a matter of law. *First*, Homeland's breach of warranty claim fails for the same reason this Court dismissed it earlier this year—the 2016 Letter wasn't incorporated into either insurance policy. *Second*, Homeland's reformation claim fails because there is no evidence the parties agreed to endorse the policies with the 2016 Letter, so there is no mistake to correct. *Third*, Homeland's promissory estoppel claim fails for the same reason its negligent misrepresentation claim did—the parties' relationship is governed by a contract. The fortuity doctrine doesn't rescue any of these claims because it is a defense to coverage, not a source of affirmative relief. And the doctrine doesn't apply here for several reasons, including because Homeland hasn't pled it.

Two similar defenses are at issue in this motion, but they fare no better. The prior notice exclusion is inapplicable because it is triggered only if a claim *that is covered by the policy* is tendered to another insurer. That never happened. Homeland's argument to the contrary rests on a misinterpretation of the contract that the Court can reject as a matter of law.  The prior knowledge exclusion is also inapplicable because Homeland has not pled knowledge that meets its terms:  that CPL knew about the potential for the underlying claims before June 30, 2013, the "Inception" date of the insurance program. ████████████████████████████████████████

████████████████████████████████████████████.

There is no disagreement that the final issue raised in Defendants' motion is a question of contract interpretation ripe for summary judgment: whether defense costs incurred in the ICC Claims erode the 2017 Policy's limit. The policy language says they do not, yet Homeland says it should still prevail because it shouldn't have to use "magic words." But Texas law calls for contracts to be applied by their plain language, and Homeland cannot conjure any viable textual argument in support of its position. Thus, and to further streamline the resolution of this case, the Court can and should rule that defense costs do not erode the limits of the 2017 Policy.

## ARGUMENT

Defendants' Motion is built on the pleadings, policy language, and case law—all of which support the dismissal of the challenged claims and defenses. Homeland says summary judgment should be denied because of "fact issues." There's no question the parties disagree about certain facts.  But that's not the standard for defeating summary judgment.  The only fact issues that matter are *material* fact issues—those that "will influence the outcome of the pending [motion]." *Sistrunk v. TitleMax*, No. 14-cv-628-RP, 2017 WL 2392436, at *2 (W.D. Tex. June 2, 2017). There are no such fact issues here after the Court resolves certain questions of law about the meaning of the polices and the requirements of Texas law. The Motion should be granted.

I.      **Homeland's Breach of Warranty and Reformation Claims Fail as a Matter of Law.**

      A.      **This Court Has Already Rejected Homeland's Warranty Claim.**

Homeland's warranty claim fails because it continues to rely on theories this Court has rejected. [Order, Dkt. 28 at 11; Order, Dkt. 54, at 2–3]. In May, the Court held that the 2017 Policy cannot be voided "by a letter which it did not incorporate into its terms." [Order, Dkt. 28]. Homeland moved for and the Court denied reconsideration on this issue. [Order, Dkt. 54, at 2–3]. Remarkably, Homeland ignores these rulings and argues incorporation isn't necessary.[1] But it is, and nothing has changed about the Court's rulings, which were based on the text of the policies and Texas law making clear the policy language could only be changed by an attached written endorsement. [Order, Dkt. 54 at 2 (Texas Supreme Court and Fifth Circuit citations omitted)].[2]

Homeland also says that the 2016 Letter *was* incorporated into the policies—that the 2016 Policy incorporates the letter, which then carried forward into the 2017 Policy—but the Court has rejected these arguments, too. [Order, Dkt. 54 at 3]. It should do so again.

*The 2016 Policy Did Not Incorporate the Letter.* The Court has already rejected Homeland's three arguments in support of its theory that the 2016 Policy incorporates the letter.

*First,* Homeland argues that language in the 2016 Letter calls for incorporation, but as the Court has consistently acknowledged, only the policy controls what it incorporates.[3]

*Second*, Homeland argues that the application for the 2016 Policy provides for incorporation, but the Court rejected that argument too when it denied reconsideration.[4] The Court

---

[1] *See* Pl.'s Resp. at 7 [Dkt. 73].

[2] *See also Republic Western Ins. v. Rockmore*, No. 02-cv-1569, 2005 WL 57284, at *10, n.12 (N.D. Tex. Jan. 10, 2005) (refusing to consider alleged warranty not referenced in policy).

[3] Order at 9 [Dkt. 28] (dismissing warranty claim because "Homeland does not point to language in either insurance policy that incorporated the 2016 Letter"); Order at 2–3 [Dkt. 54] (denying Homeland's motion for reconsideration).

[4] *Compare* Pl.'s Reply in Supp. of Mot. for Recon. at 5–6 [Dkt. 48] (arguing application supports incorporation) *with* Order at 2–3 [Dkt. 54] (denying Homeland's motion).

has also noted that "no application is attached to either insurance policy," which is key because the policies incorporate any "application attached to this Policy." [Order, Dkt. 28 at 9].[5] And even if the 2016 application were somehow incorporated into the 2016 Policy, that makes no difference because the application did *not* incorporate the letter. It only incorporated materials "submitted *with* th[e] application," and here the letter was submitted three months *after* the application.[6]

*Third*, Homeland argues the 2016 Policy incorporates the letter because it was issued "in reliance on all statements made and information furnished to the Underwriter," but the Court saw a near-identical argument when dismissing this claim.[7] That ruling was correct because, although "magic words" are not required, the policy must refer to the document to be incorporated.[8] The text Homeland highlights does not refer to the letter. Nor does any other policy language.

And even if Homeland's interpretation were somehow "reasonable" or "a more accurate reflection of the parties' intent"—and it is not—Defendants' interpretation is *per se* reasonable given the lack of incorporation language and therefore must prevail. *RSUI v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (upon two reasonable interpretations, the insured's prevails).

*The 2017 Policy Also Did Not Incorporate the Letter.* In any event, the 2016 Letter has no bearing on the 2017 Policy. For the 2017 Policy to incorporate the letter, the policy would need

---

Homeland states in this discussion that Aon, an insurance broker, was acting as Defendants' agent. *See* Pl.'s Resp. at 12 [Dkt. 73]. Defendants disagree but that discussion is irrelevant in any event because it is divorced from the only thing that matters—the policy language.

[5] Homeland cites *Qiuhong* in support of its application argument, but there the insurer delivered the policy with the application attached. *See* Br. of App., *Qiuhong v. Fid. & Guar.*, No. 06-41224, 2006 WL 5722134, at *5 (5th Cir. Nov. 22, 2006).

[6] *Compare* Pl.'s 2d Am. Compl. ¶ 54 [Dkt. 56] (2016 Letter executed on July 27, 2016) *with* Davis Decl. at Ex. 1 [Dkt. 73-12] (application for 2016 Policy submitted and executed on April 11, 2016).

[7] *See* Order at 9 [Dkt. 28] (noting "Homeland broadly pleads that the expanded coverage under the 2016 Policy was issued 'in reliance on the truth of the warranties in the [2016 Letter]'").

[8] *See Exxon v. Ins. Co.*, 568 S.W.3d 650, 657 (Tex. 2019) ("Magic words are not required, but an extrinsic document may not be considered unless the policy clearly manifests an intent to incorporate its terms.").

to "clearly manifest[] an intent to incorporate" the letter, and it does not. *See Exxon Mobil*, 568 S.W.3d at 657. This is also why the rate stabilization endorsement in the *2016 Policy* has no relevance to the 2017 Policy, and why Homeland's bold assertion that the letter should be *automatically* carried forward is an incorrect statement of Texas law.[9] For Homeland to incorporate the 2016 Letter into the 2017 Policy, the 2017 Policy would have to say so—by endorsement or otherwise—and it does not. Thus, Homeland's argument fails.

*There Are No Material Fact Issues.* Homeland closes its incorporation argument by suggesting, without citation, that it should be given an opportunity to develop parol evidence. Parol evidence is inadmissible because the policies are unambiguous about incorporation,[10] and even if they were ambiguous, Texas law would call for the adoption of Defendants' construction. *RSUI*, 466 S.W.3d at 118–19 (ambiguity is resolved "by adopting the construction that most favors the insured"); *Tex. Indus. v. Factory Mut.*, 486 F.3d 844, 848–49 (5th Cir. 2007) (same).

### B.    The 2016 Letter Contains Representations, Not Warranties.

The incorporation issue is fatal to Homeland's warranty claim, but the Court can also dismiss the claim as a matter of law because it relies upon the 2016 Letter which, on its face, contains "representations" and not "warranties."[11] Homeland says this distinction should go to a jury, but that's not how the law works—judges, not juries, resolve contract interpretation questions. The Fifth Circuit held just that in *Enserch v. Shand Morahan*, 952 F.2d 1485, 1497 (5th

---

[9] In *Harrington*, the case Homeland cites for that striking proposition, the court remarked that it could "find no Texas authorities on the question" and it then reached a decision on other grounds. 489 S.W.2d 171, 177 (Tex. Civ. App.—Waco 1972, writ ref'd n.r.e.). It is not surprising *Harrington* does not say what Homeland says it does, as the Texas Supreme Court has held the exact opposite. *See, e.g.*, *In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015).

[10] *See Wellington v. Houston Expl.*, 267 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.] 2008), order withdrawn (Apr. 9, 2010), *aff'd*, 352 S.W.3d 462 (Tex. 2011).

[11] Pl.'s 2d Am. Compl. ¶ 54 [Dkt. 56].

Cir. 1992).[12] One of the insurers in *Enserch* argued that because the policies mentioned representations and warranties, every statement should be considered both. The Fifth Circuit disagreed, holding that a warranty will exist only where an insurer makes its existence "unambiguous and clear." *Id.* at 1497–98.[13] The insurer in *Enserch* at least had the benefit of the policy using the word "warranty." But here, neither the letter nor the policies uses the word "warranty," only "representation."[14] That makes the result reached in *Enserch* even more applicable here: the statements in the 2016 Letter were representations, not warranties.[15]

### C. Homeland's Two-Part Reformation Claim Fails at Every Level.

Without incorporation language in the policy, Homeland seeks to reform the policies in two ways. First it first seeks to reform the policies because of alleged mistakes in the 2016 Letter.[16] The Court already dismissed this argument, and can do so again, because "the alleged mistake must be in the document that the party seeks to reform." [Order, Dkt. 55 at 12 (citations omitted)]. Homeland also seeks to reform the policies to incorporate the 2016 Letter because, according to Homeland, it was a mistake not to incorporate the letter. This argument fails for three reasons.

*First*, the 2016 Policy cannot be reformed to include the 2016 Letter because the policy was drafted by June 28, 2016 and the letter was signed on July 27, 2016.[17] *See Comiskey v. FH*

---

[12] The insurers in *Enserch* appealed the court's refusal to submit a breach of warranty claim to the jury. Br. for App., *Enserch*, No. 90-1649, 1991 WL 11009053 (5th Cir. Mar. 26, 1991).

[13] Homeland cites *Alliance* as undercutting *Enserch* and Defendants' position at-large, but it does no such thing—it supports Defendants' position, as it provides that "an applicant who represents something *does not* warrant it." No. 97-cv-2448, 1999 WL 118798, at *2 (N.D. Tex. Mar. 2, 1999). Here the letter and the policies refer to representations—not warranties—and so it follows that Defendants did not "warrant" anything. *Id.* at *4.

[14] Pl.'s 2d Am. Compl. ¶ 54 (2016 Letter) [Dkt. 56]; *id.* at Ex. 4 (the 2017 Policy) (p. 178 of 241).

[15] Although legally irrelevant, Homeland referred to the 2016 Letter as the "Representation Letter," without ever using the word "warranty," in seven letters to Defendants from September 19, 2018 to July 10, 2020. *See* Van Houten Decl. at Exs. A-2 through A-8 [Dkt. 63].

[16] *See* Pl.'s 2d Am. Compl. ¶¶ 234–35 [Dkt. 56].

[17] *See* Davis Decl. at Ex. 2 [Dkt. 73-13] (providing that 2016 Policy was bound on June 28, 2016).

*Partners*, 373 S.W.3d 620, 634 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (instrument cannot be reformed if drafted *before* the alleged mistake). Homeland cites nothing refuting this rule. *Second*, neither the 2016 nor 2017 Policy can be reformed to include the letter because Homeland does not allege or prove that the parties agreed to *endorse* the policies with the 2016 Letter,[18] and this Court has held that the policies can only be altered "by written endorsement." [Order, Dkt. 54 at 2]. *Third*, Homeland certainly cannot reform the 2017 Policy because there is no evidence of an "original agreement" to incorporate the letter into that policy. Indeed, the 2016 Letter itself provides that it "will be deemed to be a part of *the* policy"—*i.e.*, the 2016 Policy—and it was executed a full year before negotiations over the 2017 Policy began.[19]

## II.     Insurance Code § 705.005 Dooms Several Claims and Defenses as a Matter of Law.

Summary judgment is also required on several of Homeland's claims and defenses because of its failure to satisfy the notice requirements in Texas Insurance Code § 705.005. Under the statute, when an insurer seeks to invalidate insurance coverage based on alleged misrepresentations, as Homeland does, the insurer must give notice of its intent to do so within 90 days of when it "discovered the falsity of the representation." TEX. INS. CODE § 705.005.

There's no question § 705.005 applies to Homeland's misrepresentation defense, the central issue in this case. Nor is there a fact issue about whether Homeland gave timely notice; Homeland's own words show that it did not. As an initial matter, Homeland had the "burden of pleading" compliance with § 705.005 and—despite filing three complaints—Homeland has not done so. *See Pelican v. Am. Home*, No. 07-cv-00434, 2009 WL 10695215, at *6 (S.D. Tex. July 10, 2009). Like in *Pelican*, Homeland "has not alleged when it discovered the falsity of the alleged

---

[18] Homeland's declarations do not state that both parties agreed to endorse the policies with the letter. Davis Decl. [Dkt. 73-11]; Craig Decl. [Dkt. 73-10]. At best, Homeland claims it intended to have the letter incorporated. But unilateral subjective intent does not support reformation.

[19] *See* Pl.'s 2d Am. Compl. at Ex. 1 (the 2016 Letter) (p. 61 of 241) [Dkt. 56] (emphasis added).

misrepresentations, nor the date on which it alerted [CPL] that it refused to be bound by the policy." *Id.* Without such allegations, "the purported misrepresentations do not provide a defense to liability." *Id.* Compliance with § 705.005 can be resolved on this ground alone.

Lack of pleading aside, Homeland now argues that it complied with § 705.005 because it says it discovered the alleged misrepresentations in May 2020 and denied coverage in July 2020.[20] But the evidence is undisputed that at least by October 2019—and these are *Homeland's* words— it had "identified potential misrepresentations in CPL's letter from Stephen Shumpert dated July 27, 2016."[21] This is the same position Homeland took in May 2020 and July 2020.[22] Homeland doesn't say it discovered any relevant facts in the interim and it offers no evidence to that effect. Applying the plain language of § 705.005, and as a matter of law, Homeland "discovered" the alleged misrepresentations by at least October 2019, and the evidence is undisputed that it did not provide the required statutory notice within the next 90 days. Homeland's arguments to the contrary ask the Court to rewrite the statute so that the deadline runs only when the insurer has reached a metaphysical certainty about the misrepresentation—but that would render the statute meaningless by allowing insurers to string their insureds along for years by feigning uncertainty (like Homeland did). The Court should instead apply the language of § 705.005 and hold that Homeland failed to satisfy it as a matter of law.[23]

---

[20] *See* Pl.'s Resp. at 11 [Dkt. 73].

[21] Van Houten Decl. at Ex. A-6 (p. 4 of 7) [Dkt. 63-8].

[22] Van Houten Decl. at Exs. A-3 (p. 1 of 9) [Dkt. 63-5] & A-2 (pp. 1, 5–8 of 14) [Dkt. 63-4].

[23] In a half-hearted attempt to avoid this result, Homeland seeks to recast its argument as alleging misrepresentations in the "claims process" rather than the application process. *See* Pl.'s Resp. at 10–11 [Dkt. 73]. Even assuming this distinction were legally relevant, it is a mirage here because Homeland's theory is that CPL has continued to deny that it made misrepresentations in the application process. *See id.* This "failure to disavow" theory does not escape the reach of § 705.005, Homeland cites no authority to that effect, and federal courts have rejected similar arguments. *See Thompson v. v. Diamond State Ins. Co.*, No. 06-cv-154, 2008 WL 11344903, at *4 n.3 (E.D. Tex. May 2, 2008).

In its response, Homeland tries to limit the impact of this statutory shortcoming by arguing that § 705.005 does not apply to its affirmative claims for breach of warranty, reformation, promissory estoppel, and declaratory judgment. That's incorrect.  The statute applies whenever an insurer refuses to be "bound by the policy" based on an alleged misrepresentation. *See, e.g., Thompson*, 2008 WL 11344903, at *3. And that is precisely the relief Homeland seeks for its affirmative claims: each one asks to invalidate coverage.[24] So § 705.005 applies. Though the Court took a narrower view of the statute in its original ruling on Defendants' Motion to Dismiss, Defendants understood the Court's reconsidered ruling as leaving this issue open. [Dkt. 55 at 15.] Defendants therefore incorporate by reference their reconsideration briefing explaining why § 705.005 applies to claims like those at issue here and citing Texas cases holding just that.[25]

## III.   Homeland's Promissory Estoppel Claim Fails Because There is a Valid Contract.

Homeland's promissory estoppel claim also fails under well-settled Texas contract law. There is no dispute that a valid and enforceable contract (the 2017 Policy) governs the subject matter of the parties' dispute: whether insurance coverage exists. That ends this claim, as promissory estoppel is not available when a "valid contract covers the subject matter of [the] dispute." *See Hoover Panel v. HAT*, 819 F. App'x 190, 199 (5th Cir. 2020).

Homeland nevertheless argues that it can assert a promissory estoppel claim for any alleged promise that didn't make its way into the contract. That's not the law. If parties enter a contract, the contract governs their entire relationship, and any prior promises are merged into that contract.

---

[24] *See* Pl.'s 2d Am. Compl. ¶¶ 226–41 [Dkt. 56]

[25] *See* Defs.' Mot. to Recon. at 6–7 (Dkt. 36) (listing Texas appellate cases). Homeland says other courts have held § 705.005 does not apply to warranty claims, but two of its cases—*Old Reliable* and *Lane*—do not address the notice statute. *See* Pl.'s Resp. at 9-10 [Dkt. 73]. And *Thompson* shows why Homeland's position is incorrect, as there the court held § 705.005 applied when the insurer sought to avoid coverage under a condition precedent, which effectively is what Homeland seeks to do with its warranty claim. No. 06-cv-154, 2008 WL 11344903, at *4.

*See id.* at 197. If Homeland didn't negotiate for a provision incorporating the 2016 Letter, Homeland doesn't get to add one now. *Bruce Foods* doesn't say anything to the contrary. The promissory estoppel claim there arose from a new and independent promise that was made years after the parties' written contract. *Bruce Foods v. Tex. Gas*, No. 13-cv-231, 2014 WL 652312, at *1–3 (W.D. Tex. Feb. 19, 2014). In that situation, the plaintiff was permitted to allege that the new promise was itself a binding contract or was, alternatively, enforceable by way of promissory estoppel. *Id.* at *23–26. *Bruce Foods* does not support Homeland's misguided claim.

If Homeland has a claim for misrepresentations in the 2016 Letter, its remedy lies in the policy's misrepresentation clause. Homeland knows this, as it *also* pleads a misrepresentation defense hinging on that clause. And that's the point: because the parties' relationship is governed by a valid contract, Homeland's promissory estoppel claim cannot plug any hole.

## IV. Three of Homeland's Contract Defenses Fail as a Matter of Law.

In addition to dismissing Homeland's affirmative claims, the Court can and should dismiss three contract defenses that fail as a matter of law. At the outset of its response, Homeland raises a brand-new contract defense (the fortuity doctrine) as a threshold issue in the case. But that defense is not before the Court in this Motion, and for good reason: Homeland hasn't pled it.[26] Even if the fortuity doctrine were properly teed up, it would fail for the same reason as the related exclusions addressed below—CPL did not know about any ICC Claims at the time of contracting.

### A. MedLab's Notice to Vero Does Not Trigger the Prior Notice Exclusion.

Homeland says the prior notice exclusion applies to bar CPL's claim because another company (MedLab) provided notice to another insurer (Vero) in 2016. Homeland is wrong as a

---

[26] Pl.'s Answer to Defs.' Am. Countercl. at 44–50 [Dkt. 53]; *Trammell Crow v. Virginia Sur.*, 643 F. Supp. 2d 844, 855 (N.D. Tex. 2008) (insurer has burden of establishing fortuity defense); 17A COUCH ON INS. § 254:122 (2021) (known loss and lack of fortuity are affirmative defenses).

matter of contract interpretation, as the exclusion only applies if MedLab's notice regarded a claim "**otherwise covered under Insuring Agreement (A).**" Homeland concedes MedLab is not covered under the policy for the ICC Claims—so the exclusion does not apply.[27]

Homeland argues the "otherwise covered" language references CPL's claim, not MedLab's prior notice.[28] That argument is linguistically incorrect because "otherwise covered" modifies the portion of the exclusion that references the claim for which the prior notice was given.[29] The exclusion says Homeland won't cover Claim A if Claim B was noticed to another insurer *and* if Claim B is "otherwise covered" by this policy—it does not say Homeland won't cover Claim A if Claim B was noticed to another insurer *and* if Claim A is "otherwise covered" by this policy. The latter reading, which is Homeland's, also fails because a provision providing for the exclusion of Claim A, but only if Claim A is "otherwise covered," would be superfluous because exclusions only apply and are only relevant if a claim is "otherwise covered by the insuring agreement."[30]

Homeland's misguided contract interpretation also fails because the exclusion must be "strictly construed" against Homeland—and Defendants' interpretation is at least reasonable. *Nat'l Union Fire Ins. v. Hudson Energy*, 811 S.W.2d 552, 555 (Tex. 1991). And even if Homeland's interpretation was also reasonable, Texas law requires the adoption of Defendants' interpretation as a matter of law. *See RSUI*, 466 S.W.3d at 118–19.[31]

---

[27] *See* Pl.'s 2d Am. Compl. ¶ 1 [Dkt. 56] (alleging MedLab is only covered for domestic claims).

[28] Homeland also suggests CPL may have given MedLab's insurer, Vero, notice of the ICC Claims. *See* Pl.'s Resp. at 20–21 [Dkt. 73]. The evidence Homeland cites on that point says nothing of the sort—it is a letter from Vero providing that "CPL and Sonic US are *not* covered by the Vero policy." *See* Fasone Decl. at Ex. 21 [Dkt. 73-9] (emphasis added).

[29] *See* Pl.'s 2d Am. Compl. at Ex. 4 (the 2017 Policy) (p. 168 of 241) [Dkt. 56].

[30] *Gonzalez v. Mid-Cont.*, 969 F.3d 554, 562 (5th Cir. 2020) (refusing to render term "superfluous").

[31] Homeland's cases demonstrate the exclusion is designed to prevent the *same insured* from tapping into two policies *for the same thing*—that didn't happen here. *LaValley v. Virginia*, 85 F. Supp. 2d 740, 741 (N.D. Ohio 2000); *Axis v. HLTH*, 993 A.2d 1057, 1059 (Del. 2010).

**B.      The Prior Knowledge Exclusion Does Not Apply Because Homeland Does Not Allege Defendants Should Have Known About the ICC Claims by June 2013.**

Applying the prior knowledge exclusion also turns on a question of contract interpretation that the Court can resolve now as a matter of law. There is no dispute that the relevant look-back date for purposes of this exclusion is when Homeland first began to provide the insureds with "continuous and uninterrupted coverage."[32] That date is June 30, 2013, when Homeland first issued the medical malpractice insurance that the insureds carried until June 30, 2018.[33]

In response, Homeland tries to add the word "identical" to "continuous and uninterrupted coverage"—making it "continuous and uninterrupted *identical* coverage"—which Homeland asserts would jump the inception date ahead to June 30, 2016. Courts applying Texas law don't read words into contracts, however, and Homeland's reading violates another bedrock principle of contract interpretation—it would render the look-back portion of the exclusion meaningless.[34] That is because *all* the Homeland policies differ in material ways;[35] so, under Homeland's reading, the look-back portion of the exclusion *never* applies because there is *never* continuous and uninterrupted *identical* coverage. That cannot be right and is not. Homeland's interpretation also fails because, at a minimum, Defendants' interpretation of the look-back provision is reasonable, so again, Texas law requires its adoption.[36] *See RSUI*, 466 S.W.3d at 118–19. The Court should hold that the relevant look-back date is June 2013.[37]

---

[32] *See* Pl.'s Resp. at 22 [Dkt. 73].

[33] *See* Defs.' Mot. for Summ. J. at 4, n.6 [Dkt. 63].

[34] *See Gonzalez*, *supra* n.29 (Texas law requires that every sentence and word are given meaning).

[35] *E.g.*, Defs.' Mot. for Summ. J. at 6, n.27 [Dkt. 63] (comparing 2016 and 2017 policies).

[36] *E.g.*, *Cain v. Progressive*, 448 S.W.3d 550, 554–56 (Tex. App.—Houston [14th Dist.] 2014) (insurer provided "continuous coverage" despite adjustment of additional insureds).

[37] Homeland's argument that voiding the 2016 Policy would affect the look-back date fares no better because the look-back date hinges on whether coverage "*was* in effect, without interruption" since the first policy was issued. Pl.'s 2d Am. Compl. at Ex. 4 (the 2017 Policy) (p. 209 of 241) [Dkt. 56] (emphasis added).  Here, coverage "*was* in effect, without interruption," since June 2013.

And there is no triable fact issue about whether Defendants knew about the potential for the ICC Claims ██████████—because Homeland only alleges ████████████

████████████████████████████████████████████

████████████.[38] Homeland attempts to change its factual theory in its response, but, with no pleading of knowledge before the look-back date, its new theory fails as a matter of law.[39]

Even if the Court were to entertain ██████████████—and it should not—it is not plausible on its face.[40]  Homeland claims, in essence, that medical screening providers  like CPL █████████████████████████████████.

That is striking. Peer reviews are a fundamental quality improvement component of all screening programs.[41] With the Irish program, if a patient was diagnosed with cancer, her slides were reviewed to assess if the program could be improved.[42] These results were, up until February 2016, not disclosed for the same reason subsequent remedial measures are not admissible evidence: public policy encouraging people to take steps to make things better and safer.[43]

---

[38] *See* Order at 2, [Dkt. 55]; Pl.'s 2d Am. Compl. ¶¶ 26–27 [Dkt. 56].

[39] *See* Pl.'s 2d Am. Compl. [Dkt. 56]; *Mosley v. Hous.*, 951 F. Supp. 1279, 1287 (S.D. Tex. 1996) (one cannot "change her theory of the case after summary judgment motions have been filed").

[40] *Dunn v. Prince*, 327 F. App'x 452, 453 (5th Cir. 2009) (theory must be "plausible" and "[c]onclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence are insufficient to defeat . . . summary judgment").

[41] Ex. A-10, IRISH HEALTH SERVS. EXEC., INTERVAL CANCER REPT. at 19 (Oct. 2020) (the  "ICR") ("The purpose of clinical audit in screening programmes is quality assurance and quality improvement (professional education and development) in order to provide rigorous internal and external quality control."); *see also Perez v. Genesco*, No. 09-cv-22, 2010 WL 11602142, at *2 (W.D. Tex. Jan. 8, 2010) (accepting evidence on reply because it served "to rebut arguments offered [in] Response"). The Court may take judicial notice under Fed. R. Evid. 201 of the ICR because it was prepared by the Irish government and is available at the following URL: https://www2.hse.ie/file-library/cervical-screening/interval-cancer-report-cervicalcheck.pdf.   *See Hawk v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (judicial notice of agency materials on website).

[42] *See id.* at 19, 22 (purpose of audits was "to improve patient care and outcomes through systematic review of care against explicit criteria ").

[43] *See id.*; *see also* Fed. R. Evid. 407 advisory committee's note (purpose of the rule is to promote safety); Pl.'s 2d Am. Compl. ¶ 26 [Dkt. 56].

Adopting Homeland's theory— ████████████████████████████████████

████████████—would render screening programs uninsurable and perhaps then economically

unviable, an enormous blow to public health.[44] That can't be the answer. Nor is it consistent with

the evidence in this case, which shows that Defendants didn't know about the possibility of these

claims ████████████. The prior knowledge exclusion does not apply as a matter of law.

### C.   Homeland's Misrepresentation Defense Fails as a Matter of Law.

Homeland's misrepresentation defense fails for two reasons discussed above. First, it relies

on the unincorporated 2016 Letter. *Supra* § I.A.  Second, Homeland did not comply with Insurance

Code § 705.005. *Supra* § II. The Court can and should dispose of this defense now.

## V.   Defense Costs Incurred in the ICC Claims Do Not Erode the 2017 Policy's Limit.

Homeland does not disagree that the scope of recoverable "Defense Expenses" under the

2017 Policy is a contract question that can be resolved as a matter of law.  And the language of the

Policy answers the question:  it covers Defense Expenses "*in addition to* the Limits of Liability."[45]

That means coverage for "Defense Expenses" is uncapped and must continue until the "Limits of

Liability" are exhausted by the payment of "Loss," like damages and settlements.[46] So, when the

worldwide territory endorsement says Homeland will pay for Defense Expenses and Loss "up to

the applicable Limit of Liability," the word "applicable" means something—and because there is

no "Limit of Liability" for "Defense Expenses," only for "Loss," it follows that "Defense

Expenses" incurred under the endorsement are covered in addition to, and do not erode, limits.[47]

Homeland argues that the endorsement "plainly states that defense costs erode limits."  But

the endorsement doesn't say anything like that, and Homeland knows how to draft such

---

[44] Ex. A-10, Interval Cancer Report at 2 ("…..[C]ervical cancer screening saves lives.").
[45] Pl.'s 2d Am. Compl. at Ex. 4 (the 2017 Policy) (p. 155 of 241) [Dkt. 56] (emphasis added).
[46] *See id.* (pp. 155, 159, 170, & 178 of 241).
[47] *See id.* (p. 202 of 241).

language—it did so with the medical marijuana endorsement.[48] Without that language in the worldwide territory endorsement, Homeland twists the language that it did use and argues that the phrase "applicable Limit of Liability" is used to note that claims covered by the endorsement are subject to either the per-claim or aggregate limit of liability, which are listed at Item 4.A of the policy's Declarations. That reading fails because the endorsement doesn't say that, nor does it need to, as claims covered by the endorsement are *already* subject to the per-claim and aggregate limits. Indeed, the endorsement is an extension of Insuring Agreement (A), which provides for coverage of claims "up to the applicable Limit of Liability shown in Item 4.A. of the Declarations."[49] So, Homeland's interpretation calls for redundancy—having the policy say the same thing twice. Courts applying Texas law will not read redundancy into contracts, and so Homeland's interpretation fails.  *See Citizens v. Leslie*, No. 18-cv-00237,  2020 WL 1065723, at *3 (W.D. Tex. Mar. 5, 2020) (rejecting interpretation of contract that rendered term "redundant").[50]

And, even if Homeland's reading made sense—and it does not—Homeland cannot establish that Defendants' interpretation is unreasonable when (1) the 2017 Policy expressly covers defense expenses in addition to limits, and (2) Homeland wrote "defense costs erode limits" in the medical marijuana endorsement but did not in the worldwide territory endorsement. Because Homeland cannot establish that Defendants' interpretation is unreasonable, Texas law requires the adoption of Defendants' interpretation. *See Tex. Indus.*, 486 F.3d at 848–49.[51]

---

[48] *See* Pl.'s 2d Am. Compl. at Ex. 4 (the 2017 Policy) (p. 219 of 241) [Dkt. 56].

[49] *See id.* (pp. 154, 202 of 241). The endorsement mentions "Item 4.A of the Declarations," but to describe where one may find the deductible or self-insured retention that may apply to a claim.

[50] Homeland also argues that the purpose of the endorsement is to "vary the language of the main body of the policy." *See* Pl.'s Resp. at 25 [Dkt. 73]. Defendants agree. The endorsement varies the body of the policy by extending coverage abroad. *See* Pl.'s 2d Am. Compl. at Ex. 4 (the 2017 Policy) (p. 202 of 241) [Dkt. 56]. It does not also vary coverage for defense expenses. *See id.*

[51] Lastly, Homeland's declaratory judgment claim should be dismissed because Homeland's contractual defenses can be adjudicated in conjunction with Defendants' contract claim.

Dated: November 8, 2021

Respectfully submitted,


By: /s/ Ernest Martin
  Ernest Martin, Jr. [Bar No. 13063300]
  Greg Van Houten*
  HAYNES AND BOONE, LLP
  2323 Victory Avenue, Suite 700
  Dallas, TX 75219
  214-651-5651 Direct
  214-651-5000 Main
  214-200-0519 Fax
  ernest.martin@haynesboone.com
  greg.vanhouten@haynesboone.com
  *Admitted *Pro Hac Vice*

  -and-

  Mark T. Beaman [Bar No. 01955700]
  Ryan Bueche [Bar. No. 24064970]
  GERMER BEAMAN & BROWN PLLC
  One Barton Skyway
  1501 S Mopac Expy Suite A400
  Austin, TX 78746
  512-482-3504 Direct
  512-472-0288 Main
  512-472-0721 Fax
  mbeaman@germer-austin.com
  rbueche@germer-austin.com

  **ATTORNEYS FOR DEFENDANTS**

16

## **CERTIFICATE OF SERVICE**

I hereby certify that, consistent with Local Court Rule CV-5, a true and correct copy of the foregoing was sent to all parties of record pursuant to the Electronic Filing Procedures and the Federal Rules of Civil Procedure on this 8th Day of November 2021.

/s/  Ernest Martin
Ernest Martin