**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br> Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC., AND SONIC HEALTHCARE USA, INC.,<br><br> Defendants. | CIVIL ACTION NO.: 1-20-cv-783 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 56(d) MOTION [DKT. 74]**

**[REDACTED VERSION]**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    Homeland's Claims and Defenses, Which are the Subject of Defendants' Summary Judgment Motion, Fail as a Matter of Law and No Facts or Further Discovery Can Change That. .................................................................................................. 3

        A.    Homeland's Breach of Warranty Claim Fails as a Matter of Law Per the Plain Language of the Policies, the 2016 Letter, and Texas Insurance Code § 705.005. ... 3

        B.    Homeland's Two-Part Reformation Claim Fails as a Matter of Law. ....................... 5

        C.    Homeland's Promissory Estoppel Claim Fails Because There is a Contract. ........... 6

        D.    Homeland's Prior Notice Defense Turns on the Meaning of "Otherwise Covered" and Fails as a Matter of Law. ................................................................................ 7

        E.    Homeland's Prior Knowledge Defense Turns on the Meaning of "Continuous and Uninterrupted Coverage" and Fails as a Matter of Law. ........................................... 8

        F.    Homeland's Misrepresentation Defense Fails Because it Relies on the Unincorporated Letter and Pursuant to Texas Insurance Code § 705.005. ............. 10

        G.    Homeland Does Not Refute That Whether Defense Costs Erode Policy Limits is a Contract Question That Can be Resolved as a Matter of Law ................................ 10

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Comiskey v. FH Partners*,
   373 S.W.3d 620 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ......................................6

*In re Deepwater Horizon*,
   470 S.W.3d 452 (Tex. 2015)........................................................................................................3

*Dunn v. Prince*,
   327 F. App'x 452 (5th Cir. 2009) ...............................................................................................9

*Enserch v. Shand Morahan*,
   952 F.2d 1485 (5th Cir. 1992) ....................................................................................................4

*Fina, Inc. v. Travelers Indem. Co.*,
   184 F. Supp. 2d 547 (N.D. Tex. 2002) .......................................................................................1

*Hoover Panel v. HAT*,
   819 F. App'x 190 (5th Cir. 2020) ...............................................................................................6

*Ironshore v. Aspen*,
   788 F.3d 456 (5th Cir. 2015) ......................................................................................................3

*Lawyers Title Ins. v. Doubletree Partners*,
   739 F.3d 848 (5th Cir. 2014) ..................................................................................................1, 3

*Mosley v. Hous.*,
   951 F. Supp. 1279 (S.D. Tex. 1996) ...........................................................................................8

*Myers v. Mega Life*,
   No. 07-06-0233-cv, 2008 WL 1758640 (Tex. App.—Amarillo Apr. 17, 2008, pet. denied)....5

*Pathfinder v. Great W.*,
   574 S.W.3d 882 (Tex. 2019).......................................................................................................4

*Pelican v. Am. Home*,
   No. 07-cv-00434, 2009 WL 10695215 (S.D. Tex. July 10, 2009) ............................................5

*Qiuhong v. Fid. & Guar.*,
   282 F. App'x 304 (5th Cir. 2008) ...............................................................................................4

*RSUI Indem. v. The Lynd*,
   466 S.W.3d 113 (Tex. 2015).......................................................................................................2

*Sistrunk v. TitleMax, Inc.*,
    No. 14-cv-628-RP, 2017 WL 2392436 (W.D. Tex. June 2, 2017) .................................1, 2, 7, 9

*Thompson v. v. Diamond State Ins. Co.*,
    No. 06-cv-154, 2008 WL 11344903 (E.D. Tex. May 2, 2008). ..............................................45

*Thompson v. Geico*,
    527 S.W.3d 641 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ......................................4, 5

*Wellington v. Houston Expl.*,
    267 S.W.3d 277 (Tex. App.—Houston [14th Dist.] 2008) .......................................................2

**Statutes**

Fed. R. Civ. P. 56 ................................................................................................................1, 2, 7, 10

Fed. R. Evid. 407 ...........................................................................................................................9

Texas Insurance Code § 705.005 ........................................................................................3, 5, 10

**Other Authorities**

IRISH HEALTH SERVS. EXEC., INTERVAL CANCER REPT. (Oct. 2020) .........................................9, 10

**PRELIMINARY STATEMENT**

Homeland's Rule 56(d) motion [Dkt. 74] fails for a simple reason: *none* of the discovery Homeland seeks could influence the outcome of Defendants' summary judgment motion [Dkt. 63]. To defer a ruling on a summary judgment motion under Rule 56(d), the non-movant "must set forth a plausible basis for believing that specified facts . . . probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Sistrunk v. TitleMax, Inc.*, No. 14-cv-628-RP, 2017 WL 2392436, at *2 (W.D. Tex. June 2, 2017) (citing *Am. Family Life v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)) (emphasis added). Homeland has not met that standard, nor can it, as Defendants' summary judgment motion turns on the insurance policies, the pleadings, Texas law, and this Court's prior rulings—not issues of fact.

So, it is of no moment that discovery is in its nascent stages because "Rule 56 does not require that *any* discovery take place before summary judgment can be granted." *Sistrunk*, 2017 WL 2392436, at *2 (citing *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016)) (emphasis added). Nor is it relevant that the discovery deadline has been extended by agreement, that neither party has completed its document production, that neither party has served a privilege log, that there are ongoing discovery disputes by both parties, and that neither party has noticed a deposition—none of that precludes granting Defendants' summary judgment motion because that motion asks the Court to dismiss certain claims and defenses that fail right now *as a matter of law*.

Defendants' motion shouldn't surprise anyone as "the interpretation of an insurance policy [is] particularly appropriate for summary disposition." *Fina, Inc. v. Travelers Indem. Co.*, 184 F. Supp. 2d 547, 550 (N.D. Tex. 2002) (citing *Principal Health Care v. Lewer Agency*, 38 F.3d 240, 242 (5th Cir. 1994)). That is because "[t]he interpretation of an insurance policy is a question of law for the court to determine." *Lawyers Title Ins. v. Doubletree Partners*, 739 F.3d 848, 858–59 (5th Cir. 2014). Questions like these are always resolved by contract language from the policies,

not extrinsic evidence from discovery (which is inadmissible). *Wellington v. Houston Expl.*, 267 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.] 2008), order withdrawn (Apr. 9, 2010), *aff'd*, 352 S.W.3d 462 (Tex. 2011) ("If a written policy is worded so that it can be given a definite or certain legal meaning, then it is unambiguous, and we may not accept parol or extrinsic evidence as to the parties' intent."); *RSUI Indem. v. The Lynd*, 466 S.W.3d 113, 118–19 (Tex. 2015) (holding that if an insurance policy is "ambiguous," then "we must resolve the uncertainty by adopting the construction that most favors the insured"). The "facts" Homeland seeks to discover make no difference to Defendants' motion. Homeland's Rule 56(d) motion should thus be denied.

## ARGUMENT

CPL's motion for summary judgment asks the Court to dismiss Homeland's four affirmative claims and three of its defenses based on the policy language, the pleadings, Texas law, and this Court's prior rulings. Homeland says that summary judgment should be denied or delayed because of "fact issues" and the need for more discovery. There's no question the parties disagree about certain facts and that discovery is in its early stages. But that's not the standard for defeating summary judgment under Rule 56(d). To delay or defeat summary judgment under Rule 56(d) Homeland would have to establish that the facts it hopes to discover "will influence the outcome of the pending [motion]." *Sistrunk*, No. 14-cv-628-RP, 2017 WL 2392436, at *2. Homeland cannot do so, but its 56(d) motion nevertheless spends pages arguing about factual narratives that are unconnected to the legal theories at issue in Defendants' motion. As explained further below and in Defendants' summary judgment reply (also filed today), the discovery Homeland seeks cannot influence the outcome of any of the issues before the Court—because all those issues turn on questions of law.

**I.      Homeland's Claims and Defenses, Which are the Subject of Defendants' Summary Judgment Motion, Fail as a Matter of Law and No Facts or Further Discovery Can Change That.**

   **A.    Homeland's Breach of Warranty Claim Fails as a Matter of Law Per the Plain Language of the Policies, the 2016 Letter, and Texas Insurance Code § 705.005.**

Homeland's breach of warranty claim fails as a matter of law for three independent reasons and regardless of any facts that might be developed in discovery.

   1.    This Court has held, twice, that Homeland's breach of warranty claim fails because the 2017 Policy it seeks to void does not mention, and therefore does not incorporate, the 2016 Letter. [Order, Dkt. 28 at 9–11; Order, Dkt. 54 at 2–3]. Those rulings were sound because, under Texas law, extrinsic documents are not incorporated into insurance policies "[u]nless obligated to do so by the terms of the policy." [Order, Dkt. 54 at 2 (citing *In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015); *Ironshore v. Aspen*, 788 F.3d 456, 460 (5th Cir. 2015))].

Like the last two times around, Homeland does not point to policy terms that call for incorporation. Instead, Homeland points to extrinsic evidence and argues that "further discovery"—like depositions of brokers and other persons involved in underwriting—is necessary to guide the Court's decision on incorporation. That's not Texas law. The analysis begins and ends with the "terms of the policy," so the evidence Homeland seeks to develop in discovery is legally irrelevant. *Deepwater Horizon*, 470 S.W.3d at 460; *Ironshore*, 788 F.3d at 456.[1]

   2.    Homeland's warranty claim also fails because, even if the 2016 Letter were incorporated into the 2017 Policy, it contains "representations" and not "warranties," as a matter of law. The 2016 Letter begins with: "The undersigned . . . does hereby *represent* . . . ."[2] The

---

[1] Such is in accord with the fact that "[t]he interpretation of an insurance policy is a question of law for the court to determine." *Lawyers Title*, 739 F.3d at 858–59.
[2] Pl.'s Second Am. Compl. ¶ 54 [Dkt. 56] (emphasis added).

3

2016 Letter does *not* use the word "warrant," "warranty," or anything similar.[3]  A plain reading of that language demonstrates that the letter contains representations—not warranties.

Homeland argues that the Court should ignore the plain language in the 2016 Letter and instead delay summary judgment to allow for depositions and the development of other extrinsic evidence.  But the plain language controls the analysis.  That is because the determination of whether an instrument contains representations or warranties is made "in accordance with the usual rules of contract construction."[4]  Meaning, courts review the four corners of the instrument "to see what [it] states without considering what the parties allegedly meant." *Thompson v. Geico*, 527 S.W.3d 641, 644 (Tex. App.—Houston [14th Dist.] 2017, no pet.).[5]

In line with that approach, in *Enserch v. Shand Morahan*, the Fifth Circuit rejected an insurer's appeal of the trial court's refusal to submit its breach of warranty claim to a jury.  952 F.2d 1485, 1497 (5th Cir. 1992).[6]  The insurer argued that, since the policies referred to both representations and warranties, every statement should be considered both.  *See id.*  The Fifth Circuit disagreed, holding that a warranty will exist only where an insurer makes its existence "unambiguous and clear."  *Id.* at 1497–98.  At least the insurer in *Enserch* had the benefit of the policy using the word "warranty"—here neither the letter nor the policies use the word "warranty," only "representation."[7]  For that reason, the result reached in *Enserch*—that the statement was a "representation"—makes even more sense here, and that result can be reached as a matter of law and without resorting to extrinsic evidence.

---

[3] *See id.*  The 2017 Policy also doesn't mention "warranties"—only "representations." *Id.* at Ex. 4.
[4] *Qiuhong v. Fid. & Guar.*, 282 F. App'x 304, 307 (5th Cir. 2008).
[5] *See also Pathfinder v. Great W.*, 574 S.W.3d 882, 888 (Tex. 2019) ("[A] contract's plain language controls . . . .").
[6] *See also* Br. for App., *Enserch*, No. 90-1649, 1991 WL 11009053 (5th Cir. Mar. 26, 1991).
[7] Pl.'s 2d Am. Compl. ¶ 54 (2016 Letter) [Dkt. 56]; *id.* at Ex. 4 (the 2017 Policy) (p. 178 of 241).

4

3. Homeland's breach of warranty claim also fails—along with its promissory estoppel claim and its misrepresentation defense—because Homeland failed to plead compliance with the notice requirements in Texas Insurance Code § 705.005.[8] *See Pelican v. Am. Home*, No. 07-cv-00434, 2009 WL 10695215, at *6 (S.D. Tex. July 10, 2009); *Myers v. Mega Life*, No. 07-06-0233-cv, 2008 WL 1758640, at *3 (Tex. App.—Amarillo Apr. 17, 2008, pet. denied). Homeland does not assert that discovery is necessary on this issue and for good reason: (a) this pleading issue is a question of law, and (b) Homeland already knows about its own knowledge.[9]

B.   **Homeland's Two-Part Reformation Claim Fails as a Matter of Law.**

Without incorporation language, Homeland seeks to reform the policies in two ways. It first seeks to reform the policies because of alleged mistakes in the 2016 Letter.[10] The Court already dismissed this argument, and can do so again, because "the alleged mistake must be in the document that the party seeks to reform." [Order, Dkt. 55 at 12 (citations omitted)]. Homeland also seeks to reform the policies to incorporate the 2016 Letter because, according to Homeland, it was a mistake not to incorporate the letter. Homeland asserts that further discovery is necessary to support this second component of its reformation claim, but it is incorrect because the claim fails as a matter of law for the following three reasons:

---

[8] In a half-hearted attempt to avoid this result, Homeland seeks to recast its argument as alleging misrepresentations in the claims process rather than the application process. *See* Pl.'s Resp. at 10–11 [Dkt. 73]. Even assuming this distinction were legally relevant, it is a mirage here: because Homeland's theory is that CPL has continued to deny that it made misrepresentations in the application process. *See id.* This "failure to disavow" theory does not escape the reach of § 705.005, Homeland cites no authority to that effect, and federal courts have rejected similar arguments. *Thompson v. Diamond State Ins. Co.*, No. 06-cv-154, 2008 WL 11344903, at *4 n.3 (E.D. Tex. May 2, 2008).
[9] Simply put: it is Homeland who would hold documents and information demonstrating when it discovered the alleged misrepresentations to trigger the statutory notice period.
[10] *See* Pl.'s 2d Am. Compl. ¶¶ 234–35 [Dkt. 56].

1.  The 2016 Policy cannot be reformed to include the 2016 Letter because the policy was drafted by June 28, 2016 and the letter was signed on July 27, 2016.[11] *See Comiskey v. FH Partners*, 373 S.W.3d 620, 634 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (instrument cannot be reformed if drafted before the alleged mistake).

2.  Neither the 2016 nor 2017 Policy can be reformed to include the letter because Homeland does not allege (or assert in its briefing) that the parties agreed to <u>endorse</u> the policies with the letter.[12] This Court has held that the policies "can <u>only</u> be altered, waived or changed by <u>written endorsement</u> issued to form a part of the [policies]." [Order, Dkt. 54 at 2] (emphasis added).

3.  The 2017 Policy also cannot be reformed to include the 2016 Letter because there is no allegation of an "original agreement" to incorporate the letter into that policy.[13] This makes sense because, as of July 2016—when the parties executed the 2016 Letter—Defendants had not yet agreed to purchase the 2017 Policy. That purchase was up in the air until the 2017 Policy was issued on June 26, 2017. Moreover, the 2016 Letter, which Homeland cites to support its incorporation-by-reformation argument, provides only that it "will be deemed to be a part of *the* policy"—*i.e.*, the 2016 Policy—not the 2017 Policy.[14]

   **C.   Homeland's Promissory Estoppel Claim Fails Because There is a Contract.**

Homeland's promissory estoppel claim fails because the only relevant fact is undisputed: "a valid contract covers the subject matter of [the] dispute"—namely, the 2017 Policy. *See Hoover Panel v. HAT,* 819 F. App'x 190, 199 (5th Cir. 2020) (finding that promissory estoppel sounds in

---

[11] *See* Davis Decl. at Ex. 2 [Dkt. 73-13] (providing that 2016 Policy was bound on June 28, 2016).
[12] Homeland's declarations do not state that both parties agreed to endorse the policies with the letter. Davis Decl. [Dkt. 73-11]; Craig Decl. [Dkt. 73-10]. At best, Homeland claims it intended to have the letter incorporated. But unilateral subjective intent does not support reformation.
[13] *See generally* Pl.'s Second Am. Compl. [Dkt. 56].
[14] *See* Pl.'s 2d Am. Compl. at Ex. 1 (the 2016 Letter) (p. 61 of 241) [Dkt. 56] (emphasis added).

6

"quasi-contract," and, as result, it is not available when "a valid contract covers the subject matter of [the] dispute"). Homeland says depositions and further document discovery are needed on this claim, but it would all be beside the point because this claim fails as a matter of law.[15]

> **D. Homeland's Prior Notice Defense Turns on the Meaning of "Otherwise Covered" and Fails as a Matter of Law.**

Homeland has long argued that the prior notice exclusion applies to bar CPL's claim because another company (MedLab) provided notice to another insurer (Vero) in 2016.[16] Homeland is wrong as a matter of contract interpretation, as this exclusion only applies if MedLab's notice regarded a claim "**otherwise covered under Insuring Agreement (A).**" Homeland concedes MedLab is not covered for the ICC Claims, so the exclusion does not apply.[17]

Knowing that its original argument doesn't work, Homeland tries a new one in its response brief and Rule 56(d) motion: it says that maybe CPL gave notice of the ICC Claims to MedLab's insurer, Vero.[18] Homeland argues that it needs discovery on this new theory, but the support it offers—a letter from Vero providing that "CPL and Sonic US are *not* covered by the Vero policy" for the ICC Claims—shows that its new theory isn't plausible.[19] Thus, Homeland cannot defer summary judgment on this basis. *Sistrunk*, No. 14-cv-628-RP, 2017 WL 2392436, at *2 (non-movant "must set forth a plausible basis for believing that specified facts . . . probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the [motion]") (emphasis added).

---

[15] Homeland also argues that its declaratory judgment claim should survive Defendants' summary judgment motion. Homeland is wrong because the components of its declaratory judgment claim will be adjudicated through Defendants' contract claim. *See* Defs.' MSJ at 23, n.82 [Dkt. 63].
[16] *E.g.*, Van Houten Decl. at Ex. A-6, Ltr. from Homeland to CPL (Oct. 14, 2019) [Dkt. 63-8].
[17] *See* Pl.'s 2d Am. Compl. ¶ 1 [Dkt. 56] (alleging MedLab is covered for claims filed in the USA).
[18] *See* Pl.'s Resp. at 20–21 [Dkt. 73].
[19] *See* Fasone Decl. at Ex. 21 [Dkt. 73-9].

### E.      Homeland's Prior Knowledge Defense Turns on the Meaning of "Continuous and Uninterrupted Coverage" and Fails as a Matter of Law.

The application of the prior knowledge exclusion hinges on a question of contract interpretation that the Court can resolve as a matter of law—namely, when Homeland first provided the insureds with "continuous and uninterrupted coverage."[20]  That date is June 30, 2013, which is when Homeland first issued the medical malpractice insurance the insureds carried continuously and without interruption until June 30, 2018.  In response, Homeland argues that the Court should add the word "identical" to this provision—making it "continuous and uninterrupted *identical* coverage"—which Homeland asserts would jump the date ahead to June 30, 2016.  That interpretation fails because courts applying Texas law don't read words into contracts and because Homeland's interpretation would render the look-back provision meaningless; but, in any event, Homeland's arguments make clear that this is a contract interpretation issue that is ripe for summary judgment.

Knowing the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Homeland argues for the first time that its facts show, or that future discovery may show, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ February 2016, which is when the Irish government began to disclose the results of the educational peer review process to treating physicians. Homeland attempts to change its theory in its response, but, with no pleading of knowledge before the look-back date its new theory fails as a matter of law.[21]

---

[20] *See* Pl.'s Resp. at 22 [Dkt. 73].
[21] *See* Pl.'s 2d Am. Compl. [Dkt. 56]; *Mosley v. Hous.*, 951 F. Supp. 1279, 1287 (S.D. Tex. 1996) (one cannot "change her theory of the case after summary judgment motions have been filed").

And, even if the Court were to entertain Homeland's ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ it is not plausible.²² Homeland claims that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That is not plausible. *See Sistrunk*, No. 14-cv-628-RP, 2017 WL 2392436, at *2 (non-movant "must set forth a plausible basis for believing that specified facts . . . if adduced, will influence the outcome of the [motion]").

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That is striking. As noted by the Irish government in its Interval Cancer Report, "[t]he purpose of clinical audit in screening programmes is quality assurance and quality improvement (professional education and development) in order to provide rigorous internal and external quality control."²³ Consistent with that purpose, with the Irish program, if a patient was diagnosed with cancer, her slides were reviewed to assess if the program could be improved.²⁴ These results were, up until February 2016, not disclosed for the same reason subsequent remedial measures are not admissible evidence: public policy encouraging people to take steps to make things better and safer.²⁵

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

²² *Dunn v. Prince*, 327 F. App'x 452, 453 (5th Cir. 2009) (theory must be "plausible" and "[c]onclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence are insufficient to defeat . . . summary judgment").
²³ *See* Defs.' Reply in Supp. of MSJ at Ex. A-10 (IRISH HEALTH SERVS. EXEC., INTERVAL CANCER REPT. at 19 (Oct. 2020)) at 19.
²⁴ *See id.* at 19, 22 (purpose of audits was "to improve patient care and outcomes through systematic review of care against explicit criteria [and] to improve care . . . .").
²⁵ *See id.*; *see also* Fed. R. Evid. 407 advisory committee's note (purpose of the rule is to promote safety); Pl.'s 2d Am. Compl. ¶ 26 [Dkt. 56].

9

then economically unviable, an enormous blow to public health.[26] That can't be the answer. Nor is it consistent with any evidence proffered in this case. Thus, notwithstanding Homeland's new unpled theory, the prior knowledge exclusion does not apply as a matter of law and no further discovery is necessary on this issue.

### F. Homeland's Misrepresentation Defense Fails Because it Relies on the Unincorporated Letter and Pursuant to Texas Insurance Code § 705.005.

Homeland asserts that it needs more discovery to support its misrepresentation defense, but it does not because that defense fails as a matter of law for two reasons. First, because it relies on the unincorporated 2016 Letter. *Supra* § I.A. And, second, because Homeland did not comply with Texas Insurance Code § 705.005. *Supra* § I.A. For those reasons, further discovery on this defense is unnecessary and the Court instead can and should dispose of it as a matter of law.

### G. Homeland Does Not Refute That Whether Defense Costs Erode Policy Limits is a Contract Question That Can be Resolved as a Matter of Law.

Homeland does not disagree that the scope of recoverable "Defense Expenses" under the 2017 Policy is a contract question that can be resolved as a matter of law and without resorting to extrinsic evidence.[27] Homeland doesn't even argue that discovery is needed on this claim.

## CONCLUSION

Homeland's Rule 56(d) motion fails because *none* of the facts Homeland seeks to adduce can influence the outcome of Defendants' summary judgment motion, which is predicated on the insurance policies, the pleadings, Texas law, and the Court's prior rulings—not issues of fact.

---

[26] Defs.' Reply in Supp. of MSJ at Ex. A-10 (IRISH HEALTH SERVS. EXEC., INTERVAL CANCER REPT. at 19 (Oct. 2020)) at 2 (". . . .[C]ervical cancer screening saves lives.").
[27] *See generally* Pl.'s Rule 56(d) Motion [Dkt. 74]; Pl.'s Resp. at 25 [Dkt. 73].

Dated: November 8, 2021

Respectfully submitted,

By: /s/ Ernest Martin
    Ernest Martin, Jr. [Bar No. 13063300]
    Greg Van Houten*
    HAYNES AND BOONE, LLP
    2323 Victory Avenue, Suite 700
    Dallas, TX 75219
    214-651-5651 Direct
    214-651-5000 Main
    214-200-0519 Fax
    ernest.martin@haynesboone.com
    greg.vanhouten@haynesboone.com
    *Admitted *Pro Hac Vice*

    -and-

    Mark T. Beaman [Bar No. 01955700]
    Ryan Bueche [Bar. No. 24064970]
    GERMER BEAMAN & BROWN PLLC
    One Barton Skyway
    1501 S Mopac Expy Suite A400
    Austin, TX 78746
    512-482-3504 Direct
    512-472-0288 Main
    512-472-0721 Fax
    mbeaman@germer-austin.com
    rbueche@germer-austin.com

    **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

      I hereby certify that, consistent with Local Court Rule CV-5, a true and correct copy of the foregoing was sent to all parties of record pursuant to the Electronic Filing Procedures and the Federal Rules of Civil Procedure on this 8th Day of November 2021.

                                            /s/ Ernest Martin
                                              Ernest Martin