IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

**HOMELAND INSURANCE COMPANY OF NEW YORK'S *OPPOSED* MOTION TO DENY OR DELAY CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56(d)**

TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1
II. DEFENDANTS HAVE WITHHELD KEY DOCUMENTS, OVER-REDACTED OTHERS, AND AS A RESULT No DEPOSITIONS HAVE YET OCCURRED .............1
III. Rule 56(d) MOTIONS ARE BROADLY FAVORED AND LIBERALLY GRANTED ......................................................................................................................4
IV. ARGUMENT .................................................................................................................5
    A. What Defendants Knew and When They Knew It........................................6
        [REDACTED]
    B. Whether Defendants made misrepresentations during the claim.............11
    C. Whether the 2016 Letter was intended by Defendants to be incorporated into the policies ..........................................................................................11
    D. Whether the 2016 Letter was intended by Defendants as a warranty......12
    E. Prior notice(s) to other insurers....................................................................12
    F. Homeland's promissory estoppel claim.......................................................13
    G. Homeland's additional bases for declaratory relief ...................................13
V. Certificate of Conference Pursuant to Local Rule 7(g) .........................................14
VI. CONCLUSION............................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Family Life Assurance Co. of Columbus v. Biles*
   714 F.3d 887 (5th Cir. 2013) ...............................................................................................4

*Baker v. Am. Airlines, Inc.*
   430 F.3d 750 (5th Cir. 2005) ...............................................................................................4

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*
   343 F.3d 719 (5th Cir. 2003) ...............................................................................................4

*Ebrahimi v. America's Wholesale Lender*
   2014 U.S. Dist. LEXIS 189697 (N.D. Tex. Nov. 21, 2014)
   2014 WL 12531167 (N.D. Tex. Nov. 21, 2014)...................................................................5

*Fontenot v. Upjohn Co.*
   780 F.2d 1190 (5th Cir.1986) ..............................................................................................5

*Krim v. BancTexas Grp., Inc.*
   989 F.2d 1435 (5th Cir. 1993) .............................................................................................5

*TIG Ins. Co. v. Sedgwick James*
   184 F.Supp.2d 591 (S.D.Tex.2001), aff'd, 276 F.3d 754 (5th Cir.2002) ..................................2

*Tillman v. Steadfast Ins. Co.*
   2021 WL 1137241 (W.D. Tex. Feb. 11, 2021).......................................................................4

*Union City Barge Line, Inc. v. Union Carbide Corp.*
   823 F.2d 129 (5th Cir. 1987) ...............................................................................................5

*Vdf Futureceuticals v. Freed Foods*
   2021 WL 4127785 (W.D. Tex. May 19, 2021) (adopting report and recommendation,
   2021 WL 1667129, at *2 (W.D. Tex. Apr. 27, 2021)) ......................................................4, 5

*Wichita Falls Office Assocs. v. Banc One Corp.*
   978 F.2d 915 (5th Cir. 1992) ...............................................................................................5

Statutes

European Convention on Human Rights Act of 2003 ...................................................................10

Ins. Code § 705.005 ......................................................................................................................11

Other Authorities

Federal Rule of Civil Procedure 56(d) ..................................................................................1, 4, 5

LOCAL RULE 7(G) ....................................................................................................................14

SMRH:4816-4478-6686

## I. INTRODUCTION

The evidence to date already defeats Defendants' motion for summary judgment. Defendants' motion gives one excuse after another as to why they should be able to escape what is so far the most condemning fact discovered: ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ That fact, without more, is fatal to Defendants' claim for coverage on multiple grounds.

But if the Court for any reason finds the existing factual record is not sufficient to defeat Defendants' motion, Homeland moves in the alternative pursuant to Federal Rule of Civil Procedure 56(d) to deny or defer Defendants' motion on grounds of prematurity. Indeed, the motion is not merely premature, but an outright attempt to suppress further discovery and force a decision before all evidence of Defendants' misconduct comes to light. As detailed below, Defendants have resisted and stalled discovery in numerous areas, all of which are reasonably calculated to lead to evidence that will not merely defeat Defendants' summary judgment motion but affirmatively establish Homeland's right to summary judgment in its favor.

## II. DEFENDANTS HAVE WITHHELD KEY DOCUMENTS, OVER-REDACTED OTHERS, AND AS A RESULT NO DEPOSITIONS HAVE YET OCCURRED

Defendants' summary judgment motion is, at a minimum, premature. They first prevented Homeland from starting discovery; withheld key documents once discovery commenced; pretended to lack control over documents in possession of their insurance broker-agent in order to further delay discovery into key documents; then rushed to file their motion for summary judgment before producing key documents or even a single witness for deposition.

Initially, Defendants asked for a stay of all discovery pending resolution of their pleading challenges, even as to Texas-based Defendant CPL, which was not challenging jurisdiction and had a pending counterclaim against Homeland, and thus would remain in the case regardless of the outcome of the motions. Homeland agreed to the discovery stay. (Fasone Decl. filed in support of Homeland's Response to Defendants' Motion for Summary Judgment, ¶2.)

When the discovery stay finally lifted in January 2021, Homeland promptly served written discovery. (*Id.*, ¶3.) Defendants responded first by seeking an extension and later by asking to amend the scheduling order to permit more time for discovery. (*Id.*, ¶¶3-4.) Homeland agreed both to the response deadline extension and the discovery cut-off extension. (*Id.*)

In March, 2021, Defendants served written responses raising numerous objections, fully refusing to produce various categories of documents, and partially refusing production as to other categories of documents by imposing self-selected parameters on their agreed scope of production. (*Id.*, ¶5, Ex. 10.) Thereafter, Defendants began a rolling production of documents which, even today, still is not complete. Further, Defendants have not produced a privilege log, which is essential to permit Homeland to evaluate the propriety of Defendants' very broad redactions. (*Id.*, ¶6 and Exs. 11-12.)

Homeland has been meeting and conferring about the deficiencies in Defendants production, but there remain key categories of documents that Defendants have not yet produced or have only produced with heavy redactions. (*See id.*) This includes:

1. <u>Insurance broker documents</u>: Defendants refused to produce any documents in the custody of their insurance broker (*see, e.g.*, Ex. 10, p. 25), even though the broker acted as their agent in securing coverage from Homeland and those documents are thus in Defendants' control as the broker's principal.[1] Homeland accordingly had to subpoena the broker and will likely have to take depositions, but the broker has yet to produce a single document. (*Id.*, ¶7, Exs. 13-14.) Documents in the broker's possession will be among the most important in the case because they are likely to include documents showing (i) exactly what Defendants knew and when they knew it about the potential for CervicalCheck claims, (ii) what Defendants understood and intended regarding the 2016 Letter constituting a warranty, (iii) what Stephen Shumpert (author of the 2016 Letter) and others at Defendants' knew at the time the 2016 Letter was issued, which

---

[1] Under Texas law, the insurance broker was acting as Defendants' agent. *See, e.g., TIG Ins. Co. v. Sedgwick James*, 184 F.Supp.2d 591, 601–02 (S.D.Tex.2001), aff'd, 276 F.3d 754 (5th Cir.2002).

knowledge might prove the falsity of the letter, and (iv) Defendants' intent and understanding that the warranties in the 2016 Letter would remain in force as long as the Defendants maintained the expanded coverage that Homeland agreed to issue in reliance on the warranties.

2. <u>Board Meeting Documents</u>:  It is likely that potential CervicalCheck claims were discussed at Defendants' board and committee meetings, given the significant financial exposure.  Board and committee meeting documents are therefore likely to show what Defendants knew about potential CervicalCheck claims and when they knew it.  But Defendants' production of board meeting documents to date has been limited—with large redactions and unexplained gaps.  (Fasone Decl., ¶6, Exs. 11-12.)

3. <u>Missing Attachments</u>:  Some emails produced by Defendants are missing important attachments.  ███████████████████████████████████████████████████ ███████████████████████████████████████.  But the attached documents referenced in the email, which will likely make that evidence even more strongly negate coverage, are missing.  Homeland has asked, but Defendants have yet to produce the missing attachments.  Instead, Defendants have "confirm[ed] that e-mail attachments have already been produced, will be produced, or will appear on our privilege or redaction logs."  That non-response, however, makes it impossible for Homeland to move forward until Defendants complete their production and produce a privilege log.  (*Id.*, ¶¶6, 9, Exs 11-12, 19.)

As a result of not having a complete production of these important documents, Homeland has had to defer taking depositions and has yet to get any deposition testimony in this case.  These depositions—of Mr. Shumpert who signed the 2016 Letter, of the broker's personnel, of Sonic's and CPL's risk managers, and others (*see id.*, ¶8)—are likely to shed light on all the key issues detailed above and thus provide further evidence establishing (or at least creating triable issues as to) whether the Homeland policies cover the CervicalCheck claims.  Homeland explains further in section IV below.

### III. RULE 56(D) MOTIONS ARE BROADLY FAVORED AND LIBERALLY GRANTED

Federal Rule of Civil Procedure 56(d) provides:

**When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

"Rule 56(d) motions for additional discovery are ***broadly favored and should be liberally granted*** because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (emphasis added). Indeed, "a trial court cannot rule on a summary judgment motion where adequate discovery has been denied a party." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).

Courts in the Fifth Circuit routinely grant Rule 56(d) motions like this one. *See, e.g., Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (holding that district court erred in treating motion for judgment on pleadings as motion for summary judgment without allowing parties full discovery); *Tillman v. Steadfast Ins. Co.*, 2021 WL 1137241, at *2 (W.D. Tex. Feb. 11, 2021) (granting Rule 56(d) motion where parties had yet to conduct discovery "to avoid the possibility of an improvident grant of summary judgment" and dismissing motion for summary judgment without prejudice to refiling); *Vdf Futureceuticals v. Freed Foods*, 2021 WL 4127785, at *1-2 (W.D. Tex. May 19, 2021) (granting Rule 56(d) motion and dismissing without prejudice defendants' motion for summary judgment, even where plaintiffs could have sought the needed discovery earlier but did not) (adopting report and recommendation, 2021 WL 1667129, at *2 (W.D. Tex. Apr. 27, 2021)).

Moreover, the requirements warranting relief under Rule 56(d) are not onerous. As the Fifth Circuit has observed, "Rule 56(d) 'is not difficult to comply with: the party opposing

summary judgment need only file the specified non-evidentiary affidavits,[2] explaining why it cannot oppose the summary judgment motion on the merits.'" *Vdf Futureceuticals v. Freed Foods*, 2021 WL 1667129, at *2 (W.D. Tex. Apr. 27, 2021) (quoting *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 137 (5th Cir. 1987)).  Thus, relief under Rule 56(d) is warranted when a party "indicate[s] to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact." *Ebrahimi v. America's Wholesale Lender*, 2014 WL 12531167, at *2-4 (N.D. Tex. Nov. 21, 2014), (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993) (emphasis in original)).  Simply put, where a party "(i) request[s] extended discovery prior to the court's ruling on summary judgment, (ii) put[s] the trial court on notice that further discovery pertaining to the summary judgment motion is being sought; and (iii) demonstrates to the trial court specifically how the requested discovery pertains to the pending motion," a continuance for additional discovery is required.  *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

Homeland satisfies each of those requirements for the specific issues raised in Defendants' motion discussed below.

## IV.    ARGUMENT

Additional discovery is likely to generate important evidence on numerous issues that will, at a minimum, establish further triable issues to Defendants' pending motion, if not affirmatively establish Homeland's right to summary judgment.

---

[2] Fifth Circuit case law provides that a Rule 56(d) motion may be supported by an affidavit or declaration, but "there is no stringent procedure that will bar litigants access to further discovery.  In order to trigger the rule, a party need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992), *citing Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *Ebrahimi v. America's Wholesale Lender*, 2014 U.S. Dist. LEXIS 189697, at *2-4 (N.D. Tex. Nov. 21, 2014) ("a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit…") (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).  Homeland satisfies that basic requirement by submitting this motion and the declaration of its counsel, Jenna Fasone.

A.        **What Defendants Knew and When They Knew It**

The central issues in this case revolve around what Defendants knew and when. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There are several key dates on which proof of Defendants' knowledge of the potential for claims is fatal to their quest for coverage as put at issue by their motion (Dkt. 63).  Existing evidence already establishes at least triable issues on these points, and further discovery that has been denied to Homeland so far is reasonably expected to shed even more light.

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To support their summary judgment motion, Defendants assert that "Homeland does not and cannot allege that CPL knew or should have known about the ICC Claims before June 30, 2013."  (Dkt. 63, p. 26.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Beginning by at least June 6, 2013, the Irish government required MedLab and its contracting laboratories (including CPL) to participate in Cancer Audit Reviews (CARs).  In the CAR program, if a woman was diagnosed with cervical cancer after having had a pap smear reviewed by MedLab or CPL, the pap smear slides would have to be reassessed (by MedLab and then if necessary external reviewers) to determine if the ▮▮▮▮▮▮▮▮▮ and then those audit results would need to be communicated to and reviewed by the original lab—in this case, CPL. (Fasone Decl., ¶9, Exs. 15-17.)

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



SMRH:4816-4478-6686

-8-



███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████

      CPL, of course, may try to dispute the story its own documents tell.  It may argue that it didn't think the women would ever sue because the Irish government at the time didn't plan to disclose the results of the CARs.  It may argue that CPL's participation in the CARs was intended to be "primarily" for educational purposes rather than for litigation.  ████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████
        ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████
      █  ████████████████████████████████████
█████████████████████████████████████████ July 27, 2016, the date CPL's president signed a warranty letter assuring Homeland that neither CPL nor MedLab had any reason to suspect any further suits arising out of the CervicalCheck program. ███████████████████████████████████████████
███████████████████████████████████████████
██████████████████

---

[10] Davis Decl., ¶11, Ex. 9; Defs.' Answer (Dkt. 57), ¶¶30-31, 35, 61, 83, 85.

[REDACTED]

But even assuming that Homeland had to prove CPL's own knowledge, that is all the more reason why Defendants' motion is premature and further discovery is needed. It is truly implausible that MedLab would have kept its sister-company and subcontractor CPL in the dark [REDACTED] Homeland is entitled to take depositions and gather as-yet-unproduced documents from CPL, MedLab, and their broker to prove that which is almost certainly true: [REDACTED]

In fact, Ms. S's amended complaint specifically alleges that CPL and MedLab concealed from Ms. S the results of her CAR in breach of the European Convention on Human Rights Act of 2003, among other statutes and policies.[12]

[REDACTED]

As explained in the response to summary judgment at Sections III and IX.B.4, it is also relevant what CPL knew as of June 30, 2017. [REDACTED] So be it; that would

---

[11] Davis Decl., ¶¶5-6, Exs. 3-4; Craig Decl., ¶¶4, 6-7.
[12] Fasone Decl., ¶9, Ex. 21 at DEF-CPL-0000008163 (Ms S Amended Summons).
[13] Fasone Decl., ¶9, Ex. 19 (discussing what appears to be an Irish lawyer's letter to MedLab inquiring about slides that were later noticed to Homeland in the May 2018 bulk notice). Homeland is without sufficient knowledge to fully investigate the meaning of these documents because the attachments were not provided in CPL's production.



merely demonstrate a genuine issue of material fact. █████████████████
███████████████████████████████████████████████

### B. Whether Defendants made misrepresentations during the claim

Defendants' summary judgment motion also implicates factual disputes about whether CPL misrepresented material facts to Homeland during the presentation of its claim. Such misrepresentations are the subject of Homeland's fourth affirmative defense and (as explained in the opposition brief) are not subject to Defendants' Ins. Code § 705.005 argument. During the claim, Defendants repeatedly misrepresented facts to Homeland concerning what they knew and when—█████████████████████████████████████████████████
████████████████████ All the same discovery mentioned in section A above is likely to generate further evidence showing that there is, at a minimum, a triable issue about the falsity of these representations.

### C. Whether the 2016 Letter was intended by Defendants to be incorporated into the policies

Another important issue raised by Defendants' motion is whether the parties intended that the 2016 Letter would be incorporated into the 2016 and 2017 policies. Homeland believes it has already offered sufficient evidence to show a triable issue on this fact, including language in the letter itself, the Application, and the Policies showing (or at least arguably showing) a mutual intent to incorporate. *See* Homeland's Response at Section IV.B.

But if the Court concludes there is insufficient current evidence of such intent, further discovery is likely to provide it. In particular, Homeland is entitled to depose the involved persons—including Defendants' broker and Defendants' own involved employees—to establish that they intended and expected the 2016 Letter to be deemed a part of the policy not only for the 2016 policy year, but for every subsequent year in which Defendants sought to maintain the expanded coverage they had secured in exchange for the warranties in the letter.[15]

---

[14] *See*, e.g., CPL Amended Counterclaim (Dkt. 46) at pp. 3-4, 10.
[15] *See* Craig Decl. filed in support of Homeland's Response to Defendants' Motion for Summary Judgment, ¶¶8-9.

-11-

### D.     Whether the 2016 Letter was intended by Defendants as a warranty

Defendants also advance a sort of "magic words" argument that the 2016 Letter does not qualify as a warranty because it doesn't use that exact word.  As shown in the opposition, there is already sufficient evidence to create a triable issue about the parties' intent in this regard, particularly in that the parties mutually referred to the letter as a "warranty" in the negotiations leading up to its execution.[16]  But if the Court for any reason finds this evidence insufficient, Homeland at a minimum should be allowed to depose the key defense witnesses and ask them directly whether they intended the 2016 Letter to be a warranty.  As discussed, Homeland has already subpoenaed the broker—which negotiated the expanded coverage on Defendants' and their foreign counterparts' behalf—for documents but, as no documents have yet been produced, Homeland has been unable to take any depositions of employees or representatives of either the broker or Defendants on this issue.

### E.     Prior notice(s) to other insurers

There are also triable issues concerning the prior notice exclusion.  Defendants' sole argument on this account is that MedLab's 2016 notice to Vero doesn't trigger the exclusion.  (Dkt. 63, ¶¶25-26.)  That argument is wrong as a matter of law, as explained in Homeland's response.

But even if it's not wrong—such that only prior notices of claims by CPL matter—Homeland is entitled to obtain the entirety of the notice documents submitted to Vero (or any other insurer).[17]  Defendants ask the Court to assume that the notice to Vero can be attributed to MedLab alone, but they offer no proof.  (Dkt. 63, ¶¶25-26.)  Indeed, there is reason to believe to the contrary: in August 2018, Vero explained to Defendants' broker that "it is Vero's position" that CPL isn't covered by the Vero policy.[18]  The fact that Vero took such a position implies that

---

[16] *See, e.g.,* Davis Decl., ¶6, Ex. 4.
[17] As these notices were generally given by the broker, Homeland's subpoena specifically asks for all such notices and related communications.  *See* Fasone Decl., ¶7, Ex. 13 at p. 11 of 16 category nos. 4-5.
[18] Fasone Decl., ¶9. Ex. 21.

CPL took the opposite position—that is, that Vero did cover CPL— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ before the Court can decide whether any such notices were on behalf of CPL or otherwise sufficiently involved CPL to trigger the prior notice exclusion (assuming, without conceding, that CPL's involvement is needed to trigger the exclusion).

F. **Homeland's promissory estoppel claim**

Homeland's promissory estoppel claim also implicates triable issues for the same reasons outlined above. A central issue in promissory estoppel is whether Defendants in fact misled Homeland about what they knew and when. For all the reasons above, there are already triable issues that they did do so. But if there is not yet a triable issue, further discovery—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮— along with document discovery into withheld or overly-redacted documents such as CPL board minutes—is reasonably likely to establish both MedLab's and CPL's knowledge as of the relevant dates.

G. **Homeland's additional bases for declaratory relief**

As shown in the concurrent opposition, Homeland's declaratory relief claim includes multiple bases that Defendants' motion does not even attempt to address, including coverage defenses or limitations based on the Reporting of Claims Condition, the Related Claims Condition, the Territory Condition, and the Examination of Books and Records Condition.[19] Defendants' failure to even address these additional bases is reason enough to deny their motion. But on top of that, these bases for relief implicate a host of factual issues for which further discovery is important before the Court or jury can fairly make coverage decisions. These include whether CPL reported potential claims as promptly as required (Reporting of Claims

---

[19] See Homeland's Cpt. (Dkt. 56), ¶¶208-211, 217; Van Houten Decl., Ex. A-9 at pp. 23-25.

Condition); whether the claims of the many Irish women are sufficiently interrelated to be related-back to a prior policy period pre-dating the Worldwide Territory Endorsement—and thus be uncovered (the Related Claims Condition and the Territory Condition); and whether CPL's repeated failure and refusal to provide information reasonably requested by Homeland during its coverage investigation constitutes a breach of the "cooperation" provision that is a condition precedent to coverage (the Examination of Books and Records Condition).

## V. CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7(G)

Counsel for the parties discussed the basis for this motion on October 26, 2021 and no agreement could be reached, necessitating this filing.

## VI. CONCLUSION

The Court should deny Defendants' motion for summary judgment or, at a minimum, delay ruling on the motion until discovery has been completed.

Respectfully submitted this 27th day of October, 2021.

By: */s/ Jenna A. Fasone*
John T. Brooks (CA Bar #167793)
Jenna A. Fasone (CA Bar #308886)
Jared K. LeBeau (CA Bar #292742)
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
501 West Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 338-6500
Fax: (619) 234-3815
jbrooks@sheppardmullin.com
jfasone@sheppardmullin.com
jlebeau@sheppardmullin.com
*Admitted Pro Hac Vice*

Joseph R. Little (#784483)
The Little Law Firm
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone: (713) 222-1368
Fax: (281) 200-0115
jrl@littlelawtexas.com
*Attorneys for Plaintiff Homeland Insurance Company of New York*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon counsel of record for all parties who have made an appearance in this case at the addresses indicated by CM/ECF electronic notification on this 12th day of November 2021.  I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Jenna A. Fasone*