# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **HOMELAND INSURANCE** | § | |
| **COMPANY OF NEW YORK,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL NO. 1-20-CV-783-RP** |
| | § | |
| **CLINICAL PATHOLOGY** | § | |
| **LABORATORIES, INC. and** | § | |
| **SONIC HEALTHCARE USA,** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ROBERT PITMAN
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Summary Judgment (Dkt. 63), filed October 14,

2022; Homeland Insurance Company of New York's Sealed Response to Defendants' Motion for

Summary Judgment (Dkt. 73), filed November 1, 2021; and Defendants' Sealed Reply in Support

of their Motion for Summary Judgment (Dkt. 82), filed November 9, 2021.[1] On April 21, 2022,

the District Court referred the Motion and related filings to the undersigned Magistrate Judge for

---

[1] Defendant Clinical Pathology Laboratories, Inc.'s Motion to Contest Homeland's Clawback Request and to Compel the Production of Similar Documents (Dkt. 111), filed and referred to the undersigned Magistrate Judge on July 18, 2022, is not yet ripe and will be addressed in due course.

The parties have filed many of their briefs and pleadings under seal. They also have filed redacted public versions of those documents. The Court quotes no sealed documents in this Report and Recommendation, which therefore need not be sealed. The Court reminds the parties that the public has "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021) ("The public's right of access to judicial proceedings is fundamental."); *U.S. v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (explaining the "strong presumption that all trial proceedings should be subject to scrutiny by the public") (citation omitted).

Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court held a hearing on the Motion on June 21, 2022, and heard oral argument from the parties.

## I.   Background

Homeland Insurance Company of New York ("Homeland")[2] brings this insurance coverage lawsuit against Clinical Pathology Laboratories, Inc. ("CPL") and CPL's parent company, Sonic Healthcare USA, Inc. ("Sonic USA") (collectively, "Defendants").[3] Homeland's Second Amended Complaint, Dkt. 56. Homeland seeks a declaration that it has no duty to reimburse Defendants for defending a number of medical negligence lawsuits filed against them in Ireland.

CPL is an Austin, Texas-based provider of medical laboratory services. Dkt. 63 at 8. CPL and Sonic USA are subsidiaries of Sonic Healthcare Limited ("Sonic"), a global healthcare company headquartered in Sydney, Australia. Dkt. 56 ¶ 28. Sonic also owns Sonic Healthcare (Ireland) Limited ("Sonic Ireland") and MedLab Pathology ("MedLab"), both which are Irish providers of medical laboratory services. *Id.*

### A.  Ireland's CervicalCheck Program

In 2008, the Irish government, through Ireland's National Cancer Screening Service ("NCSS"), implemented CervicalCheck, a program to provide cervical screening to women aged 25 to 60. *Id.* ¶ 17. MedLab and Sonic Ireland contracted with NCSS to provide cervical cytology laboratory

---

[2] Homeland is a New York insurance company with its principal place of business in Plymouth, Minnesota. Dkt. 56 ¶ 4.

[3] CPL is a Texas corporation. *Id.* ¶ 5. Sonic USA is a Delaware corporation with its principal place of business in Austin, Texas. *Id.* ¶ 6.

screening services for CervicalCheck from 2010 to 2014. *Id.* ¶ 18. CPL provided cytology services for the program from 2010 to 2013, screening pap smear slides for signs of cancer. Dkt. 63 at 8.

In 2010, CervicalCheck implemented an oversight audit review program called Cancer Audit Reviews ("CARs") to determine whether any areas of the cervical screening process could be improved to avoid misread pap smear slides. Dkt. 56 ¶ 21. Before 2016, CARs results were considered only for educational purposes and were not disclosed to patients. *Id.* ¶ 26. In February 2016, however, CervicalCheck began reporting CARs results to patients' treating physicians. *Id.*

**B. Coverage Dispute**

On June 30, 2013, Homeland issued a Medical Facilities and Providers Professional Liability, General Liability and Employee Benefit Liability Policy to Sonic USA and CPL for the policy period June 30, 2013 through June 30, 2014. Dkt. 63-2 (the "2014 Policy"). The 2014 Policy covered certain claims for wrongful acts and personal injury. *Id.* at 26. The parties renewed the 2014 Policy for the 2015-2016 period. Notably, the 2014 and 2015 Policies covered only claims made in the United States, its territories, or Canada. Dkt. 56 ¶ 40.

In August 2015, the family of a woman ("Ms. O I") who died after developing cervical cancer filed a negligence lawsuit in Ireland against CPL, Sonic USA, and other entities, based on alleged misread pap smear slides. *Id.* ¶ 49. After CPL was served with the lawsuit, it filed an insurance claim with Homeland. On July 7, 2016, Homeland denied the claim because the 2014 Policy did not cover lawsuits filed in Ireland. *Id.* ¶ 52.

Once Defendants became aware of their gap in coverage, they "sought to secure worldwide coverage from Homeland starting with the 2016-17 policy period so that if similar claims arose in the future, they would be covered." Dkt. 63 at 9. Homeland agreed to provide such coverage. On August 30, 2016, the parties executed a Worldwide Territory Endorsement ("WTE")

(Endorsement No. 12, Policy No. MFL-004062-0616) to the 2016 Policy, which extended coverage to claims filed against Defendants "outside the United States of America," effective June 30, 2016. Dkt. 56 at 73, 115.

Homeland alleges that it agreed to the expanded coverage only after requiring Defendants to agree to certain "warranties" in a letter dated July 27, 2016, written by Stephen Shumpert, then CPL's President and Director and Sonic USA's Chief Executive Director and Director. The letter states, in its entirety:

> The undersigned, on behalf of Sonic and any person proposed for coverage (the insureds) does hereby represent to OneBeacon Insurance and its writing company that:
>
> The insureds, after diligent inquiry, are not aware of any claims against the insured(s) or any fact, circumstance, situation, transaction, event, act, error, or omission that may give rise to a claim against the insured(s) Sonic Healthcare (Ireland) Limited, MedLab Pathology, and CPL of Austin as respect the cervical cytology laboratory screening services conducted between 8/1/2010 to 6/30/2013 and all claims and facts, circumstances, situations, transactions, events, acts, errors, or omissions against the insured(s) that may result in a claim have been reported to prior insurance carrier(s).
>
> OneBeacon Insurance and its writing company will be issuing its policy in reliance upon the conditions and statements made in this letter and the application both of which will be deemed to be a part of the policy.

*Id.* at 61 (the "2016 Letter"). It is undisputed that the 2016 Letter was not an endorsement to the 2016 Policy. Homeland characterizes it as a "Warranty Letter" and contends that the parties intended that it "be part of the policy." *Id.* ¶54.

The 2016 Policy provides that it "can only be altered, waived, or changed by written endorsement issued to form a part of this Policy." Dkt. 56 at 99. In addition, the Policy provides:

> The **Insureds** represent that the particulars and statements contained in the Application attached to this Policy are true, accurate and complete and agree that:

> (1) this Policy is issued and continued in force by the Underwriter in reliance upon the truth of such representation;
>
> (2) those particulars and statements are the basis of this Policy; and
>
> (3) the Application and those particulars and statements are incorporated in and form a part of this Policy.
>
> No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the Application. In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the Application, this Policy shall be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission or to whom such knowledge is imputed.

*Id.* at 98-99.

Homeland issued the same WTE to Defendants' 2017 Policy, which was effective June 30, 2017 through June 30, 2018. *Id.* at 202. The 2017 Policy contained the same provisions quoted above. *Id.* at 178-79.

In August 2018, the family of "Ms. S" filed a negligence lawsuit in Ireland against MedLab based on an alleged misread pap smear slide. *Id.* ¶ 135. Sonic Ireland and CPL were added as defendants in May 2019. *Id.* ¶ 136. CPL settled the case in October 2019. *Id.* ¶ 138. MedLab and Sonic Ireland did not contribute to the settlement. *Id.* On July 10, 2020, Homeland denied CPL's claim on the grounds that: (1) the 2016 and 2017 Policies' prior knowledge and prior notice exclusions preclude coverage because MedLab had provided notice of the Ms. S claim to MedLab's insurer, Vero Insurance Company, in 2016; and (2) the 2016 Letter was inaccurate and contained misrepresentations. Dkt. 56 ¶¶ 141, 143;

## C.  Litigation

On July 24, 2020, Homeland filed this action against CPL, Sonic USA, Sonic Ireland, Sonic Limited, and MedLab, seeking a declaratory judgment that "there is no coverage for the Ms. S

Claim under the Primary Policy or the Excess Policy" based on the prior knowledge and prior notice exclusions, and because the 2016 Letter was inaccurate. Homeland's Original Complaint, Dkt. 1 ¶ 159. Homeland subsequently amended its complaint to add claims for negligent misrepresentation, breach of warranty, and reformation. Homeland's First Amended Complaint, Dkt. 21.

CPL asserted several counterclaims against Homeland, including breach of contract, anticipatory breach of contract, bad faith under the Texas Insurance Code, and a claim for attorneys' fees. CPL's First Amended Counterclaim, Dkt. 46. Homeland asserted twenty affirmative defenses to CPL's counterclaims. Dkt. 53 at 44-53.

On October 26, 2020, Defendants moved to dismiss Homeland's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Dkt. 24. On April 26, 2021, the District Court granted in part and denied in part the Motion to Dismiss. Dkt. 28. Specifically, the District Court dismissed:

(1) MedLab, Sonic Ireland, and Sonic (the "Foreign Defendants") for lack of personal jurisdiction;

(2) Homeland's breach of warranty claim, without prejudice, because it was dependent on the allegation that the 2016 Letter was misleading, and "Homeland has not plausibly pleaded that the 2016 Letter was incorporated into the 2016 or 2017 Policy," *id.* at 9;

(3) Homeland's reformation claim, because Homeland complained about a mistake in the 2016 Letter, not a mistake in the creation of the 2017 Policy; and

(4) Homeland's second negligent misrepresentation claim "insofar as it seeks attorney's fees." *Id.* at 14.

The District Court denied the motion as to Homeland's claim for declaratory relief that there was no coverage under the policy. *Id.*

Both parties moved for reconsideration of the District Court's Order. Dkts. 35, 36. On August 4, 2021, the Court issued an Amended Order, which reaffirmed its dismissal of the Foreign

Defendants and Homeland's breach of warranty and reformation claims. Dkt. 55 at 9-12. The Court again found that "Homeland has not plausibly alleged that the 2016 Letter was incorporated into the 2016 or 2017 Policy." *Id.* at 9. The Court also dismissed Homeland's negligent misrepresentation claim because "it revolves around the insurance policy between the parties and is thus barred by the economic loss rule." *Id.* at 15. The District Court again denied the motion as to Homeland's claim for declaratory relief that there was no coverage under the policy. *Id.* at 10.

Meanwhile, on May 26, 2021, Homeland filed an Opposed Motion for Leave to File a Second Amended Complaint to (1) amend its claims for declaratory relief and negligent misrepresentation to include additional Irish CervicalCheck claims "that Defendants have noticed to Homeland since the filing of Homeland's first amended complaint;" (2) add a promissory estoppel claim; (3) "add allegations that make clear that the 2016 Warranty Letter was incorporated into the 2016 policies;" and (4) add an allegation that the 2017 Policy was a renewal of the 2016 Policy. Dkt. 34 at 2-3. The District Court granted the Motion for Leave except as to the negligent misrepresentation claim, which the Court had dismissed with prejudice. Dkt. 54 at 5.

On August 17, 2021, Homeland filed its 57-page Second Amended Complaint against CPL and Sonic USA, which is its operative complaint. Dkt. 56. Homeland seeks a declaratory judgment that "there is no coverage under for the Ms. S, Ms. A. , Ms. O II, and Ms. CII Claims, or any Additional Ongoing Claims, under the 2017 Primary Policy or the 2017 Excess Policy for any of the Defendants." Dkt. 56 ¶ 228. Once again, Homeland contends that there is no coverage under the 2016 and 2017 Policies because (1) the 2016 and 2017 Policies' prior knowledge and prior notice exclusions preclude coverage because MedLab had provided notice of the claims to MedLab's insurer, Vero Insurance Company, in 2016; and (2) the 2016 Letter was inaccurate and contained false warranties and misrepresentations. Homeland also asserts that the 2016 Letter was

incorporated into the 2016 Policy, and that the 2017 Policy was a renewal of the 2016 Policy. *Id.*

¶¶ 3, 185, 234. Homeland also asserts claims for:

> (1) breach of warranty, based on "warranties" made by CPL in the 2016 Letter;
>
> (2) reformation, based on warranties made by CPL in the 2016 Letter; and
>
> (3) promissory estoppel, contending that Defendants should be estopped from arguing that the 2016 Letter was not incorporated into the Policies.

*Id.* ¶¶ 225-41.

Defendants move for summary judgment on all affirmative claims for relief asserted in Homeland's Second Amended Complaint, and on several affirmative defenses in Homeland's Amended Answer.[4] After considering the law, the parties' briefs and arguments, the Court makes the following recommendations.

## II. Legal Standards

### A. Rule 56(a)

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving

---

[4] Homeland moved to deny or delay consideration of Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) on grounds of prematurity. Dkt. 84. The undersigned Magistrate Judge issued a Report and Recommendation that the District Court deny Homeland's Motion, Dkt. 99, which the District Court adopted, Dkt. 105.

party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B.  Texas Insurance Law

In a diversity action, federal courts are bound to apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court applies Texas law. "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). Unless the policy dictates otherwise, courts give words and phrases their ordinary

and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). If policy language can be given a definite or certain legal meaning, it is not ambiguous, and courts construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

> The paramount rule is that courts enforce unambiguous policies as written. . . . If an insurance contract, just like any other contract, uses unambiguous language, that's that. Our first task, then, is purely legal: deciding whether the Policy is ambiguous. And under Texas contract law, "ambiguity" means more than "lack of clarity." A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations. . . . A policy is only ambiguous if, giving effect to all provisions, its language is "subject to two or more reasonable interpretations."

*Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020) (citations omitted). If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "Where an ambiguity involves an exclusionary provision of an insurance policy, we must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (citation omitted).

The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. *Id.* "The burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought by the insured against the insurance company claiming the existence of coverage for a particular claim or event." *David Lewis Builders, Inc. v. Mid-Continent Cas. Co.*, 720 F. Supp. 2d 781, 784 (N.D. Tex. 2010), *aff'd*, 410 F. App'x

787 (5th Cir. 2011); *Mid-Continent Cas. Co. v. McCollum Custom Homes, Inc.*, 461 F. Supp. 3d 516, 522 (S.D. Tex. 2020) (same), *appeal dismissed*, 2020 WL 8569300 (5th Cir. Oct. 28, 2020).

### III.   Analysis

As stated above, Defendants seek summary judgment on all of Homeland's claims and several of its affirmative defenses. Defendants argue that "[t]he primary flaw in Homeland's theories is unchanged—the 2016 Letter wasn't incorporated into the 2017 Policy, so any misrepresentations in the letter are contractually irrelevant." Dkt. 63 at 7. Defendants emphasize that the District Court "properly held there was no incorporation here because Homeland did not bargain for language in the 2017 Policy incorporating materials submitted with prior applications, like the letter." *Id.* Defendants argue that nothing has changed since the District Court's holding, and "Homeland's new allegations do not fix the problem because they center on the 2016 Policy and extrinsic evidence regarding the negotiation of the 2016 Policy, but under Texas law the analysis starts and stops with the language of the 2017 Policy." *Id.*

In response, Homeland argues for the first time that the "fortuity doctrine" bars all coverage in this case because Defendants were aware of potential claims against them before they sought and obtained the WTE. Dkt. 73 at 11-12. Alternatively, Homeland argues that material fact issues precludes summary judgment.

### A.  Homeland's Assertion of the Fortuity Doctrine

Because the purpose of insurance is to protect insureds against unknown, or fortuitous, risks, fortuity is an inherent requirement of all risk insurance policies. *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.—Dallas 2001, pet. denied). The fortuity doctrine "relieves insurers from covering certain behaviors that the insured undertook prior to purchasing the policy." *BITCO Gen. Ins. Corp. v. Acadia Ins. Co.*, 427 F. Supp. 3d 838, 856 (E.D. Tex. 2019) (quoting *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 F. App'x 194, 198 (5th Cir. 2004)). Under the doctrine, "an insured cannot

obtain coverage for something that has already begun and which is known (or should have been known) to have begun." *Colony Ins. Co. v. Custom Ag Commodities, LLC*, 272 F. Supp. 3d 948, 961 (E.D. Tex. 2017) (citing *Summers v. Harris*, 573 F.2d 869, 872 (5th Cir. 1978)).[5] The fortuity doctrine precludes coverage for known losses or losses in progress. *Scottsdale*, 68 S.W.3d at 75; *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist.] 1995, no writ). "A 'known loss' is one that the insured knew had occurred before the insured entered into the contract for insurance." *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied). A "loss in progress" is an "ongoing progressive loss" that the "insured is, or should be, aware of . . . at the time the policy is purchased." *Scottsdale*, 68 S.W.3d at 75.

The fortuity doctrine does not require an insured to have specific, actual knowledge of the loss. Instead, the doctrine precludes coverage when "the insured is or should be aware of an ongoing progressive or known loss at the time the policy is purchased." *BITCO*, 427 F. Supp. 3d at 856 (quoting *RLI Ins.*, 108 F. App'x at 198). In addition, "it has been recognized that the known loss doctrine does not apply if the insurer also knew of the circumstances on which it bases the defense." STEVEN PLITT ET AL., 7 COUCH ON INSURANCE § 102:9 (3rd Ed. June 2022 Update). The insurer bears the burden of establishing that the fortuity doctrine bars coverage. *Trammell Crow Residential Co. v. Virginia Sur. Co.*, 643 F. Supp. 2d 844, 855 (N.D. Tex. 2008).

Defendants argue that Homeland waived its fortuity doctrine defense by failing to assert it in its Second Amended Complaint or as an affirmative defense in its Amended Answer, as required

---

[5] *See also Burch v. Commonwealth Mut. Ins. Co.*, 450 S.W.2d 838, 840-41 (Tex. 1970) ("[I]t is contrary to public policy for an insurance company, the business of which is affected with a public interest, knowingly to assume the burden of a loss that occurred prior to making the contract. This is the basis of the statements found in some opinions that an agent has no authority to issue a policy to cover a known loss.").

under Rule 8(c). Homeland responds that the fortuity doctrine is not an affirmative defense, and that it "is not required to plead legal theories." Hearing Tr., Dkt. 109 at 30:2-5.

### 1. The Fortuity Doctrine Is an Affirmative Defense

In a diversity action such as this, substantive state law determines what constitutes an affirmative defense. *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007). An affirmative defense under Texas law is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155-56 (Tex. 2015)).

Texas courts have held that: "An allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded." *Est. of Riefler*, 540 S.W.3d 626, 632 (Tex. App.—Amarillo 2017, pet. denied); *950 Corbindale, L.P. v. Kotts Cap. Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (same); *see also Shakeri v. ADT Sec. Servs., Inc.*, No. 3:13-CV-2852-D, 2016 WL 6565743, at *5 (N.D. Tex. Nov. 4, 2016) (same). The Texas Insurance Code, moreover, provides that "[l]anguage of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or affirmative defense." *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 510 (5th Cir. 2020) (quoting Tex. Ins. Code § 554.002 (West 2005).

Accordingly, courts and commentators have treated the fortuity doctrine and the known loss doctrine as affirmative defenses. *See* Thomas D. Caudle, *A Primer on "Known Loss" and "Loss-in-Progress*," 8 J. Tex. Ins. L. 16 (2007) ("In recent years, the fortuity doctrine's known loss and loss-in-progress rules have become potent affirmative defenses in coverage litigation that carriers have turned to with increasing frequency."); *see also Loya Casualty Ins. Co. v. Certain*

*Underwriters at Lloyds, London*, No. SA-21-CV-00611-JKP, 2022 WL 2329196, at *2 (W.D. Tex. June 28, 2022) (referring to known loss doctrine as affirmative defense); *Townsen v. Mid-Continent Cas. Co.,* No. 5:07-CV-217-C, , at *6 (N.D. Tex. Oct. 23, 2008) (same); *Sentry Ins. v. DFW All. Corp.,* No. CIV A 304-CV-1043-D, 2007 WL 507047, at *3 (N.D. Tex. Feb. 16, 2007) (same); *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 615 (W.D. Tex. 2001) (referring to fortuity doctrine as an affirmative defense).[6] As one Texas court of appeal reasoned: "The doctrine has its roots in the prevention of fraud; because insurance policies are designed to insure against fortuities, fraud occurs when a policy is misused to insure a certainty." *Scottsdale*, 68 S.W.3d at 75. Fraud is an affirmative defense under Texas law. TEX. R. CIV. P. 94; *see also* FED. R. CIV. P. 8(c) (listing fraud as affirmative defense). For these reasons, the Court finds that the fortuity doctrine is an affirmative defense under Texas law.

### 2. Homeland Waived the Defense

While substantive state law determines what constitutes an affirmative defense, "the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Arismendez*, 493 F.3d at 610. Rule 8(c) requires that an affirmative defense be set forth in a defendant's responsive pleading. "Failure to comply with this rule, usually results in a waiver." *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983). It is left to the trial court's discretion to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise.

---

[6] *See also Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) (construing fortuity doctrine defense as affirmative defense under Pennsylvania law); *MKB Constructors v. Am. Zurich Ins. Co.,* 49 F. Supp. 3d 814, 837 (W.D. Wash. 2014) (construing fortuity doctrine defense as affirmative defense under Washington law).

*Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013). "Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise. A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) (quoting *Bettes v. Stonewall Insurance Co.*, 480 F.2d 92, 94 (5th Cir. 1973)). Unfair surprise or prejudice is a fact-specific inquiry based on the circumstances of the case. *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 402 (5th Cir. 2014).

Based on the specific facts of this case, the Court finds that Homeland's delay in raising the fortuity defense constitutes unfair surprise. As noted, the District Court allowed Homeland to file a Second Amended Complaint to add (1) more Irish CervicalCheck claims to its request for declaratory relief; (2) a promissory estoppel claim; and (3) allegations to support its argument that the 2016 Letter was incorporated into the 2016 Policy. Dkt. 54 at 5. Homeland did not request and was not granted leave to assert the fortuity doctrine defense. Homeland also did not seek and was not granted leave to assert the fortuity doctrine as an affirmative defense to CPL's First Amended Counterclaim. The Court finds that allowing Homeland to assert the fortuity doctrine at this late date constitutes unfair surprise that would prejudice Defendants.

Even if the fortuity doctrine is not considered an affirmative defense under Texas law, Homeland nevertheless waived it because it did not assert the fortuity doctrine until its Response to Defendants' Motion for Summary Judgment. "It is well settled in our circuit that '[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'" *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quoting *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). Accordingly, the fortuity doctrine defense is not properly before the Court.

15

**B.  Defendants' Motion for Summary Judgment on Homeland's Claims and Defenses**

Because coverage in this case is not barred under the fortuity doctrine, the Court considers Defendants' motion for summary judgment on Homeland's claims and affirmative defenses.

### 1.  Breach of Warranty Claim

In its breach of warranty claim, Homeland alleges that Defendants breached the following "warranties" made in the 2016 Letter:

> (i)  The Warranty Letter was on behalf of MedLab and Sonic Ireland, both of which were insureds "proposed for coverage";
>
> (ii)  A diligent inquiry had been conducted on behalf of MedLab and Sonic Ireland;
>
> (iii)  None of the insureds proposed for coverage were aware of any claims against any of the insureds;
>
> (iv)  None of the insureds proposed for coverage were aware of any fact, circumstance, situation, transaction, event, act, error, or omission that may give rise to a claim against Sonic Ireland, MedLab, and CPL as respect the cervical cytology laboratory screening services conducted between 8/1/2010 to 6/30/2013; and
>
> (v)  All claims and facts, circumstances, situations, transactions, events, acts, errors, or omissions against the insured(s) that may result in a claim had been reported to prior insurance carrier(s).

Dkt. 56 ¶ 231. Homeland seeks a declaration that any coverage that might have been afforded under the WTE in the 2016 and 2017 Policies is "void as to Defendants with respect to the Irish CervicalCheck claims." *Id.* ¶ 232. Defendants argue that Homeland's breach of warranty claim should be dismissed for a second time because Homeland fails to show that the 2016 Letter was incorporated into the 2016 or 2017 Policies. In the alternative, Defendants argue that the 2016 Letter contains representations, not warranties. In response, Homeland argues that incorporation of the 2016 Letter into the Policies is not required for its breach of warranty claim to survive. Alternatively, Homeland argues that the 2016 Letter was incorporated into the Policies.

### a.   The District Court Has Determined that Incorporation Is Necessary

Homeland first argues that incorporation of the 2016 Letter into the Policies is not required for its breach of warranty claim to survive because the 2016 Letter "is an enforceable contract in its own right because both sides gave consideration: the warranties in exchange for expanded coverage." Dkt. 83 at 13. The District Court rejected this argument in its Amended Order dismissing Homeland's breach of warranty claim. Addressing Homeland's argument that its breach of warranty claim "still stands" even if the 2016 Letter was not incorporated into the 2017 Policy, the District Court stated:

> Homeland's claim for breach of warranty specifically seeks relief only in the form of a declaratory judgment that the 2017 Policy is void. Because Homeland states no basis on which the 2017 Policy could be voided by a letter which it did not incorporate into its terms, the Court dismisses Homeland's third claim for breach of warranty.

Dkt. 55 at 11.

The District Court allowed Homeland to replead its breach of warranty claim only to "add allegations that make clear that the 2016 Letter was incorporated into the 2016 policies." Dkt. 54 at 5. The breach of warranty claim in Homeland's Second Amended Complaint seeks relief only through a declaratory judgment that the 2016 and 2017 Polices are void. For this claim to survive, Homeland must show that the 2016 Letter was incorporated into the 2016 and 2017 Policies.

### b.   The 2016 Letter Was Not Incorporated in the Policies

"Texas law has long provided that a separate contract can be incorporated into an insurance policy by an explicit reference clearly indicating the parties' intention to include that contract as part of their agreement." *Urrutia v. Decker*, 992 S.W.2d 440, 442 (Tex. 1999). While "magic" words are not required to incorporate an extrinsic document into an insurance policy, "an extrinsic document may not be considered unless the policy clearly manifests an intent to incorporate its terms." *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019).

17

> Thus, while our inquiry must begin with the language in an insurance policy, it does not necessarily end there. In other words, we determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document to the extent required by the policy. Unless obligated to do so by the terms of the policy, however, we do not consider coverage limitations in underlying transactional documents.

*In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015); *see also O'Brien's Response Mgmt., L.L.C. v. BP Expl. & Prod., Inc.*, 24 F.4th 422, 428 (5th Cir. 2022) ("If a policy directs Texas courts elsewhere, they will refer to an incorporated document to the extent required by the policy but they do not consider coverage limitations in underlying transactional documents unless required by the policy.") (cleaned up).

Here, the 2016 Policy states that it "can only be altered, waived, or changed by written endorsement issued to form a part of this Policy." Dkt. 56 at 99. It is undisputed that the 2016 Letter was not an endorsement to the 2016 Policy. Homeland argues that the letter was incorporated into the 2016 Policy because "the 2016 Letter expressly states that it 'will be deemed to be a part of the policy.'" Dkt. 83 at 13-14 (quoting Dkt. 56 at 61). But under Texas law, courts determine whether an extrinsic document is incorporated into an insurance policy based on the language used in the ***insurance policy***, not the extrinsic document. *Exxon Mobil*, 568 S.W.3d at 657.

Homeland next argues that the 2016 Policy incorporated the 2016 Letter because the policy "broadly incorporates 'all information' provided to Homeland: 'In consideration of the payment of the premium, *and in reliance on all statements made and information furnished to the Underwriter* . . . .'" Dkt. 83 at 13 (quoting Dkt. 73-16 at 13). This general provision does not demonstrate that the Policy "clearly manifests an intent to incorporate" the 2016 Letter. *Exxon Mobil Corp.*, 568 S.W.3d at 657; *see also Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002 [mand. denied]) (holding

that mention of "General Terms and Conditions of Sale" in policy "does not plainly refer, as a matter of law, to any separate document . . . . Before [the policy] can incorporate something by reference, it must first make a reference.").

Homeland next argues that the 2016 Letter was incorporated into the 2016 Policy because (1) the 2016 Policy states that "the Application and those particulars and statements are incorporated in and form a part of this Policy," Dkt. 56 at 98-99; and (2) the Application states that "the information contained in  and submitted with this Application . . . will be considered physically attached to, part of, and incorporated into the policy, if issued." Dkt. 73-12. As the District Court previously held, this argument fails because Homeland does not show that the 2016 Letter was attached to the Defendants' Application. Dkt. 55 at 10. In fact, the 2016 Letter was executed three months ***after*** Defendants submitted their Application for the 2016 Policy. Dkt. 73-12 (showing Application was signed April 11, 2016); Dkt. 56 at 61 (showing 2016 Letter was signed July 27, 2016). Homeland relies on no other theory for incorporation.

Homeland still has not demonstrated that the 2016 Letter became a part of the 2016 and 2017 Policies because it "does not point to language in either insurance policy that incorporated the 2016 Letter." Dkt. 55 at 9. *Cf. Republic W. Ins. Co. v. Rockmore*, No. 3-02-CV-1569-K, 2005 WL 57284, at *10 n.12 (N.D. Tex. Jan. 10, 2005) (holding that "alleged warranty . . . in a separate document that is not referenced in, attached to, or otherwise made part of the insurance contract" did not become part of the insurance policy); *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 102 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (refusing to consider underlying contract's coverage limitations where policy did not clearly manifest intent to include extrinsic document as part of policy).

In its breach of warranty claim, Homeland seeks only a declaratory judgment that the 2016 and 2017 Polices are void, but it states no basis on which those policies could be voided by a letter not incorporated into their terms. For these reasons, the undersigned Magistrate Judge recommends that the District Court grant summary judgment to Defendants on Homeland's breach of warranty claim, and the Court need not address Defendants' alternative arguments.

## 2. Reformation Claim

For its amended reformation claim, Homeland alleges that:

> The parties mutually agreed to include certain risks under the 2016 and subsequent policies only if certain facts or warranties provided in the Warranty Letter were actually true. The Warranty Letter (which was incorporated into the 2016 and 2017 policies) contained warranties that the Defendants were either mistaken in so warranting, or inequitably induced Homeland to unilaterally mistake in so believing, such that the 2016 and 2017 policies were issued contrary to the actual understanding of the parties.

Dkt. 56 ¶ 234. Based on these allegations, Homeland first alleges that it is entitled to reformation of the 2016 and 2017 Policies to "exclude certain risks covered" under the WTE and the Additional Named Insured Endorsement that were based on "mutual and/or unilateral mistakes" made in the 2016 Letter incorporated into the Policies. In the alternative, "to the extent the Warranty Letter is not deemed to have already been incorporated into the 2016 and/or 2017 policies . . . Homeland seeks to reform those policies to include the Warranty Letter consistent with the parties' expressed intent in that Letter that it 'be deemed to be a part of the policy.'" Dkt. 56 ¶¶ 235-36.

"The law presumes that a written agreement correctly embodies the parties' intentions, and is an accurate expression of the agreement the parties reached in prior oral negotiations." *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 275 (Tex. 1970). A court may, however, reform a contract to correct a mutual mistake in preparing a written instrument. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). The party seeking to reform an agreement must

show "(1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing." *Id.* The party claiming reformation must present

> clear, exact, and satisfactory evidence that he is entitled to it. . . . Despite hardship, relief by reformation will be denied in the absence of proof of a definite agreement between the parties which has been misstated in the written memorandum because of a mistake common to both contracting parties.

*Estes*, 462 S.W.2d at 275 (internal citation and quotations omitted)

As explained above, Homeland has failed to show by "clear, exact, and satisfactory evidence" that the 2016 Letter was incorporated into the Policies. *Id.* Accordingly, Homeland's first reformation claim fails.

On the other hand, Homeland's allegations in its second reformation claim state a plausible claim under Texas law. Homeland alleges that (1) the parties intended for the 2016 Letter to be part of the 2016 and 2017 Policies, and (2) "such failure to incorporate was a mistake and contrary to the parties' mutual intent." Dkt. 56 ¶ 236. Homeland also has submitted uncontroverted summary judgment evidence in support of this argument: the 2016 Letter itself, which states that "OneBeacon Insurance and its writing company will be issuing its policy in reliance upon the conditions and statements made in this letter and the application both of which will be deemed to be a part of the policy." Dkt. 56 at 61.

Defendants argue that Homeland's second reformation claim fails because the 2016 Policy was written by June 28, 2016, and the letter was signed nearly a month later, on July 27, 2016. But the 2016 Policy of record was executed by Homeland on August 30, 2016, after the 2016 Letter was signed. Dkt. 56 at 73. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment on Homeland's second reformation claim.

### 3. Promissory Estoppel Claim

In its newly asserted promissory estoppel claim, Homeland asks that Defendants "be estopped from arguing or otherwise contending that the Warranty Letter was not incorporated into the operative insurance policies." Dkt. 56 ¶ 241. To succeed on a promissory estoppel cause of action under Texas law, a plaintiff must show: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). This cause of action "presumes no contract exists[.]" *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). If "a valid contract between the parties covers the alleged promise, the plaintiff cannot recover for the promise under promissory estoppel." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (quoting *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App.—El Paso 2007, pet. denied)); *see also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (stating that there is no recovery under quasi-contract or unjust enrichment theory where valid express contract covers subject matter of parties' dispute).

In this case, because valid contracts (the insurance policies) govern the subject matter of this dispute, Homeland's promissory estoppel claim fails as a matter of law. *See Gil Ramirez*, 786 F.3d at 414; *Subaru*, 84 S.W.3d at 226.

### 4. Affirmative Defenses

Homeland has asserted twenty affirmative defenses to coverage. Dkt. 53. Defendants move for summary judgment on the defenses of prior notice, prior knowledge, and misrepresentation.

#### a. Prior Notice Exclusion

In relevant part, the "Prior Notice Exclusion" in the 2017 Policy provides that:

> Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> . . .
>
> (2) act, error, omission, **Wrongful Act**, event, suit or demand which was the subject of any notice given under:
>
> > (a) any medical professional liability or similar policy of insurance or plan or program of self-insurance, with respect to any **Claim** otherwise covered under INSURING AGREEMENT (A);
> >
> > . . .
> >
> > in effect prior to the Inception Date set forth in ITEM 2 of the Declarations; . . . .

Dkt. 56 at 168 (§ III D(2)(a)).

Homeland argues that the Prior Notice Exclusion bars coverage to CPL because CPL's sister lab, MedLab, provided notice of the claims at issue in this case to its insurer, Vero, on March 17, 2016. *Id.* ¶ 83. Defendants argue that this defense "fails as a matter of law because MedLab is not covered by the 2017 Policy for any liability it may have arising out of the Irish CervicalCheck Program." Dkt. 63 at 25. The Court agrees.

It is undisputed that MedLab was not a party to the 2017 Policy with Homeland; MedLab's insurer was Vero, not Homeland. Nevertheless, Homeland alleges that MedLab's notice of its potential CervicalCheck liability to Vero triggers the Prior Notice Exclusion to preclude coverage because "'any Claim' means the claims for which CPL is seeking coverage." Dkt. 83 at 25.

The exclusion clearly states that it excludes only claims "otherwise covered under Insuring Agreement (A)." Dkt. 56 at 168. MedLab's notice of the bulk claims to Vera are not claims "otherwise covered under Insuring Agreement (A)" because MedLab was not a party to the Policy. Accordingly, MedLab's notice to Vero could not have triggered the exclusion to preclude coverage for CPL. Such an interpretation also is consistent with the purpose of prior notice exclusions, which

23

is to prevent double recovery. "There would be no reason to draft an exclusion that combats double recovery if the exclusion could apply even in the absence of double recovery." *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, No. N18C-09-211-AML, 2021 WL 4130631, at *14 (Del. Super. Ct. Sept. 10, 2021).

Policy exclusions, moreover, "are strictly construed against the insurer and in favor of the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy*, 811 S.W.2d 552, 555 (Tex. 1991). Even if the Court found the policy ambiguous, which it does not, it would have to "resolve the uncertainty by adopting the construction that most favors the insured . . . even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (quoting *Hudson Energy*, 811 S.W.2d at 555).

For these reasons, the undersigned Magistrate Judge recommends that the District Court grant summary judgment to Defendants on the Prior Notice Exclusion affirmative defense.

### b. Prior Knowledge Exclusion

The Prior Knowledge Exclusion in the 2017 Policy provides:

> Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> (1) act, error, omission or **Wrongful Act** if any **Insured**, on or before the Inception Date set forth in ITEM 2 of the Declarations, knew or reasonably could have foreseen that such act, error, omission or **Wrongful Act** might result in a **Claim**.
>
> If, however, this Policy is a renewal of one or more policies previously issued by the Underwriter to the First Named Insured, and the coverage provided by the Underwriter to the First Named Insured was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this

> EXCLUSION (D)(1) to the Inception Date will be deemed to refer instead to the inception date of the first policy under which the Underwriter began to provide the First Named Insured with the continuous and uninterrupted coverage of which this Policy is a renewal;

Dkt. 56 at 168 (§ III D(1)). Homeland argues that this provision excludes coverage of some of Defendants' claims because they knew about potential CervicalCheck claims before they entered into the Policy.

In their Motion for Summary Judgment, Defendants contend that this affirmative defense fails as a matter of law because "Homeland does not and cannot not allege that CPL knew or should have known about the ICC [Irish CervicalCheck] Claims before June 30, 2013 [the relevant inception date]." Dkt. 63 at 26. In response, Homeland asserts that "documents recently produced by Defendants destroy their argument." Dkt. 83 at 27. In support, Homeland relies on evidence that CPL could have been aware of potential ICC claims as early as June 2013. Dkts. 69-5, 69-7, 69-8 (sealed).

The Court finds that Homeland has presented sufficient evidence to create a material fact issue as to its Prior Knowledge affirmative defense. Accordingly, Defendants have not established that they are entitled to summary judgment as to this defense.

### c. Misrepresentation

Homeland alleges that Defendants "made material misrepresentations during the claim or in connection with an insurance application" that void coverage under the 2017 Policy. Dkt. 53 at 46.

Defendants first argue that this defense fails because the 2016 Letter was not incorporated into the 2017 Policy. Because Homeland alleges that Defendants made misrepresentations "*during* the claim," this defense is not limited only to misrepresentations in the 2016 Letter, and the Court finds that this argument lacks merit.

Next, Defendants argue that Homeland's misrepresentation defense fails because it did not comply with the 90-day notice requirement set forth in Section 705.005(b) of the Texas Insurance Code, which provides, in relevant part:

> A defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy only if the defendant shows at trial that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant refused to be bound by the policy:
>
> (1) to the insured, if living.

Tᴇx. Iɴs. Cᴏᴅᴇ § 705.005(b) (West 2005).

"This statutory notice requirement is an essential element of a defense based on misrepresentation." *Koral Indus., Inc. v. Sec.-Connecticut Life Ins. Co.*, 788 S.W.2d 136, 148 (Tex. App.—Dallas 1990, writ denied) (interpreting prior version of Section 705.005); *see also Sentry Select Ins. Co. v. Home State Cnty. Mut. Ins. Co.*, 533 F. Supp. 3d 466, 478 (S.D. Tex. 2021). Because it is an affirmative defense, the insurer bears the burden on the applicability of the defense. *Myers v. Mega Life & Health Ins. Co.*, No. 07-06-0233-CV, 2008 WL 1758640, at *3 (Tex. App.—Amarillo April 17, 2008, pet. denied). "In order to establish that the statutory notice was given within a reasonable time, the record must show when the insurer discovered the misrepresentations." *Koral*, 788 S.W.2d at 148. Defendants contend that "Homeland's misrepresentation defense is predicated on information Homeland first possessed by February 4, 2019," but that Homeland did not notify Defendants of the defense until July 10, 2020, when it denied Defendants' claim. Dkt. 63 at 23.

Homeland argues that Section 705.005 "by its terms" applies only to misrepresentations in the application, not to misrepresentations made during the claim process. Dkt. 83 at 17. Homeland provides no case law to support this argument, which the Eastern District of Texas has rejected. *See Thompson v. Diamond State Ins. Co.*, No. 4:06-CV-154, 2008 WL 11344903, at *4 n.3

(E.D. Tex. May 2, 2008). Homeland further argues that there are material fact issues regarding whether it complied with the statute. Homeland acknowledges that it had "suspicions" as early as September 2018 that the 2016 Letter contained misrepresentations, but contends that it did not actually discover the falsity of Defendants' representations until May 2020. Dkt. 83 at 17. Homeland contends that Defendants fail to offer undisputed evidence that it "discovered the falsity of the representation[s]" by February 4, 2019.

The record does not establish that there is no genuine issue of material fact that Homeland "discovered the falsity" of Defendants' representations in the 2016 Letter by February 4, 2019. Accordingly, Defendants have not shown that they are entitled to summary judgment on this affirmative defense.

### 5. Declaratory Judgment

In its Second Amended Complaint, Homeland alleges that it "is entitled to a declaratory judgment in its favor, stating that there is no coverage for the Ms. S, Ms. A, Ms. O II, and Ms. C II Claims, or any Additional Ongoing Claims, under the 2017 Primary Policy or the 2017 Excess Policy for any of the Defendants." Dkt. 56 ¶ 228. Defendants also argue they are entitled to summary judgment on Homeland's declaratory judgment claim because it is duplicative of CPL's breach of contract claim. The Court disagrees. If Homeland is successful on its reformation claim or any of its affirmative defenses, it would be entitled to a declaratory judgment. Accordingly, the Court recommends that summary judgment be denied as to this claim.

### 6. Defense Costs

Finally, the parties disagree as to whether defense costs incurred by CPL in defending the CervicalCheck claims erode the liability limits in the 2017 Policy and the WTE. Defendants move

for summary judgment that defense costs incurred in defending the CervicalCheck claims do not

erode policy limits under the 2017 Policy.

"An intent to exclude coverage must be expressed in clear and unambiguous language."

*Hudson Energy*, 811 S.W.2d at 555. The WTE to the 2017 Policy provides, in relevant part, that:

> Subject to paragraph (2) below and solely for the purposes of the coverage afforded under INSURING AGREEMENT (A) of this Policy, Section IV GENERAL CONDITIONS (E) of this Policy is amended to add the following at the end thereof:
>
> > (1) Subject to the further provisions of this GENERAL CONDITION (E), if a **Claim** is made against an **Insured** outside the United States of America, including its territories or possessions, Puerto Rico or Canada, the Underwriter will have the right but not the duty to defend, investigate or settle such **Claim**. If the Underwriter elects not to defend, investigate or settle such **Claim**, the **Insured** shall be obligated to initiate such defense and investigation as is reasonably necessary and, subject to the Underwriter's prior written consent, may effect settlement. The Underwriter will reimburse the **Insured**, up to the applicable Limit of Liability, for reasonable **Defense Expenses** and **Loss**, subject to the deductible or self-insured retention set forth in ITEM 4.A. of the Declarations and all other provisions of this Policy.

Dkt. 56 at 202. The policy defines "Loss" as "any damages, settlements, judgments or other

amounts" but not "Defense Expenses." *Id.* at 159. In addition, the "Defense and Supplementary

Payments" section of the policy states that:

> In addition to the Limits of Liability for INSURING AGREEMENTS (A), (B), and (C), the Underwriter will pay **Defense Expenses** and will:
>
> (1) pay the premium on any bond to release attachments for an amount not in excess of the Limits of Liability for INSURING AGREEMENTS (A), (B), and (C) of this Policy and the premium on any appeal bond required in any defended suit, provided, that the Underwriter will not be obligated to apply for or furnish any such bond;
>
> (2) pay all costs imposed against the **Insured** in any such suit;
>
> (3) provide a legal defense and pay Defense Expenses for any arbitration, mediation or other alternative dispute proceeding if:

> a.  the dispute at issue is a Claim covered by this Policy, and
>
> (4) the **Insured** provides notice of the proceeding as required by
> GENERAL CONDITION (C) of this Policy; . . . .

*Id.* at 155. The Limits of Liability section caps the amount Homeland must pay for "all **Loss**

resulting from each **Claim** or **Related Claims** for which this Policy provides coverage," but does

not cap payments for defense costs. *Id.* at 170.

    The Court agrees with Defendants that under the 2017 Policy, defense costs do not erode policy

limits. "Most liability policies provide for defense costs to be paid in addition to policy limits."

*Amerisure Mut. Ins. Co. v. Arch Specialty Ins. Co.*, 784 F.3d 270, 274 (5th Cir. 2015); *see also*

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CNA Ins. Companies*, 28 F.3d 29, 31 n.1

(5th Cir. 1994) (stating that "the duty to defend rests primarily on the primary insurer"). If

Homeland wanted defense costs to erode policy limits, it could have written that into the Policy.[7]

*Hudson Energy Co.*, 811 S.W.2d at 555 ("If National Union wanted to exclude simultaneous

piloting from the scope of coverage, then it was incumbent upon it to expressly and clearly state

the exclusion in the policy."). Even if the contract were ambiguous, "[t]he court must adopt the

construction of an exclusionary clause urged by the insured as long as that construction is not

unreasonable, even if the construction urged by the insurer appears to be more reasonable or a

more accurate reflection of the parties' intent." *Id.* at 555. Accordingly, the Court agrees with

Defendants' interpretation of the 2017 Policy.

## IV.  Recommendation

    Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that Defendants'

Motion for Summary Judgment (Dkt. 63) is **GRANTED IN PART** and **DENIED IN PART**.

---

[7] *See* Endorsement 25, concerning medical marijuana testing, Dkt. 56 at 219 (providing that "Defense Expenses are part of, and not in addition to, the Limits of Liability set forth in paragraph (6) below, and payment of Defense Expenses by the Underwriter will reduce, and may exhaust, such Limits of Liability.").

The Court **RECOMMENDS** that the District Court **GRANT** the Motion as to Homeland's (1) breach of warranty claim, (2) promissory estoppel claim, (3) first reformation claim, and (4) Prior Notice Exclusion affirmative defense, as well as (5) Defendants' request that defense costs incurred in defending the ICC claims do not erode policy limits under the 2017 Policy.

The Court further **RECOMMENDS** that the District Court **DENY** the Motion as to Homeland's (1) claim for declaratory relief, (2) second reformation claim, (3) Prior Knowledge Exclusion affirmative defense, and (4) misrepresentation affirmative defense.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 19, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE