IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>　　　　　Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

**HOMELAND INSURANCE COMPANY OF NEW YORK'S OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE GRANTING IN-PART AND DENYING IN-PART CLINICAL PATHOLOGY LABORATORIES, INC.'S MOTION FOR SUMMARY JUDGMENT**

**[Filed under seal pursuant to paragraph 20 of the Agreed Confidentiality, Protective, and Non-Waiver Order (Dkt. 40)]**

　　　　Plaintiff and cross-defendant Homeland Insurance Company of New York ("Homeland") objects to the United States Magistrate Judge's Report and Recommendation (Dkt. 112) to grant in part and deny in part defendant and cross-plaintiff's Motion for Summary Judgment (The "R&R") on six grounds.  As detailed below, the R&R commits plain errors of law, makes findings that are unsupported by any evidence, and impermissibly draws inferences on disputed issues in favor of the moving party, CPL, when it must draw all inferences in favor of Homeland.

## Argument

　　　　In ruling on objections to an R&R, the district judge applies a *de novo* standard, *i.e.,* giving "no deference" to the  magistrate court's "analysis and conclusions." *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1295 (11th Cir. 2001) (*citing Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th

Cir. 1984)); FRCP 72(b)(3). The district court is in an "appellate" role when reviewing the magistrate's findings and recommendations; its function is to "correct those rulings made by the magistrate when the litigant has identified a possible error." *U.S. v. Remsing*, 874 F.2d 614, 616 (9th Cir. 2989) (*citing United States v. Schronce,* 727 F.2d 91, 94 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984) (Congress had lodged the primary responsibility for supervision of the federal magistrate's functions with the district court)).

I. **The Magistrate Judge's Finding that Homeland "Waived" Its Ability To Argue The Fortuity Doctrine Is Contrary To The Law and Unsupported by Fact.**

The fortuity doctrine – ███████████████████████████████████████ ███████████████████████████████ -- reflects the public policy of Texas. *Two Pesos, Inc. v. Gulf Inc. Co.*, 901 S.W.2d 495 at 501-02 (1995). The doctrine is intended to protect the insuring public against the increased premiums that would result if a subset of insureds were permitted to shift the risk of known losses onto the overall risk pool and, thus, onto the backs of other insureds. *See e.g., U.S. Liab. Ins. Co. v. Selman*, 70 F.3d 684, 690 (1st Cir. 1995).

The R&R treats this issue of public policy as an affirmative defense and, without any evidence of prejudice to CPL, concludes that Homeland waived the fortuity defense. (Dkt. 112, pp. 11-15.) The Court should reject this recommendation because the fortuity doctrine is not an affirmative defense, especially here where Homeland is the plaintiff not the defendant. And even if it were an affirmative defense, Homeland has no power to waive the public policy of Texas. Finally, the R&R's conclusion that CPL suffered prejudice from the doctrine not being explicitly pled is unsupported by the evidence (indeed, CPL did not even *argue* prejudice).

1. **Homeland Satisfied FRCP 8(a).** Contrary to the R&R, the fortuity doctrine cannot be considered an affirmative defense in the context of Homeland's suit because Homeland is the plaintiff.[1] In Homeland's suit and as part of its affirmative claims against CPL, Homeland

---

[1] As shown by several cases cited in the R&R, insurance company *defendants* sometimes label the fortuity doctrine an affirmative defense. But how defendants sometimes label the doctrine establishes no rule of law, especially not one applicable to insurance companies as plaintiffs.

requested a declaration of no coverage based on the fact that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ when it secured the relevant coverage. The R&R defines an affirmative defense as "a *defendant's* assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations of the complaint are true." (Dkt. 112, p. 13, italics supplied.)

Because Homeland is the plaintiff seeking declaratory relief of non-coverage, rather than a defendant, the proper way to analyze the issue is whether Homeland's complaint adequately pled facts satisfying FRCP 8(a), which requires only a "short and plain statement" of the facts entitling Homeland to a declaration of non-coverage. "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021). The plaintiff must plead the *facts* putting the defendant on notice of the conduct it is being asked to answer for, but it is unnecessary to plead the legal theories under which those facts give rise to relief:

> "So long as a legal pleading alleges *facts* upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the *legal theory* giving rise to the claim.'"

*Sanchez Oil*, 7 Fed.4th 301 at 309 (italics supplied).

Here, there is no doubt that Homeland's complaint abundantly described the facts supporting relief under the fortuity doctrine – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Specifically, Homeland alleged for example:

- By June 2013, three years before CPL applied to expand the Homeland policy to cover CervicalCheck suits in Ireland, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 56, ¶ 25.

- By February 2016, three months before CPL applied to expand the coverage, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 56 (Second Amended Complaint), ¶¶ 3, 26, 100.

---

None of the cases cited in the R&R considers issues of waiver and thus are not precedent supporting the R&R.

-  -- the Magistrate Judge erred in finding that Homeland is barred from applying the fortuity doctrine to these facts.

2. **The Fortuity Doctrine is Not an Exclusion.** Even putting aside Homeland's status as plaintiff rather than defendant, the Magistrate Judge further erred by equating the fortuity doctrine with an affirmative defense. For that conclusion, the R&R relies on a Texas statute requiring that contractual exclusions must be explicitly pled. (Dkt. 112 at 13.) The fortuity doctrine is a matter of "public policy" not a contractual exclusion. *Two Pesos*, 901 S.W.2d 495 at 501-02 (1995). Further, an exclusion is a policy provision that takes a loss out of coverage, even though the loss falls within the scope of the policy's insuring clause. In contrast, where the fortuity doctrine applies, the loss never "fall[s] within the poli[cy's] insuring agreement" in the first instance. *In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ7, 2021 WL 2954819, at *7 (Bankr. N.D. Tex. July 14, 2021), *report and recommendation adopted*, No. 19-34054-SGJ-11, 2021 WL 8998995 (N.D. Tex. Aug. 11, 2021).

3. **The Fortuity Doctrine May Be Raised Offensively.** To the extent the R&R implies that the fortuity doctrine may only be raised by a defendant by way of a specifically pleaded defense, and not by a plaintiff seeking declaratory relief, the R&R cites no authority for that proposition and courts allow insurers to proceed on fortuity as part of their affirmative claims. *See e.g., Columbia Mut. Ins. Co. v. Cedar Rock Lodge, LLC*, No. 1:15-CV-111-P-BL, 2016 WL 1073051, at *1 (N.D. Tex. Feb. 3, 2016), *report and recommendation adopted*, No. 1:15-CV-0111-P-BL, 2016 WL 1059677 (N.D. Tex. Mar. 17, 2016).

4. **Homeland Cannot Waive Matters of Public Policy.** The R&R's conclusion that Homeland waived the fortuity doctrine should also be rejected because the doctrine is a matter of

public policy, adopted to protect the interests of the insuring public rather than insurers. Homeland is aware of no Texas authority holding that private litigants can waive or override public policy, and the R&R cites no such authority.

5. **No Evidence of Unfair Prejudice in Any Event**. Finally, even assuming the fortuity doctrine could even potentially be waived, the R&R's conclusion of waiver is based on a factual finding of "unfair prejudice" that is unsupported by any evidence. (Dkt. 112 at pp. 14-15). Indeed, CPL did not even *argue*, much less offer evidence, that it was prejudiced in any way by the fact that Homeland did not apply the label "fortuity doctrine" to the allegations in its complaint. CPL did not, for instance, explain that there is any discovery it forewent because it did not understand that Homeland is alleging ███████████████████████████ ███████████████████████████████ How could it, given that that is the central factual premise of the complaint, elaborated at length? Further, the discovery period is still open, and CPL has yet to take a single deposition, so even assuming that the fortuity doctrine suggested different discovery avenues there is still time for that. The R&R does not include even a speculative discussion of how CPL might be prejudiced, much less a discussion based on the evidence.

It is well established that leave to amend pleadings "shall be freely given when justice so requires." FRCP 15(a). A court must have a "'substantial reason' to deny a party's request for leave to amend." *Stem v. Gomez,* 813 F.3d 205, 216 (5th Cir. 2016) (internal citation omitted). "It is settled law that pleadings must be construed liberally in order to prevent errors in draftsmanship or the like from barring justice to litigants." *Mut. Creamery Ins. Co. v. Iowa Nat. Mut. Ins. Co.,* 427 F.2d 504, 507–08 (8th Cir. 1970). Applying these same principles to the analogous issue of waiver, the Magistrate erred by finding waiver. However, if the Court finds that the fortuity doctrine should be explicitly pled, leave to thus amend should be granted. Homeland will, within a week of filing these objections, will file a motion for leave to do so.

II. **Homeland's Breach of Warranty Claim Turns On Genuine Issues Of Material Fact.**

Homeland's evidence established that: (i) by agreement in the parties' April 2016

insurance binder,[2] Homeland would not expand coverage to include the Worldwide Territory Endorsement unless CPL and MedLab provided a warranty of no known losses; (ii) CPL and MedLab provided that Warranty Letter in July 2016, warrantying that they were "not aware of any claims against" it or "any person proposed for coverage" or "any fact, circumstance, situation, transaction, event, act, error, or omission that may give rise to a claim;" in the warranty letter signed in 2016; (iii) the Warranty Letter itself expressly states the parties' intent that the "statements made in this letter . . . **will be deemed to be part of the policy**" once the amended policy was issued; and (iv) the policy with the expanded coverage was then issued in August 2016, with coverage retroactive to the June 2016 annual renewal date. (Dkt. 56, pp. 91, 127; Dkt. 73, pp. 3-4; Dkt. 73-10, ¶¶ 4-7; Dkt. 73-11, Exs. 3-4; Dkt. 73-11, ¶ 4, Ex. 2).

Despite this substantial evidence that the parties intended – indeed, expressly agreed – that the Warranty Letter would be part of the policy, the R&R concludes that the Warranty Letter was not adequately incorporated into the policy because the express agreement to incorporate was stated in the letter itself, rather than in some other part of the policy. In so finding, the R&R relies on *ExxonMobil* and similar cases for the proposition that coverage limitations expressed in an "underlying transactional document" cannot be incorporated into an insurance policy unless the policy manifests the intent to incorporate. (Dkt. 112 at 18.)

The R&R's reliance on *ExxonMobil* and other cases for this proposition is misplaced because those cases involved a different factual scenario. In those cases, there were two very distinct documents at issue: (i) the insurance policy, which was the only document expressing the agreement between the insurance company and the policyholder, and (ii) extrinsic contracts to which the policyholder was a party but to which the insurance company was *not* a party. Because the point of contract interpretation is to find and effectuate the *parties'* mutual intent, it

---

[2] A binder is a temporary contract of insurance, usually consisting of the insurer's bare acknowledgment of its obligation to protect the insured against a specified casualty at an agreed-upon premium until a formal policy can be issued. § 6:36. Coverage under insurance binders, 2 Insurance Claims and Disputes (6th ed.).

followed that the only place to look for intent to incorporate was the insurance policy itself – because that was the only agreement to which both the insurance company and the policyholder were both a party. The extrinsic documents, to which the insurance company was not a party, therefore could not shed light on the parties' mutual intent.[3]

The situation here is very different. The Warranty Letter is not an agreement involving strangers to the insurance contract. It was issued by CPL and MedLab to Homeland as a condition to addition of the Worldwide Territory Endorsement. The parties agreed in their Binder Agreement that the coverage would not be expanded without it, and the parties expressly agreed in the text of the Warranty Letter itself that it would be considered part of the policy. Courts' "primary purpose" when construing policies and considering whether a document is incorporated by reference is "to ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement." *In re Deepwater Horizon,* 470 S.W.3d at 464.[4] Here, based on the Binder Agreement and the express language of the Warranty Letter – which was an agreement between the very parties whose intent the Court must ascertain – the parties' mutual intent that the Warranty Letter would be part of the policy could not be more clear. At a minimum, there is sufficient evidence of that intent for the claim to proceed to the jury.

The explicit agreements between the parties – in the Binder Agreement and the Warranty Letter – are sufficient in themselves to establish the parties' intent to make the letter part of the

---

[3] *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019) (a third party claimed "the benefit of a blanket subrogation waiver" by virtue of a written contract between the third party and the insured, but to which the insurer was not a party); *In re Deepwater Horizon,* 470 S.W.3d 452, 464 (Tex. 2015) (addressing whether the policies "incorporate[d] any limitations" in a third-party "drilling contract" with "respect to the extent of BP's status as an additional insured").

[4] Under the incorporation by reference doctrine, "a contract will incorporate terms from another document by reference when (1) a particular document is described in such terms that its identity may be ascertained beyond doubt, (2) the parties had reasonable notice of the terms, and (3) the parties manifested assent to the terms." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 449 (N.D. Tex. 2019). Terms incorporated by reference will be valid so long as it is "clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing 11 Williston at § 30:25; *New Moon Shipping Co. Ltd. v. Man B&W Diesel AG,* 121 F.3d 24 (1997)).

policy, but there is more, including:

    (i) Numerous emails between CPL and Homeland prior to the renewal date show that CPL agreed that the warranty would be as part of its application for expanded coverage (Dkt. 72 at p. 3-4; Dkt. 72-12 at ¶¶ 5-6, Exs. 3-4);

    (ii) the Warranty Letter reiterates that it will be deemed part of the application (Dkt. 73 at pp. 7-8; Dkt. 73-11 at Ex. 3); and

    (iii) the policy itself states that the "[a]pplication and those particulars and statements are incorporated in and form a part of this Policy" (Dkt. 112 at p. 19; Dkt. 56 at 98-99; Dkt. 73-12).

Because the parties agreed that the Warranty Letter was part of the application, and because the policy expressly incorporates the application, it follows that the policy incorporates the Warranty Letter. The fact that the Warranty Letter was issued after the remainder of the application and was not physically "attached" to the rest of the application (see Dkt. 122 at 19) does not change the fact that the parties agreed it would be part of the Application and, thus, part of the policy.

    It is also no answer for the R&R to say that the policy can only be changed by endorsement. (Dkt. 112 at pp. 4-5.) While that may be the case for changes after a policy is issued, the Warranty Letter was a condition precedent to issuance of the policy per the parties' Binder Agreement; was expressly made a part of the policy both by the Binder Agreement and by the Warranty Letter itself; and both these expressions of intent were made before the policy was issued with expanded coverage in August 2016, with coverage (retroactive to the June 30 renewal date). Because the Warranty Letter was part of the policy ab initio, there was no need for an endorsement to change the policy.[5]

    The Magistrate Judge's failure to acknowledge an issue of material fact on whether the parties' sufficiently manifested intent that the Warranty Letter be part of the policy, especially

---

[5] Further, even assuming an endorsement were needed, there is no reason that the Warranty Letter cannot be considered an endorsement. It is the substance that should control, not mere issues of form such as whether or the letter is captioned "endorsement."

when the court "may not weigh the evidence" and instead must simply view all inferences drawn from the factual record in a light most favorable to Homeland, is "contrary to the law."[6] *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Finally, even if the Court somehow disagreed that the facts show at least a triable issue of the parties' intent that the Warranty Letter is part of the policy, it still does not follow that the warranty claim should be dismissed because Magistrate Judge found that the warranty claim can be resurrected if Homeland succeeds in reforming the policy to include the warranty letter. (Dkt. 112 at 20-21). If Homeland is successful at reformation, it necessarily follows that the breach of warranty claim would also be viable. The warranty claim should therefore remain in the case so that it can be prosecuted without further amendment of the complaint if Homeland succeeds on its reformation claim.

## III. The Magistrate Judge's Dismissal of Homeland's Promissory Estoppel Claim Is Premature.

In Texas, promissory estoppel "may serve as an independent affirmative cause of action when the plaintiff is unable to plead a successful breach of contract claim." *Bruce Foods Corp. v. Texas Gas Serv.*, 2014 WL 652312, at *23 (W.D. Tex. Feb. 19, 2014) (citing *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 673 (Tex.App. 2010, no pet.)). "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.

---

[6] The 2017 policy must be treated the same. In the warranty letter, the parties expressly manifested their intent that the letter would be deemed part of "the policy," and drawing all inferences in favor of Homeland this shows intent to incorporate the letter into the policy not just for the 2016 policy year (which, indeed, would be contrary to the whole purpose of the letter) or into the policy for as long as the expanded worldwide coverage continued to be part of the policy (the only reasonable interpretation, or at least a jury could so conclude). Further, the 2017 renewal of the policy incorporated "all statements made and information furnished to the Underwriter," and the statements made in the application materials, and the 2017 renewal was issued "upon the same terms, conditions, limits, and retentions," as the 2016 policy, including CPL's promises in the warranty letter and similar emails leading up to the policy's issuance.

Such a change of position is sternly forbidden . . . . This remedy is always so applied as to promote the ends of justice." *Wheeler v. White*, 398 S.W.2d 93, 96 (1965).

For that very reason, Homeland pled promissory estoppel in the alternative to its breach of warranty claim. If the trier of fact finds that Homeland can't prevail on the warranty claim because CPL's warranty was insufficiently incorporated into the contract, then it follows that Homeland should be permitted to seek relief via promissory estoppel to achieve justice. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

For example, in *Bruce Foods*, the parties entered into a written agreement for the delivery of natural gas, which could only be amended in a writing attached to the agreement. *Bruce Foods Corp.*, 2014 WL 652312 at *23. The defendant orally assured the plaintiff a bypass gas line would provide sufficient service during repairs of a main line, but after it did not, the plaintiff sued for (among other things) breach of warranty, breach of contract, and promissory estoppel. *Id.* at 3. Although the plaintiff could not state a warranty or contract claim based on the defendant's oral assurances where a writing was technically required, it could state a viable promissory estoppel claim. *Id.* at 2-3. Likewise here, if Homeland's breach of warranty claim founders on a similar technicality –incorporation – Homeland should be permitted to pursue a just result through the alternative theory of promissory estoppel.

Whether these elements are satisfied is an issue of fact that courts routinely hold should not be decided on summary judgment. *See, e.g., Rice*, 324 S.W.3d 660 at 674. Indeed, the R&R does not find that any of the elements fail as a matter of law. Instead, the sole ground for the R&R as to promissory estoppel is that "valid contracts (the insurance policies) govern the subject matter of this dispute." (Dkt. 122 at 22.) Respectfully, that reasoning misses the whole point of promissory estoppel, which is to provide an alternative avenue to achieve justice when the elements of a valid contract cannot be established.

IV. **The Magistrate Judge's Conclusion That The Prior Notice Exclusion Does Not Preclude Coverage As A Matter of Law Is Contrary to The Policy's Plain Language.**

The Magistrate Judge's conclusion that Homeland's prior notice exclusion fails as a matter of law is wrong for three reasons: (i) it is premised on supposed facts that both parties agree are incorrect and contrary to the record; (ii) it turns on a clear misapplication of the plain policy language; and (iii) even if the Magistrate's interpretation were correct, the R&R wrongly assumes that only MedLab gave prior notice of claims, but there is evidence to the contrary that cannot be ignored on summary judgment. *Saratoga Res., Inc. v. Am. Int'l Grp., Inc.,* 102 F. Supp. 3d 915, 919 (S.D. Tex. 2015), *aff'd sub nom. Saratoga Res., Inc. v. Lexington Ins. Co.,* 642 F. App'x 359 (5th Cir. 2016) (Policies "must be read as a whole, and effect given to all parts if possible," and "[u]nambigous language must be enforced as written.").

1. **False Predicate About MedLab Not Being an Insured**. The first ground for the R&R as to the prior notice exclusion is that "[i]t is undisputed that MedLab was not a party to the 2017 Policy with Homeland; MedLab's insurer was Vero, not Homeland." (Dkt. 112 at 23.) This premise is simply untrue. Both the 2016 and 2017 policies explicitly list MedLab not merely as an insured, but as a "named insured." (Dkt. 56 at pp. 105, 183-184). CPL's answer admits that MedLab is an insured under the Homeland policy. (Dkt. 57 at ¶¶ 184, 198).

2. **Plainly Erroneous Interpretation**. Second, the Magistrate Judge's interpretation of the prior notice exclusion is plainly erroneous. The prior notice exclusion applies to:

> [A]ny **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> (2) act, error, omission, **Wrongful Act**, event, suit, or demand which was the subject of any notice given under:
>
> (a) any medical negligence professional liability or similar policy of insurance . . . with respect to any **Claim** otherwise covered under INSURING AGREEMENT (A).
>
> . . .
> in effect prior to the Inception Date set forth in ITEM 2 of the Declarations [June 30, 2017]. (Dkt 112 at p. 22-23).

"Claim" means any "written notice received by an '**Insured**' that any person or entity intends to hold an '**Insured**' responsible for a **Wrongful Act** or an **Occurrence**."  (Dkt. 56 at pp. 76, 156).  "**Insured**" means "the **Named Insured**."  (Dkt. 56 at pp. 77, 157-158).  "**Named Insured**" is in turn defined as "the **First Named Insured** *and each other entity listed as a Named Insured in Schedule A of this Policy*."  (Dkt. 56 at pp. 81, 161).  Both CPL and MedLabs are "named insureds" in Schedule A.

Applying the policy language here is straightforward.  Take, for example, the case of Ms. S.  Ms. S made a "claim" against CPL by giving notice that she intended to hold CPL responsible ▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Ms. S's claim would be "otherwise covered under INSURING AGREEMENT (A)" because it is a professional negligence claim, the type of claim covered under that insuring agreement.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The R&R errs because it construes the second instance in the exclusion of the defined term "Claim" to mean something entirely different from the second instance.  In the first instance – "Any **Claim** based upon . . ." – "Claim" unambiguously means the written notice received by CPL that Ms. S was seeking to hold CPL liable.  "Claim" thus refers to the same thing in the second instance – "with respect to any **Claim** otherwise covered" (*i.e.,* that Ms. S was seeking to hold CPL liable).  But the R&R reads the second instance of "Claim" not to refer to Ms. S's claim against CPL, but to refer to a hypothetical claim against MedLab by Ms. S in 2016.

Reading the second instance of "Claim" to refer to a claim against MedLab is error for two reasons.  First, the term "Claim" should be given the same meaning both places it occurs in the exclusion, and the only meaning that makes sense in both places is Ms. S's claim against CPL.  Second, the exclusion is the Prior *Notice* Exclusion, not the Prior *Claim* Exclusion.  Nothing in the exclusion depends upon there ever having been a claim by Ms. S against MedLab.  Indeed, there is no evidence that Ms. S did make a claim against MedLab in 2016.  All that

matters is that at least MedLab, an insured under the Homeland policy, sufficiently suspected the possibility of a claim by Ms. S█████████████████████████████████████████████████████████████████████████████████████████

It is also no answer for the R&R to say (citing a single Delaware case) that the point of a prior notice exclusion is to prevent double recovery. (Dkt. 122 at 23-24.)  This is so for two reasons.  First, speculating about the reasons for policy language is unnecessary where, as here, there is only one reasonable interpretation of the language.  The "paramount rule" in Texas is that "courts enforce unambiguous policies as written and must honor the plain language, reviewing policies as drafted, not revising them as desired." *Diesel Barbershop, LLC v. State Farm Lloyds,* No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (*citing Diesel Barbershop, LLC v. State Farm Lloyds*, 959 F.3d 671 (5th Cir. 2020).

Second, to the extent such reasons mattered, there is more than one reason for prior notice exclusions.  In addition to preventing double recovery, a further reason for prior notice exclusions is to prevent insureds from seeking coverage for errors and omissions they already knew of when the policy incepted.  *See e.g., LaValley v. Virginia Cur. Co.*, 85 F.Supp.2d 740, 744-45 (N.D. Ohio 2000) (the prior notice exclusion "appears to have been conceived to eliminate some of this uncertainty by establishing a presumption of no coverage where the insured has notified a previous insurer of the circumstances surrounding an insurable claim, and then later notifies its current insurer of a subsequent claim that is born of any of the same circumstances").  A prior notice exclusion effectuates the fortuity doctrine/known loss rule by excluding coverage where an objective act – an insured's reporting of the same alleged errors and omissions to a prior insurance carrier – demonstrates prior knowledge.  This prevents insureds from evading public policy by protestations of ignorance.  Here, the fact that MedLab – a named insured under the Homeland policy – █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3. **Disregard for Required Inferences**. The R&R is also plainly erroneous because it assumes, without evidence ██████████████████████████████████████████ ██████████████████████████████████████ On summary judgment, courts must "draw[] all inferences in favor of the" <u>non-moving</u> party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Here, the R&R does the opposite.

Homeland presented evidence that CPL and Vero were in an ongoing dispute about whether CPL was covered under the Vero policy, which strongly suggests CPL (and not just MedLab) gave notice to and sought coverage from Vero ████████████████████████ ██████████████████████████████ CPL, for its part, does not deny that it gave notice to Vero much less offer any evidence that it did not.

By inferring that CPL gave no notice to Vero, when there is evidence supporting the opposite inference, the R&R violates a cardinal rule of summary judgment. ████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████ Indeed, Homeland sought a Rule 56(d) continuance precisely so that it could conduct more discovery on this topic, but that request for continuance was denied. But no matter: Homeland only needs to show some evidence that CPL gave notice to Vero, which it has done, and so all inferences must be drawn in favor of the conclusion that it did.

V.  **The Magistrate Judge's Conclusion That Texas Insurance Code 705.005 May Apply To Representations Made During The Claim Is Contrary To The Law.**

Although she ultimately found that issues of fact precluded adjudication on summary judgment, the Magistrate Judge concluded that the Texas statute imposing a 90-day notice requirement on insurers relative to a misrepresentation defense applies to statements made during

the claim and not just in the application materials. This conclusion is contrary to the law and must be set aside for the following reasons.

First, the Magistrate Judge was bound to enforce the statute's unambiguous language that it only applies to "misrepresentations made *in the application for* or *in obtaining* an insurance policy." Tex. Ins. Code § 705.005 (italics supplied); *Hegar v. Texas Westmoreland Coal Co.*, 636 S.W.3d 61, 64 (Tex. App. 2021) ("If statutory language is unambiguous, [courts] will interpret and apply the statute according to its plain meaning . . ."). The fact that there may be no case interpreting the statute is of no moment where, as here, the statute is unambiguous.

Second, the Magistrate Judge erroneously relied upon the unpublished decision of *Thompson v. Diamond State Ins. Co.*, No. 4:06-CV-154, 2008 WL 11344903, at *3 (E.D. Tex. May 2, 2008) for the proposition that the statute also applies to misrepresentations during the claim. *Thompson* did not involve any misrepresentation during the claim. Rather, the insurer argued that the insured concealed information during the application process (namely, that the horse to be insured had prior injuries). *Id.* at 2-4. Consistent with the statute's plain language, *Thompson* held that the insurer's defense concerned the insured's failure to disclose pertinent information when "obtaining the insurance" and thus fell within section 705.005. Nothing in that reasoning supports a conclusion that the statute applies at all to misrepresentations during the claim. Because the statute unambiguously applies only to misrepresentations in the application or in "obtaining" insurance, and because the R&R cites no authority to the contrary, this portion of the R&R must be set aside.

**VI.   The Magistrate Judge's R&R Regarding Whether Defense Costs Erode The WTE Limits Is Contrary to Longstanding Texas Law On Proper Policy Interpretation.**

The Magistrate Judge's conclusion that defense costs do not erode the limits under the worldwide territory endorsement is also contrary to Texas' "paramount rule" that "courts enforce unambiguous policies as written and must honor the plain language, reviewing policies as drafted, not revising them as desired." *Diesel Barbershop,* 2020 WL 4724305 (2020). Courts will not find ambiguity for a mere "lack of clarity" and will only do so if "its language is subject to two or more

reasonable interpretations." *Id.* citing *Pam Am. Equities, Inc., v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). The "fact that the parties may disagree about the policy's meaning does not create an ambiguity." *State Farm Lloyd's v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

Here, the Worldwide Territory Endorsement (WTE) plainly states that Homeland will "reimburse the Insured, **up to the applicable Limit of Liability**, for reasonable Defense Expenses and Loss, subject to the deductible or self-insured retention." (Dkt. 112 at 28). The policy gives only two limits that could be potentially applicable, the "per claim" limit and "aggregate" limit. The only reasonable reading of that language is that the defense expenses and loss covered under the WTE must be within the applicable limits.

The R&R's reasons for a different conclusion lack merit. First, the R&R reasons that the policy's definition of "Loss" does not include "Defense Expenses." (Dkt. 112 at 28-29). That is true, but the WTE clearly says Defense Expenses and Loss are only covered "up to the applicable limit of liability." So, it is of no moment that Defense Expenses don't include Loss, since the WTE subjects *both* to the applicable limit of liability.

Second, the Magistrate Judge also notes that the Limits of Liability section in the main body of the policy does not cap payments for defense expenses. (Dkt. 112 at 29). That too is true, but irrelevant to the WTE because the very purpose of an endorsement is to vary or alter the main body of the policy. "[A]dditions to a policy [which] are actually for the purpose of modifying the general terms of the policy, and therefore, being specific, control the more general terms of the policy." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 400 (5th Cir. 2008). "An endorsement thereby, controls the policy insofar as it enlarges, modifies or restricts the terms" of the policy. *Id.* (internal citation omitted).

Third, the R&R notes that "most" policies cover defense costs in addition to liability limits. (Dkt. 112 at 29.) Again true, but the question here concerns this policy, not "most" policies.

Finally, the R&R notes that a different endorsement to the policy uses different language to state that both defense costs and loss are subject to the policy's limit of liability. (Dkt. 112 at 29, n. 7.) This too is true, but also irrelevant. No rule requires different endorsements to use

identical language. The important thing is that the WTE uses unambiguous language – "reimburse the Insured, **up to the applicable Limit of Liability**, for reasonable Defense Expenses and Loss" – and that clear language must be given effect.

The Magistrate Judge's failure to "honor the plain language" of the WTE which only provides coverage for "Loss <u>and</u> Defense Expenses" up to the "applicable Limit of Liability" was contrary to law and must be set aside.

## Conclusion

For all of these reasons, Homeland respectfully requests that the Court decline to adopt the portions of the Magistrate Judge's R&R discussed above and, instead, deny CPL's motion for summary judgment as it pertains to (i) the fortuity doctrine, (ii) the breach of warranty claim, (iii) the promissory estoppel claim, (iv) the prior notice exclusion, (vi) the issue of whether defense costs are subject to the applicable limits of liability in the WTE. The Court should also reject the portion of the R&R that concludes, contrary to the statute's plain language, that Texas Insurance Code section 705.005 applies to misrepresentations during the claim as opposed to during the application process.

-1-

Respectfully submitted this 2nd day of August, 2022.

By:
   */s/ John T. Brooks*
John T. Brooks (CA Bar #167793)
Jared K. LeBeau (CA Bar #292742)
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
501 West Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 338-6500
Fax: (619) 234-3815
jbrooks@sheppardmullin.com
jlebeau@sheppardmullin.com
*Admitted Pro Hac Vice*

Joseph R. Little (#784483)
The Little Law Firm
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone: (713) 222-1368
Fax: (281) 200-0115
jrl@littlelawtexas.com
*Attorneys for Plaintiff Homeland Insurance Company of New York*

-2-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon counsel of record for all parties who have made an appearance in this case at the addresses indicated by CM/ECF electronic notification and email on this 2nd day of August, 2022.

*/s/ John T. Brooks*