**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, <br><br>           Plaintiff, <br><br>     v. <br><br> CLINICAL PATHOLOGY LABORATORIES, INC., SONIC HEALTHCARE USA, INC., <br><br>           Defendants. | CIVIL ACTION NO. 1:20-cv-783-RP |

**HOMELAND INSURANCE COMPANY OF NEW YORK'S REPLY IN SUPPORT OF ITS OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE GRANTING IN-PART AND DENYING IN-PART CLINICAL PATHOLOGY LABORATORIES, INC.'S MOTION FOR SUMMARY JUDGMENT**

Clinical Pathology Laboratories' ("CPL") response to Homeland's Objections only highlights the plain errors of law, unsupported evidentiary findings, and impermissible inferences in the Magistrate Judge's Report and Recommendations ("R&R").  Therefore, the Court should decline to adopt the R&R on the issues outlined below.

## A.  The Fortuity Doctrine.

The R&R's conclusion that Homeland waived the fortuity doctrine – a doctrine established by Texas as a matter of public policy to protect the insuring public – is plain error for multiple reasons: it ignores the "short and plain statement standard of FRCP 8(a); it elevates technical notions of pleading above Texas public policy by holding that the former can negate the latter; and it is unsupported by any evidence of prejudice or unfair surprise.  None of CPL's arguments support a different conclusion.

First, CPL's contention that "there is no real question that Homeland raised this doctrine late" is simply wrong.  (Dkt. 136, p. 2).  This case has always been about a lack of fortuity (i.e., that CPL purchased coverage for a known loss), and Homeland consistently pled facts to support the same.  (*See e.g.,* Dkt. 56, ¶¶ 3, 25, 26, 100).

Second, CPL does not cite a single case that holds a party can waive a matter of public policy, like the fortuity doctrine, which limits what can be insured as a matter of law.  *Two Pesos, Inc. v. Gulf Inc. Co.*, 901 S.W.2d 495, 501-02 (Tex.App.—Houston [14th Dist.] 1995, no writ.).  Homeland is likewise unaware of any authority to that effect.

Third, CPL also cites no authority that holds a *plaintiff* seeking declaratory relief to a higher pleading standard than FRCP 8(a), which only requires a "short and plain statement" of facts entitling Homeland to the relief sought.  Instead, CPL doubles down on its position that the doctrine must be treated as an affirmative defense. But no court to Homeland's knowledge has held that the fortuity doctrine is somehow exempt from FRCP 8(a), such that a short statement of the facts is insufficient and instead require an explicit invocation of the doctrine. Nor is Homeland aware of any authority holding that a complaint that adequately tees up the fortuity doctrine under FRCP 8(a) must be ignored by the Court simply because the plaintiff insurer does

not explicitly raise the doctrine as an enumerated affirmative defense when it responds to a counter-claim.[1]

Fourth, CPL improperly raises Texas Ins. Code. § 554.002 *for the first time* in its response to argue that the doctrine must be pled as an affirmative defense. *Edwards v. Principi*, 80 F. App'x 950, 954 (5th Cir. 2003) (it is "improper" for a party to wait until after summary judgment pleadings are closed to raise new arguments). But no matter, the statute is irrelevant for four reasons: (i) it applies only to "suit[s] to recover under an insurance or health maintenance organization contract" – i.e., the opposite of Homeland's Second Amended Complaint, which is a suit to establish non-coverage; (ii) it only sets forth the *burden of proof* (and not the pleading standard) (iii) it applies to matters the "Texas Rules of Civil Procedure require to be affirmative pled," and state rules of civil procedure manifestly do not apply in this federal diversity action; and (iv) it limits its application to "language of exclusion in the contract or an exception to coverage," neither of which includes the fortuity doctrine because it does not operate to take an otherwise-covered loss outside of coverage; rather, the doctrine precludes loss from ever "fall[ing] within the poli[cy's] insuring agreement" in the first instance. *In re Vantage Benefits Administrators, Inc.,* No. 18-31351-SGJ7, 2021 WL 2954819, at *7 (Bankr. N.D. Tex. July 14, 2021), *report and recommendation adopted*, No. 19-34054-SGJ-11, 2021 WL 8998995 (N.D. Tex. Aug. 11, 2021).

Fifth, even if the fortuity doctrine had to be explicitly pled as an "affirmative defense" in its answer to CPL's counter-claim – and even assuming that matters of public policy could ever be waived by mere pleading deficiencies – CPL failed to demonstrate that it was prejudiced or unfairly surprised by the fortuity doctrine, which CPL concedes must be shown for the R&R's finding of waiver to be proper. (Dkt. 136, p. 5). Indeed, CPL does not even *attempt* to argue that it was prejudiced, instead focusing on the alternative of "unfair surprise." Although CPL argues

---

[1] Even in cases upon which CPL heavily relies, the insurer did not list the doctrine as an affirmative defense or even use the word "fortuity" in its answer. *See. e.g., Zimmerman v. Nationwide Prop & Cas. Ins. Co.*, No. 4:12-CV-233-&, 2013 WL 12126270 (N.D. Fed. 22, 2013) (The defendant's answer includes no reference to the word "fortuity").

semantics about how "prejudice" and "surprise" are different, the two are really just two sides of the same coin[2] – and CPL *did not offer a shred of evidence* to show that it was "surprised," much less "unfairly surprised."  CPL certainly was not surprised by the *facts*: the fortuity doctrine turns on the same facts that Homeland has alleged from day one.  This is in stark contrast to CPL's cited case – *LSREF2 Baron, L.L.C. v. Tauch,* 751 F.3d 394, 402 (5th Cir. 2014) (finding waiver of a defense because, among other things, it "require[d] proof of additional facts beyond the face of the complaint," and "all of the critical pretrial deadlines had passed or were about to expire").  Nor can CPL claim to be surprised (much less unfairly surprised) by the *doctrine* itself, for three reasons.  First, CPL cannot claim to be surprised by the legal doctrine because "[e]veryone is conclusively presumed to know the law, both as to civil and criminal transactions."  *Hicks v. State*, 419 S.W.3d 555, 558 (Tex. App. 2013).  Second, CPL cannot claim to be *unfairly* surprised by the doctrine because it is hardly unfair to hold CPL to public policy.  Indeed, what would be unfair would be to permit an insured to escape public policy through technical pleading arguments unaccompanied by any evidence of prejudice  Finally, CPL is not "unfairly" surprised (even if it could be "surprised" at all) because it has not (and cannot) point to any additional or different actions it would have taken if it was somehow unaware of the doctrine until Homeland filed its response to CPL's motion for summary judgment on November 1, 2021.

    <u>Finally</u>, CPL tries to brush off Homeland's alternative request to amend its complaint. But in doing so, CPL casually ignores how leave should be "freely given" under Rule 15(a)(2) even if there is a pleading deficiency in Homeland's operative complaint. (*See* Dkt. 13, Homeland's motion for leave).

---

[2] As outlined in CPL's own cited cases, both "prejudice" and "surprise" focus on whether it would be unfair to the opposing party to allow an unpled defense that implicate new factual issues not previously litigated.  *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co.,* 418 F. App'x 327, 331 (5th Cir. 2011) (stating that a technical pleading failure is not fatal absent "prejudice or unfair surprise" but then discussing both in terms of the same practical effects, such as whether the non-moving party still has time within the discovery period, or if the affirmative defense presents a new theory requiring additional discovery it did not anticipate); *Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir. 1987) (discussing "unfair surprise" in terms of the actual effects to the party opposing the amendment, such as whether the party "would have made greater efforts" in some part of the case, or sought other evidence).

**B. Homeland's Breach of Warranty Defense.**

CPL perpetuates the same four fatally flawed premises of the R&R with respect to Homeland's warranty claim.[3]  First, CPL and the R&R base their analysis on cases (*Deepwater Horizon* and *Exxon Mobile*) that address a factual scenario not at issue here: incorporating terms from separate, third-party agreements to determine the scope of insurance coverage.[4]  Homeland does not dispute that in that situation courts should "begin with the language of the insurance policy" to look for intent.  *In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015).

Indeed, that rule makes sense.  Otherwise, a policyholder could unilaterally execute a separate agreement with a third-party and claim it informs its agreement with the carrier even though the policy itself contains absolutely no indication that that is the case.  *See e.g., Carolina Cas. Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 304, 313 (5th Cir. 1978) (the express terms of the policy and an insurer's contractual obligations cannot ordinarily be altered by **collateral agreements between its insured and third-persons**).

But that is not at issue here because there is no third-party contract.  The warranty letter is between the same parties to the insurance contract, so the underlying concern in *Deepwater* and *Exxon* is not implicated.  Moreover, Homeland is not relying on extrinsic evidence to interpret a policy term; rather, the question is whether CPL ever secured coverage in the first place in light of its warranties in the letter.  Thus, in situations like this – i.e., when two parties, like CPL and Homeland, execute an agreement other terms "will be valid so long as it is clear that the parties

---

[3] As an initial matter, CPL inappropriately casts Homeland's breach of warranty claim as a regurgitation of prior arguments the Court already rejected when it ruled on CPL's motion to dismiss.  Not so. Obviously, the Court didn't reject the entirety of Homeland's warranty claim, otherwise, there'd be no need to address it on summary judgment.  All the Court ruled was that Homeland could not seek to void the 2017 policy *without any allegation that the terms of the Warranty Letter were incorporated*.  The Court has not addressed the sufficiency of Homeland's position that the Warranty Letter bars coverage under the 2016 and 2017 policies with the benefit of the evidence and in light of Homeland's Second Amended Complaint.

[4] In *Exxon*, the insurer argued that the policy (a separate service contract between the policyholder and a non-insured, Exxon) must be consulted to ascertain what it and the policyholder meant in its waiver of subrogation provision.  *Exxon Mobil Corp. v. The Ins. Co. of State*, 568 S.W.3d 650 (Tex. 2019). Likewise, in *Deepwater*, a third-party requested additional insured status based on its offshore drilling contract with the policyholder.  *In re Deepwater Horizon*, 470 S.W.3d 452 (Tex. 2015).

to the agreement had knowledge of and assented to the incorporated terms." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.,* 648 F.3d 258, 268 (5th Cir. 2011) (citing  11 Williston at § 30:25; *New Moon Shipping Co. Ltd. v. Man B&W Diesel AG,* 121 F.3d 24 (2nd Cir. 1997)).   The parties expressly agreed in the Warranty Letter that the letter "will be deemed a part of the policy" and so that express agreement should be given effect.

  <u>Second</u>, CPL's parol evidence argument is a red herring.  Homeland is not offering the Warranty Letter to try to explain the meaning of an unambiguous term elsewhere in the insurance contract – which is the only thing the parol evidence rule prohibits.  Rather, it is offering the Warranty Letter for its *own* legal significance, and the parol evidence rule has nothing to say about that.

  <u>Finally</u>, CPL (like the R&R) impermissibly gave itself all reasonable inferences from the record – the opposite of what a court is supposed to do on summary judgment.  Homeland's evidence presented, at a minimum, a genuine factual issue regarding whether the parties intended that the WTE be conditioned upon the validity of the Warranty Letter, and that the Warranty Letter constitutes a part of the 2016 and the renewed 2017 policies.[5]  Because the R&R failed to properly view this evidence in a light most favorable to Homeland with all reasonable inferences in Homeland's favor, it is "contrary to law" and must be set aside.

### C.  Homeland's Promissory Estoppel Defense.

  CPL simply repeats the R&R's erroneous finding that Homeland's promissory estoppel claim fails as matter of law because promissory estoppel "is available only in the absence of a valid enforceable contract."  (Dkt. 136, p. 10).  But that is exactly Homeland's point – if the

---

[5] For example, Homeland's evidence included: (1) an agreement in the parties' April 2016 insurance binder that Homeland would not expand coverage unless CPL/MedLab provided a warranty of no known losses; (2) CPL and MedLab provided the Warranty Letter, warrantying that they "were not aware of any claims against it" or "any fact, circumstance, situation, transaction, event, act error, or omission that may give rise to a claim" (3) the Warranty Letter itself states that the parties' intend that the "statement made in this letter . . . **will be deemed to be a part of the policy**" once the amended policy was issued; (4) the policy itself states that the "application *and those particulars and statements* are incorporated in and form a part of this Policy"; (6) the policy refers to the "information furnished to the Underwriter," and (5) the 2017 policy was renewed upon "the same terms, conditions, limits, and retentions" as the 2016 policy. (Dkt. 73, p. 6-8).

Court finds that CPL's Warranty Letter was not part of a valid and enforceable contract, then promissory estoppel may step in to "promote the ends of justice" so long as the trier of fact finds that CPL "by [its] language or conduct led" Homeland to issue the WTE "which it otherwise would not have done." *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). Neither CPL nor the R&R cite any authority that precludes Homeland from pleading such a theory in the alternative.

Here, either the Warranty Letter is part and parcel of the contract ab initio, as the parties expressed in the letter itself (in which case the breach of warranty claim must survive) or the Warranty Letter is a promise separate from the contract (in which case it can be enforced by promissory estoppel).

**D. Homeland's Prior Notice Exclusion.**

R&R's recommendation on the prior notice exclusion was plain error both as a matter of fact and law, and CPL fails to show otherwise.



Specifically, Homeland submitted a letter from Vero to CPL's broker, Aon, where Vero stated:

> As we outlined, it is Vero's position that CPL and Sonic US are not covered by the Vero policy by virtue of the Excluded Entities endorsement which has been included in the policy schedule since inception on March 2012.

(Dkt. 73-19, ¶ 9, Ex. 21). Why would Vero tell CPL's broker that CPL was not entitled to coverage if CPL never asked for coverage from Vero?

CPL's only response is to complain that "strong suggestions are not enough." But, unsurprisingly, CPL cites no authority to support that is the standard on summary judgment. Instead, summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242–43, 106 S. Ct. 2505, 2507 (1986). The trial

judge cannot "weigh the evidence and determine the truth of the matter" at issue.  *Id.*  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

**Legal Error**: As a matter of policy interpretation, the R&R committed plain legal error for multiple reasons.  Most fundamentally, the R&R wrongly assumed that MedLab "was not a party to the 2017 Policy with Homeland."  (Doc. 112 at 23.)  Homeland's objections showed the contrary, and even CPL does not dispute that MedLab was an insured (indeed, a *named* insured) under the 2017 policy.

Further, and even apart from that error, the R&R plainly misconstrues the phrase "with respect to any **Claim** otherwise covered under INSURING AGREEMENT (A)."  This is so for three reasons.

First, the R&R ignores the definition of "**Claim**," a capitalized, bolded defined term. When the R&R concludes that "MedLab's notice of the bulk claims to Vero are not claims 'otherwise covered under INSURING AGREEMENT (A),' " the R&R erroneously uses "claims" in a colloquial sense (a request made by an insured to an insurer for coverage) rather than in the defined sense (a "written notice received by an insured" of alleged liability). Thus, it is irrelevant whether MedLab's "claims" to Vero would have been covered under Insuring Agreement (A).  All that matters is that the written notices of liability received by CPL from the Irish women were the type that would otherwise have been covered under Insuring Agreement (A).  And, of course, coverage under Insuring Agreement (A) is exactly what CPL is arguing for.

Second, there is a very good reason the exclusion distinguishes between claims otherwise covered under Insuring Agreement (A), (B), and (C).  That's because the Prior Notice Exclusion is contained in Section (D) of the policy, which contains "Exclusions Applicable to All Insuring Agreements."  Because the exclusion (D)(2) varies slightly depending on whether the insured is seeking coverage under Insuring Agreement (A), (B), or (C), the exclusion specifies that it is exclusion (2)(a) that applies when evaluating a claim under Insuring Agreement (A), exclusion (2)(b) that applies when evaluating a claim under Insuring Agreement (B), and so on.

<u>Third</u>, the first and second reference to "any **Claim**" within the exclusion must mean the same thing – the written notice of liability to CPL from the Irish woman that is the subject of the present request for coverage from Homeland.  Neither the R&R nor CPL dispute that the first instance of "any **Claim**" refers to the notice of liability against CPL for which CPL is seeking coverage, and so the second instance must as well.  The term "any **Claim**" cannot morph mid-exclusion from one meaning to another.

Applying the foregoing simple principles – that the defined meaning of "Claim" prevails and that "Claim" doesn't change meaning mid-exclusion – you get the following straightforward interpretation:

1.  There is no coverage under Insuring Agreement (A) for any written notice of liability against CPL;

2.  That is "based upon, arising out of . . .or in any way involving" an act, error, or omission "which was the subject of any notice given under;"

3.  "any medical negligence professional liability or similar policy of insurance" that was in effect before the June 30, 2017 Inception Date of the 2017 policy.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

<u>Finally</u>, Homeland's interpretation of the exclusion is not just the only one that consistently applies the defined term "**Claim**," but it also embodies the public policy of the known loss rule.  ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████  The same applies for the other 57 errors and omissions in the March 2016 notice to Vero of potential claims.  CPL has no answer to that part of Homeland's objection, instead ignoring it.

CPL's only other argument is to criticize Homeland for not offering "new evidence" in its objections to the Magistrate's R&R (namely, new evidence showing that CPL in fact participated in the 2016 notice to Vero of potential claims). For starters, there was no need for "new evidence" because Homeland already submitted enough evidence to support an inference that CPL did participate in the 2016 notice. But further, it would have been procedurally improper to submit more evidence after briefing closed. ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ But if the Court agrees with CPL that Homeland needs to present additional evidence (it does not), Homeland is prepared to do so by way of a motion for reconsideration based on new evidence not available when briefing closed.

**E. Texas Ins. Statute Section 705.005.**

CPL's position that the R&R correctly applied Texas's 90-day notice statute makes little sense in light of what Homeland actually objected to in the R&R, and the plain language of section 705.005.

Homeland's only objection to the R&R on the issue of section 705.005 was whether that statute applies to misrepresentations not only in the application, but also during the claim. The plain language of section 705.005 states it is limited to misrepresentations "in the application." And the only authority that the R&R cited to support its contrary finding was *Thompson*, which did not involve misrepresentations during the claim.[6]

In its response, CPL does not dispute that section 705.005, by its own language, is limited to misrepresentations in the application. Instead, CPL tries to distract the Court by arguing about how the policy's misrepresentation provision is worded in order to excuse itself from any misrepresentations it made during the claim. But the R&R did not reach any conclusion about

---

[6] Homeland is not alone in its criticism of *Thompson*. *See Columbia Lloyd's Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2018 WL 1569718, at *6 (S.D. Tex. Mar. 14, 2018) (declining to follow Thompson and finding Tex. Ins. Code. § 705.005(b) inapplicable where an insurer denied coverage based on an exclusion for claims arising out of a misstatement or untruth).

whether misrepresentations during the claim can or cannot defeat coverage and Homeland made no argument on that point it its objections.  CPL is improperly trying to argue a point raised neither by the R&R nor Homeland's objections.

Apart from that, CPL asserts that because its misrepresentations during the claim were (supposedly) merely continuations of misrepresentations during the application, all of them are subject to section 705.005.  But CPL cites zero authority to support this novel assertion, and the Court should decline CPL's invitation to stray from the plain language of the statute in this manner.  Further, CPL cites no evidence establishing the factual premise of its argument – that is, the notion that its *only* misrepresentations during the claim were repetitions of its misrepresentations in the policy.  Thus, CPL has neither law nor fact on its side.

**F.  Defense within Limits.**

CPL's reading of the WTE would impermissibly render its language meaningless and is contrary to its plain language.  *Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*, 556 F.3d 483 (5th Cir. 2009) (courts "cannot adopt a construction that renders any portion of the policy meaningless, useless, or inexplicable").  The WTE states that Homeland will "reimburse the Insured, up to the applicable limit of liability, for reasonable Defense Expenses <u>and</u> Loss." CPL admits that there is no applicable limit just for defense costs incurred under the endorsement.  (Dkt. 136, p. 13).  Thus, the WTE's reference to the "applicable limit" capping "Defense Expenses *and* Loss" must refer to the only possible "limit of liability" – Insuring Agreement A's aggregate limit of $3 million.  Because the R&R ignores the plain language and employs an interpretation that would render policy language meaningless, the Court should decline to adopt the recommendation that defense expenses are uncapped and not subject to any limit.

Respectfully submitted this 26th day of August, 2022.

By:   */s/ John T. Brooks*
John T. Brooks (CA Bar #167793)
Jared K. LeBeau (CA Bar #292742)

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
501 West Broadway, 19th Floor
San Diego, CA 92101
Telephone:  (619) 338-6500
Fax:  (619) 234-3815
jbrooks@sheppardmullin.com
jlebeau@sheppardmullin.com
*Admitted Pro Hac Vice*

Joseph R. Little (#784483)
The Little Law Firm
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone:  (713) 222-1368
Fax:  (281) 200-0115
jrl@littlelawtexas.com
*Attorneys for Plaintiff Homeland Insurance
Company of New York*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true copy of this document was served upon

counsel of record for all parties who have made an appearance in this case at the addresses

indicated by CM/ECF electronic notification and email on this 26th day of August, 2022.


*/s/ John T. Brooks*
_____