**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>    Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC., AND SONIC HEALTHCARE USA, INC.,<br><br>    Defendants. | CIVIL ACTION NO. 1-20-cv-783-RP |

**DECLARATION OF MS. SHERIDAN FOSTER IN SUPPORT OF DEFENDANT
CLINICAL PATHOLOGY LABORATORIES, INC.'S RESPONSE TO PLAINTIFF
HOMELAND INSURANCE COMPANY OF NEW YORK'S
MOTIONS TO COMPEL DISCOVERY [DKT. NOS. 151 & 152]**

Pursuant to 28 U.S.C. § 1746, I, Sheridan Foster, declare as follows:

    1.    I served as Sonic Healthcare USA, Inc.'s ("Sonic USA") Senior Vice President of Legal Affairs and Risk Management from in or around 2013 through my retirement, on December 31, 2019. This Declaration is based on my knowledge and experience gained in that role, and I have personal knowledge of the facts set forth below.

    2.    In my role as Sonic USA's Senior Vice President of Legal Affairs and Risk Management, I managed various legal and insurance-related functions for Sonic USA and certain of its affiliates, including from time-to-time Defendant Clinical Pathology Laboratories, Inc. ("CPL").

    3.    My duties included submitting claims to Sonic USA and CPL's various insurers and corresponding with those insurers regarding ongoing claims.

    4.    Over my many years of experience, I came to understand the information that insurers typically requested to adjust and investigate the claims that I had submitted.

5.      During my many years of experience, Sonic USA and CPL's various insurers typically made coverage decisions within days or weeks of receiving notice of our claims, and typically after receiving basic information regarding those claims (*e.g.*, after receiving a copy of a petition or complaint).

6.      Starting in the spring of 2013, which is when Plaintiff Homeland Insurance Company of New York ("Homeland") began to issue Sonic USA and CPL professional liability insurance policies, I began to communicate with various Homeland representatives regarding, among other things, claims tendered to Homeland. Because of that, I became familiar with Daniele Freaner, the claims adjuster assigned by Homeland to Sonic USA and CPL.

7.      Over the years, I submitted various claims to Ms. Freaner, and I began to understand the information that Ms. Freaner typically required to render coverage decisions.

8.      In early February 2018, we submitted to Ms. Freaner notice of certain medical negligence claims arising out of CPL's work in the Irish CervicalCheck Program.

9.      On February 21, 2018, Ms. Freaner stated in an e-mail to me that she was investigating the claim and that, "[a]fter an initial review of the allegations contained in this matter, coverage will be provided under a reservation of rights." *See* Ex. A – DEF-CPL_0000051565.

10.     We subsequently submitted to Ms. Freaner various information, including summonses, pleadings, expert reports, motions, orders, contracts, and other information regarding the Irish CervicalCheck Program. We also convened telephone conferences with underlying defense counsel and our insurance broker.

11.     As February turned to March, and as one of the underlying claims was nearing trial, I began to grow concerned because Homeland had yet to issue a coverage decision despite the

volume of information that we had provided and was instead continuing to request information that seemed unnecessary to issue its coverage determination.

12. For example, on March 20, 2018, Ms. Freaner e-mailed me, requested a call, and asked, among other things, (1) whether another insurer was covering one of the claims, and (2) when any other Sonic entities first knew of the potential for the Irish CervicalCheck Claims. *See* Ex. B – AONCPLSONIC-0003278. I was surprised by the nature of Ms. Freaner's requests, particularly because she had indicated earlier that her investigation would hinge on the underlying allegations. Now Ms. Freaner was implicitly suggesting that Sonic USA and CPL might seek a double recovery (*i.e.*, have two insurers cover the same claim) and that perhaps someone at the company might have expected the claims long before they were made. None of that was true.

13. On March 27, 2018, Ms. Freaner sent me a six-page letter that I found to be very surprising and atypical. *See* Ex. C – DEF-CPL_0000091069_0001. It contained over thirty requests for information and asked for CPL's contracts with third-parties, copies of insurance policies that did not cover CPL and that were issued to third-parties, submissions made by third parties to their insurers, and a whole host of other documents that were far outside the underlying allegations. This letter was so different from the past correspondence that I had received from our insurers (including Homeland) that I suspected that a lawyer might have drafted the letter, that Homeland might be trying to support a denial of coverage, and that we might have to sue Homeland to get the insurance coverage that we paid a lot of money for. In other words, as of March 27, 2018, we—Sonic USA and CPL—began to anticipate that we might have to litigate with Homeland over insurance coverage.

14. From March 27, 2018, forward, we often communicated with, and enlisted the help of, Aon, our insurance broker, with respect to Homeland's requests for information and to help us

3

secure insurance coverage from Homeland. Our team believed that those communications, which again were made after we first anticipated litigation with Homeland, were confidential, and we intended those communications to remain confidential.

15. We also involved Aon in certain communications with our underlying defense counsel—attorneys at BLM, Germer, and William Fry—so that Aon would be apprised of developments in the underlying claims in real-time and could therefore more effectively assist us with securing insurance coverage for those claims. Again, our team believed that those communications were confidential, and we intended those communications to remain confidential.

16. From early 2018 forward, we also communicated regularly with our Irish-based affiliates and co-defendants in the Irish CervicalCheck Claims, MedLab, regarding our defense against, and how to best resolve, the underlying claims. Although we were adverse in some respects, we had a mutual interest in achieving the dismissal of the underlying claims, or in resolving them as quickly and as cheaply as possible. Outside counsel was often involved in those communications, but either way we believed that those communications were confidential, and we intended those communications to remain confidential.

17. From early 2018 forward, we also communicated regularly with one or more persons from our parent company, Sonic Healthcare Limited, regarding our defense against the underlying claims. Outside counsel was often involved in those communications, but either way we believed that those communications were confidential, and we intended those communications to remain confidential.

18. From March 27, 2018, forward, we also communicated with MedLab and Sonic Healthcare Limited regarding Homeland's requests for information and to help us secure insurance coverage from Homeland. Outside counsel was often involved in those communications, but either

4

way we believed that those communications were confidential, and we intended those communications to remain confidential.

19. On May 1, 2018, I e-mailed Mr. Mark Beaman, with the Germer law firm, and asked for his assistance with our defense against the underlying claims and with securing insurance coverage from Homeland for the same.

20. From that point forward, Mr. Beaman worked with our Irish-based defense counsel on underlying defense strategy and managed our insurance coverage efforts. Indeed, from that point forward, everything that Sonic USA, CPL, or Aon did with respect to the Irish CervicalCheck Claims was done at the direction of Mr. Beaman. I understood and expected that any communications that we had with Mr. Beaman were confidential, and we intended those communications to remain confidential.

\* \* \*

I declare, under penalty of perjury and under the laws of the United States, that the foregoing is true and correct and that this declaration is executed on October 9, 2022, in Utopia, Texas.

*Sheridan Foster*
Ms. Sheridan Foster

## **CERTIFICATE OF SERVICE**

      I hereby certify that, consistent with Local Court Rule CV-5, a true and correct copy of the foregoing was sent to all parties of record pursuant to the Electronic Filing Procedures and the Federal Rules of Civil Procedure on this 10th day of October 2022.

                                                     */s/ Ernest Martin*
                                                           Ernest Martin

# Exhibit A

| | |
|---|---|
| **From:** | Karen Pruett [/O=CPLLABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=KPRUETT] |
| **Sent:** | 2/21/2018 8:15:35 PM |
| **To:** | Hector Garcia [hgarcia@cpllabs.com]; Dr. Shannon Kratzer [skratzer@cpllabs.com] |
| **Subject:** | FW: V. Phelan vs. HSE, MedLab Pathology Limited |

Hector,
Can you help with the answers to Daniele's questions below?

Thank you,

Karen Pruett, MBA MT(ASCP)<sup>CM</sup>
Director of Quality Improvement
Clinical Pathology Laboratories, Inc.
9200 Wall Street
Austin, TX 78754
PH: (512) 498-2196



---

**From:** Freaner, Daniele M. [mailto:DFreaner@onebeaconpro.com]
**Sent:** Wednesday, February 21, 2018 12:13 PM
**To:** Sheridan Foster; Karen Pruett
**Subject:** RE: V. Phelan vs. HSE, MedLab Pathology Limited

Sheridan –

Is there a contract between MPL and CPL and if so, is there indemnity language associated with it? Please provide a copy of the contract once you've obtained it.

Also, to follow up on yesterday's call, can we determine the number of specimens CPL reviewed during the program? Can you or Karen clarify for me that process of how the specimens were reviewed or received by CPL from MPL. In other words, was this electronic data only that was reviewed, were the specimens flown to Austin by MPL? Once the review was completed and the results obtained, what happened to the specimen(s)?

Thank you.

**Daniele Freaner, AIC, SCLA** Assistant Vice President
**OneBeacon Healthcare Group** | A Member of OneBeacon Insurance Group
7708 Rutgers Avenue, Austin, TX 78757
tel: 781-332-9418 | fax: 877-565-1778 | <u>dfreaner@onebeacon.com</u>

---

**From:** Freaner, Daniele M.
**Sent:** Wednesday, February 21, 2018 11:59 AM
**To:** Sheridan A. Foster; Karen Pruett - CPL
**Cc:** Abby Bell
**Subject:** V. Phelan vs. HSE, MedLab Pathology Limited

OBI File No.: 0AB220536

Sheridan,

This will acknowledge receipt of the above-referenced Summons and Complaint. This matter has been assigned to me for handling.

We are reviewing coverage for this matter under the Medical Facilities and Providers Professional Liability Policy # MFL-004062-0617 ("the Policy") to Sonic Healthcare Investments, G.P. ("Sonic") and underwritten by Homeland Insurance Company of New York ("Homeland"). The Policy is effective 06/30/17 -6/30/18. The Policy provides limits of $1,000,000 per **Claim** with an aggregate of $3,000,000 subject to a $150,000 fronted, loss-only deductible. This is a claims-made and reported policy with a retroactive date for Professional Liability of 2/05/2007 for Sonic.

Clinical Pathology Laboratories, Inc. ("CPL") is a **Named Insured** under the Policy with a 10/01/00 Retroactive Date.

Homeland also provides Follow Form Excess protection to Sonic under Excess Policy # MFX-002013-06017. The Excess Policy is effective 06/30/17 -6/30/18 and provides limits of $5,000,000 Per Claim, $5,000,000 Aggregate, inclusive of **Defense Expenses**.

We will complete an initial investigation and coverage analysis. By conducting an investigation and coverage analysis, we are not waiving any rights or defenses secured to us under the terms of the policy or applicable law, nor are any rights secured to you jeopardized in any way. After the initial review of the allegations contained in this matter, coverage will be provided under a reservation of rights.

As discussed, I will reach out to the solicitor for MedLab Pathology Limited ("MPL") and the CEO for MPL to determine the current status of litigation as it relates to CPL.

Thank you.

Daniele Freaner, AIC, SCLA Assistant Vice President
OneBeacon Healthcare Group  |  A Member of OneBeacon Insurance Group
7708 Rutgers Avenue, Austin, TX 78757
tel: 781-332-9418  |  fax: 877-565-1778  |  dfreaner@onebeacon.com

Confidentiality notice:

The information contained in this email message including attachments is confidential and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any use, unauthorized dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please delete immediately or if any problems occur with transmission, please notify me immediately by telephone.

Thank you.

This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy, or take any action in reliance on it.

# Exhibit B

| | |
|---|---|
| From: | Sheridan A. Foster [sfoster@sonichealthcareusa.com] |
| Sent: | 3/20/2018 7:43:25 PM |
| To: | Gordon Young (Gordon.Young@sonichealthcare.com) [Gordon.Young@sonichealthcare.com] |
| CC: | Daniele Freaner [DFreaner@onebeaconpro.com]; Jakob Onken [jakob.onken@aon.com] |
| Subject: | FW: V. Phelan vs. HSE, et al. |
| Importance: | High |

Dear Gordon: Daniele Freaner is our contact for One Beacon, our professional liability coverage here in the US. She and I did speak this afternoon regarding some of her questions below; however, I believe your expertise would be extremely beneficial for us on several of the items. We just learned from Nessa O'Roarty of the firm of BLM in Dublin that Mediation has been scheduled for April 4, 2018 with the trial scheduled for April 19, 2018 which is quite unusual for the timeframe we usually experience with litigation here in the US.

If there is any way possible that you could be available for a call tomorrow, we would greatly appreciate your availability and expertise. Daniele and I could be meet at our office and you could call directly or you could call my line and I could conference Daniele in if we are unable to be together.

Look forward to hearing at your earliest opportunity.

*Sheridan*

Sheridan Foster, J.D.
Senior Vice President
Legal Affairs & Risk Management
Sonic Healthcare USA
9737 Great Hills Trail, Suite 100
Austin, Texas 78759
Phone: 512.439.1645
Fax: 512.795.5069

**Please note that we are moving.** On April 9, 2018, our new address will be:
12357-A Riata Trace Parkway, Suite 210, Austin, TX 78727

**Hospital Lab Partnership.** Get more.

Disclaimer: This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy or take any action in reliance on it.

---

**From:** Freaner, Daniele M. [mailto:DFreaner@onebeaconpro.com]
**Sent:** Tuesday, March 20, 2018 4:15 PM
**To:** Sheridan A. Foster
**Subject:** V. Phelan vs. HSE, et al.

Sheridan –

As a follow up to my v/m message, please contact me at your earliest convenience the discuss the Phelan case.

I need clarification on a few things, so when you call back we can talk about them:

1 – the Amended Complaint as pled does not include an Insured location. Clinical Pathology Laboratories Limited is not a Named Insured on the Policy. The Amended Complaint lists CPL Limited as having registered offices in Dublin (and not the US).

2 – Was notice provided to Vero (the global policy for Sonic) and if so can I get a copy of the notice to Vero? Do you know whether Vero is providing a defense at this time? Are there any other insurance carriers involved in this case?

3 – You previously advised that CPL/your office first received notice of this case and the potential for other cases on or about December 2017 because it was then that the Irish government had mailed notices out, do you know if this was the first time any Sonic entity knew of the event(s)?

4 – I'm trying to determine why the decision was made to dismiss MedLab. I've left a message for Brian Madden and have not heard back from him. Is there anyone else with Sonic corporate I can speak with? Nessa mentioned a Gordon Young, but I do not have contact information for him.

5 – Do you know whether the specimens are reviewed in Austin manually or by computer software?

I look forward to speaking with you, Sheridan. Thank you.

**Daniele Freaner, AIC, SCLA** Assistant Vice President
**OneBeacon Healthcare Group**  |  A Member of OneBeacon Insurance Group
7708 Rutgers Avenue, Austin, TX 78757
tel: 781-332-9418  |  fax: 877-565-1778  |  dfreaner@onebeacon.com

Confidentiality notice:

The information contained in this email message including attachments is confidential and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any use, unauthorized dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please delete immediately or if any problems occur with transmission, please notify me immediately by telephone.

Thank you.

# Exhibit C



188 Inverness Drive West, Suite 600
Englewood, CO  80112
onebeaconhc.com

A Member of OneBeacon Insurance Group

March 27, 2018

**VIA EMAIL**

Sheridan Foster, J.D.
Senior Vice President
Legal Affairs & Risk Management
Sonic Healthcare USA
9737 Great Hills Trail, Suite 100
Austin, Texas 78759
E-Mail: sfoster@sonichealthcareusa.com

| | | |
|---|---|---|
| RE: | **INSURED:** | Clinical Pathology Laboratories, Inc. |
| | **POLICY NO.:** | MFL-004062-0617 |
| | **POLICY PERIOD:** | June 30, 2017 – June 30, 2018 |
| | **UNDERWRITER:** | Homeland Insurance Company of New York |
| | **MATTER:** | *Vicky Phelan. et al. v. Health Service Executive, et al.* |
| | **CLAIM NO.:** | 0AB220536 |

Dear Sheridan:

Please allow this letter to serve as a follow-up to our previous correspondence on the above-referenced matter.

We are currently reviewing this matter and scope of coverage under the above referenced policy (the "Policy") with Homeland Insurance Company of New York ("Homeland"). Homeland was original placed on notice of this matter by Clinical Pathology Laboratories, Inc. on February 14, 2018. We will make every effort to promptly complete our investigation and coverage analysis.  To that end, we are requesting the following information and documents.  We also invite you to help us proceed quickly by providing any additional information that you believe helpful to our investigation.

Please note that Homeland continues to conduct this investigation under a full reservation of rights. Nothing in this letter should be construed as a waiver of any rights available to Homeland under the Policy terms or applicable law, or of any considerations raised with respect to coverage by Homeland or its representatives in prior communications.

## BACKGROUND INFORMATION

In order to evaluate and investigate this matter, we provide a summary of our understanding of the facts and allegations known to date.  Please let us know immediately if our understanding as outlined below is incorrect.  This summary is not intended to be exhaustive or exclusive.  In the event you have or receive any additional information, pleadings, or correspondence regarding this matter, please forward that information to us as soon as possible.

\*\*\*

Policies may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company or OBI National Insurance Company.

### *Ireland's CervicalCheck Program*

In or around 2004, Ireland passed the Health Act of 2004 pursuant to which it established the Health Service Executive ("HSE").  HSE is responsible for, among other things, the administration of health services, including the National Cancer Screening Service ("NCSS") program known as "CervicalCheck."

CervicalCheck was introduced in September 2008 to provide cervical screening of women between the ages of 25 and 60.  Its primary objective is to reduce mortality from cervical cancer by detecting and treating changes in the cells of the cervix before they become cancerous.[1]

On or about March 31, 2010, NCSS entered into a contract with Sonic Healthcare (Ireland) Limited for the supply of cervical cytology laboratory (liquid based cytology) screening services (the "NCSS Contract"). Schedule 1 to NCSS Contract lists Sonic Healthcare (Ireland) Limited as the sole contractor.  Schedule 2 to the NCSS Contract lists Clinical Pathology Laboratories, Incorporated ("CPL, Inc.") as the sole laboratory.

In or around September 2011, a contract may have been entered into between MedLab Pathology, Limited ("MedLab") and CPL, Inc. for NCSS cytology services.  We understand MedLab to be affiliated, probably through some degree of common ownership, with other entities in the Sonic group of companies.  The only copy of this document provided was signed by CPL, Inc., but not MedLab.  This document indicates CPL, Inc., an affiliate of MedLab, "was designated by Sonic Healthcare to provide service for Liquid based gynaecological sample."

The possible contract describes the responsibilities of each laboratory with respect to the CervicalCheck program, presumably as part of the NCSS Contract.  The possible contract between MedLab and CPL, Inc. dictates that MedLab will, among other things, review all results released by CPL, Inc. cytotechnologists or pathologists, that all normal results are reviewed by MedLab scientists, and that both CPL, Inc. and MedLab's Quality Departments are required to audit the entire cytology process at least annually.  The document also indicates that "[a]ny quality issues arising involving [CPL, Inc.] will be initiated by [MedLab] QA and that CPL, Inc. "will be informed at the earliest convenience and given appropriate time to perform Root Cause Analysis and Corrective & Preventive actions where applicable."

### *The Phelan Action*

In or around February 2018, Vicky and John Phelan filed a lawsuit against the HSE and MedLab (the "Phelan Action").  Vicky Phelan is an Educational Manager who is married to Jim Phelan.  The Phelans reside in Limerick, Ireland.  Mrs. Phelan underwent a cervical smear test as part of the CervicalCheck program in or around May 2011.

According to the Phelan Action, Mrs. Phelan's 2011 sample was sent to and reviewed at a cytopathology lab operated by MedLab, its servants or agents.  The cytology report indicated that her sample was not abnormal.

In or around June 2014, Mrs. Phelan underwent another cervical smear test as part of the CervicalCheck program.  This sample was also allegedly reviewed by MedLab, but this time, the results were abnormal.

In or around July 2014, Mrs. Phelan was diagnosed with cervical cancer (node positive squamous carcinoma of the cervix) and underwent radical chemotherapy and MRI guided brachytherapy.

---

[1] NCSS Guidelines for Quality Assurance in Cervical Screening, Second Edition

Policies may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company or OBI National Insurance Company.

In or around October 2014, a review of Mrs. Phelan's 2011 sample showed that the original report was incorrect, i.e., that her 2011 smear test was abnormal. In or around July 2016, Mrs. Phelan's Colposcopy Consultant was advised of the same. Mrs. Phelan was allegedly not notified of the results of the review of her smear sample that had been taken in May 2011 until September 2017.

In or around November 2017, Mrs. Phelan was diagnosed with a recurrence of squamous cell cancer with extensive lymphadenopathy or stage IV cervical cancer, and was advised that the cancer is incurable. She was given a life expectancy of six to twelve months. The Phelan Action alleges, among other things, that the mistaken smear test reading in 2011 deprived Mrs. Phelan of the opportunity of treatment at a time when her disease was amenable to curative treatment.

Other than Sonic Healthcare (Ireland) Limited, MedLab, and CPL, Inc., our review of facts to date does not show the involvement (alleged or actual) of any other entity in the Sonic group of companies. Please let us know if this is correct.

## INFORMATION REQUESTED

To promptly investigate the Phelan matter and any coverage under the Policy, Homeland respectfully requests the following information, in addition to any other facts or documents you believe helpful in determining any scope of coverage issues.

### A. *Correction and Supplementation of Facts*

Please let us know immediately if any of the background facts stated above is inaccurate or materially incomplete, and please provide us with any other information that you believe may be helpful in establishing coverage.

### B. *Contracts and Insurance Policies Relating to the CervicalCheck Program*

Thank you for providing the NCSS Contract with Sonic Healthcare (Ireland) Limited dated March 31, 2010, and a copy of a possible contract from September 2011 between MedLab and CPL, Inc.

B1. Please forward any prior and later versions of these contracts, and any other contracts relating to the involvement of CPL, Inc. (or any other Sonic affiliate) with the CervicalCheck program in Ireland.

B2. Please also forward any insurance policies in effect from the time any Sonic entity, including, but not limited to, Sonic Healthcare (Ireland) Limited, MedLab, and/or CPL, Inc., was involved in Ireland's CervicalCheck program, which have or could potentially provide coverage for any claim relating to liability under this program, whether medical professional liability, general liability, or otherwise.

B3. To the extent claims have been made or notices given under any other insurance policies related to the Phelan Action or the CervicalCheck program, please provide all documents, including, but not limited to, correspondence, claim notices, coverage determinations, denial letters, pleadings, etc. regarding such claims or notices.

### C. *CPL, Inc. Work on Behalf of Sonic Healthcare Investments, G.P.*

We would like to understand whether CPL, Inc. was acting in the course and scope of duties to Sonic Healthcare Investments, G.P. ("Sonic G.P.") in connection with the CervicalCheck program generally or the testing of Ms. Phelan in particular.

Policies may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company or OBI National Insurance Company.

C1. Please advise us whether CPL, Inc. was or was not so acting, and let us know the facts supporting your response.

C2. Please also provide any documents supporting your response.

### D. *Audits Relating to the CervicalCheck Program*

*2012 NCSS Audit*

D1. We understand that in or around 2012, NCSS conducted an audit which revealed anomalies in at least some specimen results under the CervicalCheck program (the "2012 NCSS Audit"). It is also our understanding that the results of this audit were sent to MedLab. Please forward all such audit reports and any other documents, quality control reviews, subsequent audits, correspondence, memoranda, policy changes, etc. related to or resulting from the 2012 NCSS Audit.

D2. We have also been informed that the 2012 NCSS Audit resulted in instructions from NCSS to MedLab to inform affected patients that there may be some issue with their CervicalCheck testing and/or results. Please provide further details in this regard, including whether any patients were contacted as a result of the 2012 NCSS Audit, and any documents evidencing those communications.

D3. Please also explain to what extent, if any, CPL, Inc. was kept apprised of the 2012 NCSS Audit. We have been told that potentially Nancy Stratton and/or Karen Pruett of CPL, Inc. were in communication with MedLab concerning this and/or other NCSS audits. Please provide any reports, memoranda, correspondence, emails, or other documents relating to the 2012 NCSS Audit that CPL, Inc. received or generated.

*2016 Audit and Bulk Claim Report to VERO*

D4. We understand that in or around February or March of 2016 an audit was performed concerning at least some prior CPL, Inc. lab results. As a result of this audit, MedLab submitted a bulk claim report to VERO, one of MedLab's insurers. This bulk claim report included the names of 58 patients, including Vicky Phelan. Please provide a copy of that bulk claim submission to VERO and any other documents associated with that submission.

D5. Relatedly, please provide a copy of any reports submitted to VERO by MedLab in any way related to the CervicalCheck program.

D6. If any other audits were performed by MedLab, CPL, Inc., any other Sonic entity, or any other Irish governing body, or any other person or entity relating to potential misreadings or other diagnostic irregularities in the CervicalCheck program, please provide all information and documents in any way relating to or resulting from those audits.

### E. *The Phelan Claim and Action*

E1. Please provide a copy of any notice of claim letter the Phelans or their attorneys may have sent to you or any of the Sonic entities, along with all pleadings (including, but not limited to, any Defense filed by any party and all affidavits filed by the Phelans and Ryan Siobhan), correspondence, discovery, expert reports, schedules of witnesses, and any other documents associated with the Phelan Action whether filed or in draft form.

Policies may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company or OBI National Insurance Company.

E2. It is unclear from the information provided to date which entities are defendants, other than the HSE. Please provide the identities of all defendants in the Phelan Action and how, procedurally, those entities have come to be named.

E3. Please explain how, why, and by whom CPL, Inc. was named in the Phelan Action, if applicable. To date, conflicting accounts have been given in this regard.

E4. The Phelan Action alleges that MedLab, its servants or agents reviewed a sample taken from Ms. Phelan in 2011 (results normal), and then reviewed a subsequent sample taken from her in 2014 (results abnormal). The complaint also asserts that in October 2014, a second review of Ms. Phelan's 2011 sample was performed showing the results reported in 2011 were erroneous. What entity performed this October 2014 second review of Ms. Phelan's 2011 sample? What entity was responsible for communicating the results of reviews of Ms. Phelan's 2011 and 2014 samples? Was CPL, Inc. or MedLab aware of the October 2014 second review of Ms. Phelan's 2011 sample and the results? Please provide all documents relating to any results, reviews, secondary reviews, and/or audits relating to Ms. Phelan's 2011 and 2014 samples, and what entity was responsible for communicating those results. Please also provide all correspondence with Ms. Phelan and/or her agents relaying those results.

E5. To protect CPL, Inc.'s interests, we are also investigating why an Irish court would have jurisdiction over this U.S. entity. For example, was CPL, Inc. served with process in Ireland? Did the High Court in Ireland grant permission to sue CPL, Inc.? Did CPL, Inc. enter into any contracts that required performance in Ireland?

E6. Additionally, please let us know whether any jurisdictional issues have already been waived by CPL, Inc. For example, has an unconditional appearance been made on CPL, Inc.'s behalf?

E7. Was a release from Ireland's Personal Injury Assessment Board[2] obtained prior to the filing of the Phelan Action? If not, please explain why such a release was not required.

### F. *Other Past, Pending, or Potential Claims and Lawsuits*

We understand there are other past, current, and/or potential future claims or lawsuits of a similar nature. To date, we are aware of at least the following potentially substantively related claims:

- *Rachael O'Brien v. Health Service Executive, et al.*, Record No. 2015/6581 P
- *Rachael O'Brien v. Health Service Executive, et al.*, Record No. 2015/77 IA
- *Cathal Curtis v. Health Service Executive, et al.*, Record No. 2016/3570 P
- *Anne Marie McCalion v. Health Service Executive, et al.*, Record No. 2016/3051 P
- *Mary Cody v. Health Service Executive, et al.*, Record No. 2017/6246 P
- *Karen Hardiman v. MedLab Pathology Ltd.*, Record No. 2017/990 P
- *Blanka Trnkova v. Health Service Executive, et al.*, Record No. 2018/590 P

---

[2] https://www.piab.ie/eng/about-piab/personal-injuries-assessment-board/

Policies may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company or OBI National Insurance Company.

Please provide let us know the status of these actions, and whether they do or may involve claims against CPL, Inc.

\*\*\*

We recognize that some of the information above should be immediately available to you, but that you may need some time to gather other information. To help us move as quickly as possible in evaluating coverage, please provide us responses on a rolling basis (as soon as you are able to do so) rather than waiting until you have gathered all the requested information.

If you have questions or need clarification, please feel free to contact me.

Finally, if you have any additional information which you believe impacts Homeland's investigation; we welcome receipt of any such information. Please forward any such information to my attention.

Thank you for your prompt attention to this matter. We look forward to your response.

Sincerely,

On behalf of Homeland Insurance Company of New York
Daniele Freaner, AIC, SCLA
Assistant Vice President, OneBeacon Healthcare Group
781.332.9418 t
877.256.5067 f
dfreaner@onebeacon.com

Policies may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company or OBI National Insurance Company.