# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | § § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 1:20-cv-783 |
| CLINICAL PATHOLOGY LABORATORIES, INC., SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED, | § § § § § § § | |
| Defendants. | § § | |

**DEFENDANT CLINICAL PATHOLOGY LABORATORIES, INC.'S
OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Clinical Pathology Laboratories, Inc. ("CPL") serves the following objections and responses to Plaintiff Homeland Insurance Company of New York's ("Homeland" or "Plaintiff") First Set of Requests for Production of Documents ("Requests").

## GENERAL OBJECTIONS

1.     CPL's objections are based on the information and documents available and known to CPL at this time.  Further investigation and analysis may disclose additional information responsive to the Requests.  In addition, future events may affect the relevance or responsiveness of answers.  CPL reserves the right to amend, supplement, or withdraw any objections to the

Requests as necessary or appropriate in light of information or knowledge obtained during the course of discovery in this matter.

2.      CPL objects to the Requests to the extent they seek information or documents that are protected by attorney-client privilege, the attorney work-product doctrine, the joint-defense doctrine, the common-interest doctrine, or any other applicable privilege, protection, restriction, or immunity from discovery.  Nothing contained in these objections is intended to be, nor should be construed as, a waiver of any privilege or protection.

3.      CPL objects to the Requests to the extent they seek information or documents that are already in Homeland's possession, custody, or control, or to the extent that they seek information not within the possession, custody, or control of CPL.

4.      CPL objects to the Requests to the extent they seek information or documents that are obtainable from some other source that is more convenient and/or less burdensome, including other parties to this action or third parties,

5.      CPL objects to the Requests to the extent they seek information or documents that are publicly available, including newspaper articles, court papers or filings, or documents available on the internet.

6.      CPL objects to the Requests to the extent they seek to impose any requirement or discovery obligation different from those under the Federal Rules of Civil Procedure, the Local Rules, and other applicable rules and/or orders of the Court.

7.      CPL objects to the Requests to the extent they are vague, ambiguous, overbroad, unduly burdensome, unreasonably cumulative or duplicative, or oppressive, and to the extent that they seek information that is irrelevant, immaterial, and/or not proportional to the needs of this case.

8.      CPL objects to the Requests to the extent they require the disclosure of, or seek documents containing, confidential, trade secret, proprietary, and/or otherwise protected information.

9.      CPL objects to the Requests to the extent they seek information that is protected from disclosure by any protective order or confidentiality, licensing, or non-disclosure agreement binding on CPL.

10.     CPL objects to the Requests to the extent they may be construed to require CPL to concede the relevance or materiality of information or documents sought by the Requests.

11.     CPL's responses to the Requests are not intended to be, and shall not be construed as, an agreement or concurrence by CPL with Homeland's characterization of any fact and/or circumstance.

12.     CPL's responses are subject to and do not wave:

     a.      all questions or objections as to (i) the competency, relevancy, materiality, or admissibility of evidence, or (ii) the use of any of the responses given or documents produced or the subject matter thereof in any subsequent proceeding or trial in this or any other action or for any other purpose;

     b.      the right to object to other discovery proceedings involving or related to the subject matter of the Request to which these responses are directed; and

     c.      the right at any time to revise, correct, supplement, or clarify any or all of the objections and responses, all of which are given subject to correction of any such omissions or errors.

13.     CPL's objections and responses do not constitute an adoption of Homeland's purported "Definitions" of words or phrases contained in the Requests.  Plaintiff objects to the

"Definitions" to the extent they are (1) unclear, ambiguous, overbroad, or unduly burdensome; (2) are inconsistent with the ordinary and customary meaning of words or phrases that they purport to define; and (3) purport to impose any requirement or discovery obligation beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, other applicable rules and orders of this Court, or pertinent case law.

14.     Where CPL has stated that it will produce non-privileged, responsive documents and/or information, such statements do not confirm that such documents and/or information are known to exist or do, in fact, exist.

15.     CPL objects to the Requests to the extent they purport to require CPL to produce "any" or "all" documents that support various of CPL's claims or theories.  CPL is not required to know, at this stage, "any" or "all" such documents, nor is CPL required to disclose the mental impressions of counsel as to the significance of various documents.  Production of any non-privileged, responsive documents and/or information does not, and shall not be construed as, a waiver of the ability to supplement these responses or as a confirmation that what is produced constitutes "any" or "all" documents supporting any of CPL's claims or theories.

16.     CPL objects to the Requests to the extent they require CPL to make legal conclusions or state legal theories or reasoning.

17.     CPL objects to the Requests to the extent they require CPL to interpret provisions of any insurance policies or other contracts.

18.     Documents produced by CPL in response to these Requests are subject to any protective order that is entered by the Court in this action.

19.     CPL will collect and produce electronically stored information ("ESI") consistent with, and subject to, any ESI-related order that is entered by the Court in this action.

20.     CPL objects to Definition 3 insofar as it provides that "You" and "Your" mean and refer to, among other things, "insurance agents/brokers" for CPL.  The relevant broker, AON, is an independent entity who acted as an intermediary between CPL and Homeland and/or OneBeacon.  Thus, CPL *does not* respond to these Requests on behalf of any "insurance agents/brokers."

21.     CPL objects to Definition 3 insofar as it provides that "You" and "Your" mean and refer to, among other things, "related (parent or subsidiary) entities" of CPL.  CPL *does not* respond to these Requests on behalf of any of its "related entities."  Such is in accord with the 2017 Policy (as defined in the Requests), which provides in pertinent part that "[n]o knowledge or information possessed by any Insured shall be imputed to any other Insured."

22.     CPL objects to Definition 4 insofar as it provides that "CPL" mean and refer to, among other things, "related (parent or subsidiary) entities" of CPL.  CPL *does not* respond to these Requests on behalf of any of its "related entities."  Such is in accord with the 2017 Policy (as defined in the Requests), which provides in pertinent part that "[n]o knowledge or information possessed by any Insured shall be imputed to any other Insured."

23.     All Responses set forth below are subject to and without waiver of any of the foregoing general objections and the other more specific objections set forth below in response to each Request.  CPL may not, in every instance, repeat or specifically incorporate these objections, however, they are intended to apply to all of its responses.

## OBJECTIONS AND RESPONSES TO REQUESTS

1.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the term "Board Meeting Minutes" is undefined and therefore vague and ambiguous.  CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all documents and communications . . . which reference or discuss the CervicalCheck program" rather than only those documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all documents and communications . . . which reference or discuss the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure

26(b)(1), CPL is only obligated to produce nonprivileged documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents and communications created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive documents and communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

2.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No. 1.  For that reason, CPL incorporates by reference its response to Request No. 1.

3.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No. 1.  For that reason, CPL incorporates by reference its response to Request No. 1.

4.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No.

1.  For that reason, CPL incorporates by reference its response to Request No. 1.

5.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Board (including any Board Committee) Meeting Minutes from January 1, 2010 to the present which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 1 insofar as it seeks a subset of documents sought through Request No.

1.  For that reason, CPL incorporates by reference its response to Request No. 1.

6.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the

term "Executive Meeting Minutes" is undefined and therefore vague and ambiguous.  CPL also

specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all

documents and communications . . . which reference or discuss the CervicalCheck program" rather

than only those documents and communications that are relevant to the parties' claims or defenses

and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in

place for over twelve years.  CPL provided certain cervical cancer screening services for the

program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all documents and communications . . . which reference or discuss the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents and communications created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive documents and

communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

      7.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

      CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No. 6.  For that reason, CPL incorporates by reference its response to Request No. 6.

      8.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

      CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No. 6.  For that reason, CPL incorporates by reference its response to Request No. 6.

      9.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

      CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No. 6.  For that reason, CPL incorporates by reference its response to Request No. 6.

10.    All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to YOUR Executive Meeting Minutes from January 1, 2010 to the present which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 6 insofar as it seeks a subset of documents sought through Request No. 6.  For that reason, CPL incorporates by reference its response to Request No. 6.

11.    All COMMUNICATIONS between YOU and AON which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications . . . which reference or discuss the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things

CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . which reference or discuss the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents and communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

12.    All COMMUNICATIONS between YOU and AON concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11.  For that reason, CPL incorporates by reference its response to Request No. 11.

13.    All COMMUNICATIONS between YOU and AON which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11.  For that reason, CPL incorporates by reference its response to Request No. 11.

14.    All COMMUNICATIONS between YOU and AON which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11.  For that reason, CPL incorporates by reference its response to Request No. 11.

15.    All COMMUNICATIONS between YOU and AON which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 11 insofar as it seeks a subset of documents sought through Request No. 11.  For that reason, CPL incorporates by reference its response to Request No. 11.

16.    All COMMUNICATIONS from or to the office of the Risk Manager at SONIC referenced in CPL's May 15, 2018 bulk claim report to HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because CPL does not possess, has no custody over, and is not in control of, "all communications from or to the office of the Risk Manager at Sonic," a separate legal entity.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications in its possession, custody, or control that are responsive to this Request.

17.     All DOCUMENTS that evidence, refer, reflect, or relate to COMMUNICATIONS from or to the office of the Risk Manager at SONIC referenced in CPL's May 15, 2018 bulk claim report to HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because CPL does not possess, has no custody over, and is not in control of, "all documents" relating to "communications from or to the office of the Risk Manager at Sonic," a separate legal entity.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents in its possession, custody, or control that are responsive to this Request.

18.     All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications . . . relating to the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish

CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . relating to the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, communications regarding the Ms. S claim).

19.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**<u>RESPONSE:</u>**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

20.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND relating to the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request

No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

21.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request

No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

22.    All COMMUNICATIONS between YOU and the office of the Risk Manager (or any office or person having similar functions) at CPL, MEDLAB, SONIC, SONIC USA, or SONIC IRELAND which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 18 insofar as it seeks a subset of documents sought through Request

No. 18.  For that reason, CPL incorporates by reference its response to Request No. 18.

23.    All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad

and unduly burdensome insofar as it seeks "all communications . . . which reference or discuss the

CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case. The Irish CervicalCheck Program has been in place for over twelve years. CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013. During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . which reference or discuss the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews,

and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program. CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

24.     All COMMUNICATIONS between YOU and YOUR external auditor concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23. For that reason, CPL incorporates by reference its response to Request No. 23.

25.     All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23. For that reason, CPL incorporates by reference its response to Request No. 23.

26.     All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections. CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23. For that reason, CPL incorporates by reference its response to Request No. 23.

27.     All COMMUNICATIONS between YOU and YOUR external auditor which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 23 insofar as it seeks a subset of documents sought through Request No. 23.  For that reason, CPL incorporates by reference its response to Request No. 23.

28.     All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications . . . which reference or discuss the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things

CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications . . . which reference or discuss the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

29.   All COMMUNICATIONS between YOU and YOUR internal auditor concerning insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request No. 28.  For that reason, CPL incorporates by reference its response to Request No. 28.

30.   All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request No. 28.  For that reason, CPL incorporates by reference its response to Request No. 28.

31.     All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request

No. 28.  For that reason, CPL incorporates by reference its response to Request No. 28.

32.     All COMMUNICATIONS between YOU and YOUR internal auditor which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 28 insofar as it seeks a subset of documents sought through Request

No. 28.  For that reason, CPL incorporates by reference its response to Request No. 28.

33.     All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad

and unduly burdensome insofar as it seeks "all internal documents" which reference or relate to

the "CervicalCheck program" rather than only those documents that are relevant to the parties'

claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck

Program has been in place for over twelve years.  CPL provided certain cervical cancer screening

services for the program from August 2010 to July 2013.  During that period, CPL reviewed

326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less

than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This

case concerns whether CPL is entitled to insurance coverage under the Policies for a small number

of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all internal documents" which reference or relate to the "CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive documents regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

34.      All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request

No. 33.  For that reason, CPL incorporates by reference its response to Request No. 33.

35.      All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request

No. 33.  For that reason, CPL incorporates by reference its response to Request No. 33.

36.      All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to any claims made or threatened to be made by any person relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request

No. 33.  For that reason, CPL incorporates by reference its response to Request No. 33.

37.     All internal DOCUMENTS (including, but not limited to, COMMUNICATIONS, notes, memoranda, summaries, and bulletins) that evidence, refer, reflect, or relate to any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 33 insofar as it seeks a subset of documents sought through Request No. 33.  For that reason, CPL incorporates by reference its response to Request No. 33.

38.     All COMMUNICATIONS between YOU and William Fry regarding the Ms. Swift claim.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks communications that are protected by attorney-client privilege.

39.     All DOCUMENTS that evidence, refer, reflect, or relate to William Fry's analysis or evaluation of the Ms. Swift claim.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks attorney work-product and/or documents protected by attorney-client privilege.

40.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND relating to or triggered by Irish Cancer Audit Reviews in 2012-2013.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

41.    All COMMUNICATIONS between or among AON and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND relating to or triggered by Irish Cancer Audit Reviews 2012-2013.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because CPL does not possess, has no custody over, and is not in control of, "all communications" to or from AON, a separate and independent entity.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

42.    All DOCUMENTS that evidence, refer, reflect, or relate to any monthly slide review meetings (as referenced in the NCSS site visit to CPL report from in or around May of 2011) that YOU attended concerning the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the term "monthly slide review meetings" is undefined and therefore vague and ambiguous.  CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all documents . . . concerning the CervicalCheck program" rather than only those documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  The Irish CervicalCheck Program has been in place for over twelve years.  CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013.  During that period, CPL reviewed 326,260 samples.  The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Given the number of samples read by CPL (326,260), the low incidence rate of

invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program.  That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all documents . . . concerning the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged documents that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents created or made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive documents regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

43.    All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND relating to monthly slide review meetings (as referenced in the NCSS site visit to CPL report from in or around May of 2011) concerning the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because the term "monthly slide review meetings" is undefined and therefore vague and ambiguous.  CPL also specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all

communications . . . concerning the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case. The Irish CervicalCheck Program has been in place for over twelve years. CPL provided certain cervical cancer screening services for the program from August 2010 to July 2013. During that period, CPL reviewed 326,260 samples. The incidence rate of invasive cervical cancer is low; from 1994 to 2016, less than 0.016% of women in Ireland developed invasive cervical cancer on an annual basis. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Given the number of samples read by CPL (326,260), the low incidence rate of invasive cervical cancer (less than 0.016%), and the fact that the Policies were only in effect from June 30, 2016 to June 30, 2018, this case necessarily involves only a small sliver of the available information related to the Irish CervicalCheck Program. That is even more so the case given that Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce seeks "all communications . . . concerning the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard (a) actual or potential liability arising out of the Irish CervicalCheck Program, (b) actual or potential claims (or threatened claims) arising

out of the Irish CervicalCheck Program, (c) Cancer Audit Reviews, and/or (d) insurance coverage for any actual or potential claims relating to the Irish CervicalCheck Program.  CPL will also produce non-privileged and responsive communications regarding the claim(s) it seeks coverage for under the Policies (*e.g.*, documents and communications regarding the Ms. S claim).

44.     If it is YOUR contention that YOU did not have any knowledge of the 2012-2013 Irish Cancer Audit Reviews results as of July 27, 2016, please provide any DOCUMENTS and COMMUNICATIONS that support YOUR contention.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request to the extent that it suggests that CPL has any burden to prove whether and when it had knowledge of the 2012-2013 Irish Cancer Audit Reviews.  CPL also specifically objects to the form of this Request.

Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents and communications that are responsive to this Request.

45.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to insurance coverage YOU have under any policy with Vero for any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL states that, during the relevant period, CPL had no insurance coverage under any policy issued by Vero.  CPL will nevertheless produce on a rolling basis any non-privileged documents and communications that are in CPL's possession, custody, or control, and that are responsive to this Request, to the extent any exist.

46.     All DOCUMENTS and COMMUNICATIONS that evidence, refer, reflect, or relate to denial(s) of insurance coverage for YOU under any policy with Vero for any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL states that, during the relevant period, CPL had no insurance coverage under any policy issued by Vero.  CPL will nevertheless produce on a rolling basis any non-privileged documents and communications that are in CPL's possession, custody, or control, and that are responsive to this Request, to the extent any exist.

47.     All COMMUNICATIONS between YOU and Vero concerning any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL states that, during the relevant period, CPL had no insurance coverage under any policy issued by Vero.  CPL will nevertheless produce on a rolling basis any non-privileged communications that are in CPL's possession, custody, or control, and that are responsive to this Request, to the extent any exist.

48.     All DOCUMENTS that evidence, refer, reflect, or relate to YOUR tender of any actual or potential claim arising out of or relating to the CervicalCheck program to Vero.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

49.   All DOCUMENTS that evidence, refer, reflect, or relate to YOUR tender of any actual or potential claim arising out of or relating to the CervicalCheck program to any insurer other than Vero and HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks information that is irrelevant to any party's claims or defenses in this case, in violation of Federal Rule of Civil Procedure 26(b)(1).  Documents regarding CPL's tender of claims to insurers who issued policies subsequent to those issued by Homeland are irrelevant to any party's claims or defenses in this case and therefore are not subject to production under Federal Rule of Civil Procedure 26(b)(1).

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged documents that are responsive to this Request, that are in its possession, custody, or control, and that regard CPL's tender of actual or potential claims relating to the Irish CervicalCheck Program to insurers that issued policies to CPL that cover periods during or before the periods of coverage afforded by the Policies.

50.   All COMMUNICATIONS between YOU and Vero concerning the Ms. Vicky Phelan matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

51.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. Vicky Phelan matter.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

52.     All COMMUNICATIONS between YOU and AON concerning the Ms. Vicky Phelan matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12.  For that reason, CPL incorporates by reference its response to Request No. 12.

53.     All COMMUNICATIONS between YOU and Vero concerning the Ms. O'Brien matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

54.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. O'Brien matter.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

55.     All COMMUNICATIONS between YOU and AON concerning the Ms. O'Brien matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12.  For that reason, CPL incorporates by reference its response to Request No. 12.

56.     All COMMUNICATIONS between YOU and Vero concerning the Ms. Swift matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

57.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. Swift matter.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

58.     All COMMUNICATIONS between YOU and AON concerning the Ms. Swift matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12.  For that reason, CPL incorporates by reference its response to Request No. 12.

59.     All COMMUNICATIONS between YOU and Vero concerning the Ms. Curtis matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 47 insofar as it seeks a subset of documents sought through Request No. 47.  For that reason, CPL incorporates by reference its response to Request No. 47.

60.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND concerning the Ms. Curtis matter.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

61.     All COMMUNICATIONS between YOU and AON concerning the Ms. Curtis matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 12 insofar as it seeks a subset of documents sought through Request No. 12.  For that reason, CPL incorporates by reference its response to Request No. 12.

62.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND regarding the Irish government's decision to notify affected patients about the results of the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

63.     All COMMUNICATIONS between YOU and AON regarding the Irish government's decision to notify affected patients about the results of the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 13 insofar as it seeks a subset of documents sought through Request No. 13.  For that reason, CPL incorporates by reference its response to Request No. 13.

64.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to any actual or potential claim arising out of or relating to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

65.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to procurement of the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

66.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to procurement of the Worldwide Territory Endorsement.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 65 insofar as it seeks a subset of documents sought through Request No. 65.  For that reason, CPL incorporates by reference its response to Request No. 65.

67.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to the addition of MEDLAB and SONIC IRELAND to the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 65 insofar as it seeks a subset of documents sought through Request No. 65.  For that reason, CPL incorporates by reference its response to Request No. 65.

68.     All COMMUNICATIONS between YOU and HOMELAND that evidence, refer, reflect, or relate to procurement of the 2017 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

69.     All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to procurement of the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

70.     All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to procurement of the Worldwide Territory Endorsement.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 69 insofar as it seeks a subset of documents sought through Request No. 69.  For that reason, CPL incorporates by reference its response to Request No. 69.

71.     All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to the addition of MEDLAB and SONIC IRELAND to the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 69 insofar as it seeks a subset of documents sought through Request No. 69.  For that reason, CPL incorporates by reference its response to Request No. 69.

72.     All COMMUNICATIONS between YOU and AON that evidence, refer, reflect, or relate to procurement of the 2017 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

73.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to procurement of the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged communications that are responsive to this Request and that are in CPL's possession, custody, or control.

74.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to the addition of MEDLAB and SONIC IRELAND to the 2016 POLICY.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 73 insofar as it seeks a subset of documents sought through Request No. 73.  For that reason, CPL incorporates by reference its response to Request No. 73.

75.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to procurement of the Worldwide Territory Endorsement.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is

duplicative of Request No. 73 insofar as it seeks a subset of documents sought through Request

No. 73.  For that reason, CPL incorporates by reference its response to Request No. 73.

76.     All COMMUNICATIONS between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA that evidence, refer, reflect, or relate to procurement of the 2017 POLICY.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL

will produce on a rolling basis any non-privileged communications that are responsive to this

Request and that are in CPL's possession, custody, or control.

77.     All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service that evidence, refer, reflect, or relate to the Irish Cancer Audit Reviews.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad

and unduly burdensome insofar as it seeks "all communications" relating to the "Irish Cancer

Audit Reviews" rather than only those communications that are relevant to the parties' claims or

defenses and that are proportional to the needs of this case.  This case concerns whether CPL is

entitled to insurance coverage under the Policies for a small number of claims brought by or on

behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are

based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL

allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal

Rule of Civil Procedure 26(b)(1), to produce "all communications" relating to the "Irish Cancer

Audit Reviews." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard Cancer Audit Reviews.

78.    All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service that evidence, refer, reflect, or relate to insurance coverage for any actual or potential claim relating to the CervicalCheck program.

**<u>RESPONSE:</u>**

CPL renews its General Objections. CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications" relating to the "insurance coverage for any actual or potential claim relating to the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case. This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer. Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016). CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications" relating to the "insurance coverage for any actual or potential claim relating to the CervicalCheck program." Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that are in CPL's possession, custody, or control, and that regard insurance coverage for any actual or potential claim relating to the CervicalCheck program.

79.    All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service which reference or discuss any claims made or threatened to be made by any person relating to the CervicalCheck program.

**<u>RESPONSE:</u>**

CPL renews its General Objections.  CPL specifically objects to this Request as overbroad and unduly burdensome insofar as it seeks "all communications" relating to "any claims made or threatened to be made by any person relating to the CervicalCheck program" rather than only those communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  CPL accordingly has no obligation, under Federal Rule of Civil Procedure 26(b)(1), to produce "all communications" relating to "any claims made or threatened to be made by any person relating to the CervicalCheck program."  Rather, under Federal Rule of Civil Procedure 26(b)(1), CPL is only obligated to produce nonprivileged communications that are relevant to the parties' claims or defenses and that are proportional to the needs of this case.

Subject to and without waiving any objections, CPL will produce on a rolling basis non-privileged communications made prior to June 30, 2016 that are responsive to this Request, that

are in CPL's possession, custody, or control, and that regard any claims made or threatened to be made by any person relating to the CervicalCheck program.

80.    All COMMUNICATIONS between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, or National Screening Service which reference or discuss any facts suggesting the potential for claims against CPL, MEDLAB, SONIC, SONIC USA, and/or SONIC IRELAND related to the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is duplicative of Request No. 79 insofar as it seeks a subset of documents sought through Request No. 79.  For that reason, CPL incorporates by reference its response to Request No. 79.

81.    All DOCUMENTS that evidence or reflect contracts and agreements between YOU and Ireland's Health Service Executive, National Cancer Control Programme, National Cancer Screening Services, and/or National Screening Service relating to services performed for the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks information that is irrelevant to any party's claims or defenses in this case, in violation of Federal Rule of Civil Procedure 26(b)(1).  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  Documents related to contracts or agreements between CPL and other entities have no bearing on Homeland's coverage defenses or whether CPL is entitled to insurance coverage under the Policies and therefore such documents are not subject to production pursuant to Federal Rule of Civil Procedure 26(b)(1).

82.     All DOCUMENTS that evidence, refer, reflect, or relate to contracts or agreements between or among YOU and CPL, MEDLAB, SONIC, SONIC IRELAND, and/or SONIC USA relating to services performed for the CervicalCheck program.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks information that is irrelevant to any party's claims or defenses in this case, in violation of Federal Rule of Civil Procedure 26(b)(1).  This case concerns whether CPL is entitled to insurance coverage under the Policies for a small number of claims brought by or on behalf of women who developed invasive cervical cancer.  Homeland's coverage defenses are based upon allegations of CPL's pre-policy period conduct or knowledge (*i.e.*, things CPL allegedly did or knew before June 30, 2016).  Documents related to contracts or agreements between CPL and other entities have no bearing on Homeland's coverage defenses or whether CPL is entitled to insurance coverage under the Policies and therefore such documents are not subject to production pursuant to Federal Rule of Civil Procedure 26(b)(1).

83.     The Irish Supreme Court judgment in the Ruth and Paul Morrissey v. HSE, et al. matter delivered on or about March 19, 2020, and any underlying Irish High Court decisions or judgments upon which the Supreme Court judgment was based.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it is overly burdensome and seeks information that Homeland already possesses or that is equally available to Homeland.

84.     All DOCUMENTS that YOU contend support YOUR First Count (Breach of Contract) against HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents that are responsive to this Request.

85.     All DOCUMENTS that YOU contend support YOUR Second Count (Chapter 542 of the Texas Insurance Code) against HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents that are responsive to this Request.

86.     All DOCUMENTS that YOU contend support YOUR Third Count (Attorneys' Fees) against HOMELAND.

**RESPONSE:**

CPL renews its General Objections.  Subject to and without waiving any objections, CPL will produce on a rolling basis any non-privileged documents that are responsive to this Request.

87.     Any response YOU provided to William Fry's April 2, 2020 summary of key points in the Irish Supreme Court decision in the Ruth and Paul Morrissey v. HSE, et al. matter.

**RESPONSE:**

CPL renews its General Objections.  CPL specifically objects to this Request because it seeks communications that are protected by attorney-client privilege.

*       *       *

Dated:  March 10, 2021

Respectfully submitted,


By: /s/ Greg Van Houten
    Ernest Martin, Jr. [Bar No. 13063300]
    Greg Van Houten*
    HAYNES AND BOONE, LLP
    2323 Victory Avenue, Suite 700
    Dallas, TX 75219
    Telephone: (214) 651-5651
    Facsimile: (214) 200-0519
    ernest.martin@haynesboone.com
    greg.vanhouten@haynesboone.com
    *Admitted Pro Hac Vice

    -and-

    Mark T. Beaman [Bar No. 01955700]
    Ryan Bueche [Bar No. 24064970]
    GERMER BEAMAN & BROWN PLLC
    One Barton Skyway
    1501 S. Mopac Expressway Suite A400
    Austin, TX 78746
    Telephone: (512) 482-3504
    Facsimile: (512) 472-0721
    mbeaman@germer-austin.com
    rbeuche@germer-austin.com

    **ATTORNEYS FOR DEFENDANT
    CLINICAL PATHOLOGY
    LABORATORIES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I, Greg Van Houten, hereby certify that on this 10th day of March 2021, I served counsel for Homeland with a copy of Defendant Clinical Pathology Laboratories Inc.'s objections and responses to Plaintiff Homeland Insurance Company of New York's First Set of Requests for Production of Documents.  I effectuated service via e-mail.


/s/ Greg Van Houten

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the
WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK | ) |
| *Plaintiff* | ) |
| v. | ) |
| CLINICAL PATHOLOGY LABORATORIES, INC., et al. | ) |
| *Defendant* | ) |

Civil Action No. 1:20-cv-00783-RP

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records for Aon
   10700 W. Research Drive, Suite 450, Milwaukee, WI 53226
   *(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A

| Place: Badger Process Service, Inc. c/o USA Legal Network 262 W. Broadway, Suite 9 Waukesha, WI 53186; (262) 544-5450 | Date and Time: October 11, 2021 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September  9, 2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | *(signature)* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |
| | | Jenna A. Fasone |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Homeland Insurance Company of New York _____, who issues or requests this subpoena, are:
John T. Brooks, Cal Bar No. 167793/Jenna A. Fasone, Cal Bar No. 308886, Sheppard, Mullin, Richter & Hampton, LLP;
501 West Broadway, 19th Floor; Tel: 619.338.6500; Email: jbrooks@sheppardmullin.com; jfasone@sheppardmullin.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-00783-RP

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## ATTACHMENT A

**Exhibits:**       **1:**    **2016 SHUMPERT LETTER**
                    **2:**    **2016 VERO BULK CLAIM REPORT**

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 45(c) this subpoena calls for documents that are known or available to you, including documents in your custody, possession, or control, and including documents maintained at a home or office, on a remote server, or on any personal or portable computer devices, such as mobile telephones.

2. Each request seeks the requested documents or things in their entirety, including all attachments, as kept in the normal course of business.

3. If any document responsive to these requests is electronically stored, then it must be produced, as single-page TIFF images created from native files (endorsed with bates numbers and the appropriate confidentiality legend, if any), with document text (OCR or extracted from native files to the extent available) in a separate TXT file, with file name corresponding to the file name of the TIFF image, together with the following extracted metadata from the native files: visible email headers; file system metadata to the extent available; and application metadata to the extent available.

4. If any document or thing responsive to these requests has been destroyed, describe its contents, the location of any copies, the date such destruction took place, and the name of the person who ordered or authorized such destruction.

5. This subpoena seeks all responsive documents to the categories outlined below, **EXCEPT** for documents YOU have already provided to HOMELAND as part of YOUR updates concerning the status of the ICC CLAIMS in the 2018 HOMELAND BULK CLAIM REPORT.  Please do not reproduce those documents unless they are part of COMMUNICATIONS (with any PERSON aside from HOMELAND) that are responsive to the requests outlined below.

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DEFINITIONS

1. The terms "YOU" and "YOUR" refer to Aon PLC, Aon Risk Solutions, Aon Risk Services Southwest Inc., Aon Risk Services Central, Inc. and any of their related (parent or subsidiary) entities and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys, which would include but is not limited to, Kathryn Shearman, Abby Bell, Kathryn Meyers, Emma Meyer, and Jakob Onken.

2. The term "DOCUMENT(S)" means any handwriting, typewriting, printing, photostating, photograph, photocopy, electronic mail or facsimile, and any other "writings and recordings" defined in Rule 1001 of the Federal Rules of Evidence as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."

3. The term "COMMUNICATION(S)" means every manner or means of disclosure, transfer, or exchange of information, whether oral, electronic, by document, or otherwise, or whether face-to-face, in a meeting, by telephone mail, electronic mail, internet posting, personal delivery, or otherwise, including DOCUMENT(S) which evidence, discuss or reference such COMMUNICATION(S).

4. The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

5. The term "PERSON" or "PERSONS" refers to a natural person, corporation, association, organization, partnership, firm, business, trust, or public entity.

6. The term "CPL" means Clinical Pathology Laboratories, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of CPL or its related (parent or subsidiary) entities, which would include, but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt,

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

7.      The term "MEDLAB" means MedLab Pathology and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of MEDLAB or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

8.      The term "SONIC" means Sonic Healthcare Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

9.      The term "SONIC USA" means Sonic Healthcare USA, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC USA or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

10.     The term "SONIC IRELAND" means Sonic Healthcare (Ireland) Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC IRELAND or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

11.     The term "SONIC ENTITIES" refers to CPL, MEDLAB, SONIC, SONIC USA, and SONIC IRELAND.

*Homeland Insurance Company of New York v. Clinical Pathologies*
*Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

12.    The term "HOMELAND" refers to Homeland Insurance Company of New York and its affiliated companies including any of the OneBeacon entities (e.g., OneBeacon Healthcare Group, OneBeacon Insurance Group LLC, OneBeacon Insurance Group, Ltd., Atlantic Specialty Insurance Co.), and anyone acting on their behalf, including employees, underwriters, claims handlers and attorneys.

13.    The term "VERO" refers to Vero Insurance Limited, AAI Limited ABN 48 005 297 807 trading as Vero Insurance, and their related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of VERO or its related (parent or subsidiary) or affiliated entities.

14.    The term "ZURICH" refers to Zurich American Insurance Company and its related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of ZURICH or its related (parent or subsidiary) or affiliated entities.

15.    The term "BEAZLEY" refers to Beazley Holdings, Inc., Beazley Insurance Company, Beazley America Insurance Company, Inc. and their related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of BEAZLEY or its related (parent or subsidiary) or affiliated entities.

16.    The term "INSURERS" refers to VERO, ZURICH, and BEAZLEY.

17.    The term "GERMER" refers to the law firm Germer PLLC, and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff of GERMER.

18.    The term "WILLIAM FRY" refers to the law firm William Fry LLP, and anyone acting or purporting to act on its behalf including, but not limited to,

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

employees, directors, officers, members, partners, agents, attorneys, or staff of WILLIAM FRY.

19.    The term "HAYNES BOONE" refers to the law firm Haynes and Boone, LLP, and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff  of HAYNES BOONE.

20.    The term "BLM" refers to the law firm Berrymans Lace Mawer LLP (with trading name BLM) and its affiliate Berrymans Lace Mawer, Ireland, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff  of BLM.

21.    The term "LAW FIRMS" refers to GERMER, WILLIAM FRY, HAYNES BOONE, and BLM.

22.    The term "NCSS" refers to Ireland's National Cancer Screening Service established by Ireland's Minister for Health and Children in January 2007 and its successor, Ireland's National Screening Service.

23.    The term "IRISH CERVICALCHECK PROGRAM" refers to Ireland's NCSS program that provides cervical cancer screening to all women and people with a cervix aged 25 to 65 who live in Ireland.

24.    The term "CAR PROGRAM" refers to the IRISH CERVICALCHECK PROGRAM's clinical cancer audit process initiated in or around 2010 as part of the quality assurance framework of the program wherein an individual who has developed cancer will have their screening history reviewed in a systematic way.

25.    The term " ▆▆▆▆▆▆▆ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ▆▆▆▆▆▆▆▆ .

26.    The term " ▆▆▆▆▆▆ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ▆▆▆▆▆▆▆ .

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

27.   The term "███████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ███████████.

28.   The term "███████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, █████████████████.

29.   The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ███████████.

30.   The term "ICC CLAIM(S)" refers to the actual, potential and/or threatened claim(s) relating to the IRISH CERVICALCHECK PROGRAM brought or made against the SONIC ENTITIES, including but not limited to, the O'BRIEN CLAIM, the PHELAN CLAIM, the CURTIS CLAIM, the GAVIGAN CLAIM, and the SWIFT CLAIM.

31.   The term "2016 SHUMPERT LETTER" refers to the letter from Stephen R. Shumpert, then-President of CPL, addressed to OneBeacon Insurance Group, that is dated July 27, 2016, attached hereto as **EXHIBIT 1,** including any drafts of that letter.

32.   The term "2016-17 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0616 (the "2016-17 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0616 (the "2016-17 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2016 to June 30, 2017.

33.   The term "2017-18 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0617 (the "2017-18 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0617 (the "2017-18 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2017 to June 30, 2018.

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

34.   The term "WORLDWIDE TERRITORY ENDORSEMENT" refers to Endorsement No. 12 to the 2016-17 PRIMARY POLICY and No. 13 to the 2017-18 PRIMARY POLICY.

35.   The term "RATE STABILIZATION ENDORSEMENT" refers to Endorsement No. 11 to the 2016-17 PRIMARY POLICY and Nos. 12 and 15 to the 2017-18 PRIMARY POLICY.

36.   The term "ADDITIONAL NAMED INSURED ENDORSEMENT" refers to Endorsement Nos. 5 and 15 to the 2016-17 PRIMARY POLICY and Nos. 3, 22 and 24 to the 2017-18 PRIMARY POLICY.

37.   The term "PRIOR KNOWLEDGE ENDORSEMENT" refers to Endorsement No. 2 to the 2016-17 PRIMARY POLICY and Nos. 1 and 19 to the 2017-18 PRIMARY POLICY.

38.   The term "2016 VERO BULK CLAIM REPORT" refers to the March 23, 2016 email string attached hereto as **EXHIBIT 2** including that email's attached spreadsheet with information concerning 58 patients noticed to VERO by MEDLAB.

39.   The term "MEDLAB PATHOLOGY INCIDENT REPORT" refers to the MedLab Pathology Incident Report from February 26, 2016 as discussed in the March 17, 2016 email attached hereto in **EXHIBIT 2**, including any updates to that report.

40.   The term "2018 HOMELAND BULK CLAIM REPORT" refers to the May 15, 2018 bulk notice to HOMELAND by CPL and/or the SONIC ENTITIES concerning certain ICC CLAIMS.

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DOCUMENTS TO BE PRODUCED

1.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the IRISH CERVICALCHECK PROGRAM.

2.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS), CONCERNING the CAR PROGRAM.

3.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, and the LAW FIRMS) CONCERNING the NCSS.

4.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING insurance coverage for the ICC CLAIMS.

5.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ICC CLAIMS (including but not limited to the noticing or tendering of any ICC CLAIMS to the INSURERS).

6.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 SHUMPERT LETTER (including but not limited to, the procurement of the 2016 SHUMPERT LETTER and any drafts of the same).

7.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON, (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016-

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

2017 POLICIES (including but not limited to, the procurement of the 2016-2017 POLICIES).

8.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2017-2018 POLICIES (including but not limited to, the procurement of the 2017-2018 POLICIES).

9.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the WORLDWIDE TERRITORY ENDORSEMENT (including but not limited to, the procurement of the WORLDWIDE TERRITORY ENDORSEMENT).

10. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the RATE STABILIZATION ENDORSEMENT (including but not limited to, the procurement of the RATE STABILIZATION ENDORSEMENT).

11. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ADDITIONAL NAMED INSURED ENDORSEMENT (including but not limited to, the procurement of the ADDITIONAL NAMED INSURED ENDORSEMENT).

12. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the PRIOR KNOWLEDGE ENDORSEMENT (including but not limited to, the procurement of the PRIOR KNOWLEDGE ENDORSEMENT).

13. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the Prior Notice Exclusion (D)2 in the 2016-2017 POLICIES and the 2017-2018 POLICIES .

14.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING Condition (R) Representation; Incorporation of Application, in the 2016-2017 POLICIES and the 2017-2018 POLICIES.

15.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 VERO BULK CLAIM REPORT.

16.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the MEDLAB PATHOLOGY INCIDENT REPORT.

17.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2018 HOMELAND BULK CLAIM REPORT, except for DOCUMENTS that YOU have already provided to HOMELAND.

18.     All COMMUNICATIONS between YOU and HOMELAND CONCERNING the 2016 SHUMPERT LETTER, the WORLDWIDE TERRITORY ENDORSEMENT, the RATE STABILIZATION ENDORSEMENT, the ADDITIONAL NAMED INSURED ENDORSEMENT, or procurement of insurance coverage for the ICC CLAIMS.

19.     All DOCUMENTS (including, but not limited to, COMMUNICATIONS between or among YOU and any of the SONIC ENTITIES) discussing the possibility that specific persons, or persons in general, might bring claims

SMRH:4851-4802-7636.1

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM.

20.    The earliest COMMUNICATION between or among YOU and any of the SONIC ENTITIES discussing the possibility that specific persons, or persons in general, might bring claims against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM subsequent to the O'BRIEN CLAIM.

SMRH:4851-4802-7636.1

# EXHIBIT 1



July 27, 2016


OneBeacon Insurance Group
Plymouth, MN

The undersigned, on behalf of Sonic and any person proposed for coverage (the insureds)
does hereby represent to OneBeacon Insurance and its writing company that:

The insureds, after diligent inquiry, are not aware of any claims against the insured(s) or
any fact, circumstance, situation, transaction, event, act, error, or omission that may give
rise to a claim against the insured(s) Sonic Healthcare (Ireland) Limited, Medlab
Pathology, and CPL of Austin as respect the cervical cytology laboratory screening
services conducted between 8/1/2010 to 6/30/2013 and all claims and facts,
circumstances, situations, transactions, events, acts, errors, or omissions against the
insured(s) that may result in a claim have been reported to prior insurance carrier(s).

OneBeacon Insurance and its writing company will be issuing its policy in reliance upon
the conditions and statements made in this letter and the application both of which will be
deemed to be a part of the policy.


Sincerely,

Stephen R. Shumpert
President

# EXHIBIT 2

**From:** Kathryn Shearman [mailto:kathryn.shearman@aon.com]
**Sent:** Wednesday, 23 March 2016 10:45 AM
**To:** AUNG, Jamilar
**Subject:** Sonic - Dublin- MedLab Pathology - Incident Report Update

Dear Jamilar,

Thank you for your email in respect to Salvos matter – still don't recognise it- will send separate  email about it.

I hope you are feeling better – at least Easter is  around the corner so hopefully you will be able to have a proper rest.

I refer to the email attached below  in respect to the Cancer Audit at MedLab Pathology.

As you may recall the first notification regarding the audit  was in respect to **Michelle Curtis – your reference E002066374.**

Attached above are the details of the other patients . The attachment in encrypted and I will forward you password in separate email shorlty

I am not sure whether or not you will need to generate a separate reference for these matters however as discussed previously I would like the same claims person to deal with all notifications in respect to the audit hereon.

I look forward to hearing from you in this regard as soon as you are able as there are further emails to forward.

I look forward to hearing from you,

1

Kind regards,

Kathryn

**Kathryn Shearman** | **Senior Claims Consultant**
**Aon Risk Solutions** | BA LLB
201 Kent Street Sydney NSW 2000
t +61 9253 8406 | f +61 9253 7128
kathryn.shearman@aon.com | aon.com.au

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

---

**From:** Lisa Clarke [mailto:lisa.clarke@medlabpathology.ie]
**Sent:** Thursday, 17 March 2016 2:50 AM
**To:** Kathryn Shearman
**Cc:** gordon.young@sonichealthcare.com.au; insurance@sonichealthcare.com
**Subject:** MedLab Pathology - Incident Report Update

Good Afternoon,

Following on from the MedLab Pathology Incident Report on the 26 Feb 2016 regarding the change in process for cancer audits we would like to bring the attached to your attention.

The cancer audit review process started in 2012, following on from the change in process communicated to MLP in Feb 2016, we have reviewed all patients involved in the cancer audits to date.

The attached list contains 58 patients where on review during the cancer audit the management of the patient changed from the original report. As the attached list contains patient demographics we have encrypted it with a password which I will send in a separate mail.

The attached information includes the patient details, the original result date and the change to the result on review.

We are seeking information from our client (NSS) on any cases from the attached list that have been communicated to the treating clinician.

We will update you on any further developments on this.

If you require any further information, please do not hesitate to contact me

Thanks

Lisa

**Lisa Clarke**
**Quality Assurance Manager**
**MedLab Pathology**
**Unit 3, Sandyford Business Centre,**
**Sandyford Business Park,**

**Dublin 18.**

_____

**Tel:** +353 (1) 293 3690 **Fax:** +353 (1) 293 3671

[www.medlabpathology.ie](http://www.medlabpathology.ie)

This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy or take any action in reliance on it.

This e-mail is confidential to the intended recipient. It is sent subject to the terms and conditions of business of Medlab Pathology Limited ("MLP") (a copy of which can be obtained on request from us). If you are not the intended recipient (a) you must not disclose, copy or distribute its contents to any other person nor use its contents in any way (b) please contact us immediately on 020 7307 7321 and delete the e-mail from your system.
By their very nature, e-mail systems and the internet are inherently
insecure systems. Whilst MLP uses all reasonable care and skill in compiling e-mails and (other than by encrypting) in preserving the integrity and confidentiality of it during transit to recipients, MLP makes no warranty as to the safe transmission (confidentiality and free from interception and/or alteration and/or corruption) and receipt of this e-mail and/or information it contains and MLP does not accept liability for any errors or omissions in this e-mail and/or information arising in transmission and/or following receipt.
The content of this message, or opinions expressed within are those of the writer and are not necessarily agreed with by MLP.

_____

This email from the Medlabs network has been scanned by the MessageLabs Email Security System.
For more information please visit [http://www.symanteccloud.com](http://www.symanteccloud.com)
_____

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Nov-12 | ZA074711 | | 3/6/1945 | 02/09/2010 | P3a | P6 | Sparse dyskaryosis, atrophy | 1487914 | |
| 2 | Nov-12 | ZB510111 | | 2/27/1986 | 08/07/2011 | P3a | P3b | Sparse dyskaryosis | 140221 | |
| 3 | Nov-12 | ZA191931 | | 5/16/1957 | 28/09/2010 | P3a | P7 | Microbiopsies, atrophy | 490137 | |
| 4 | Jan-13 | ZB487864 | | 2/29/1976 | 02/07/2011 | P2 | P6 | Other (misinterpretation/did not see abnormality -HCGs) | 366574 | |
| 5 | Jan-13 | ZA387260 | | 6/7/1975 | 11/11/2010 | P4 | P7 | Did not interpret the degree of abnormality correctly. Did not see the HSIL + | 474337 | |
| 6 | Jan-13 | ZA437890 | | 5/22/1982 | 23/11/2010 | P3a | P7 | Other (misinterpretation) | 569917 | |
| 7 | Jan-13 | ZA107400 | | 11/30/1954 | 09/09/2010 | P2 | P6 | Other (small cells) | 744402 | |
| 8 | Jan-13 | ZA269865 | | 5/20/1971 | 16/10/2010 | P4 | P6 | Other (misinterpreted the small cells-scanty small cell dyskaryosis) | 1488236 | |
| 9 | Feb-13 | ZA326872 | | 7/14/1965 | 28/10/2010 | P3a | P6 | Small cell and Microbiopsies | 334419 | |
| | | ZB801182 | | 7/14/1965 | 31/09/2011 | P1 | P6 | Scanty/blood +/Missed groups of cells | | |
| 10 | Feb-13 | ZA489303 | | 9/9/1973 | 02/12/2010 | P4 | P6 | Missed groups/microbiopsies in backgroun | 1029513 | |
| 11 | Feb-13 | ZB539325 | | 2/9/1978 | 14/07/2011 | P4 | P6 | Cytolysis/Misinterretation of cell type | 449107 | |
| 12 | Feb-13 | ZB706791 | | 4/1/1942 | 19/08/2011 | P2 | P9 | Attrophy/Necrotic scanty smear | 1531258 | |
| 13 | Jul-13 | ZB469374 | | 10/5/1980 | 29/06/2011 | P4 | P6 | HCGs and single cells | 600721 | |
| | | ZA202543 | | 10/5/1980 | 01/10/2010 | P4 | P7 | Single cells and HCGs | | |
| 14 | Jul-13 | ZC733064 | | 9/22/1974 | 18/04/2012 | P3a | P9 | Misinterpretation | 8373 | |
| 15 | Jul-13 | ZC815517 | | 8/26/1958 | 03/05/2010 | P2 | P8a | Very scanty abnormality | 273734 | |
| 16 | Jul-13 | ZA073268 | | 6/25/1984 | 31/08/2010 | P2 | P6 & P8b | HCGs | 1369695 | |
| 17 | Jul-13 | ZA732933 | | 11/25/1967 | 20/01/2011 | P2 | P6 & P8b | Misinterpretation of cell groups | 552674 | |
| 18 | Jul-13 | ZA697576 | | 10/31/1956 | 14/01/2011 | P2 | P3b | Scanty abnormality single cells and severe inflammation | 1384308 | |
| 19 | Jul-13 | CA021680 | | 3/3/1977 | 22/06/2012 | P2 | P9 | Misinterpretation of cell groups | 345946 | |
| 20 | Sep-14 | CA082813 | | 1/9/1975 | 19/01/2013 | P1 | P6 | Other = misnterpretation due to GAA effect | 481230 | |
| 21 | Sep-14 | ZB506960 | | 8/20/1968 | 05/07/2011 | P2 | P6 and P8b | Other- Miss | 376388 | |
| | | ZA672737 | | 8/20/1968 | 13/01/2013 | P3a | P9 | Other- Miss and Misinterpreation | | |
| | | ZC373881 | | 8/20/1968 | 25/01/2012 | P2 | P3b | Other - Miss | | |
| 22 | Sep-14 | ZC626734 | | 5/19/1953 | 28/03/2012 | P2 | P7 | Other- Miss | 287248 | |
| 23 | Sep-14 | ZA819534 | | 9/17/1979 | 09/02/2011 | P3a | P6 | Other- Miss | 843046 | |
| 24 | Sep-14 | ZA370441 | | 6/9/1954 | 06/11/2010 | P2 | P8a | Other- Miss | 433139 | |
| 25 | Sep-14 | CA050388 | | 12/4/1955 | 12/10/2012 | P2 | P9 | Other - Sparse | 100030 | |
| 26 | Sep-14 | ZA128802 | | 6/22/1979 | 16/09/2010 | P2 | P6 | Other- Miss | 1219233 | |

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | Sep-14 | ZA101415 | | 6/20/1964 | 09/09/2010 | P2 | P3b | Sparse number of cells | 1167859 | |
| 28 | Sep-14 | ZD157180 | | 5/20/1986 | 20/09/2012 | P2 | P7 | Other- Miss | 1560410 | |
| | | ZC443494 | | 5/20/1986 | 23/02/2012 | P3a | P6 | Other- Miss and Misinterpreation | | |
| 29 | Sep-14 | CA075586 | | 7/11/1974 | 25/12/2012 | P2 | P8a | Sparse (1 dot only) | 1262285 | |
| 30 | Sep-14 | ZC450345 | | 9/24/1984 | 22/02/2012 | P4 | P6 | Other - Miss | 1560596 | |
| 31 | Sep-14 | ZC516732 | | 4/21/1978 | 03/03/2012 | P2 | P6 and P8a | Other - Miss | 659910 | |
| 32 | Sep-14 | ZA538551 | | 12/11/1981 | 11/12/2010 | P2 | P6 and P9 | Other - Miss | 1083932 | |
| 33 | Sep-14 | ZD308103 | | 5/15/1968 | 27/06/2013 | P4 | P7 | Other- Misinterpreation | 809460 | |
| 34 | Sep-14 | ZC928931 | | 8/26/1957 | 09/06/2012 | p2 | P6 | Other - Miss | 42345 | |
| 35 | Feb-15 | ZB551268 | | 2/9/1973 | 13/07/2011 | P2 | P6 | Miss | 185600 | |
| | | ZD150008 | | 2/9/1973 | 12/09/2012 | P3a | P6 | Miss/Misinterpretation | | |
| 36 | Feb-15 | ZC710462 | | 11/20/1981 | 11/04/2012 | P2 | P6 | Miss/Misinterpretation | 542087 | |
| 37 | Jun-15 | ZC611141 | | 8/1/1973 | 22/03/2012 | P2 | P3a | Misinterpreation | 172244 | |
| 38 | Jul-15 | CA181156 | | 7/23/1975 | 03/08/2013 | P2 | P4 | Scanty | 165911 | |
| 39 | Jul-15 | CA294460 | | 10/17/1951 | 10/05/2014 | P4 | P6 | Atrophy | 404399 | |
| | | ZB411651 | | 10/17/1951 | 09/06/2011 | P2 | P3a | Scant | | |
| 40 | Jul-15 | ZC564641 | | 8/19/1983 | 15/03/2012 | P3a | P6 | Misinterpretation | 351284 | |
| 41 | Oct-15 | CA165790 | | 2/8/1966 | 12/07/2013 | P2 | P6 | GAA effect/Misinterpretation | 531343 | |
| 42 | Oct-15 | ZC357968 | | 7/18/1976 | 18/01/2012 | P2 | P6 | Miss/Misinterpretation | 283857 | |
| 43 | Oct-15 | ZC851219 | | 8/16/1975 | 16/05/2012 | P2 | P6 | Single, small cells | 352124 | |
| 44 | Oct-15 | CA080858 | | 8/16/1986 | 12/01/2013 | P4 | P5 | | 1556957 | |
| 45 | Jan-16 | ZA737312 | | 2/25/1974 | 21/01/2011 | P2 | P6 | Miss | 363203 | |
| | | CA003281 | | 2/25/1974 | 17/02/2012 | P2 | P3b | Scant | | |
| | | CA077060 | | 2/25/1974 | 01/01/2013 | P2 | P3b | Scant/degenerate | | |
| | | CA250704 | | 2/25/1974 | 24/01/2012 | P2 | P3a | Scant | | |
| 46 | Jan-16 | CA384357 | | 3/10/1983 | 07/02/2015 | P2 | P3b | GAA effect/Misinterpretation | 1794934 | |
| 47 | Jan-16 | CA463822 | | 3/3/1982 | 16/09/2015 | P2 | P9 | Misinterpreation | 440083 | |
| 48 | Jan-16 | ZD242244 | | 11/15/1977 | 16/11/2012 | P2 | P7 | Miss | 102460 | |
| 49 | Nov-14 | CA041329 | | 6/29/1981 | 11/09/2012 | P2 | P3a Vs P8a | Very scanty | 91509 | |
| 50 | Nov-14 | ZB074621 | | 8/7/1970 | 30/03/2011 | P2 | P8a | Other - Miss | 372969 | |
| | | CA264398 | | 8/7/1970 | 21/02/2014 | P2 | P3a | Other - poor quality scanty cellular material | | |
| 51 | Nov-14 | ZA322603 | | 11/15/1975 | 28/10/2010 | P2 | P6 | Other - miss | 536829 | |
| | | CA177717 | | 11/15/1975 | 30/07/2013 | P2 | P7 | Other - Misinterpretion | | |
| 52 | Nov-14 | CA012241 | | 4/6/1980 | 01/05/2012 | P3a | P3b | Other - Misinterpretation and scanty amount | 568688 | |
| | | CA089809 | | 4/6/1980 | 05/02/2013 | P3a | P3b | Very scant amount of cells | | |
| 53 | Nov-14 | ZB740720 | | 7/8/1974 | 30/08/2011 | P2 | P6 | Other - Miss | 1184682 | |
| 54 | Nov-14 | CA236401 | | 5/7/1966 | 05/12/2013 | P2 | P9 | Other - GAA effect and miss | 1379031 | |

| | Cancer Audit | Episode | | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 54 | Nov-14 | CA144270 | ███████████ | 5/7/1966 | 05/06/2013 | P1 | P8b | poor quality smear and miss | 1379031 | |
| 55 | Nov-14 | ZA534982 | ██████ | 4/3/1977 | 11/12/2010 | P2 | P6 | Other - Miss | 1380034 | |
| 56 | Nov-14 | ZD127636 | ██████ | 5/6/1974 | 17/08/2012 | P4 | P5 | Other - Miss | 1188354 | |
| 57 | Nov-14 | ZB438556 | ██████ | 10/28/1974 | 16/06/2011 | P2 | P7 | Other - Miss | 1238520 | |
| 58 | Nov-14 | ZB188275 | ██████ | 9/24/1963 | 27/04/2011 | P2 | P5 | Other - Scanty cellular material & miss | 1520098 | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, <br><br>        Plaintiff, <br><br> v. <br><br> CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED. <br><br>        Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

## PROOF OF SERVICE

I, the undersigned, declare under penalty of perjury that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, State of California, in which county the within-mentioned service occurred. My business address is 501 West Broadway, 19th Floor, San Diego, California 92101.

On September 9, 2021, I served a copy of the following document(s):

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO THE CUSTODIAN OF RECORDS FOR AON (MILWAUKEE, WI)**

☒     **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from nlautzenheiser@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒     **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that the

correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

| | |
|---|---|
| Mark T. Beaman<br>Ryan Bueche<br>GERMER BEAMAN & BROWN PLLC<br>One Barton Skyway<br>1501 S. Mopac Expy, Suite A400<br>Austin, TX 78746 | ***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited*** |

Telephone:   (512) 472-0667
Facsimile:    (512) 472-0721
E-mail:         mbeaman@germer-austin.com
                     gjohnson@germer-austin.com
                     pross@germer-austin.com

| | |
|---|---|
| Ernest Martin, Jr.<br>Gregory E. Van Houten<br>S. Benjamin Schindler<br>HAYNES AND BOONE, LLP<br>2323 Victory Avenue, Suite 700<br>Dallas, TX 75219 | ***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited*** |

Telephone:   (214) 651-5000
Facsimile:    (214) 200-0519
E-mail:         ernest.martin@haynesboone.com
                     mae.maddran@haynesboone.com
                     greg.vanhouten@haynesboone.com
                     s.benjamin.schindler@haynesboone.com
                     Patricia.Zerwas@haynesboone.com

| | |
|---|---|
| Joseph R. Little<br>The Little Law Firm<br>440 Louisiana Street, Suite 900<br>Houston, Texas 77002 | ***Attorneys for Plaintiff and Counter Defendant Homeland Insurance Company of New York*** |

Telephone:   (713) 222-1368
Facsimile:    (281) 200-0115
E-mail:         jrl@littlelawtexas.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 9, 2021, at San Diego, California.

_____
Nicole Lautzenheiser

PROOF OF SERVICE

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the
WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK<br>*Plaintiff*<br>v.<br>CLINICAL PATHOLOGY LABORATORIES, INC., et al.<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:20-cv-00783-RP

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records for Aon
2555 E. Camelback Road, Suite 700, Phoenix, AZ 85016

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A

| Place: Judicial Attorney Services, Inc. c/o USA Legal Network<br>2942 N 24th Street, Suite 114<br>Phoenix, AZ 85016; (877) 659-3448, (602) 456-0360 | Date and Time:<br>October 11, 2021 at 10 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 9, 2021

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*
Jenna A. Fasone

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Homeland Insurance Company of New York _____ , who issues or requests this subpoena, are:
John T. Brooks, Cal Bar No. 167793/Jenna A. Fasone, Cal Bar No. 308886, Sheppard, Mullin, Richter & Hampton, LLP; 501 West Broadway, 19th Floor; Tel: 619.338.6500; Email: jbrooks@sheppardmullin.com; jfasone@sheppardmullin.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.<br>www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-00783-RP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## ATTACHMENT A

**Exhibits:**       **1:**      **2016 SHUMPERT LETTER**
                    **2:**      **2016 VERO BULK CLAIM REPORT**

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 45(c) this subpoena calls for documents that are known or available to you, including documents in your custody, possession, or control, and including documents maintained at a home or office, on a remote server, or on any personal or portable computer devices, such as mobile telephones.

2. Each request seeks the requested documents or things in their entirety, including all attachments, as kept in the normal course of business.

3. If any document responsive to these requests is electronically stored, then it must be produced, as single-page TIFF images created from native files (endorsed with bates numbers and the appropriate confidentiality legend, if any), with document text (OCR or extracted from native files to the extent available) in a separate TXT file, with file name corresponding to the file name of the TIFF image, together with the following extracted metadata from the native files: visible email headers; file system metadata to the extent available; and application metadata to the extent available.

4. If any document or thing responsive to these requests has been destroyed, describe its contents, the location of any copies, the date such destruction took place, and the name of the person who ordered or authorized such destruction.

5. This subpoena seeks all responsive documents to the categories outlined below, **EXCEPT** for documents YOU have already provided to HOMELAND as part of YOUR updates concerning the status of the ICC CLAIMS in the 2018 HOMELAND BULK CLAIM REPORT.  Please do not reproduce those documents unless they are part of COMMUNICATIONS (with any PERSON aside from HOMELAND) that are responsive to the requests outlined below.

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DEFINITIONS

1.  The terms "YOU" and "YOUR" refer to Aon PLC, Aon Risk Solutions, Aon Risk Services Southwest Inc., Aon Risk Services Central, Inc. and any of their related (parent or subsidiary) entities and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys, which would include but is not limited to, Kathryn Shearman, Abby Bell, Kathryn Meyers, Emma Meyer, and Jakob Onken.

2.  The term "DOCUMENT(S)" means any handwriting, typewriting, printing, photostating, photograph, photocopy, electronic mail or facsimile, and any other "writings and recordings" defined in Rule 1001 of the Federal Rules of Evidence as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."

3.  The term "COMMUNICATION(S)" means every manner or means of disclosure, transfer, or exchange of information, whether oral, electronic, by document, or otherwise, or whether face-to-face, in a meeting, by telephone mail, electronic mail, internet posting, personal delivery, or otherwise, including DOCUMENT(S) which evidence, discuss or reference such COMMUNICATION(S).

4.  The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

5.  The term "PERSON" or "PERSONS" refers to a natural person, corporation, association, organization, partnership, firm, business, trust, or public entity.

6.  The term "CPL" means Clinical Pathology Laboratories, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of CPL or its related (parent or subsidiary) entities, which would include, but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt,

*Homeland Insurance Company of New York v. Clinical Pathologies*
*Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

7.    The term "MEDLAB" means MedLab Pathology and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of MEDLAB or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

8.    The term "SONIC" means Sonic Healthcare Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

9.    The term "SONIC USA" means Sonic Healthcare USA, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC USA or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

10.   The term "SONIC IRELAND" means Sonic Healthcare (Ireland) Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC IRELAND or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

11.   The term "SONIC ENTITIES" refers to CPL, MEDLAB, SONIC, SONIC USA, and SONIC IRELAND.

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

12.     The term "HOMELAND" refers to Homeland Insurance Company of New
        York and its affiliated companies including any of the OneBeacon entities
        (e.g., OneBeacon Healthcare Group, OneBeacon Insurance Group LLC,
        OneBeacon Insurance Group, Ltd., Atlantic Specialty Insurance Co.), and
        anyone acting on their behalf, including employees, underwriters, claims
        handlers and attorneys.

13.     The term "VERO" refers to Vero Insurance Limited, AAI Limited ABN 48
        005 297 807 trading as Vero Insurance, and their related (parent or
        subsidiary) or affiliated entities, and anyone acting or purporting to act on
        their behalf including, but not limited to, employees, directors, officers,
        agents, insurance agents/brokers, or attorneys of VERO or its related (parent
        or subsidiary) or affiliated entities.

14.     The term "ZURICH" refers to Zurich American Insurance Company and its
        related (parent or subsidiary) or affiliated entities, and anyone acting or
        purporting to act on their behalf including, but not limited to, employees,
        directors, officers, agents, insurance agents/brokers, or attorneys of ZURICH
        or its related (parent or subsidiary) or affiliated entities.

15.     The term "BEAZLEY" refers to Beazley Holdings, Inc., Beazley Insurance
        Company, Beazley America Insurance Company, Inc. and their related
        (parent or subsidiary) or affiliated entities, and anyone acting or purporting
        to act on their behalf including, but not limited to, employees, directors,
        officers, agents, insurance agents/brokers, or attorneys of BEAZLEY or its
        related (parent or subsidiary) or affiliated entities.

16.     The term "INSURERS" refers to VERO, ZURICH, and BEAZLEY.

17.     The term "GERMER" refers to the law firm Germer PLLC, and anyone
        acting or purporting to act on its behalf including, but not limited to,
        employees, directors, officers, members, partners, agents, attorneys, or staff
        of GERMER.

18.     The term "WILLIAM FRY" refers to the law firm William Fry LLP, and
        anyone acting or purporting to act on its behalf including, but not limited to,

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

employees, directors, officers, members, partners, agents, attorneys, or staff
of WILLIAM FRY.

19.    The term "HAYNES BOONE" refers to the law firm Haynes and Boone,
       LLP, and anyone acting or purporting to act on its behalf including, but not
       limited to, employees, directors, officers, members, partners, agents,
       attorneys, or staff  of HAYNES BOONE.

20.    The term "BLM" refers to the law firm Berrymans Lace Mawer LLP (with
       trading name BLM) and its affiliate Berrymans Lace Mawer, Ireland, and
       anyone acting or purporting to act on their behalf including, but not limited
       to, employees, directors, officers, members, partners, agents, attorneys, or
       staff  of BLM.

21.    The term "LAW FIRMS" refers to GERMER, WILLIAM FRY, HAYNES
       BOONE, and BLM.

22.    The term "NCSS" refers to Ireland's National Cancer Screening Service
       established by Ireland's Minister for Health and Children in January 2007
       and its successor, Ireland's National Screening Service.

23.    The term "IRISH CERVICALCHECK PROGRAM" refers to Ireland's
       NCSS program that provides cervical cancer screening to all women and
       people with a cervix aged 25 to 65 who live in Ireland.

24.    The term "CAR PROGRAM" refers to the IRISH CERVICALCHECK
       PROGRAM's clinical cancer audit process initiated in or around 2010 as
       part of the quality assurance framework of the program wherein an
       individual who has developed cancer will have their screening history
       reviewed in a systematic way.

25.    The term "███████CLAIM" refers to the ICC CLAIM made by, on behalf
       of, and/or by relatives of, ████████████.

26.    The term "███████CLAIM" refers to the ICC CLAIM made by, on behalf
       of, and/or by relatives of, ████████████.

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

27.   The term "███████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████.

28.   The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, █████████████.

29.   The term "██████CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████.

30.   The term "ICC CLAIM(S)" refers to the actual, potential and/or threatened claim(s) relating to the IRISH CERVICALCHECK PROGRAM brought or made against the SONIC ENTITIES, including but not limited to, the O'BRIEN CLAIM, the PHELAN CLAIM, the CURTIS CLAIM, the GAVIGAN CLAIM, and the SWIFT CLAIM.

31.   The term "2016 SHUMPERT LETTER" refers to the letter from Stephen R. Shumpert, then-President of CPL, addressed to OneBeacon Insurance Group, that is dated July 27, 2016, attached hereto as **EXHIBIT 1,** including any drafts of that letter.

32.   The term "2016-17 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0616 (the "2016-17 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0616 (the "2016-17 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2016 to June 30, 2017.

33.   The term "2017-18 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0617 (the "2017-18 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0617 (the "2017-18 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2017 to June 30, 2018.

SMRH:4851-4802-7636.1

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

34.   The term "WORLDWIDE TERRITORY ENDORSEMENT" refers to Endorsement No. 12 to the 2016-17 PRIMARY POLICY and No. 13 to the 2017-18 PRIMARY POLICY.

35.   The term "RATE STABILIZATION ENDORSEMENT" refers to Endorsement No. 11 to the 2016-17 PRIMARY POLICY and Nos. 12 and 15 to the 2017-18 PRIMARY POLICY.

36.   The term "ADDITIONAL NAMED INSURED ENDORSEMENT" refers to Endorsement Nos. 5 and 15 to the 2016-17 PRIMARY POLICY and Nos. 3, 22 and 24 to the 2017-18 PRIMARY POLICY.

37.   The term "PRIOR KNOWLEDGE ENDORSEMENT" refers to Endorsement No. 2 to the 2016-17 PRIMARY POLICY and Nos. 1 and 19 to the 2017-18 PRIMARY POLICY.

38.   The term "2016 VERO BULK CLAIM REPORT" refers to the March 23, 2016 email string attached hereto as **EXHIBIT 2** including that email's attached spreadsheet with information concerning 58 patients noticed to VERO by MEDLAB.

39.   The term "MEDLAB PATHOLOGY INCIDENT REPORT" refers to the MedLab Pathology Incident Report from February 26, 2016 as discussed in the March 17, 2016 email attached hereto in **EXHIBIT 2**, including any updates to that report.

40.   The term "2018 HOMELAND BULK CLAIM REPORT" refers to the May 15, 2018 bulk notice to HOMELAND by CPL and/or the SONIC ENTITIES concerning certain ICC CLAIMS.

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DOCUMENTS TO BE PRODUCED

1. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the IRISH CERVICALCHECK PROGRAM.

2. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS), CONCERNING the CAR PROGRAM.

3. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, and the LAW FIRMS) CONCERNING the NCSS.

4. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING insurance coverage for the ICC CLAIMS.

5. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ICC CLAIMS (including but not limited to the noticing or tendering of any ICC CLAIMS to the INSURERS).

6. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 SHUMPERT LETTER (including but not limited to, the procurement of the 2016 SHUMPERT LETTER and any drafts of the same).

7. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON, (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016-

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division

Case No. 1:20-cv-00783-RP

2017 POLICIES (including but not limited to, the procurement of the 2016-2017 POLICIES).

8.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2017-2018 POLICIES (including but not limited to, the procurement of the 2017-2018 POLICIES).

9.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the WORLDWIDE TERRITORY ENDORSEMENT (including but not limited to, the procurement of the WORLDWIDE TERRITORY ENDORSEMENT).

10.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the RATE STABILIZATION ENDORSEMENT (including but not limited to, the procurement of the RATE STABILIZATION ENDORSEMENT).

11.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ADDITIONAL NAMED INSURED ENDORSEMENT (including but not limited to, the procurement of the ADDITIONAL NAMED INSURED ENDORSEMENT).

12.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the PRIOR KNOWLEDGE ENDORSEMENT (including but not limited to, the procurement of the PRIOR KNOWLEDGE ENDORSEMENT).

13.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the Prior Notice Exclusion (D)2 in the 2016-2017 POLICIES and the 2017-2018 POLICIES .

14.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING Condition (R) Representation; Incorporation of Application, in the 2016-2017 POLICIES and the 2017-2018 POLICIES.

15.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 VERO BULK CLAIM REPORT.

16.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the MEDLAB PATHOLOGY INCIDENT REPORT.

17.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2018 HOMELAND BULK CLAIM REPORT, except for DOCUMENTS that YOU have already provided to HOMELAND.

18.     All COMMUNICATIONS between YOU and HOMELAND CONCERNING the 2016 SHUMPERT LETTER, the WORLDWIDE TERRITORY ENDORSEMENT, the RATE STABILIZATION ENDORSEMENT, the ADDITIONAL NAMED INSURED ENDORSEMENT, or procurement of insurance coverage for the ICC CLAIMS.

19.     All DOCUMENTS (including, but not limited to, COMMUNICATIONS between or among YOU and any of the SONIC ENTITIES) discussing the possibility that specific persons, or persons in general, might bring claims

**_Homeland Insurance Company of New York v. Clinical Pathologies_**
**_Laboratories, Inc., et al._**
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM.

20.   The earliest COMMUNICATION between or among YOU and any of the SONIC ENTITIES discussing the possibility that specific persons, or persons in general, might bring claims against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM subsequent to the O'BRIEN CLAIM.

# EXHIBIT 1



July 27, 2016


OneBeacon Insurance Group
Plymouth, MN

The undersigned, on behalf of Sonic and any person proposed for coverage (the insureds) does hereby represent to OneBeacon Insurance and its writing company that:

The insureds, after diligent inquiry, are not aware of any claims against the insured(s) or any fact, circumstance, situation, transaction, event, act, error, or omission that may give rise to a claim against the insured(s) Sonic Healthcare (Ireland) Limited, Medlab Pathology, and CPL of Austin as respect the cervical cytology laboratory screening services conducted between 8/1/2010 to 6/30/2013 and all claims and facts, circumstances, situations, transactions, events, acts, errors, or omissions against the insured(s) that may result in a claim have been reported to prior insurance carrier(s).

OneBeacon Insurance and its writing company will be issuing its policy in reliance upon the conditions and statements made in this letter and the application both of which will be deemed to be a part of the policy.



Sincerely,

Stephen R. Shumpert
President

# EXHIBIT 2

**From:** Kathryn Shearman [mailto:kathryn.shearman@aon.com]
**Sent:** Wednesday, 23 March 2016 10:45 AM
**To:** AUNG, Jamilar
**Subject:** Sonic - Dublin- MedLab Pathology - Incident Report Update

Dear Jamilar,

Thank you for your email in respect to Salvos matter – still don't recognise it- will send separate  email about it.

I hope you are feeling better – at least Easter is  around the corner so hopefully you will be able to have a proper rest.

I refer to the email attached below  in respect to the Cancer Audit at MedLab Pathology.

As you may recall the first notification regarding the audit  was in respect to **Michelle Curtis – your reference E002066374.**

Attached above are the details of the other patients . The attachment in encrypted and I will forward you password in separate email shorlty

I am not sure whether or not you will need to generate a separate reference for these matters however as discussed previously I would like the same claims person to deal with all notifications in respect to the audit hereon.

I look forward to hearing from you in this regard as soon as you are able as there are further emails to forward.

I look forward to hearing from you,

Kind regards,

Kathryn

**Kathryn Shearman** | **Senior Claims Consultant**
**Aon Risk Solutions** | BA LLB
201 Kent Street Sydney NSW 2000
t +61 9253 8406 | f +61 9253 7128
kathryn.shearman@aon.com | aon.com.au

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**[®]

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**[®]

**From:** Lisa Clarke [mailto:lisa.clarke@medlabpathology.ie]
**Sent:** Thursday, 17 March 2016 2:50 AM
**To:** Kathryn Shearman
**Cc:** gordon.young@sonichealthcare.com.au; insurance@sonichealthcare.com
**Subject:** MedLab Pathology - Incident Report Update

Good Afternoon,

Following on from the MedLab Pathology Incident Report on the 26 Feb 2016 regarding the change in process for cancer audits we would like to bring the attached to your attention.

The cancer audit review process started in 2012, following on from the change in process communicated to MLP in Feb 2016, we have reviewed all patients involved in the cancer audits to date.

The attached list contains 58 patients where on review during the cancer audit the management of the patient changed from the original report. As the attached list contains patient demographics we have encrypted it with a password which I will send in a separate mail.

The attached information includes the patient details, the original result date and the change to the result on review.

We are seeking information from our client (NSS) on any cases from the attached list that have been communicated to the treating clinician.

We will update you on any further developments on this.

If you require any further information, please do not hesitate to contact me

Thanks

Lisa

**Lisa Clarke**
**Quality Assurance Manager**
**MedLab Pathology**
**Unit 3, Sandyford Business Centre,**
**Sandyford Business Park,**

**Dublin 18.**

_____

**Tel:** +353 (1) 293 3690 **Fax:** +353 (1) 293 3671

www.medlabpathology.ie

This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy or take any action in reliance on it.

This e-mail is confidential to the intended recipient. It is sent subject to the terms and conditions of business of Medlab Pathology Limited ("MLP") (a copy of which can be obtained on request from us). If you are not the intended recipient (a) you must not disclose, copy or distribute its contents to any other person nor use its contents in any way (b) please contact us immediately on 020 7307 7321 and delete the e-mail from your system.
By their very nature, e-mail systems and the internet are inherently
insecure systems. Whilst MLP uses all reasonable care and skill in compiling e-mails and (other than by encrypting) in preserving the integrity and confidentiality of it during transit to recipients, MLP makes no warranty as to the safe transmission (confidentiality and free from interception and/or alteration and/or corruption) and receipt of this e-mail and/or information it contains and MLP does not accept liability for any errors or omissions in this e-mail and/or information arising in transmission and/or following receipt.
The content of this message, or opinions expressed within are those of the writer and are not necessarily agreed with by MLP.

_____

This email from the Medlabs network has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.symanteccloud.com

_____

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Nov-12 | ZA074711 | | 3/6/1945 | 02/09/2010 | P3a | P6 | Sparse dyskaryosis, atrophy | 1487914 | |
| 2 | Nov-12 | ZB510111 | | 2/27/1986 | 08/07/2011 | P3a | P3b | Sparse dyskaryosis | 140221 | |
| 3 | Nov-12 | ZA191931 | | 5/16/1957 | 28/09/2010 | P3a | P7 | Microbiopsies, atrophy | 490137 | |
| 4 | Jan-13 | ZB487864 | | 2/29/1976 | 02/07/2011 | P2 | P6 | Other (misinterpretation/did not see abnormality -HCGs) | 366574 | |
| 5 | Jan-13 | ZA387260 | | 6/7/1975 | 11/11/2010 | P4 | P7 | Did not interpret the degree of abnormality correctly.  Did not see the HSIL + | 474337 | |
| 6 | Jan-13 | ZA437890 | | 5/22/1982 | 23/11/2010 | P3a | P7 | Other (misinterpretation) | 569917 | |
| 7 | Jan-13 | ZA107400 | | 11/30/1954 | 09/09/2010 | P2 | P6 | Other (small cells) | 744402 | |
| 8 | Jan-13 | ZA269865 | | 5/20/1971 | 16/10/2010 | P4 | P6 | Other (misinterpreted the small cells-scanty small cell dyskaryosis) | 1488236 | |
| 9 | Feb-13 | ZA326872 | | 7/14/1965 | 28/10/2010 | P3a | P6 | Small cell and Microbiopsies | 334419 | |
| | | ZB801182 | | 7/14/1965 | 31/09/2011 | P1 | P6 | Scanty/blood +/Missed groups of cells | | |
| 10 | Feb-13 | ZA489303 | | 9/9/1973 | 02/12/2010 | P4 | P6 | Missed groups/microbiopsies in backgroun | 1029513 | |
| 11 | Feb-13 | ZB539325 | | 2/9/1978 | 14/07/2011 | P4 | P6 | Cytolysis/Misinterretation of cell type | 449107 | |
| 12 | Feb-13 | ZB706791 | | 4/1/1942 | 19/08/2011 | P2 | P9 | Attrophy/Necrotic scanty smear | 1531258 | |
| 13 | Jul-13 | ZB469374 | | 10/5/1980 | 29/06/2011 | P4 | P6 | HCGs and single cells | 600721 | |
| | | ZA202543 | | 10/5/1980 | 01/10/2010 | P4 | P7 | Single cells and HCGs | | |
| 14 | Jul-13 | ZC733064 | | 9/22/1974 | 18/04/2012 | P3a | P9 | Misinterpretation | 8373 | |
| 15 | Jul-13 | ZC815517 | | 8/26/1958 | 03/05/2010 | P2 | P8a | Very scanty abnormality | 273734 | |
| 16 | Jul-13 | ZA073268 | | 6/25/1984 | 31/08/2010 | P2 | P6 & P8b | HCGs | 1369695 | |
| 17 | Jul-13 | ZA732933 | | 11/25/1967 | 20/01/2011 | P2 | P6 & P8b | Misinterpretation of cell groups | 552674 | |
| 18 | Jul-13 | ZA697576 | | 10/31/1956 | 14/01/2011 | P2 | P3b | Scanty abnormality single cells and severe inflammation | 1384308 | |
| 19 | Jul-13 | CA021680 | | 3/3/1977 | 22/06/2012 | P2 | P9 | Misinterpretation of cell groups | 345946 | |
| 20 | Sep-14 | CA082813 | | 1/9/1975 | 19/01/2013 | P1 | P6 | Other = misnterpretation due to GAA effect | 481230 | |
| 21 | Sep-14 | ZB506960 | | 8/20/1968 | 05/07/2011 | P2 | P6 and P8b | Other- Miss | 376388 | |
| | | ZA672737 | | 8/20/1968 | 13/01/2011 | P3a | P9 | Other- Miss and Misinterpreation | | |
| | | ZC373881 | | 8/20/1968 | 25/01/2012 | P2 | P3b | Other - Miss | | |
| 22 | Sep-14 | ZC626734 | | 5/19/1953 | 28/03/2012 | P2 | P7 | Other- Miss | 287248 | |
| 23 | Sep-14 | ZA819534 | | 9/17/1979 | 09/02/2011 | P3a | P6 | Other- Miss | 843046 | |
| 24 | Sep-14 | ZA370441 | | 6/9/1954 | 06/11/2010 | P2 | P8a | Other- Miss | 433139 | |
| 25 | Sep-14 | CA050388 | | 12/4/1955 | 12/10/2012 | P2 | P9 | Other - Sparse | 100030 | |
| 26 | Sep-14 | ZA128802 | | 6/22/1979 | 16/09/2010 | P2 | P6 | Other- Miss | 1219233 | |

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | Sep-14 | ZA101415 | | 6/20/1964 | 09/09/2010 | P2 | P3b | Sparse number of cells | 1167859 | |
| 28 | Sep-14 | ZD157180 | | 5/20/1986 | 20/09/2012 | P7 | P7 | Other- Miss | 1560410 | |
| | | ZC443494 | | 5/20/1986 | 23/02/2012 | P3a | P6 | Other- Miss and Misinterpreation | | |
| 29 | Sep-14 | CA075586 | | 7/11/1974 | 25/12/2012 | P2 | P8a | Sparse (1 dot only) | 1262285 | |
| 30 | Sep-14 | CA450345 | | 9/24/1984 | 22/02/2012 | P4 | P6 | Other - Miss | 1560596 | |
| 31 | Sep-14 | ZC516732 | | 4/21/1978 | 03/03/2012 | P2 | P6 and P8a | Other - Miss | 659910 | |
| 32 | Sep-14 | ZA538551 | | 12/11/1981 | 11/12/2010 | P2 | P6 and P9 | Other - Miss | 1083932 | |
| 33 | Sep-14 | ZD308103 | | 5/15/1968 | 27/06/2013 | P4 | P7 | Other- Misinterpreation | 809460 | |
| 34 | Sep-14 | ZC928931 | | 8/26/1957 | 09/06/2012 | p2 | P6 | Other - Miss | 42345 | |
| 35 | Feb-15 | ZB551268 | | 2/9/1973 | 13/07/2011 | P2 | P6 | Miss | 185600 | |
| | | ZD150008 | | 2/9/1973 | 12/09/2012 | P3a | P6 | Miss/Misinterpretation | | |
| 36 | Feb-15 | ZC710462 | | 11/20/1981 | 11/04/2012 | P2 | P6 | Miss/Misinterpretation | 542087 | |
| 37 | Jun-15 | ZC611141 | | 8/1/1973 | 22/03/2012 | P2 | P3a | Misinterpreation | 172244 | |
| 38 | Jul-15 | CA181156 | | 7/23/1975 | 03/08/2013 | P2 | P4 | Scanty | 165911 | |
| 39 | Jul-15 | CA294460 | | 10/17/1951 | 10/05/2014 | P4 | P6 | Atrophy | 404399 | |
| | | ZB411651 | | 10/17/1951 | 09/06/2011 | P2 | P3a | Scant | | |
| 40 | Jul-15 | ZC564641 | | 8/19/1983 | 15/03/2012 | P3a | P6 | Misinterpretation | 351284 | |
| 41 | Oct-15 | CA165790 | | 2/8/1966 | 12/07/2013 | P2 | P6 | GAA effect/Misinterpretation | 531343 | |
| 42 | Oct-15 | ZC357968 | | 7/18/1976 | 18/01/2012 | P2 | P6 | Miss/Misinterpretation | 283857 | |
| 43 | Oct-15 | ZC851219 | | 8/16/1975 | 16/05/2012 | P2 | P6 | Single, small cells | 352124 | |
| 44 | Oct-15 | CA080858 | | 8/16/1986 | 12/01/2013 | P4 | P5 | | 1556957 | |
| 45 | Jan-16 | ZA737312 | | 2/25/1974 | 21/01/2011 | P2 | P6 | Miss | 363203 | |
| | | CA003281 | | 2/25/1974 | 17/02/2012 | P2 | P3b | Scant | | |
| | | CA077060 | | 2/25/1974 | 01/01/2013 | P2 | P3b | Scant/degenerate | | |
| | | CA250704 | | 2/25/1974 | 24/01/2014 | P2 | P3a | Scant | | |
| 46 | Jan-16 | CA384357 | | 3/10/1983 | 07/02/2015 | P2 | P3b | GAA effect/Misinterpretation | 1794934 | |
| 47 | Jan-16 | CA463822 | | 3/3/1982 | 16/09/2015 | P2 | P9 | Misinterpreation | 440083 | |
| 48 | Jan-16 | ZD242244 | | 11/15/1977 | 16/11/2012 | P2 | P7 | Miss | 102460 | |
| 49 | Nov-14 | CA041329 | | 6/29/1981 | 11/09/2012 | P2 | P3a Vs P8a | Very scanty | 91509 | |
| 50 | Nov-14 | ZB074621 | | 8/7/1970 | 30/03/2011 | P2 | P8a | Other - Miss | 372969 | |
| | | CA264398 | | 8/7/1970 | 21/02/2014 | P2 | P3a | Other - poor quality scanty cellular material | | |
| 51 | Nov-14 | ZA322603 | | 11/15/1975 | 28/10/2012 | P2 | P6 | Other - miss | 536829 | |
| | | CA177717 | | 11/15/1975 | 30/07/2013 | P2 | P7 | Other - Misinterpretion | | |
| 52 | Nov-14 | CA012241 | | 4/6/1980 | 01/05/2012 | P3a | P3b | Other - Misinterpretation and scanty amount | 568688 | |
| | | CA089809 | | 4/6/1980 | 05/02/2013 | P3a | P3b | Very scant amount of cells | | |
| 53 | Nov-14 | ZB740720 | | 7/8/1974 | 30/08/2011 | P2 | P6 | Other - Miss | 1184682 | |
| 54 | Nov-14 | CA236401 | | 5/7/1966 | 05/12/2013 | P2 | P9 | Other - GAA effect and miss | 1379031 | |

| | Cancer Audit | Episode | | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 54 | Nov-14 | CA144270 | ██████████ | 5/7/1966 | 05/06/2013 | P1 | P8b | poor quality smear and miss | 1379031 | |
| 55 | Nov-14 | ZA534982 | ████████ | 4/3/1977 | 11/12/2010 | P2 | P6 | Other - Miss | 1380034 | |
| 56 | Nov-14 | ZD127636 | ██████ | 5/6/1974 | 17/08/2012 | P4 | P5 | Other - Miss | 1188354 | |
| 57 | Nov-14 | ZB438556 | ██████ | 10/28/1974 | 16/06/2011 | P2 | P7 | Other - Miss | 1238520 | |
| 58 | Nov-14 | ZB188275 | ██████ | 9/24/1963 | 27/04/2011 | P2 | P5 | Other - Scanty cellular material & miss | 1520098 | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>            Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>            Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

**PROOF OF SERVICE**

I, the undersigned, declare under penalty of perjury that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, State of California, in which county the within-mentioned service occurred.  My business address is 501 West Broadway, 19th Floor, San Diego, California 92101.

On September 9, 2021, I served a copy of the following document(s):

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO THE CUSTODIAN OF RECORDS FOR AON (PHOENIX, AZ)**

☒      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from nlautzenheiser@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒      **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same day that the

correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Mark T. Beaman
Ryan Bueche
GERMER BEAMAN & BROWN PLLC
One Barton Skyway
1501 S. Mopac Expy, Suite A400
Austin, TX 78746

***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited***

| | |
|---|---|
| Telephone: | (512) 472-0667 |
| Facsimile: | (512) 472-0721 |
| E-mail: | mbeaman@germer-austin.com |
| | gjohnson@germer-austin.com |
| | pross@germer-austin.com |

Ernest Martin, Jr.
Gregory E. Van Houten
S. Benjamin Schindler
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219

***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited***

| | |
|---|---|
| Telephone: | (214) 651-5000 |
| Facsimile: | (214) 200-0519 |
| E-mail: | ernest.martin@haynesboone.com |
| | mae.maddran@haynesboone.com |
| | greg.vanhouten@haynesboone.com |
| | s.benjamin.schindler@haynesboone.com |
| | Patricia.Zerwas@haynesboone.com |

Joseph R. Little
The Little Law Firm
440 Louisiana Street, Suite 900
Houston, Texas 77002

***Attorneys for Plaintiff and Counter Defendant Homeland Insurance Company of New York***

| | |
|---|---|
| Telephone: | (713) 222-1368 |
| Facsimile: | (281) 200-0115 |
| E-mail: | jrl@littlelawtexas.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 9, 2021, at San Diego, California.

_____
Nicole Lautzenheiser

PROOF OF SERVICE

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:20-cv-00783-RP |
| CLINICAL PATHOLOGY LABORATORIES, INC., et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records for Aon Risk Services Southwest, Inc.
5555 San Felipe Street, Suite 1500, Houston, TX 77056

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A

| Place: Compass Process Servers c/o USA Legal Network 448 W. 19th Street, #151 Houston, TX 77056; (888) 619-7499, (254) 220-4159 | Date and Time: October 11, 2021 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 9, 2021

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |
| | | Jenna A. Fasone |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ Homeland Insurance Company of New York _____, who issues or requests this subpoena, are: John T. Brooks, Cal Bar No. 167793/Jenna A. Fasone, Cal Bar No. 308886, Sheppard, Mullin, Richter & Hampton, LLP; 501 West Broadway, 19th Floor; Tel: 619.338.6500; Email: jbrooks@sheppardmullin.com; jfasone@sheppardmullin.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc. www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-00783-RP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division

Case No. 1:20-cv-00783-RP

## ATTACHMENT A

**Exhibits:**         **1:**      **2016 SHUMPERT LETTER**
                        **2:**      **2016 VERO BULK CLAIM REPORT**

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 45(c) this subpoena calls for documents that are known or available to you, including documents in your custody, possession, or control, and including documents maintained at a home or office, on a remote server, or on any personal or portable computer devices, such as mobile telephones.

2. Each request seeks the requested documents or things in their entirety, including all attachments, as kept in the normal course of business.

3. If any document responsive to these requests is electronically stored, then it must be produced, as single-page TIFF images created from native files (endorsed with bates numbers and the appropriate confidentiality legend, if any), with document text (OCR or extracted from native files to the extent available) in a separate TXT file, with file name corresponding to the file name of the TIFF image, together with the following extracted metadata from the native files: visible email headers; file system metadata to the extent available; and application metadata to the extent available.

4. If any document or thing responsive to these requests has been destroyed, describe its contents, the location of any copies, the date such destruction took place, and the name of the person who ordered or authorized such destruction.

5. This subpoena seeks all responsive documents to the categories outlined below, **EXCEPT** for documents YOU have already provided to HOMELAND as part of YOUR updates concerning the status of the ICC CLAIMS in the 2018 HOMELAND BULK CLAIM REPORT.  Please do not reproduce those documents unless they are part of COMMUNICATIONS (with any PERSON aside from HOMELAND) that are responsive to the requests outlined below.

*__Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DEFINITIONS

1.   The terms "YOU" and "YOUR" refer to Aon PLC, Aon Risk Solutions, Aon
     Risk Services Southwest Inc., Aon Risk Services Central, Inc. and any of
     their related (parent or subsidiary) entities and anyone acting or purporting
     to act on their behalf including, but not limited to, employees, directors,
     officers, agents, insurance agents/brokers, or attorneys, which would include
     but is not limited to, Kathryn Shearman, Abby Bell, Kathryn Meyers, Emma
     Meyer, and Jakob Onken.

2.   The term "DOCUMENT(S)" means any handwriting, typewriting, printing,
     photostating, photograph, photocopy, electronic mail or facsimile, and any
     other "writings and recordings" defined in Rule 1001 of the Federal Rules of
     Evidence as "letters, words, or numbers, or their equivalent, set down by
     handwriting, typewriting, printing, photostating, photographing, magnetic
     impulse, mechanical or electronic recording, or other form of data
     compilation."

3.   The term "COMMUNICATION(S)" means every manner or means of
     disclosure, transfer, or exchange of information, whether oral, electronic, by
     document, or otherwise, or whether face-to-face, in a meeting, by telephone
     mail, electronic mail, internet posting, personal delivery, or otherwise,
     including DOCUMENT(S) which evidence, discuss or reference such
     COMMUNICATION(S).

4.   The term "CONCERNING" means relating to, referring to, describing,
     evidencing or constituting.

5.   The term "PERSON" or "PERSONS" refers to a natural person, corporation,
     association, organization, partnership, firm, business, trust, or public entity.

6.   The term "CPL" means Clinical Pathology Laboratories, Inc. and anyone
     acting or purporting to act on its behalf including, but not limited to,
     employees, directors, officers, agents, insurance agents/brokers, or attorneys
     of CPL or its related (parent or subsidiary) entities, which would include, but
     is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt,

*Homeland Insurance Company of New York v. Clinical Pathologies*
*Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

7.    The term "MEDLAB" means MedLab Pathology and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of MEDLAB or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

8.    The term "SONIC" means Sonic Healthcare Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

9.    The term "SONIC USA" means Sonic Healthcare USA, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC USA or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

10.    The term "SONIC IRELAND" means Sonic Healthcare (Ireland) Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC IRELAND or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

11.    The term "SONIC ENTITIES" refers to CPL, MEDLAB, SONIC, SONIC USA, and SONIC IRELAND.

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

12.   The term "HOMELAND" refers to Homeland Insurance Company of New York and its affiliated companies including any of the OneBeacon entities (e.g., OneBeacon Healthcare Group, OneBeacon Insurance Group LLC, OneBeacon Insurance Group, Ltd., Atlantic Specialty Insurance Co.), and anyone acting on their behalf, including employees, underwriters, claims handlers and attorneys.

13.   The term "VERO" refers to Vero Insurance Limited, AAI Limited ABN 48 005 297 807 trading as Vero Insurance, and their related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of VERO or its related (parent or subsidiary) or affiliated entities.

14.   The term "ZURICH" refers to Zurich American Insurance Company and its related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of ZURICH or its related (parent or subsidiary) or affiliated entities.

15.   The term "BEAZLEY" refers to Beazley Holdings, Inc., Beazley Insurance Company, Beazley America Insurance Company, Inc. and their related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of BEAZLEY or its related (parent or subsidiary) or affiliated entities.

16.   The term "INSURERS" refers to VERO, ZURICH, and BEAZLEY.

17.   The term "GERMER" refers to the law firm Germer PLLC, and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff of GERMER.

18.   The term "WILLIAM FRY" refers to the law firm William Fry LLP, and anyone acting or purporting to act on its behalf including, but not limited to,

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

employees, directors, officers, members, partners, agents, attorneys, or staff
of WILLIAM FRY.

19.  The term "HAYNES BOONE" refers to the law firm Haynes and Boone,
LLP, and anyone acting or purporting to act on its behalf including, but not
limited to, employees, directors, officers, members, partners, agents,
attorneys, or staff  of HAYNES BOONE.

20.  The term "BLM" refers to the law firm Berrymans Lace Mawer LLP (with
trading name BLM) and its affiliate Berrymans Lace Mawer, Ireland, and
anyone acting or purporting to act on their behalf including, but not limited
to, employees, directors, officers, members, partners, agents, attorneys, or
staff  of BLM.

21.  The term "LAW FIRMS" refers to GERMER, WILLIAM FRY, HAYNES
BOONE, and BLM.

22.  The term "NCSS" refers to Ireland's National Cancer Screening Service
established by Ireland's Minister for Health and Children in January 2007
and its successor, Ireland's National Screening Service.

23.  The term "IRISH CERVICALCHECK PROGRAM" refers to Ireland's
NCSS program that provides cervical cancer screening to all women and
people with a cervix aged 25 to 65 who live in Ireland.

24.  The term "CAR PROGRAM" refers to the IRISH CERVICALCHECK
PROGRAM's clinical cancer audit process initiated in or around 2010 as
part of the quality assurance framework of the program wherein an
individual who has developed cancer will have their screening history
reviewed in a systematic way.

25.  The term " ██████ CLAIM" refers to the ICC CLAIM made by, on behalf
of, and/or by relatives of, ████████████ .

26.  The term " ██████ CLAIM" refers to the ICC CLAIM made by, on behalf
of, and/or by relatives of, ████████████ .

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

27.   The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████.

28.   The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████████.

29.   The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████.

30.   The term "ICC CLAIM(S)" refers to the actual, potential and/or threatened claim(s) relating to the IRISH CERVICALCHECK PROGRAM brought or made against the SONIC ENTITIES, including but not limited to, the O'BRIEN CLAIM, the PHELAN CLAIM, the CURTIS CLAIM, the GAVIGAN CLAIM, and the SWIFT CLAIM.

31.   The term "2016 SHUMPERT LETTER" refers to the letter from Stephen R. Shumpert, then-President of CPL, addressed to OneBeacon Insurance Group, that is dated July 27, 2016, attached hereto as **EXHIBIT 1,** including any drafts of that letter.

32.   The term "2016-17 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0616 (the "2016-17 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0616 (the "2016-17 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2016 to June 30, 2017.

33.   The term "2017-18 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0617 (the "2017-18 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0617 (the "2017-18 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2017 to June 30, 2018.

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

34.   The term "WORLDWIDE TERRITORY ENDORSEMENT" refers to Endorsement No. 12 to the 2016-17 PRIMARY POLICY and No. 13 to the 2017-18 PRIMARY POLICY.

35.   The term "RATE STABILIZATION ENDORSEMENT" refers to Endorsement No. 11 to the 2016-17 PRIMARY POLICY and Nos. 12 and 15 to the 2017-18 PRIMARY POLICY.

36.   The term "ADDITIONAL NAMED INSURED ENDORSEMENT" refers to Endorsement Nos. 5 and 15 to the 2016-17 PRIMARY POLICY and Nos. 3, 22 and 24 to the 2017-18 PRIMARY POLICY.

37.   The term "PRIOR KNOWLEDGE ENDORSEMENT" refers to Endorsement No. 2 to the 2016-17 PRIMARY POLICY and Nos. 1 and 19 to the 2017-18 PRIMARY POLICY.

38.   The term "2016 VERO BULK CLAIM REPORT" refers to the March 23, 2016 email string attached hereto as **EXHIBIT 2** including that email's attached spreadsheet with information concerning 58 patients noticed to VERO by MEDLAB.

39.   The term "MEDLAB PATHOLOGY INCIDENT REPORT" refers to the MedLab Pathology Incident Report from February 26, 2016 as discussed in the March 17, 2016 email attached hereto in **EXHIBIT 2**, including any updates to that report.

40.   The term "2018 HOMELAND BULK CLAIM REPORT" refers to the May 15, 2018 bulk notice to HOMELAND by CPL and/or the SONIC ENTITIES concerning certain ICC CLAIMS.

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DOCUMENTS TO BE PRODUCED

1.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the IRISH CERVICALCHECK PROGRAM.

2.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS), CONCERNING the CAR PROGRAM.

3.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, and the LAW FIRMS) CONCERNING the NCSS.

4.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING insurance coverage for the ICC CLAIMS.

5.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ICC CLAIMS (including but not limited to the noticing or tendering of any ICC CLAIMS to the INSURERS).

6.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 SHUMPERT LETTER (including but not limited to, the procurement of the 2016 SHUMPERT LETTER and any drafts of the same).

7.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON, (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016-

***Homeland Insurance Company of New York v. Clinical Pathologies***
***Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

2017 POLICIES (including but not limited to, the procurement of the 2016-2017 POLICIES).

8.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2017-2018 POLICIES (including but not limited to, the procurement of the 2017-2018 POLICIES).

9.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the WORLDWIDE TERRITORY ENDORSEMENT (including but not limited to, the procurement of the WORLDWIDE TERRITORY ENDORSEMENT).

10.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the RATE STABILIZATION ENDORSEMENT (including but not limited to, the procurement of the RATE STABILIZATION ENDORSEMENT).

11.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ADDITIONAL NAMED INSURED ENDORSEMENT (including but not limited to, the procurement of the ADDITIONAL NAMED INSURED ENDORSEMENT).

12.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the PRIOR KNOWLEDGE ENDORSEMENT (including but not limited to, the procurement of the PRIOR KNOWLEDGE ENDORSEMENT).

13.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the

*Homeland Insurance Company of New York v. Clinical Pathologies*
*Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the Prior Notice Exclusion (D)2 in the 2016-2017 POLICIES and the 2017-2018 POLICIES .

14.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING Condition (R) Representation; Incorporation of Application, in the 2016-2017 POLICIES and the 2017-2018 POLICIES.

15.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 VERO BULK CLAIM REPORT.

16.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the MEDLAB PATHOLOGY INCIDENT REPORT.

17.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2018 HOMELAND BULK CLAIM REPORT, except for DOCUMENTS that YOU have already provided to HOMELAND.

18.  All COMMUNICATIONS between YOU and HOMELAND CONCERNING the 2016 SHUMPERT LETTER, the WORLDWIDE TERRITORY ENDORSEMENT, the RATE STABILIZATION ENDORSEMENT, the ADDITIONAL NAMED INSURED ENDORSEMENT, or procurement of insurance coverage for the ICC CLAIMS.

19.  All DOCUMENTS (including, but not limited to, COMMUNICATIONS between or among YOU and any of the SONIC ENTITIES) discussing the possibility that specific persons, or persons in general, might bring claims

**_Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al._**

United States District Court, Western District of Texas – Austin Division

Case No. 1:20-cv-00783-RP

against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM.

20. The earliest COMMUNICATION between or among YOU and any of the SONIC ENTITIES discussing the possibility that specific persons, or persons in general, might bring claims against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM subsequent to the O'BRIEN CLAIM.

SMRH:4851-4802-7636.1

# EXHIBIT 1



July 27, 2016

OneBeacon Insurance Group
Plymouth, MN

The undersigned, on behalf of Sonic and any person proposed for coverage (the insureds) does hereby represent to OneBeacon Insurance and its writing company that:

The insureds, after diligent inquiry, are not aware of any claims against the insured(s) or any fact, circumstance, situation, transaction, event, act, error, or omission that may give rise to a claim against the insured(s) Sonic Healthcare (Ireland) Limited, Medlab Pathology, and CPL of Austin as respect the cervical cytology laboratory screening services conducted between 8/1/2010 to 6/30/2013 and all claims and facts, circumstances, situations, transactions, events, acts, errors, or omissions against the insured(s) that may result in a claim have been reported to prior insurance carrier(s).

OneBeacon Insurance and its writing company will be issuing its policy in reliance upon the conditions and statements made in this letter and the application both of which will be deemed to be a part of the policy.

Sincerely,

Stephen R. Shumpert
President

# EXHIBIT 2

**From:** Kathryn Shearman [mailto:kathryn.shearman@aon.com]
**Sent:** Wednesday, 23 March 2016 10:45 AM
**To:** AUNG, Jamilar
**Subject:** Sonic - Dublin- MedLab Pathology - Incident Report Update

Dear Jamilar,

Thank you for your email in respect to Salvos matter – still don't recognise it- will send separate  email about it.

I hope you are feeling better – at least Easter is  around the corner so hopefully you will be able to have a proper rest.

I refer to the email attached below  in respect to the Cancer Audit at MedLab Pathology.

As you may recall the first notification regarding the audit  was in respect to **Michelle Curtis – your reference E002066374.**

Attached above are the details of the other patients . The attachment in encrypted and I will forward you password in separate email shorlty

I am not sure whether or not you will need to generate a separate reference for these matters however as discussed previously I would like the same claims person to deal with all notifications in respect to the audit hereon.

I look forward to hearing from you in this regard as soon as you are able as there are further emails to forward.

I look forward to hearing from you,

Kind regards,

Kathryn

**Kathryn Shearman** | **Senior Claims Consultant**
**Aon Risk Solutions** | BA LLB
201 Kent Street Sydney NSW 2000
t +61 9253 8406 | f +61 9253 7128
kathryn.shearman@aon.com | aon.com.au

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

**From:** Lisa Clarke [mailto:lisa.clarke@medlabpathology.ie]
**Sent:** Thursday, 17 March 2016 2:50 AM
**To:** Kathryn Shearman
**Cc:** gordon.young@sonichealthcare.com.au; insurance@sonichealthcare.com
**Subject:** MedLab Pathology - Incident Report Update

Good Afternoon,

Following on from the MedLab Pathology Incident Report on the 26 Feb 2016 regarding the change in process for cancer audits we would like to bring the attached to your attention.

The cancer audit review process started in 2012, following on from the change in process communicated to MLP in Feb 2016, we have reviewed all patients involved in the cancer audits to date.

The attached list contains 58 patients where on review during the cancer audit the management of the patient changed from the original report. As the attached list contains patient demographics we have encrypted it with a password which I will send in a separate mail.

The attached information includes the patient details, the original result date and the change to the result on review.

We are seeking information from our client (NSS) on any cases from the attached list that have been communicated to the treating clinician.

We will update you on any further developments on this.

If you require any further information, please do not hesitate to contact me

Thanks

Lisa

**Lisa Clarke**
**Quality Assurance Manager**
**MedLab Pathology**
**Unit 3, Sandyford Business Centre,**
**Sandyford Business Park,**

**Dublin 18.**

**Tel:** +353 (1) 293 3690 **Fax:** +353 (1) 293 3671

www.medlabpathology.ie

This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy or take any action in reliance on it.

This e-mail is confidential to the intended recipient. It is sent subject to the terms and conditions of business of Medlab Pathology Limited ("MLP") (a copy of which can be obtained on request from us). If you are not the intended recipient (a) you must not disclose, copy or distribute its contents to any other person nor use its contents in any way (b) please contact us immediately on 020 7307 7321 and delete the e-mail from your system.

By their very nature, e-mail systems and the internet are inherently

insecure systems. Whilst MLP uses all reasonable care and skill in compiling e-mails and (other than by encrypting) in preserving the integrity and confidentiality of it during transit to recipients, MLP makes no warranty as to the safe transmission (confidentiality and free from interception and/or alteration and/or corruption) and receipt of this e-mail and/or information it contains and MLP does not accept liability for any errors or omissions in this e-mail and/or information arising in transmission and/or following receipt.

The content of this message, or opinions expressed within are those of the writer and are not necessarily agreed with by MLP.

_____

This email from the Medlabs network has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.symanteccloud.com
_____

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Nov-12 | ZA074711 | | 3/6/1945 | 02/09/2010 | P3a | P6 | Sparse dyskaryosis, atrophy | 1487914 | |
| 2 | Nov-12 | ZB510111 | | 2/27/1986 | 08/07/2011 | P3a | P3b | Sparse dyskaryosis | 140221 | |
| 3 | Nov-12 | ZA191931 | | 5/16/1957 | 28/09/2010 | P3a | P7 | Microbiopsies, atrophy | 490137 | |
| 4 | Jan-13 | ZB487864 | | 2/29/1976 | 02/07/2011 | P2 | P6 | Other (misinterpretation/did not see abnormality -HCGs) | 366574 | |
| 5 | Jan-13 | ZA387260 | | 6/7/1975 | 11/11/2010 | P4 | P7 | Did not interpret the degree of abnormality correctly.  Did not see the HSIL + | 474337 | |
| 6 | Jan-13 | ZA437890 | | 5/22/1982 | 23/11/2010 | P3a | P7 | Other (misinterpretation) | 569917 | |
| 7 | Jan-13 | ZA107400 | | 11/30/1954 | 09/09/2010 | P2 | P6 | Other (small cells) | 744402 | |
| 8 | Jan-13 | ZA269865 | | 5/20/1971 | 16/10/2010 | P4 | P6 | Other (misinterpreted the small cells-scanty small cell dyskaryosis) | 1488236 | |
| 9 | Feb-13 | ZA326872 | | 7/14/1965 | 28/10/2010 | P3a | P6 | Small cell and Microbiopsies | 334419 | |
| | | ZB801182 | | 7/14/1965 | 31/09/2011 | P1 | P6 | Scanty/blood +/Missed groups of cells | | |
| 10 | Feb-13 | ZA489303 | | 9/9/1973 | 02/12/2010 | P4 | P6 | Missed groups/microbiopsies in backgroun | 1029513 | |
| 11 | Feb-13 | ZB539325 | | 2/9/1978 | 14/07/2011 | P4 | P6 | Cytolysis/Misinterretation of cell type | 449107 | |
| 12 | Feb-13 | ZB706791 | | 4/1/1942 | 19/08/2011 | P2 | P9 | Attrophy/Necrotic scanty smear | 1531258 | |
| 13 | Jul-13 | ZB469374 | | 10/5/1980 | 29/06/2011 | P4 | P6 | HCGs and single cells | 600721 | |
| | | ZA202543 | | 10/5/1980 | 01/10/2010 | P4 | P7 | Single cells and HCGs | | |
| 14 | Jul-13 | ZC733064 | | 9/22/1974 | 18/04/2012 | P3a | P9 | Misinterpretation | 8373 | |
| 15 | Jul-13 | ZC815517 | | 8/26/1958 | 03/05/2010 | P2 | P8a | Very scanty abnormality | 273734 | |
| 16 | Jul-13 | ZA073268 | | 6/25/1984 | 31/08/2010 | P2 | P6 & P8b | HCGs | 1369695 | |
| 17 | Jul-13 | ZA732933 | | 11/25/1967 | 20/01/2011 | P2 | P6 & P8b | Misinterpretation of cell groups | 552674 | |
| 18 | Jul-13 | ZA697576 | | 10/31/1956 | 14/01/2011 | P2 | P3b | Scanty abnormality single cells and severe inflammation | 1384308 | |
| 19 | Jul-13 | CA021680 | | 3/3/1977 | 22/06/2012 | P2 | P9 | Misinterpretation of cell groups | 345946 | |
| 20 | Sep-14 | CA082813 | | 1/9/1975 | 19/01/2013 | P1 | P6 | Other = misnterpretation due to GAA effect | 481230 | |
| 21 | Sep-14 | ZB506960 | | 8/20/1968 | 05/07/2011 | P2 | P6 and P8b | Other- Miss | 376388 | |
| | | ZA672737 | | 8/20/1968 | 13/01/2011 | P3a | P9 | Other- Miss and Misinterpreation | | |
| | | ZC373881 | | 8/20/1968 | 25/01/2012 | P2 | P3b | Other - Miss | | |
| 22 | Sep-14 | ZC626734 | | 5/19/1953 | 28/03/2012 | P2 | P7 | Other- Miss | 287248 | |
| 23 | Sep-14 | ZA819534 | | 9/17/1979 | 09/02/2011 | P3a | P6 | Other- Miss | 843046 | |
| 24 | Sep-14 | ZA370441 | | 6/9/1954 | 06/11/2010 | P2 | P8a | Other- Miss | 433139 | |
| 25 | Sep-14 | CA050388 | | 12/4/1955 | 12/10/2012 | P2 | P9 | Other - Sparse | 100030 | |
| 26 | Sep-14 | ZA128802 | | 6/22/1979 | 16/09/2010 | P2 | P6 | Other- Miss | 1219233 | |

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | Sep-14 | ZA101415 | | 6/20/1964 | 09/09/2010 | P2 | P3b | Sparse number of cells | 1167859 | |
| 28 | Sep-14 | ZD157180 | | 5/20/1986 | 20/09/2012 | P2 | P7 | Other- Miss | 1560410 | |
| | | ZC443494 | | 5/20/1986 | 23/02/2012 | P3a | P6 | Other- Miss and Misinterpreation | | |
| 29 | Sep-14 | CA075586 | | 7/11/1974 | 25/12/2012 | P2 | P8a | Sparse (1 dot only) | 1262285 | |
| 30 | Sep-14 | CA450345 | | 9/24/1984 | 22/02/2012 | P4 | P6 | Other - Miss | 1560596 | |
| 31 | Sep-14 | ZC516732 | | 4/21/1978 | 03/03/2012 | P2 | P6 and P8a | Other - Miss | 659910 | |
| 32 | Sep-14 | ZA538551 | | 12/11/1981 | 11/12/2010 | P2 | P6 and P9 | Other - Miss | 1083932 | |
| 33 | Sep-14 | ZD308103 | | 5/15/1968 | 27/06/2013 | P4 | P7 | Other- Misinterpreation | 809460 | |
| 34 | Sep-14 | ZC928931 | | 8/26/1957 | 09/06/2012 | p2 | P6 | Other - Miss | 42345 | |
| 35 | Feb-15 | ZB551268 | | 2/9/1973 | 13/07/2011 | P2 | P6 | Miss | 185600 | |
| | | ZD150008 | | 2/9/1973 | 12/09/2012 | P3a | P6 | Miss/Misinterpretation | | |
| 36 | Feb-15 | ZC710462 | | 11/20/1981 | 11/04/2012 | P2 | P6 | Miss/Misinterpretation | 542087 | |
| 37 | Jun-15 | ZC611141 | | 8/1/1973 | 22/03/2012 | P2 | P3a | Misinterpreation | 172244 | |
| 38 | Jul-15 | CA181156 | | 7/23/1975 | 03/08/2013 | P2 | P4 | Scanty | 165911 | |
| 39 | Jul-15 | CA294460 | | 10/17/1951 | 10/05/2014 | P4 | P6 | Atrophy | 404399 | |
| | | ZB411651 | | 10/17/1951 | 09/06/2011 | P2 | P3a | Scant | | |
| 40 | Jul-15 | ZC564641 | | 8/19/1983 | 15/03/2012 | P3a | P6 | Misinterpretation | 351284 | |
| 41 | Oct-15 | CA165790 | | 2/8/1966 | 12/07/2013 | P2 | P6 | GAA effect/Misinterpretation | 531343 | |
| 42 | Oct-15 | ZC357968 | | 7/18/1976 | 18/01/2012 | P2 | P6 | Miss/Misinterpretation | 283857 | |
| 43 | Oct-15 | ZC851219 | | 8/16/1975 | 16/05/2012 | P2 | P6 | Single, small cells | 352124 | |
| 44 | Oct-15 | CA080858 | | 8/16/1986 | 12/01/2013 | P4 | P5 | | 1556957 | |
| 45 | Jan-16 | ZA737312 | | 2/25/1974 | 21/01/2011 | P2 | P6 | Miss | 363203 | |
| | | CA003281 | | 2/25/1974 | 17/02/2012 | P2 | P3b | Scant | | |
| | | CA077060 | | 2/25/1974 | 01/01/2013 | P2 | P3b | Scant/degenerate | | |
| | | CA250704 | | 2/25/1974 | 24/01/2014 | P2 | P3a | Scant | | |
| 46 | Jan-16 | CA384357 | | 3/10/1983 | 07/02/2015 | P2 | P3b | GAA effect/Misinterpretation | 1794934 | |
| 47 | Jan-16 | CA463822 | | 3/3/1982 | 16/09/2015 | P2 | P9 | Misinterpreation | 440083 | |
| 48 | Jan-16 | ZD242244 | | 11/15/1977 | 16/11/2012 | P2 | P7 | Miss | 102460 | |
| 49 | Nov-14 | CA041329 | | 6/29/1981 | 11/09/2012 | P2 | P3a Vs P8a | Very scanty | 91509 | |
| 50 | Nov-14 | ZB074621 | | 8/7/1970 | 30/03/2011 | P2 | P8a | Other - Miss | 372969 | |
| | | CA264398 | | 8/7/1970 | 21/02/2014 | P2 | P3a | Other - poor quality scanty cellular material | | |
| 51 | Nov-14 | ZA322603 | | 11/15/1975 | 28/10/2012 | P2 | P6 | Other - miss | 536829 | |
| | | CA177717 | | 11/15/1975 | 30/07/2013 | P2 | P7 | Other - Misinterpretion | | |
| 52 | Nov-14 | CA012241 | | 4/6/1980 | 01/05/2012 | P3a | P3b | Other - Misinterpretation and scanty amount | 568688 | |
| | | CA089809 | | 4/6/1980 | 05/02/2013 | P3a | P3b | Very scant amount of cells | | |
| 53 | Nov-14 | ZB740720 | | 7/8/1974 | 30/08/2011 | P2 | P6 | Other - Miss | 1184682 | |
| 54 | Nov-14 | CA236401 | | 5/7/1966 | 05/12/2013 | P2 | P9 | Other - GAA effect and miss | 1379031 | |

| | Cancer Audit | Episode | | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 54 | Nov-14 | CA144270 | ███████ | 5/7/1966 | 05/06/2013 | P1 | P8b | poor quality smear and miss | 1379031 | |
| 55 | Nov-14 | ZA534982 | ███ | 4/3/1977 | 11/12/2010 | P2 | P6 | Other - Miss | 1380034 | |
| 56 | Nov-14 | ZD127636 | ███ | 5/6/1974 | 17/08/2012 | P4 | P5 | Other - Miss | 1188354 | |
| 57 | Nov-14 | ZB438556 | ███ | 10/28/1974 | 16/06/2011 | P2 | P7 | Other - Miss | 1238520 | |
| 58 | Nov-14 | ZB188275 | ███ | 9/24/1963 | 27/04/2011 | P2 | P5 | Other - Scanty cellular material & miss | 1520098 | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>              Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>              Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

## PROOF OF SERVICE

I, the undersigned, declare under penalty of perjury that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, State of California, in which county the within-mentioned service occurred.  My business address is 501 West Broadway, 19th Floor, San Diego, California 92101.

On September 9, 2021, I served a copy of the following document(s):

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO THE CUSTODIAN OF RECORDS FOR AON RISK SERVICES SOUTHWEST, INC. (HOUSTON, TX)**

☒    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from nlautzenheiser@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List.  The document(s) were transmitted and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒    **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same day that the

correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Mark T. Beaman
Ryan Bueche
GERMER BEAMAN & BROWN PLLC
One Barton Skyway
1501 S. Mopac Expy, Suite A400
Austin, TX 78746

***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited***

| | |
|---|---|
| Telephone: | (512) 472-0667 |
| Facsimile: | (512) 472-0721 |
| E-mail: | mbeaman@germer-austin.com |
| | gjohnson@germer-austin.com |
| | pross@germer-austin.com |

Ernest Martin, Jr.
Gregory E. Van Houten
S. Benjamin Schindler
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219

***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited***

| | |
|---|---|
| Telephone: | (214) 651-5000 |
| Facsimile: | (214) 200-0519 |
| E-mail: | ernest.martin@haynesboone.com |
| | mae.maddran@haynesboone.com |
| | greg.vanhouten@haynesboone.com |
| | s.benjamin.schindler@haynesboone.com |
| | Patricia.Zerwas@haynesboone.com |

Joseph R. Little
The Little Law Firm
440 Louisiana Street, Suite 900
Houston, Texas 77002

***Attorneys for Plaintiff and Counter Defendant Homeland Insurance Company of New York***

| | |
|---|---|
| Telephone: | (713) 222-1368 |
| Facsimile: | (281) 200-0115 |
| E-mail: | jrl@littlelawtexas.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 9, 2021, at San Diego, California.

_____
Nicole Lautzenheiser

PROOF OF SERVICE

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the
WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK | ) |
| *Plaintiff* | ) |
| v. | ) |
| CLINICAL PATHOLOGY LABORATORIES, INC., et al. | ) |
| *Defendant* | ) |

Civil Action No. 1:20-cv-00783-RP

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records for Aon Risk Services Southwest, Inc.
    2711 N Haskell Avenue, Suite 800, Dallas, TX 75204-2932

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A

| | |
|---|---|
| Place: Compass Process Servers c/o USA Legal Network 448 W. 19th Street, #151 Houston, TX 77008; (888) 619-7499; (254) 220-4159 | Date and Time: October 11, 2021 at 10:00 a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 9, 2021

| | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |
| | | Jenna A. Fasone |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Homeland Insurance Company of New York _____ , who issues or requests this subpoena, are:
John T. Brooks, Cal Bar No. 167793/Jenna A. Fasone, Cal Bar No. 308886, Sheppard, Mullin, Richter & Hampton, LLP;
501 West Broadway, 19th Floor; Tel: 619.338.6500; Email: jbrooks@sheppardmullin.com; jfasone@sheppardmullin.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-00783-RP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:



American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## ATTACHMENT A

**Exhibits:**          **1:**     **2016 SHUMPERT LETTER**
                       **2:**     **2016 VERO BULK CLAIM REPORT**

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 45(c) this subpoena calls for documents that are known or available to you, including documents in your custody, possession, or control, and including documents maintained at a home or office, on a remote server, or on any personal or portable computer devices, such as mobile telephones.

2. Each request seeks the requested documents or things in their entirety, including all attachments, as kept in the normal course of business.

3. If any document responsive to these requests is electronically stored, then it must be produced, as single-page TIFF images created from native files (endorsed with bates numbers and the appropriate confidentiality legend, if any), with document text (OCR or extracted from native files to the extent available) in a separate TXT file, with file name corresponding to the file name of the TIFF image, together with the following extracted metadata from the native files: visible email headers; file system metadata to the extent available; and application metadata to the extent available.

4. If any document or thing responsive to these requests has been destroyed, describe its contents, the location of any copies, the date such destruction took place, and the name of the person who ordered or authorized such destruction.

5. This subpoena seeks all responsive documents to the categories outlined below, **EXCEPT** for documents YOU have already provided to HOMELAND as part of YOUR updates concerning the status of the ICC CLAIMS in the 2018 HOMELAND BULK CLAIM REPORT.  Please do not reproduce those documents unless they are part of COMMUNICATIONS (with any PERSON aside from HOMELAND) that are responsive to the requests outlined below.

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DEFINITIONS

1.    The terms "YOU" and "YOUR" refer to Aon PLC, Aon Risk Solutions, Aon Risk Services Southwest Inc., Aon Risk Services Central, Inc. and any of their related (parent or subsidiary) entities and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys, which would include but is not limited to, Kathryn Shearman, Abby Bell, Kathryn Meyers, Emma Meyer, and Jakob Onken.

2.    The term "DOCUMENT(S)" means any handwriting, typewriting, printing, photostating, photograph, photocopy, electronic mail or facsimile, and any other "writings and recordings" defined in Rule 1001 of the Federal Rules of Evidence as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."

3.    The term "COMMUNICATION(S)" means every manner or means of disclosure, transfer, or exchange of information, whether oral, electronic, by document, or otherwise, or whether face-to-face, in a meeting, by telephone mail, electronic mail, internet posting, personal delivery, or otherwise, including DOCUMENT(S) which evidence, discuss or reference such COMMUNICATION(S).

4.    The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

5.    The term "PERSON" or "PERSONS" refers to a natural person, corporation, association, organization, partnership, firm, business, trust, or public entity.

6.    The term "CPL" means Clinical Pathology Laboratories, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of CPL or its related (parent or subsidiary) entities, which would include, but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt,

*Homeland Insurance Company of New York v. Clinical Pathologies*
*Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

7. The term "MEDLAB" means MedLab Pathology and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of MEDLAB or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

8. The term "SONIC" means Sonic Healthcare Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

9. The term "SONIC USA" means Sonic Healthcare USA, Inc. and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC USA or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

10. The term "SONIC IRELAND" means Sonic Healthcare (Ireland) Limited and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of SONIC IRELAND or its related (parent or subsidiary) entities, which would include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and Sheridan Foster.

11. The term "SONIC ENTITIES" refers to CPL, MEDLAB, SONIC, SONIC USA, and SONIC IRELAND.

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

12.    The term "HOMELAND" refers to Homeland Insurance Company of New York and its affiliated companies including any of the OneBeacon entities (e.g., OneBeacon Healthcare Group, OneBeacon Insurance Group LLC, OneBeacon Insurance Group, Ltd., Atlantic Specialty Insurance Co.), and anyone acting on their behalf, including employees, underwriters, claims handlers and attorneys.

13.    The term "VERO" refers to Vero Insurance Limited, AAI Limited ABN 48 005 297 807 trading as Vero Insurance, and their related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of VERO or its related (parent or subsidiary) or affiliated entities.

14.    The term "ZURICH" refers to Zurich American Insurance Company and its related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of ZURICH or its related (parent or subsidiary) or affiliated entities.

15.    The term "BEAZLEY" refers to Beazley Holdings, Inc., Beazley Insurance Company, Beazley America Insurance Company, Inc. and their related (parent or subsidiary) or affiliated entities, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, agents, insurance agents/brokers, or attorneys of BEAZLEY or its related (parent or subsidiary) or affiliated entities.

16.    The term "INSURERS" refers to VERO, ZURICH, and BEAZLEY.

17.    The term "GERMER" refers to the law firm Germer PLLC, and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff of GERMER.

18.    The term "WILLIAM FRY" refers to the law firm William Fry LLP, and anyone acting or purporting to act on its behalf including, but not limited to,

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

employees, directors, officers, members, partners, agents, attorneys, or staff
of WILLIAM FRY.

19.     The term "HAYNES BOONE" refers to the law firm Haynes and Boone,
        LLP, and anyone acting or purporting to act on its behalf including, but not
        limited to, employees, directors, officers, members, partners, agents,
        attorneys, or staff  of HAYNES BOONE.

20.     The term "BLM" refers to the law firm Berrymans Lace Mawer LLP (with
        trading name BLM) and its affiliate Berrymans Lace Mawer, Ireland, and
        anyone acting or purporting to act on their behalf including, but not limited
        to, employees, directors, officers, members, partners, agents, attorneys, or
        staff  of BLM.

21.     The term "LAW FIRMS" refers to GERMER, WILLIAM FRY, HAYNES
        BOONE, and BLM.

22.     The term "NCSS" refers to Ireland's National Cancer Screening Service
        established by Ireland's Minister for Health and Children in January 2007
        and its successor, Ireland's National Screening Service.

23.     The term "IRISH CERVICALCHECK PROGRAM" refers to Ireland's
        NCSS program that provides cervical cancer screening to all women and
        people with a cervix aged 25 to 65 who live in Ireland.

24.     The term "CAR PROGRAM" refers to the IRISH CERVICALCHECK
        PROGRAM's clinical cancer audit process initiated in or around 2010 as
        part of the quality assurance framework of the program wherein an
        individual who has developed cancer will have their screening history
        reviewed in a systematic way.

25.     The term "███████ CLAIM" refers to the ICC CLAIM made by, on behalf
        of, and/or by relatives of, ███████████ .

26.     The term "███████ CLAIM" refers to the ICC CLAIM made by, on behalf
        of, and/or by relatives of, ███████████ .

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

27.   The term "███████CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ██████████ .

28.   The term "█████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ██████████████ .

29.   The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, █████████ .

30.   The term "ICC CLAIM(S)" refers to the actual, potential and/or threatened claim(s) relating to the IRISH CERVICALCHECK PROGRAM brought or made against the SONIC ENTITIES, including but not limited to, the O'BRIEN CLAIM, the PHELAN CLAIM, the CURTIS CLAIM, the GAVIGAN CLAIM, and the SWIFT CLAIM.

31.   The term "2016 SHUMPERT LETTER" refers to the letter from Stephen R. Shumpert, then-President of CPL, addressed to OneBeacon Insurance Group, that is dated July 27, 2016, attached hereto as **EXHIBIT 1,** including any drafts of that letter.

32.   The term "2016-17 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0616 (the "2016-17 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0616 (the "2016-17 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2016 to June 30, 2017.

33.   The term "2017-18 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0617 (the "2017-18 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0617 (the "2017-18 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2017 to June 30, 2018.

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

34.  The term "WORLDWIDE TERRITORY ENDORSEMENT" refers to Endorsement No. 12 to the 2016-17 PRIMARY POLICY and No. 13 to the 2017-18 PRIMARY POLICY.

35.  The term "RATE STABILIZATION ENDORSEMENT" refers to Endorsement No. 11 to the 2016-17 PRIMARY POLICY and Nos. 12 and 15 to the 2017-18 PRIMARY POLICY.

36.  The term "ADDITIONAL NAMED INSURED ENDORSEMENT" refers to Endorsement Nos. 5 and 15 to the 2016-17 PRIMARY POLICY and Nos. 3, 22 and 24 to the 2017-18 PRIMARY POLICY.

37.  The term "PRIOR KNOWLEDGE ENDORSEMENT" refers to Endorsement No. 2 to the 2016-17 PRIMARY POLICY and Nos. 1 and 19 to the 2017-18 PRIMARY POLICY.

38.  The term "2016 VERO BULK CLAIM REPORT" refers to the March 23, 2016 email string attached hereto as **EXHIBIT 2** including that email's attached spreadsheet with information concerning 58 patients noticed to VERO by MEDLAB.

39.  The term "MEDLAB PATHOLOGY INCIDENT REPORT" refers to the MedLab Pathology Incident Report from February 26, 2016 as discussed in the March 17, 2016 email attached hereto in **EXHIBIT 2**, including any updates to that report.

40.  The term "2018 HOMELAND BULK CLAIM REPORT" refers to the May 15, 2018 bulk notice to HOMELAND by CPL and/or the SONIC ENTITIES concerning certain ICC CLAIMS.

*__Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DOCUMENTS TO BE PRODUCED

1.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the IRISH CERVICALCHECK PROGRAM.

2.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS), CONCERNING the CAR PROGRAM.

3.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, and the LAW FIRMS) CONCERNING the NCSS.

4.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING insurance coverage for the ICC CLAIMS.

5.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ICC CLAIMS (including but not limited to the noticing or tendering of any ICC CLAIMS to the INSURERS).

6.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 SHUMPERT LETTER (including but not limited to, the procurement of the 2016 SHUMPERT LETTER and any drafts of the same).

7.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON, (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016-

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

2017 POLICIES (including but not limited to, the procurement of the 2016-2017 POLICIES).

8.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2017-2018 POLICIES (including but not limited to, the procurement of the 2017-2018 POLICIES).

9.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the WORLDWIDE TERRITORY ENDORSEMENT (including but not limited to, the procurement of the WORLDWIDE TERRITORY ENDORSEMENT).

10.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the RATE STABILIZATION ENDORSEMENT (including but not limited to, the procurement of the RATE STABILIZATION ENDORSEMENT).

11.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ADDITIONAL NAMED INSURED ENDORSEMENT (including but not limited to, the procurement of the ADDITIONAL NAMED INSURED ENDORSEMENT).

12.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the PRIOR KNOWLEDGE ENDORSEMENT (including but not limited to, the procurement of the PRIOR KNOWLEDGE ENDORSEMENT).

13.   All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the Prior Notice Exclusion (D)2 in the 2016-2017 POLICIES and the 2017-2018 POLICIES .

14. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING Condition (R) Representation; Incorporation of Application, in the 2016-2017 POLICIES and the 2017-2018 POLICIES.

15. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 VERO BULK CLAIM REPORT.

16. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the MEDLAB PATHOLOGY INCIDENT REPORT.

17. All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2018 HOMELAND BULK CLAIM REPORT, except for DOCUMENTS that YOU have already provided to HOMELAND.

18. All COMMUNICATIONS between YOU and HOMELAND CONCERNING the 2016 SHUMPERT LETTER, the WORLDWIDE TERRITORY ENDORSEMENT, the RATE STABILIZATION ENDORSEMENT, the ADDITIONAL NAMED INSURED ENDORSEMENT, or procurement of insurance coverage for the ICC CLAIMS.

19. All DOCUMENTS (including, but not limited to, COMMUNICATIONS between or among YOU and any of the SONIC ENTITIES) discussing the possibility that specific persons, or persons in general, might bring claims

SMRH:4851-4802-7636.1

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM.

20.     The earliest COMMUNICATION between or among YOU and any of the SONIC ENTITIES discussing the possibility that specific persons, or persons in general, might bring claims against any of the SONIC ENTITIES related to the IRISH CERVICALCHECK PROGRAM subsequent to the O'BRIEN CLAIM.

SMRH:4851-4802-7636.1

# EXHIBIT 1



July 27, 2016

OneBeacon Insurance Group
Plymouth, MN

The undersigned, on behalf of Sonic and any person proposed for coverage (the insureds)
does hereby represent to OneBeacon Insurance and its writing company that:

The insureds, after diligent inquiry, are not aware of any claims against the insured(s) or
any fact, circumstance, situation, transaction, event, act, error, or omission that may give
rise to a claim against the insured(s) Sonic Healthcare (Ireland) Limited, Medlab
Pathology, and CPL of Austin as respect the cervical cytology laboratory screening
services conducted between 8/1/2010 to 6/30/2013 and all claims and facts,
circumstances, situations, transactions, events, acts, errors, or omissions against the
insured(s) that may result in a claim have been reported to prior insurance carrier(s).

OneBeacon Insurance and its writing company will be issuing its policy in reliance upon
the conditions and statements made in this letter and the application both of which will be
deemed to be a part of the policy.

Sincerely,

Stephen R. Shumpert
President

# EXHIBIT 2

**From:** Kathryn Shearman [mailto:kathryn.shearman@aon.com]
**Sent:** Wednesday, 23 March 2016 10:45 AM
**To:** AUNG, Jamilar
**Subject:** Sonic - Dublin- MedLab Pathology - Incident Report Update

Dear Jamilar,

Thank you for your email in respect to Salvos matter – still don't recognise it- will send separate  email about it.

I hope you are feeling better – at least Easter is  around the corner so hopefully you will be able to have a proper rest.

I refer to the email attached below  in respect to the Cancer Audit at MedLab Pathology.

As you may recall the first notification regarding the audit  was in respect to **Michelle Curtis – your reference E002066374.**

Attached above are the details of the other patients . The attachment in encrypted and I will forward you password in separate email shorlty

I am not sure whether or not you will need to generate a separate reference for these matters however as discussed previously I would like the same claims person to deal with all notifications in respect to the audit hereon.

I look forward to hearing from you in this regard as soon as you are able as there are further emails to forward.

I look forward to hearing from you,

1

Kind regards,

Kathryn

**Kathryn Shearman** | **Senior Claims Consultant**
**Aon Risk Solutions** | BA LLB
201 Kent Street Sydney NSW 2000
t +61 9253 8406 | f +61 9253 7128
kathryn.shearman@aon.com | aon.com.au

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

**From:** Lisa Clarke [mailto:lisa.clarke@medlabpathology.ie]
**Sent:** Thursday, 17 March 2016 2:50 AM
**To:** Kathryn Shearman
**Cc:** gordon.young@sonichealthcare.com.au; insurance@sonichealthcare.com
**Subject:** MedLab Pathology - Incident Report Update

Good Afternoon,

Following on from the MedLab Pathology Incident Report on the 26 Feb 2016 regarding the change in process for cancer audits we would like to bring the attached to your attention.

The cancer audit review process started in 2012, following on from the change in process communicated to MLP in Feb 2016, we have reviewed all patients involved in the cancer audits to date.

The attached list contains 58 patients where on review during the cancer audit the management of the patient changed from the original report. As the attached list contains patient demographics we have encrypted it with a password which I will send in a separate mail.

The attached information includes the patient details, the original result date and the change to the result on review.

We are seeking information from our client (NSS) on any cases from the attached list that have been communicated to the treating clinician.

We will update you on any further developments on this.

If you require any further information, please do not hesitate to contact me

Thanks

Lisa

**Lisa Clarke**
**Quality Assurance Manager**
**MedLab Pathology**
**Unit 3, Sandyford Business Centre,**
**Sandyford Business Park,**

**Dublin 18.**

**Tel:** +353 (1) 293 3690 **Fax:** +353 (1) 293 3671

www.medlabpathology.ie
This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy or take any action in reliance on it.

This e-mail is confidential to the intended recipient. It is sent subject to the terms and conditions of business of Medlab Pathology Limited ("MLP") (a copy of which can be obtained on request from us). If you are not the intended recipient (a) you must not disclose, copy or distribute its contents to any other person nor use its contents in any way (b) please contact us immediately on 020 7307 7321 and delete the e-mail from your system.
By their very nature, e-mail systems and the internet are inherently
insecure systems. Whilst MLP uses all reasonable care and skill in compiling e-mails and (other than by encrypting) in preserving the integrity and confidentiality of it during transit to recipients, MLP makes no warranty as to the safe transmission (confidentiality and free from interception and/or alteration and/or corruption) and receipt of this e-mail and/or information it contains and MLP does not accept liability for any errors or omissions in this e-mail and/or information arising in transmission and/or following receipt.
The content of this message, or opinions expressed within are those of the writer and are not necessarily agreed with by MLP.

_____
This email from the Medlabs network has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.symanteccloud.com
_____

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Nov-12 | ZA074711 | | 3/6/1945 | 02/09/2010 | P3a | P6 | Sparse dyskaryosis, atrophy | 1487914 | |
| 2 | Nov-12 | ZB510111 | | 2/27/1986 | 08/07/2011 | P3a | P3b | Sparse dyskaryosis | 140221 | |
| 3 | Nov-12 | ZA191931 | | 5/16/1957 | 28/09/2010 | P3a | P7 | Microbiopsies, atrophy | 490137 | |
| 4 | Jan-13 | ZB487864 | | 2/29/1976 | 02/07/2011 | P2 | P6 | Other (misinterpretation/did not see abnormality -HCGs) | 366574 | |
| 5 | Jan-13 | ZA387260 | | 6/7/1975 | 11/11/2010 | P4 | P7 | Did not interpret the degree of abnormality correctly.  Did not see the HSIL + | 474337 | |
| 6 | Jan-13 | ZA437890 | | 5/22/1982 | 23/11/2010 | P3a | P7 | Other (misinterpretation) | 569917 | |
| 7 | Jan-13 | ZA107400 | | 11/30/1954 | 09/09/2010 | P2 | P6 | Other (small cells) | 744402 | |
| 8 | Jan-13 | ZA269865 | | 5/20/1971 | 16/10/2010 | P4 | P6 | Other (misinterpreted the small cells-scanty small cell dyskaryosis) | 1488236 | |
| 9 | Feb-13 | ZA326872 | | 7/14/1965 | 28/10/2010 | P3a | P6 | Small cell and Microbiopsies | 334419 | |
| | | ZB801182 | | 7/14/1965 | 31/09/2011 | P1 | P6 | Scanty/blood +/Missed groups of cells | | |
| 10 | Feb-13 | ZA489303 | | 9/9/1973 | 02/12/2010 | P4 | P6 | Missed groups/microbiopsies in backgroun | 1029513 | |
| 11 | Feb-13 | ZB539325 | | 2/9/1978 | 14/07/2011 | P4 | P6 | Cytolysis/Misinterretation of cell type | 449107 | |
| 12 | Feb-13 | ZB706791 | | 4/1/1942 | 19/08/2011 | P2 | P9 | Attrophy/Necrotic scanty smear | 1531258 | |
| 13 | Jul-13 | ZB469374 | | 10/5/1980 | 29/06/2011 | P4 | P6 | HCGs and single cells | 600721 | |
| | | ZA202543 | | 10/5/1980 | 01/10/2010 | P4 | P7 | Single cells and HCGs | | |
| 14 | Jul-13 | ZC733064 | | 9/22/1974 | 18/04/2012 | P3a | P9 | Misinterpretation | 8373 | |
| 15 | Jul-13 | ZC815517 | | 8/26/1958 | 03/05/2010 | P2 | P8a | Very scanty abnormality | 273734 | |
| 16 | Jul-13 | ZA073268 | | 6/25/1984 | 31/08/2010 | P2 | P6 & P8b | HCGs | 1369695 | |
| 17 | Jul-13 | ZA732933 | | 11/25/1967 | 20/01/2011 | P2 | P6 & P8b | Misinterpretation of cell groups | 552674 | |
| 18 | Jul-13 | ZA697576 | | 10/31/1956 | 14/01/2011 | P2 | P3b | Scanty abnormality single cells and severe inflammation | 1384308 | |
| 19 | Jul-13 | CA021680 | | 3/3/1977 | 22/06/2012 | P2 | P9 | Misinterpretation of cell groups | 345946 | |
| 20 | Sep-14 | CA082813 | | 1/9/1975 | 19/01/2013 | P1 | P6 | Other = misnterpretation due to GAA effect | 481230 | |
| 21 | Sep-14 | ZB506960 | | 8/20/1968 | 05/07/2011 | P2 | P6 and P8b | Other- Miss | 376388 | |
| | | ZA672737 | | 8/20/1968 | 13/01/2011 | P3a | P9 | Other- Miss and Misinterpreation | | |
| | | ZC373881 | | 8/20/1968 | 25/01/2012 | P2 | P3b | Other - Miss | | |
| 22 | Sep-14 | ZC626734 | | 5/19/1953 | 28/03/2012 | P2 | P7 | Other- Miss | 287248 | |
| 23 | Sep-14 | ZA819534 | | 9/17/1979 | 09/02/2011 | P3a | P6 | Other- Miss | 843046 | |
| 24 | Sep-14 | ZA370441 | | 6/9/1954 | 06/11/2010 | P2 | P8a | Other- Miss | 433139 | |
| 25 | Sep-14 | CA050388 | | 12/4/1955 | 12/10/2012 | P2 | P9 | Other - Sparse | 100030 | |
| 26 | Sep-14 | ZA128802 | | 6/22/1979 | 16/09/2010 | P2 | P6 | Other- Miss | 1219233 | |

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | Sep-14 | ZA101415 | | 6/20/1964 | 09/09/2010 | P2 | P3b | Sparse number of cells | 1167859 | |
| 28 | Sep-14 | ZD157180 | | 5/20/1986 | 20/09/2012 | P2 | P7 | Other- Miss | 1560410 | |
| | | ZC443494 | | 5/20/1986 | 23/02/2012 | P3a | P6 | Other- Miss and Misinterpreation | | |
| 29 | Sep-14 | CA075586 | | 7/11/1974 | 25/12/2012 | P2 | P8a | Sparse (1 dot only) | 1262285 | |
| 30 | Sep-14 | ZC450345 | | 9/24/1984 | 22/02/2012 | P4 | P6 | Other - Miss | 1560596 | |
| 31 | Sep-14 | ZC516732 | | 4/21/1978 | 03/03/2012 | P2 | P6 and P8a | Other - Miss | 659910 | |
| 32 | Sep-14 | ZA538551 | | 12/11/1981 | 11/12/2010 | P2 | P6 and P9 | Other - Miss | 1083932 | |
| 33 | Sep-14 | ZD308103 | | 5/15/1968 | 27/06/2013 | P4 | P7 | Other- Misinterpreation | 809460 | |
| 34 | Sep-14 | ZC928931 | | 8/26/1957 | 09/06/2012 | p2 | P6 | Other - Miss | 42345 | |
| 35 | Feb-15 | ZB551268 | | 2/9/1973 | 13/07/2011 | P2 | P6 | Miss | 185600 | |
| | | ZD150008 | | 2/9/1973 | 12/09/2012 | P3a | P6 | Miss/Misinterpretation | | |
| 36 | Feb-15 | ZC710462 | | 11/20/1981 | 11/04/2012 | P2 | P6 | Miss/Misinterpretation | 542087 | |
| 37 | Jun-15 | ZC611141 | | 8/1/1973 | 22/03/2012 | P2 | P3a | Misinterpreation | 172244 | |
| 38 | Jul-15 | CA181156 | | 7/23/1975 | 03/08/2013 | P2 | P4 | Scanty | 165911 | |
| 39 | Jul-15 | CA294460 | | 10/17/1951 | 10/05/2014 | P4 | P6 | Atrophy | 404399 | |
| | | ZB411651 | | 10/17/1951 | 09/06/2011 | P2 | P3a | Scant | | |
| 40 | Jul-15 | ZC564641 | | 8/19/1983 | 15/03/2012 | P3a | P6 | Misinterpretation | 351284 | |
| 41 | Oct-15 | CA165790 | | 2/8/1966 | 12/07/2013 | P2 | P6 | GAA effect/Misinterpretation | 531343 | |
| 42 | Oct-15 | ZC357968 | | 7/18/1976 | 18/01/2012 | P2 | P6 | Miss/Misinterpretation | 283857 | |
| 43 | Oct-15 | ZC851219 | | 8/16/1975 | 16/05/2012 | P2 | P6 | Single, small cells | 352124 | |
| 44 | Oct-15 | CA080858 | | 8/16/1986 | 12/01/2013 | P4 | P5 | | 1556957 | |
| 45 | Jan-16 | ZA737312 | | 2/25/1974 | 21/01/2011 | P2 | P6 | Miss | 363203 | |
| | | CA003281 | | 2/25/1974 | 17/02/2012 | P2 | P3b | Scant | | |
| | | CA077060 | | 2/25/1974 | 01/01/2013 | P2 | P3b | Scant/degenerate | | |
| | | CA250704 | | 2/25/1974 | 24/01/2014 | P2 | P3a | Scant | | |
| 46 | Jan-16 | CA384357 | | 3/10/1983 | 07/02/2015 | P2 | P3b | GAA effect/Misinterpretation | 1794934 | |
| 47 | Jan-16 | CA463822 | | 3/3/1982 | 16/09/2015 | P2 | P9 | Misinterpreation | 440083 | |
| 48 | Jan-16 | ZD242244 | | 11/15/1977 | 16/11/2012 | P2 | P7 | Miss | 102460 | |
| 49 | Nov-14 | CA041329 | | 6/29/1981 | 11/09/2012 | P2 | P3a Vs P8a | Very scanty | 91509 | |
| 50 | Nov-14 | ZB074621 | | 8/7/1970 | 30/03/2011 | P2 | P8a | Other - Miss | 372969 | |
| | | CA264398 | | 8/7/1970 | 21/02/2014 | P2 | P3a | Other - poor quality scanty cellular material | | |
| 51 | Nov-14 | ZA322603 | | 11/15/1975 | 28/10/2010 | P2 | P6 | Other - miss | 536829 | |
| | | CA177717 | | 11/15/1975 | 30/07/2013 | P2 | P7 | Other - Misinterpretion | | |
| 52 | Nov-14 | CA012241 | | 4/6/1980 | 01/05/2012 | P3a | P3b | Other - Misinterpretation and scanty amount | 568688 | |
| | | CA089809 | | 4/6/1980 | 05/02/2013 | P3a | P3b | Very scant amount of cells | | |
| 53 | Nov-14 | ZB740720 | | 7/8/1974 | 30/08/2011 | P2 | P6 | Other - Miss | 1184682 | |
| 54 | Nov-14 | CA236401 | | 5/7/1966 | 05/12/2013 | P2 | P9 | Other - GAA effect and miss | 1379031 | |

| | Cancer Audit | Episode | | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 54 | Nov-14 | CA144270 | ███████ | 5/7/1966 | 05/06/2013 | P1 | P8b | poor quality smear and miss | 1370031 | |
| 55 | Nov-14 | ZA534982 | ███ | 4/3/1977 | 11/12/2010 | P2 | P6 | Other - Miss | 1380034 | |
| 56 | Nov-14 | ZD127636 | ██ | 5/6/1974 | 17/08/2012 | P4 | P5 | Other - Miss | 1188354 | |
| 57 | Nov-14 | ZB438556 | ██ | 10/28/1974 | 16/06/2011 | P2 | P7 | Other - Miss | 1238520 | |
| 58 | Nov-14 | ZB188275 | ███ | 9/24/1963 | 27/04/2011 | P2 | P5 | Other - Scanty cellular material & miss | 1520098 | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | CIVIL ACTION NO. 1:20-cv-783 |
| Plaintiff, | |
| v. | |
| CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED. | |
| Defendants. | |

## <u>PROOF OF SERVICE</u>

I, the undersigned, declare under penalty of perjury that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, State of California, in which county the within-mentioned service occurred.  My business address is 501 West Broadway, 19th Floor, San Diego, California 92101.

On September 9, 2021, I served a copy of the following document(s):

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO THE CUSTODIAN OF RECORDS FOR AON RISK SERVICES SOUTHWEST, INC. (DALLAS, TX)**

☒     **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from nlautzenheiser@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List.  The document(s) were transmitted and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒     **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same day that the

correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

| | |
|---|---|
| Mark T. Beaman<br>Ryan Bueche<br>GERMER BEAMAN & BROWN PLLC<br>One Barton Skyway<br>1501 S. Mopac Expy, Suite A400<br>Austin, TX 78746 | ***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited*** |

Telephone:    (512) 472-0667
Facsimile:    (512) 472-0721
E-mail:        mbeaman@germer-austin.com
              gjohnson@germer-austin.com
              pross@germer-austin.com

| | |
|---|---|
| Ernest Martin, Jr.<br>Gregory E. Van Houten<br>S. Benjamin Schindler<br>HAYNES AND BOONE, LLP<br>2323 Victory Avenue, Suite 700<br>Dallas, TX 75219 | ***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited*** |

Telephone:    (214) 651-5000
Facsimile:    (214) 200-0519
E-mail:        ernest.martin@haynesboone.com
              mae.maddran@haynesboone.com
              greg.vanhouten@haynesboone.com
              s.benjamin.schindler@haynesboone.com
              Patricia.Zerwas@haynesboone.com

| | |
|---|---|
| Joseph R. Little<br>The Little Law Firm<br>440 Louisiana Street, Suite 900<br>Houston, Texas 77002 | ***Attorneys for Plaintiff and Counter Defendant Homeland Insurance Company of New York*** |

Telephone:    (713) 222-1368
Facsimile:    (281) 200-0115
E-mail:        jrl@littlelawtexas.com

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed on September 9, 2021, at San Diego, California.

_____
Nicole Lautzenheiser

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK _____ <br> *Plaintiff* <br> v. <br> CLINICAL PATHOLOGY LABORATORIES, INC., et al. _____ <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> Civil Action No. 1:20-cv-00783-RP |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records for Aon Risk Services Central, Inc.
    200 E. Randolph Street (Aon Center), Chicago, IL 60601
<em>(Name of person to whom this subpoena is directed)</em>

    ☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A

| Place: Judicial Attorney Services, Inc. c/o USA Legal Network 27 N. Wacker Drive, Suite 531 Chicago, IL 60606; (877) 659-3448, (630) 221-9007 | Date and Time: October 11, 2021 at 10:00 a.m. |
|---|---|

    ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>September 9, 2021</u>

<em>CLERK OF COURT</em>

                            OR

_____        *Jenna A. Fasone*
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Homeland Insurance Company of New York _____, who issues or requests this subpoena, are:
John T. Brooks, Cal Bar No. 167793/Jenna A. Fasone, Cal Bar No. 308886, Sheppard, Mullin, Richter & Hampton, LLP;
501 West Broadway, 19th Floor; Tel: 619.338.6500; Email: jbrooks@sheppardmullin.com; jfasone@sheppardmullin.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-00783-RP

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## ATTACHMENT A

**Exhibits:**       **1:**    **2016 SHUMPERT LETTER**
                    **2:**    **2016 VERO BULK CLAIM REPORT**

## INSTRUCTIONS

1. Pursuant to Federal Rule of Civil Procedure 45(c) this subpoena calls for documents that are known or available to you, including documents in your custody, possession, or control, and including documents maintained at a home or office, on a remote server, or on any personal or portable computer devices, such as mobile telephones.

2. Each request seeks the requested documents or things in their entirety, including all attachments, as kept in the normal course of business.

3. If any document responsive to these requests is electronically stored, then it must be produced, as single-page TIFF images created from native files (endorsed with bates numbers and the appropriate confidentiality legend, if any), with document text (OCR or extracted from native files to the extent available) in a separate TXT file, with file name corresponding to the file name of the TIFF image, together with the following extracted metadata from the native files: visible email headers; file system metadata to the extent available; and application metadata to the extent available.

4. If any document or thing responsive to these requests has been destroyed, describe its contents, the location of any copies, the date such destruction took place, and the name of the person who ordered or authorized such destruction.

5. This subpoena seeks all responsive documents to the categories outlined below, **EXCEPT** for documents YOU have already provided to HOMELAND as part of YOUR updates concerning the status of the ICC CLAIMS in the 2018 HOMELAND BULK CLAIM REPORT.  Please do not reproduce those documents unless they are part of COMMUNICATIONS (with any PERSON aside from HOMELAND) that are responsive to the requests outlined below.

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## **DEFINITIONS**

1.      The terms "YOU" and "YOUR" refer to Aon PLC, Aon Risk Solutions, Aon
Risk Services Southwest Inc., Aon Risk Services Central, Inc. and any of
their related (parent or subsidiary) entities and anyone acting or purporting
to act on their behalf including, but not limited to, employees, directors,
officers, agents, insurance agents/brokers, or attorneys, which would include
but is not limited to, Kathryn Shearman, Abby Bell, Kathryn Meyers, Emma
Meyer, and Jakob Onken.

2.      The term "DOCUMENT(S)" means any handwriting, typewriting, printing,
photostating, photograph, photocopy, electronic mail or facsimile, and any
other "writings and recordings" defined in Rule 1001 of the Federal Rules of
Evidence as "letters, words, or numbers, or their equivalent, set down by
handwriting, typewriting, printing, photostating, photographing, magnetic
impulse, mechanical or electronic recording, or other form of data
compilation."

3.      The term "COMMUNICATION(S)" means every manner or means of
disclosure, transfer, or exchange of information, whether oral, electronic, by
document, or otherwise, or whether face-to-face, in a meeting, by telephone
mail, electronic mail, internet posting, personal delivery, or otherwise,
including DOCUMENT(S) which evidence, discuss or reference such
COMMUNICATION(S).

4.      The term "CONCERNING" means relating to, referring to, describing,
evidencing or constituting.

5.      The term "PERSON" or "PERSONS" refers to a natural person, corporation,
association, organization, partnership, firm, business, trust, or public entity.

6.      The term "CPL" means Clinical Pathology Laboratories, Inc. and anyone
acting or purporting to act on its behalf including, but not limited to,
employees, directors, officers, agents, insurance agents/brokers, or attorneys
of CPL or its related (parent or subsidiary) entities, which would include, but
is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt,

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and
Sheridan Foster.

7.     The term "MEDLAB" means MedLab Pathology and anyone acting or
       purporting to act on its behalf including, but not limited to, employees,
       directors, officers, agents, insurance agents/brokers, or attorneys of
       MEDLAB or its related (parent or subsidiary) entities, which would include
       but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin
       Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy
       Stratton, and Sheridan Foster.

8.     The term "SONIC" means Sonic Healthcare Limited and anyone acting or
       purporting to act on its behalf including, but not limited to, employees,
       directors, officers, agents, insurance agents/brokers, or attorneys of SONIC
       or its related (parent or subsidiary) entities, which would include but is not
       limited to, Gordon Young, Stephen Shumpert, Dr. Colin Goldschmidt,
       Christopher Wilks, Brian Madden, Karen Pruett, Nancy Stratton, and
       Sheridan Foster.

9.     The term "SONIC USA" means Sonic Healthcare USA, Inc. and anyone
       acting or purporting to act on its behalf including, but not limited to,
       employees, directors, officers, agents, insurance agents/brokers, or attorneys
       of SONIC USA or its related (parent or subsidiary) entities, which would
       include but is not limited to, Gordon Young, Stephen Shumpert, Dr. Colin
       Goldschmidt, Christopher Wilks, Brian Madden, Karen Pruett, Nancy
       Stratton, and Sheridan Foster.

10.    The term "SONIC IRELAND" means Sonic Healthcare (Ireland) Limited
       and anyone acting or purporting to act on its behalf including, but not
       limited to, employees, directors, officers, agents, insurance agents/brokers,
       or attorneys of SONIC IRELAND or its related (parent or subsidiary)
       entities, which would include but is not limited to, Gordon Young, Stephen
       Shumpert, Dr. Colin Goldschmidt, Christopher Wilks, Brian Madden, Karen
       Pruett, Nancy Stratton, and Sheridan Foster.

11.    The term "SONIC ENTITIES" refers to CPL, MEDLAB, SONIC, SONIC
       USA, and SONIC IRELAND.

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

12.     The term "HOMELAND" refers to Homeland Insurance Company of New
        York and its affiliated companies including any of the OneBeacon entities
        (e.g., OneBeacon Healthcare Group, OneBeacon Insurance Group LLC,
        OneBeacon Insurance Group, Ltd., Atlantic Specialty Insurance Co.), and
        anyone acting on their behalf, including employees, underwriters, claims
        handlers and attorneys.

13.     The term "VERO" refers to Vero Insurance Limited, AAI Limited ABN 48
        005 297 807 trading as Vero Insurance, and their related (parent or
        subsidiary) or affiliated entities, and anyone acting or purporting to act on
        their behalf including, but not limited to, employees, directors, officers,
        agents, insurance agents/brokers, or attorneys of VERO or its related (parent
        or subsidiary) or affiliated entities.

14.     The term "ZURICH" refers to Zurich American Insurance Company and its
        related (parent or subsidiary) or affiliated entities, and anyone acting or
        purporting to act on their behalf including, but not limited to, employees,
        directors, officers, agents, insurance agents/brokers, or attorneys of ZURICH
        or its related (parent or subsidiary) or affiliated entities.

15.     The term "BEAZLEY" refers to Beazley Holdings, Inc., Beazley Insurance
        Company, Beazley America Insurance Company, Inc. and their related
        (parent or subsidiary) or affiliated entities, and anyone acting or purporting
        to act on their behalf including, but not limited to, employees, directors,
        officers, agents, insurance agents/brokers, or attorneys of BEAZLEY or its
        related (parent or subsidiary) or affiliated entities.

16.     The term "INSURERS" refers to VERO, ZURICH, and BEAZLEY.

17.     The term "GERMER" refers to the law firm Germer PLLC, and anyone
        acting or purporting to act on its behalf including, but not limited to,
        employees, directors, officers, members, partners, agents, attorneys, or staff
        of GERMER.

18.     The term "WILLIAM FRY" refers to the law firm William Fry LLP, and
        anyone acting or purporting to act on its behalf including, but not limited to,

***Homeland Insurance Company of New York v. Clinical Pathologies
Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

employees, directors, officers, members, partners, agents, attorneys, or staff of WILLIAM FRY.

19.    The term "HAYNES BOONE" refers to the law firm Haynes and Boone, LLP, and anyone acting or purporting to act on its behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff  of HAYNES BOONE.

20.    The term "BLM" refers to the law firm Berrymans Lace Mawer LLP (with trading name BLM) and its affiliate Berrymans Lace Mawer, Ireland, and anyone acting or purporting to act on their behalf including, but not limited to, employees, directors, officers, members, partners, agents, attorneys, or staff  of BLM.

21.    The term "LAW FIRMS" refers to GERMER, WILLIAM FRY, HAYNES BOONE, and BLM.

22.    The term "NCSS" refers to Ireland's National Cancer Screening Service established by Ireland's Minister for Health and Children in January 2007 and its successor, Ireland's National Screening Service.

23.    The term "IRISH CERVICALCHECK PROGRAM" refers to Ireland's NCSS program that provides cervical cancer screening to all women and people with a cervix aged 25 to 65 who live in Ireland.

24.    The term "CAR PROGRAM" refers to the IRISH CERVICALCHECK PROGRAM's clinical cancer audit process initiated in or around 2010 as part of the quality assurance framework of the program wherein an individual who has developed cancer will have their screening history reviewed in a systematic way.

25.    The term " ███████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ███████ .

26.    The term " ███████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ███████ .

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

27.     The term "███████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ███████████.

28.     The term "████████ CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████████████.

29.     The term "██████CLAIM" refers to the ICC CLAIM made by, on behalf of, and/or by relatives of, ████████.

30.     The term "ICC CLAIM(S)" refers to the actual, potential and/or threatened claim(s) relating to the IRISH CERVICALCHECK PROGRAM brought or made against the SONIC ENTITIES, including but not limited to, the O'BRIEN CLAIM, the PHELAN CLAIM, the CURTIS CLAIM, the GAVIGAN CLAIM, and the SWIFT CLAIM.

31.     The term "2016 SHUMPERT LETTER" refers to the letter from Stephen R. Shumpert, then-President of CPL, addressed to OneBeacon Insurance Group, that is dated July 27, 2016, attached hereto as **EXHIBIT 1,** including any drafts of that letter.

32.     The term "2016-17 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0616 (the "2016-17 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0616 (the "2016-17 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2016 to June 30, 2017.

33.     The term "2017-18 POLICIES" refers to Medical Facilities and Providers Professional Liability Insurance Policy No. MFL-004062-0617 (the "2017-18 PRIMARY POLICY") and Excess Medical Facilities Liability Insurance Policy No. MFX-002013-0617 (the "2017-18 EXCESS POLICY"), both of which Homeland issued to Sonic Healthcare Investments, G.P., and several additional insureds, including CPL, for the policy period of June 30, 2017 to June 30, 2018.

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

34.     The term "WORLDWIDE TERRITORY ENDORSEMENT" refers to Endorsement No. 12 to the 2016-17 PRIMARY POLICY and No. 13 to the 2017-18 PRIMARY POLICY.

35.     The term "RATE STABILIZATION ENDORSEMENT" refers to Endorsement No. 11 to the 2016-17 PRIMARY POLICY and Nos. 12 and 15 to the 2017-18 PRIMARY POLICY.

36.     The term "ADDITIONAL NAMED INSURED ENDORSEMENT" refers to Endorsement Nos. 5 and 15 to the 2016-17 PRIMARY POLICY and Nos. 3, 22 and 24 to the 2017-18 PRIMARY POLICY.

37.     The term "PRIOR KNOWLEDGE ENDORSEMENT" refers to Endorsement No. 2 to the 2016-17 PRIMARY POLICY and Nos. 1 and 19 to the 2017-18 PRIMARY POLICY.

38.     The term "2016 VERO BULK CLAIM REPORT" refers to the March 23, 2016 email string attached hereto as **EXHIBIT 2** including that email's attached spreadsheet with information concerning 58 patients noticed to VERO by MEDLAB.

39.     The term "MEDLAB PATHOLOGY INCIDENT REPORT" refers to the MedLab Pathology Incident Report from February 26, 2016 as discussed in the March 17, 2016 email attached hereto in **EXHIBIT 2**, including any updates to that report.

40.     The term "2018 HOMELAND BULK CLAIM REPORT" refers to the May 15, 2018 bulk notice to HOMELAND by CPL and/or the SONIC ENTITIES concerning certain ICC CLAIMS.

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***

United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

## DOCUMENTS TO BE PRODUCED

1.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the IRISH CERVICALCHECK PROGRAM.

2.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS), CONCERNING the CAR PROGRAM.

3.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, and the LAW FIRMS) CONCERNING the NCSS.

4.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING insurance coverage for the ICC CLAIMS.

5.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ICC CLAIMS (including but not limited to the noticing or tendering of any ICC CLAIMS to the INSURERS).

6.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 SHUMPERT LETTER (including but not limited to, the procurement of the 2016 SHUMPERT LETTER and any drafts of the same).

7.  All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON, (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016-

***Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.***
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

2017 POLICIES (including but not limited to, the procurement of the 2016-2017 POLICIES).

8.      All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2017-2018 POLICIES (including but not limited to, the procurement of the 2017-2018 POLICIES).

9.      All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the WORLDWIDE TERRITORY ENDORSEMENT (including but not limited to, the procurement of the WORLDWIDE TERRITORY ENDORSEMENT).

10.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the RATE STABILIZATION ENDORSEMENT (including but not limited to, the procurement of the RATE STABILIZATION ENDORSEMENT).

11.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the ADDITIONAL NAMED INSURED ENDORSEMENT (including but not limited to, the procurement of the ADDITIONAL NAMED INSURED ENDORSEMENT).

12.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the PRIOR KNOWLEDGE ENDORSEMENT (including but not limited to, the procurement of the PRIOR KNOWLEDGE ENDORSEMENT).

13.     All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the

*Homeland Insurance Company of New York v. Clinical Pathologies Laboratories, Inc., et al.*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the Prior Notice Exclusion (D)2 in the 2016-2017 POLICIES and the 2017-2018 POLICIES .

14.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING Condition (R) Representation; Incorporation of Application, in the 2016-2017 POLICIES and the 2017-2018 POLICIES.

15.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2016 VERO BULK CLAIM REPORT.

16.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the MEDLAB PATHOLOGY INCIDENT REPORT.

17.    All DOCUMENTS and COMMUNICATIONS between or among YOU and any PERSON (including, but not limited to, the SONIC ENTITIES, the INSURERS, the LAW FIRMS, and the NCSS) CONCERNING the 2018 HOMELAND BULK CLAIM REPORT, except for DOCUMENTS that YOU have already provided to HOMELAND.

18.    All COMMUNICATIONS between YOU and HOMELAND CONCERNING the 2016 SHUMPERT LETTER, the WORLDWIDE TERRITORY ENDORSEMENT, the RATE STABILIZATION ENDORSEMENT, the ADDITIONAL NAMED INSURED ENDORSEMENT, or procurement of insurance coverage for the ICC CLAIMS.

19.    All DOCUMENTS (including, but not limited to, COMMUNICATIONS between or among YOU and any of the SONIC ENTITIES) discussing the possibility that specific persons, or persons in general, might bring claims

*__Homeland Insurance Company of New York v. Clinical Pathologies__*
*__Laboratories, Inc., et al.__*
United States District Court, Western District of Texas – Austin Division
Case No. 1:20-cv-00783-RP

against any of the SONIC ENTITIES related to the IRISH
CERVICALCHECK PROGRAM.

20.     The earliest COMMUNICATION between or among YOU and any of the
SONIC ENTITIES discussing the possibility that specific persons, or
persons in general, might bring claims against any of the SONIC ENTITIES
related to the IRISH CERVICALCHECK PROGRAM subsequent to the
O'BRIEN CLAIM.

SMRH:4851-4802-7636.1

# EXHIBIT 1



July 27, 2016


OneBeacon Insurance Group
Plymouth, MN

The undersigned, on behalf of Sonic and any person proposed for coverage (the insureds)
does hereby represent to OneBeacon Insurance and its writing company that:

The insureds, after diligent inquiry, are not aware of any claims against the insured(s) or
any fact, circumstance, situation, transaction, event, act, error, or omission that may give
rise to a claim against the insured(s) Sonic Healthcare (Ireland) Limited, Medlab
Pathology, and CPL of Austin as respect the cervical cytology laboratory screening
services conducted between 8/1/2010 to 6/30/2013 and all claims and facts,
circumstances, situations, transactions, events, acts, errors, or omissions against the
insured(s) that may result in a claim have been reported to prior insurance carrier(s).

OneBeacon Insurance and its writing company will be issuing its policy in reliance upon
the conditions and statements made in this letter and the application both of which will be
deemed to be a part of the policy.


Sincerely,

Stephen R. Shumpert
President

# EXHIBIT 2

**From:** Kathryn Shearman [mailto:kathryn.shearman@aon.com]
**Sent:** Wednesday, 23 March 2016 10:45 AM
**To:** AUNG, Jamilar
**Subject:** Sonic - Dublin- MedLab Pathology - Incident Report Update

Dear Jamilar,

Thank you for your email in respect to Salvos matter – still don't recognise it- will send separate email about it.

I hope you are feeling better – at least Easter is around the corner so hopefully you will be able to have a proper rest.

I refer to the email attached below in respect to the Cancer Audit at MedLab Pathology.

As you may recall the first notification regarding the audit was in respect to **Michelle Curtis – your reference E002066374.**

Attached above are the details of the other patients . The attachment in encrypted and I will forward you password in separate email shorlty

I am not sure whether or not you will need to generate a separate reference for these matters however as discussed previously I would like the same claims person to deal with all notifications in respect to the audit hereon.

I look forward to hearing from you in this regard as soon as you are able as there are further emails to forward.

I look forward to hearing from you,

Kind regards,

Kathryn

**Kathryn Shearman** | **Senior Claims Consultant**
**Aon Risk Solutions** | BA LLB
201 Kent Street Sydney NSW 2000
t +61 9253 8406 | f +61 9253 7128
kathryn.shearman@aon.com | aon.com.au

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

Follow Aon Australia on Twitter | LinkedIn

Risk. Reinsurance. Human Resources. **Empower Results**®

---

**From:** Lisa Clarke [mailto:lisa.clarke@medlabpathology.ie]
**Sent:** Thursday, 17 March 2016 2:50 AM
**To:** Kathryn Shearman
**Cc:** gordon.young@sonichealthcare.com.au; insurance@sonichealthcare.com
**Subject:** MedLab Pathology - Incident Report Update

Good Afternoon,

Following on from the MedLab Pathology Incident Report on the 26 Feb 2016 regarding the change in process for cancer audits we would like to bring the attached to your attention.

The cancer audit review process started in 2012, following on from the change in process communicated to MLP in Feb 2016, we have reviewed all patients involved in the cancer audits to date.

The attached list contains 58 patients where on review during the cancer audit the management of the patient changed from the original report. As the attached list contains patient demographics we have encrypted it with a password which I will send in a separate mail.

The attached information includes the patient details, the original result date and the change to the result on review.

We are seeking information from our client (NSS) on any cases from the attached list that have been communicated to the treating clinician.

We will update you on any further developments on this.

If you require any further information, please do not hesitate to contact me

Thanks

Lisa

**Lisa Clarke**
**Quality Assurance Manager**
**MedLab Pathology**
**Unit 3, Sandyford Business Centre,**
**Sandyford Business Park,**

**Dublin 18.**

_____

**Tel:** +353 (1) 293 3690 **Fax:** +353 (1) 293 3671

www.medlabpathology.ie

This message contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient of this message you must not disseminate, copy or take any action in reliance on it.

This e-mail is confidential to the intended recipient. It is sent subject to the terms and conditions of business of Medlab Pathology Limited ("MLP") (a copy of which can be obtained on request from us). If you are not the intended recipient (a) you must not disclose, copy or distribute its contents to any other person nor use its contents in any way (b) please contact us immediately on 020 7307 7321 and delete the e-mail from your system.
By their very nature, e-mail systems and the internet are inherently
insecure systems. Whilst MLP uses all reasonable care and skill in compiling e-mails and (other than by encrypting) in preserving the integrity and confidentiality of it during transit to recipients, MLP makes no warranty as to the safe transmission (confidentiality and free from interception and/or alteration and/or corruption) and receipt of this e-mail and/or information it contains and MLP does not accept liability for any errors or omissions in this e-mail and/or information arising in transmission and/or following receipt.
The content of this message, or opinions expressed within are those of the writer and are not necessarily agreed with by MLP.

_____

This email from the Medlabs network has been scanned by the MessageLabs Email Security System. For more information please visit http://www.symanteccloud.com
_____

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Nov-12 | ZA074711 | | 3/6/1945 | 02/09/2010 | P3a | P6 | Sparse dyskaryosis, atrophy | 1487914 | |
| 2 | Nov-12 | ZB510111 | | 2/27/1986 | 08/07/2011 | P3a | P3b | Sparse dyskaryosis | 140221 | |
| 3 | Nov-12 | ZA191931 | | 5/16/1957 | 28/09/2010 | P3a | P7 | Microbiopsies, atrophy | 490137 | |
| 4 | Jan-13 | ZB487864 | | 2/29/1976 | 02/07/2011 | P2 | P6 | Other (misinterpretation/did not see abnormality -HCGs) | 366574 | |
| 5 | Jan-13 | ZA387260 | | 6/7/1975 | 11/11/2010 | P4 | P7 | Did not interpret the degree of abnormality correctly.  Did not see the HSIL + | 474337 | |
| 6 | Jan-13 | ZA437890 | | 5/22/1982 | 23/11/2010 | P3a | P7 | Other (misinterpretation) | 569917 | |
| 7 | Jan-13 | ZA107400 | | 11/30/1954 | 09/09/2010 | P2 | P6 | Other (small cells) | 744402 | |
| 8 | Jan-13 | ZA269865 | | 5/20/1971 | 16/10/2010 | P4 | P6 | Other (misinterpreted the small cells-scanty small cell dyskaryosis) | 1488236 | |
| 9 | Feb-13 | ZA326872 | | 7/14/1965 | 28/10/2010 | P3a | P6 | Small cell and Microbiopsies | 334419 | |
| | | ZB801182 | | 7/14/1965 | 31/09/2011 | P1 | P6 | Scanty/blood +/Missed groups of cells | | |
| 10 | Feb-13 | ZA489303 | | 9/9/1973 | 02/12/2010 | P4 | P6 | Missed groups/microbiopsies in backgroun | 1029513 | |
| 11 | Feb-13 | ZB539325 | | 2/9/1978 | 14/07/2011 | P4 | P6 | Cytolysis/Misinterretation of cell type | 449107 | |
| 12 | Feb-13 | ZB706791 | | 4/1/1942 | 19/08/2011 | P2 | P9 | Attrophy/Necrotic scanty smear | 1531258 | |
| 13 | Jul-13 | ZB469374 | | 10/5/1980 | 29/06/2011 | P4 | P6 | HCGs and single cells | 600721 | |
| | | ZA202543 | | 10/5/1980 | 01/10/2010 | P4 | P7 | Single cells and HCGs | | |
| 14 | Jul-13 | ZC733064 | | 9/22/1974 | 18/04/2012 | P3a | P9 | Misinterpretation | 8373 | |
| 15 | Jul-13 | ZC815517 | | 8/26/1958 | 03/05/2010 | P2 | P8a | Very scanty abnormality | 273734 | |
| 16 | Jul-13 | ZA073268 | | 6/25/1984 | 31/08/2010 | P2 | P6 & P8b | HCGs | 1369695 | |
| 17 | Jul-13 | ZA732933 | | 11/25/1967 | 20/01/2011 | P2 | P6 & P8b | Misinterpretation of cell groups | 552674 | |
| 18 | Jul-13 | ZA697576 | | 10/31/1956 | 14/01/2011 | P2 | P3b | Scanty abnormality single cells and severe inflammation | 1384308 | |
| 19 | Jul-13 | CA021680 | | 3/3/1977 | 22/06/2012 | P2 | P9 | Misinterpretation of cell groups | 345946 | |
| 20 | Sep-14 | CA082813 | | 1/9/1975 | 19/01/2013 | P1 | P6 | Other = misnterpretation due to GAA effect | 481230 | |
| 21 | Sep-14 | ZB506960 | | 8/20/1968 | 05/07/2011 | P2 | P6 and P8b | Other- Miss | 376388 | |
| | | ZA672737 | | 8/20/1968 | 13/01/2011 | P3a | P9 | Other- Miss and Misinterpreation | | |
| | | ZC373881 | | 8/20/1968 | 25/01/2012 | P2 | P3b | Other - Miss | | |
| 22 | Sep-14 | ZC626734 | | 5/19/1953 | 28/03/2012 | P2 | P7 | Other- Miss | 287248 | |
| 23 | Sep-14 | ZA819534 | | 9/17/1979 | 09/02/2011 | P3a | P6 | Other- Miss | 843046 | |
| 24 | Sep-14 | ZA370441 | | 6/9/1954 | 06/11/2010 | P2 | P8a | Other- Miss | 433139 | |
| 25 | Sep-14 | CA050388 | | 12/4/1955 | 12/10/2012 | P2 | P9 | Other - Sparse | 100030 | |
| 26 | Sep-14 | ZA128802 | | 6/22/1979 | 16/09/2010 | P2 | P6 | Other- Miss | 1219233 | |

| | Cancer Audit | Episode | Patient Name | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 27 | Sep-14 | ZA101415 | | 6/20/1964 | 09/09/2010 | P2 | P3b | Sparse number of cells | 1167859 | |
| 28 | Sep-14 | ZD157180 | | 5/20/1986 | 20/09/2012 | P2 | P7 | Other- Miss | 1560410 | |
| | | ZC443494 | | 5/20/1986 | 23/02/2012 | P3a | P6 | Other- Miss and Misinterpreation | | |
| 29 | Sep-14 | CA075586 | | 7/11/1974 | 25/12/2012 | P2 | P8a | Sparse (1 dot only) | 1262285 | |
| 30 | Sep-14 | CA450345 | | 9/24/1984 | 22/02/2012 | P4 | P6 | Other - Miss | 1560596 | |
| 31 | Sep-14 | ZC516732 | | 4/21/1978 | 03/03/2012 | P2 | P6 and P8a | Other - Miss | 659910 | |
| 32 | Sep-14 | ZA538551 | | 12/11/1981 | 11/12/2010 | P2 | P6 and P9 | Other - Miss | 1083932 | |
| 33 | Sep-14 | ZD308103 | | 5/15/1968 | 27/06/2013 | P4 | P7 | Other- Misinterpreation | 809460 | |
| 34 | Sep-14 | ZC928931 | | 8/26/1957 | 09/06/2012 | p2 | P6 | Other - Miss | 42345 | |
| 35 | Feb-15 | ZB551268 | | 2/9/1973 | 13/07/2011 | P2 | P6 | Miss | 185600 | |
| | | ZD150008 | | 2/9/1973 | 12/09/2012 | P3a | P6 | Miss/Misinterpretation | | |
| 36 | Feb-15 | ZC710462 | | 11/20/1981 | 11/04/2012 | P2 | P6 | Miss/Misinterpretation | 542087 | |
| 37 | Jun-15 | ZC611141 | | 8/1/1973 | 22/03/2012 | P2 | P3a | Misinterpreation | 172244 | |
| 38 | Jul-15 | CA181156 | | 7/23/1975 | 03/08/2013 | P2 | P4 | Scanty | 165911 | |
| 39 | Jul-15 | CA294460 | | 10/17/1951 | 10/05/2014 | P4 | P6 | Atrophy | 404399 | |
| | | ZB411651 | | 10/17/1951 | 09/06/2011 | P2 | P3a | Scant | | |
| 40 | Jul-15 | ZC564641 | | 8/19/1983 | 15/03/2012 | P3a | P6 | Misinterpretation | 351284 | |
| 41 | Oct-15 | CA165790 | | 2/8/1966 | 12/07/2013 | P2 | P6 | GAA effect/Misinterpretation | 531343 | |
| 42 | Oct-15 | ZC357968 | | 7/18/1976 | 18/01/2012 | P2 | P6 | Miss/Misinterpretation | 283857 | |
| 43 | Oct-15 | ZC851219 | | 8/16/1975 | 16/05/2012 | P2 | P6 | Single, small cells | 352124 | |
| 44 | Oct-15 | CA080858 | | 8/16/1986 | 12/01/2013 | P4 | P5 | | 1556957 | |
| 45 | Jan-16 | ZA737312 | | 2/25/1974 | 21/01/2011 | P2 | P6 | Miss | 363203 | |
| | | CA003281 | | 2/25/1974 | 17/02/2012 | P2 | P3b | Scant | | |
| | | CA077060 | | 2/25/1974 | 01/01/2013 | P2 | P3b | Scant/degenerate | | |
| | | CA250704 | | 2/25/1974 | 24/01/2014 | P2 | P3a | Scant | | |
| 46 | Jan-16 | CA384357 | | 3/10/1983 | 07/02/2015 | P2 | P3b | GAA effect/Misinterpretation | 1794934 | |
| 47 | Jan-16 | CA463822 | | 3/3/1982 | 16/09/2015 | P2 | P9 | Misinterpretation | 440083 | |
| 48 | Jan-16 | ZD242244 | | 11/15/1977 | 16/11/2012 | P2 | P7 | Miss | 102460 | |
| 49 | Nov-14 | CA041329 | | 6/29/1981 | 11/09/2012 | P2 | P3a Vs P8a | Very scanty | 91509 | |
| 50 | Nov-14 | ZB074621 | | 8/7/1970 | 30/03/2011 | P2 | P8a | Other - Miss | 372969 | |
| | | CA264398 | | 8/7/1970 | 21/02/2014 | P2 | P3a | Other - poor quality scanty cellular material | | |
| 51 | Nov-14 | ZA322603 | | 11/15/1975 | 28/10/2010 | P2 | P6 | Other - miss | 536829 | |
| | | CA177717 | | 11/15/1975 | 30/07/2013 | P2 | P7 | Other - Misinterpretion | | |
| 52 | Nov-14 | CA012241 | | 4/6/1980 | 01/05/2012 | P3a | P3b | Other - Misinterpretation and scanty amount | 568688 | |
| | | CA089809 | | 4/6/1980 | 05/02/2013 | P3a | P3b | Very scant amount of cells | | |
| 53 | Nov-14 | ZB740720 | | 7/8/1974 | 30/08/2011 | P2 | P6 | Other - Miss | 1184682 | |
| 54 | Nov-14 | CA236401 | | 5/7/1966 | 05/12/2013 | P2 | P9 | Other - GAA effect and miss | 1379031 | |

| | Cancer Audit | Episode | | Patient DOB | Date Reported | Result Reported | Result on Review | Reason for misdiagnosis | Patient CSP ID | Treating Clinician informed |
|---|---|---|---|---|---|---|---|---|---|---|
| 54 | Nov-14 | CA144270 | ███ | 5/7/1966 | 05/06/2013 | P1 | P8b | poor quality smear and miss | 1379051 | |
| 55 | Nov-14 | ZA534982 | ███ | 4/3/1977 | 11/12/2010 | P2 | P6 | Other - Miss | 1380034 | |
| 56 | Nov-14 | ZD127636 | ███ | 5/6/1974 | 17/08/2012 | P4 | P5 | Other - Miss | 1188354 | |
| 57 | Nov-14 | ZB438556 | ███ | 10/28/1974 | 16/06/2011 | P2 | P7 | Other - Miss | 1238520 | |
| 58 | Nov-14 | ZB188275 | ███ | 9/24/1963 | 27/04/2011 | P2 | P5 | Other - Scanty cellular material & miss | 1520098 | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>            Plaintiff,<br><br>v.<br><br>CLINICAL PATHOLOGY LABORATORIES, INC. SONIC HEALTHCARE USA, INC., MEDLAB PATHOLOGY, SONIC HEALTHCARE (IRELAND) LIMITED, AND SONIC HEALTHCARE LIMITED.<br><br>            Defendants. | CIVIL ACTION NO. 1:20-cv-783 |

**PROOF OF SERVICE**

      I, the undersigned, declare under penalty of perjury that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, State of California, in which county the within-mentioned service occurred. My business address is 501 West Broadway, 19th Floor, San Diego, California 92101.

      On September 9, 2021, I served a copy of the following document(s):

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO THE CUSTODIAN OF RECORDS FOR AON RISK SERVICES CENTRAL, INC. (CHICAGO, IL)**

☒     **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from nlautzenheiser@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒     **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that the

correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Mark T. Beaman
Ryan Bueche
GERMER BEAMAN & BROWN PLLC
One Barton Skyway
1501 S. Mopac Expy, Suite A400
Austin, TX 78746

***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited***

| | |
|---|---|
| Telephone: | (512) 472-0667 |
| Facsimile: | (512) 472-0721 |
| E-mail: | mbeaman@germer-austin.com |
| | gjohnson@germer-austin.com |
| | pross@germer-austin.com |

Ernest Martin, Jr.
Gregory E. Van Houten
S. Benjamin Schindler
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219

***Attorneys for Defendants Clinical Pathology Laboratories, Inc., Sonic Healthcare USA, Inc., Medlab Pathology, Sonic Healthcare (Ireland) Limited, and Sonic Healthcare Limited***

| | |
|---|---|
| Telephone: | (214) 651-5000 |
| Facsimile: | (214) 200-0519 |
| E-mail: | ernest.martin@haynesboone.com |
| | mae.maddran@haynesboone.com |
| | greg.vanhouten@haynesboone.com |
| | s.benjamin.schindler@haynesboone.com |
| | Patricia.Zerwas@haynesboone.com |

Joseph R. Little
The Little Law Firm
440 Louisiana Street, Suite 900
Houston, Texas 77002

***Attorneys for Plaintiff and Counter Defendant Homeland Insurance Company of New York***

| | |
|---|---|
| Telephone: | (713) 222-1368 |
| Facsimile: | (281) 200-0115 |
| E-mail: | jrl@littlelawtexas.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 9, 2021, at San Diego, California.

_____
Nicole Lautzenheiser