# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, *Plaintiff* | § § § § | |
| v. | § § | CIVIL NO. 1-20-CV-783-RP |
| CLINICAL PATHOLOGY LABORATORIES, INC., *Defendant* | § § § § | |

## ORDER

Now before the Court are Homeland Insurance Company of New York's Motions to Compel filed October 3, 2022 (Dkt. 151; Dkt. 152); Defendant's *Opposed* Motion for Leave to File a One-Page Sur-Reply to Plaintiff's Reply in Support of its Motions to Compel, filed October 24, 2022 (Dkt. 162); and the associated response and reply briefs. By Text Order entered October 26, 2022, the District Court referred the motions to the undersigned Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").[1] The Court held a hearing on the Motions to Compel on November 14, 2022.

### I. Background

Homeland Insurance Company of New York ("Homeland") brings this insurance coverage lawsuit against Clinical Pathology Laboratories, Inc. ("CPL") and CPL's parent company, Sonic Healthcare USA, Inc. ("Sonic USA") (collectively, "Defendants"). Homeland seeks a declaration that it has no duty to reimburse Defendants for defending medical negligence lawsuits filed against

---

[1] Defendant's Motion and many of the related filings are sealed. In this Order, the Court cites redacted versions of the relevant filings and quotes no sealed documents.

1

them in Ireland relating to allegedly misread pap smear slides used in cervical cancer screening. Homeland's Second Amended Complaint, Dkt. 56. Homeland also brings claims for breach of warranty, reformation, and promissory estoppel. *Id.* CPL asserts several counterclaims against Homeland, including breach of contract, anticipatory breach of contract, violations of the Texas Insurance Code, and a claim for attorneys' fees. CPL's First Amended Counterclaim, Dkt. 46.

In the instant Motions to Compel, Homeland asks the Court to compel CPL to produce certain documents that CPL has withheld based on the attorney-client privilege and work product doctrine.

## II. Legal Standards

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). A trial court "enjoys wide discretion in determining the scope and effect of discovery." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (citation omitted).

"The scope of discovery in civil cases under Federal Rule of Civil Procedure 26(b)(1) does not include privileged information or, absent the showing that Federal Rule of Civil Procedure 26(b)(3) mandates, work product protected information." *Jolivet v. Compass Grp. USA, Inc.*, 340

2

F.R.D. 7, 17 (N.D. Tex. 2021) (internal citation and quotations omitted). In diversity cases such as this, state law applies to claims of attorney-client privilege, while federal law governs whether the items are immune from discovery under the work product doctrine. FED. R. EVID. 501; *In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003); *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *White Lodging Servs. Corp. v. Liberty Mut. Fire Ins. Co.*, No. A-17-CA-277-SS, 2019 WL 13080133, at *2 n.2 (W.D. Tex. Mar. 19, 2019). Therefore, application of the attorney-client privilege is determined by Texas law, while federal common law governs the work product privilege.

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The privilege promotes free discourse between attorney and client, thereby advancing the effective administration of justice." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 803 (Tex. 2017). "Pleading and producing evidence establishing the existence of a privilege is the burden of the party seeking to avoid discovery. The party asserting the privilege must establish by testimony or affidavit a prima facie case for the privilege." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015).

The work product doctrine is distinct from and broader than the attorney-client privilege. *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). The work product doctrine "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn*, 927 F.2d at 875. "It protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020).

A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). A party claiming a privilege must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)).

### III.  Analysis

CPL argues that Homeland's Motions to Compel should be denied under Local Rule CV-7(g) because Homeland failed to sufficiently confer with CPL. The Court finds that Homeland has sufficiently complied with the Local Rules and addresses the merits of the Motions to Compel.

### A.  Sur-Reply

Under Local Rule CV-7(e)(1), a party must seek leave to file a Sur-Reply. "Although surreplies 'are heavily disfavored,' it is within the sound discretion of the courts to grant or deny leave to file such additional briefing." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020) (quoting *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014)). Because CPL is responding to an argument Homeland raised in its Reply, the Court finds that it has presented good cause to file a sur-reply. *See Mission Toxicology*, 499 F. Supp. 3d at 360 (granting leave to file where sur-reply "does not rehash arguments already presented in the response."). Accordingly, the Court **GRANTS** Defendant's *Opposed* Motion for Leave to File a One-Page Sur-Reply to Plaintiff's Reply in Support of its Motions to Compel (Dkt. 162), and **ORDERS** the Clerk shall file CPL's sur-reply (Dkt. 162-2).

**B. Homeland's First Motion to Compel**

In its First Motion to Compel (Dkt. 151), Homeland seeks two categories of documents: (1) CPL's communications with its insurance broker, and (2) emails that CPL designated as attorney work product.

**1. Category One: Communications with Aon**

Homeland seeks 320 documents CPL designated privileged that relate to communications CPL had with its insurance broker, Aon. CPL alleges that Aon was acting as its representative for the purpose of facilitating the rendition of professional legal services to CPL and to aid in possible future litigation with one or more of its liability insurers. Homeland argues these documents are not privileged because CPL has not established that Aon was acting as its "representative" under Texas Rule of Evidence 503. Alternatively, Homeland argues that even if Aon was a client representative, CPL has not established that the each of the documents was created for the purpose of rendering legal services.

Under Texas Rule of Evidence 503(b)(1):

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client . . . between the client or the **client's representative**[2] and the client's lawyer or the lawyer's representative.

TEX. R. EVID. 503(b)(1) (emphasis added). Thus, "Rule 503(b) protects not only confidential communications between the lawyer and client, but also the discourse among their representatives. It is an exception to the general principle that the privilege is waived if the lawyer or client

---

[2] Rule 503 defines "client's representative" as: "(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2).

5

voluntarily discloses privileged communications to a third party." *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49-50 (Tex. 2012). "Because communications between representatives of a client are protected if they otherwise meet the requirements of the Rule, a lawyer need not be involved as an author or recipient. This is a very broad privilege as now written." *In re Stephens Inc.*, 579 S.W.3d 438, 445 (Tex. App.—San Antonio 2019, no pet.) (cleaned up).

 The party invoking the client's representative privilege

> must show that each person privy to the communication: (1) had the authority to obtain professional legal services on behalf of the client; (2) had authority to act on legal advice rendered to the client; or (3) made or received the confidential communication while acting within the scope of his employment for the purpose of effectuating legal representation to the client.

*Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 596 (N.D. Tex. 2017) (quoting *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 475 (N.D. Tex. 2004)). Courts have found that an insurance broker can act as a representative of an insured when "its communications are made for the purpose of facilitating the rendition of professional legal services to the client." *In re TETRA Techs., Inc. Sec. Litig.*, No. 4:08-CV-0965, 2010 WL 1335431, at *5 (S.D. Tex. Apr. 5, 2010) (quoting *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 4:06-CV-1722-SNL, 2009 WL 465584, at *4 (E.D. Mo. Feb. 24, 2009)). Thus, communications between the insured, the insured's broker, and the insured's attorney may be protected by the attorney-client privilege. *See id.* (holding that communications between defendants, insurance brokers, and defendants' attorneys made to facilitate the rendition of legal services fell within attorney-client privilege and were not subject to discovery); *Royal Surplus Lines Ins. Co. v. Sofamor Danek Grp.*, 190 F.R.D. 463, 471 (W.D. Tenn. 1999) (finding that attorney-client privilege extended to insurance broker's consultations with in-house counsel and insured and was not waived); *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F. Supp. 1007, 1010 (E.D. La. 1995) (holding that insurance broker acted as

representative of client when it received "confidential communication[s] for the purpose of effectuating legal representation for a client"); *see also Zenith Ins. Co. v. Texas Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 172 (N.D. Tex. 2018) (holding that e-mails between hospital and its insurance broker regarding details of patient's claim were protected under work product doctrine).

As the party asserting attorney-client privilege, CPL has the burden to produce evidence concerning its applicability. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004). "This may be accomplished by testimony or affidavit evidence sufficient to establish a prima facie case for the privilege." *Stephens Inc.*, 579 S.W.3d at 445. The prima facie standard "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *DuPont*, 136 S.W.3d at 223 (internal citation and quotation omitted). Texas law recognizes that a party asserting privilege "may initiate its claim and establish a prima facie case of privilege by submitting evidence short of tendering each and every document." *In re Living Centers of Texas, Inc*., 175 S.W.3d 253, 261 (Tex. 2005).

In support of its claim that Aon was acting as its representative, CPL has produced detailed privilege logs (Dkt. 151-2; Dkt. 152-2), along with a supporting affidavit from Sheridan Foster, former Senior Vice President of Legal Affairs for CPL's parent company, Sonic Healthcare USA, Inc. In her affidavit, Foster states that beginning in March 2018, Sonic/CPL "involved Aon in certain communications with our underlying defense counsel . . . so that Aon would be apprised of developments in the underlying claims in real-time and could therefore more effectively assist us with securing insurance coverage for those claims." Foster Decl. (Dkt. 155-2) ¶ 15. Foster further states that beginning in May 2018, CPL's outside counsel began to manage and direct the company's insurance coverage efforts and "worked with our Irish-based defense counsel on underlying defense strategy and managed our insurance coverage efforts." *Id*. ¶ 20. Foster states

that, "from that point forward, everything that Sonic USA, CPL, or Aon did with respect to the Irish CervicalCheck Claims was done at the direction of [CPL's outside counsel]," and that she "understood and expected" those communications "to remain confidential." *Id.*

Homeland argues that Foster's affidavit is lacking in specificity. "However, an affidavit, even if it addresses groups of documents rather than each document individually, has been held to be sufficient to make a prima facie showing of attorney-client and/or work product privilege." *DuPont*, 136 S.W.3d at 223. Courts have found similar affidavit testimony sufficient to show that communications between the insured, the insurance broker, and the insured's lawyers were privileged. *See Exxon Corp.*, 903 F. Supp. at 1009-10 (finding that affidavit from claims manager indicated that broker received the communications at issue "in its capacity as an insurance broker and, as insurance broker, it is, at least in part, a conduit between the lawyer, the insured and the insurer"); *Zenith*, 328 F.R.D. at 172 (holding that defendant met its burden through affidavit testimony to show that documents were created primarily to aid in possible future litigation). The Court finds that Foster's affidavit, along with the privilege logs, CPL's pleadings, and arguments presented at the hearing, are sufficient to sustain CPL's burden to demonstrate that the communications were made "for the purpose of facilitating the rendition of professional legal services to the client." *In re TETRA Techs.*, 2010 WL 1335431, at *5.

Once the party asserting the privilege establishes a prima facie case for the privilege, the burden shifts to the party seeking production to refute the claim of privilege. *Stephens Inc.*, 579 S.W.3d at 445. Homeland has not sustained its burden. Accordingly, the Motion to Compel is **DENIED** as to these communications.

### 2. Category Two: E-Mails Designated Work Product

Next, Homeland argues that CPL has wrongly withheld on the basis of the work product doctrine a number of emails between CPL, affiliated company MedLab, Sonic, and Aon sent from April 10, 2018 to May 24, 2018. As noted, the work product doctrine is broader than the attorney-client privilege, and "protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *Adams*, 973 F.3d at 349. As the United States Supreme Court has stated, "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

CPL alleges that it anticipated litigation with Homeland "as of March 27, 2018, when Homeland sent a reservation of rights letter containing over thirty information requests designed to support a denial of coverage." Dkt. 155 at 2. CPL again relies on Foster's declaration in support. Dkt. 155-2 ¶ 15. CPL also relies on the Foster declaration to show that "as of May 1, 2018, CPL's outside counsel began to manage and direct the company's insurance coverage efforts, and from that point forward Aon was assisting with the 'rendition of professional services.'" Dkt. 155 at 8 (quoting Foster Decl. ¶ 20). CPL contends that the emails between CPL, MedLab, Sonic and Aon in April and May 2018 were prepared in anticipation of litigation and are protected by the attorney work product doctrine.

The Court finds that it was reasonable for CPL to anticipate litigation with Homeland when it received the reservation of rights letter on March 27, 2018, and that CPL has sustained its burden to withhold the documents from discovery. Therefore, Homeland's Motion to Compel is **DENIED** as to this request.

### C. Homeland's Second Motion to Compel

In its Second Motion to Compel (Dkt. 152), Homeland seeks communications between (1) CPL and its defense counsel in the underlying Irish litigation, (2) CPL and Vero, and (3) CPL and MedLab. Homeland argues that CPL has waived the attorney-client privilege with regard to all of these communications under the offensive use theory.[3]

The Texas Supreme Court has recognized that an offensive use of the attorney-client privilege or work product doctrine as a "sword" and not a "shield" may waive the privilege. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 807 (Tex. 2017); *Paxton v. City of Dallas*, 509 S.W.3d 247, 264 (Tex. 2017) ("[T]he attorney-client privilege may be waived by 'offensive use' of the privilege."); *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) ("In an instance in which the privilege is being used as a sword rather than a shield, the privilege may be waived."). Offensive use occurs "when a party seeking affirmative relief attempts to protect outcome-determinative information from any discovery." *Paxton*, 509 S.W.3d at 264. Although the Texas Supreme Court has recognized "the vitality of the offensive-use doctrine," it also has explained that "an offensive use waiver of a privilege should not lightly be found because privileges represent society's desire to protect certain relationships." *Id.*

To show a waiver of privilege under the offensive use doctrine, the party seeking discovery must establish three elements: (1) the party asserting the privilege must seek affirmative relief; (2) "the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient"; and (3) "disclosure of the confidential communication must be the only means by

---

[3] Although Homeland did not assert the offensive use theory as to all three categories of documents in its Motion, Homeland's counsel clarified at the hearing that it indeed is doing so.

which the aggrieved party may obtain the evidence." *Republic Ins.*, 856 S.W.2d at 163. If any one of these requirements is lacking, the trial court must uphold the privilege. *Id.*

### 1. Category One: Communications With Irish Defense Counsel

Homeland argues that CPL waived the attorney-client privilege as to all communications between CPL and its defense counsel in the underlying Irish litigation because it previously shared some of these confidential communications with Homeland. In response, CPL contends that it shared certain privileged communications with Homeland (mostly before Homeland denied coverage) because it had to, under the terms of the 2017 Policy and to prove its damages in this case. Homeland cites no supporting authority for its contention that CPL is obligated to turn over all communications because it previously divulged some.

In addition, Homeland fails to meet its burden to show that the offensive use doctrine applies with regard to CPL's communications with the Irish Defense Counsel. *See Fugro-McClelland Marine Geosciences, Inc. v. Steadfast Ins. Co.*, No. H-07-1731, 2008 WL 5273304, at *4 (S.D. Tex. Dec. 19, 2008) (holding that offensive use doctrine did not waive attorney-client and work product privilege where insured had shared communications with insurance company before it refused to pay settlement in the underlying suit). Homeland also does not show that disclosure of the confidential information is the only way to obtain the communications. *See Republic Ins.*, 856 S.W.2d at 163 (holding that, to find offensive use waiver of attorney-client privilege, "disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence"); *Hartford Lloyd's Ins. Co. v. Flexible Foam Prod., Inc.*, No. 3:11-CV-0259-N, 2012 WL 13027058, at *1 (N.D. Tex. Feb. 9, 2012) (finding that even if defendant had met first two *Republic Ins.* factors, it "has not shown that it is unable to obtain the allegedly privileged information from another source").

The Court finds Homeland has not sustained its burden to show that the offensive use waiver applies and **DENIES** its Motion to Compel as to CPL's communications with Irish defense counsel.

### 2. Categories Two and Three: Vero and MedLab Documents

Finally, Homeland seeks communications between CPL and Vero, its European insurer. Homeland argues that these documents are not privileged because "no attorney is on these communications." Dkt. 191 at 5. Homeland also seeks communications between CPL and related entity MedLab, contending that "any privilege CPL might otherwise have enjoyed was shattered by including MedLab in the communications." *Id.* Homeland argues that the documents are relevant to the prior notice exclusion.

In response, CPL argues that a lawyer need not appear on the face of communications for a document to be privileged. CPL further argues that all of these communications are irrelevant under Rule 26 because "they were sent *years after* the 2016 Letter was signed (July 27, 2016) and the lookback date under the prior knowledge exclusion (Homeland says its June 30, 2016; CPL says its June 30, 2013)." Dkt. 155 at 9. The Court agrees.

As previously noted, "a lawyer need not be involved as an author or recipient" in order for communications to be protected under the work product doctrine. *Stephens*, 579 S.W.3d at 445. Thus, Homeland's argument for discovery CPL's communications with Vero is misplaced. Moreover, Homeland has not shown that CPL's communications with Vero and MedLab are relevant, as they were sent after the lookback date and after the date CPL anticipated litigation in this case. Nor has Homeland shown that it could not obtain the documents or information directly from Vero or MedLab. *Republic Ins.* 856 S.W.2d at 163. Accordingly, Homeland fails to show that it is entitled to these documents or that CPL waived any privilege by offensive use.

## IV. Conclusion

Homeland Insurance Company of New York's Motions to Compel (Dkt. 151; Dkt. 152) are **DENIED**. Defendant's *Opposed* Motion for Leave to File a One-Page Sur-Reply to Plaintiff's Reply in Support of its Motions to Compel (Dkt. 162) is **GRANTED**.

**SIGNED** on November 28, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE